1  Adam R. Fox (State Bar No. 220584)
   Adam.Fox@ssd.com
2  SQUIRE, SANDERS & DEMPSEY (US) LLP
   555 South Flower Street, 31st Floor
3  Los Angeles, CA  90071
   Telephone:    +1.213.624.2500
4  Facsimile:     +1.213.623.4581

5  David S. Elkins (State Bar No. 148077)
   David.Elkins@ssd.com
6  SQUIRE, SANDERS & DEMPSEY (US) LLP
   600 Hansen Way
7  Palo Alto, CA  94304
   Telephone:  +1.650.856.6500
8  Facsimile:    +1.650.843.8777

9  [*Additional Counsel Identified On Signature Page*]

10 Attorneys for Plaintiffs WESTERN SUGAR
   COOPERATIVE, MICHIGAN SUGAR CO., and C & H
11 SUGAR CO., INC.

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14 WESTERN SUGAR COOPERATIVE, a          Case No. CV 11 - 3473 CBM (MANx)
   Colorado cooperative, MICHIGAN
15 SUGAR COMPANY, a Michigan             **COMPLAINT FOR DAMAGES
   corporation, and C & H SUGAR          AND INJUNCTIVE RELIEF FOR
16 COMPANY, INC., a Delaware             FALSE ADVERTISING IN
   corporation,                          VIOLATION OF (1) THE
17                                       LANHAM ACT (15 U.S.C. §
                    Plaintiffs,          1125(a)), AND (2) CALIFORNIA'S
18                                       UNFAIR COMPETITION LAW
            vs.                          (CAL. BUS. & PROF. CODE §
19                                       17200, *ET SEQ.*)**
   ARCHER-DANIELS-MIDLAND
20 COMPANY, a Delaware corporation,      **JURY TRIAL DEMANDED**
   CARGILL, INC., a Delaware corporation,
21 CORN PRODUCTS INTERNATIONAL,
   INC., a Delaware corporation, THE
22 CORN REFINERS ASSOCIATION,
   INC., a Delaware corporation, PENFORD
23 PRODUCTS CO., a Delaware
   corporation, ROQUETTE AMERICA,
24 INC., a Delaware corporation, and TATE
   & LYLE INGREDIENTS AMERICAS,
25 INC., a Delaware corporation,

26                  Defendants.

27

28

SQUIRE, SANDERS &
DEMPSEY (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA  90071

                                                      COMPLAINT

Western Sugar Cooperative, Michigan Sugar Company, and C&H Sugar Company, Inc. (collectively "Plaintiffs") hereby allege as follows.

## PROLOGUE

1.     Since researchers first synthesized it for commercial use within the processed food industry in the late 1960s, the use and consumption of high-fructose corn syrup—or "HFCS"—has become nearly ubiquitous in American beverages and food.  In recent years, scientists and other observers noted that this dramatic growth in the use of HFCS, which increased by over 1000% between 1970 and 1990, bears a strong temporal relationship to the growth in American obesity.  After some researchers began to publish hypotheses based on testing of a potential causal relationship between the dramatic, concurrent rises in HFCS consumption and obesity, HFCS sales began a steady and sustained decline.

2.     Consumers increasingly seek to avoid food and drink containing HFCS given the emerging science linking it to possible nutritional and health problems, including obesity but also extending to a wide range of metabolic conditions.  Other consumers avoid HFCS out of a desire to confine their diets to natural foods and fulfill their desire for sweeteners to sugar from cane and beet plants.  Responding to consumer preferences, more and more food manufacturers have replaced HFCS with sugar—and at the same time promote their products' use of "real sugar" or the absence of HFCS.

3.     The HFCS industry has not taken the decrease in sales lightly.  Instead, the Corn Refiners Association ("CRA") and its member companies (collectively "Defendants") have crafted a publicity campaign to revitalize and rebrand HFCS. This ongoing, evolving effort has already manifested in a variety of different strategies, including the promotion of HFCS as "natural," and the assertions of equivalence between HFCS and sugar—such as "sugar is sugar," "your body can't tell the difference" and claims that HFCS is "nutritionally the same as table sugar." Defendants have even pursued the more drastic approach of attempting to eliminate

HFCS from the lexicon.  Several now refer to it in advertising and pricing sheets as "corn sugar" and are seeking to obtain United States Food and Drug Administration ("FDA") approval to substitute "corn sugar" for "high fructose corn syrup" on ingredient labels.

4.    Seeking to co-opt the goodwill of "sugar" and even changing the HFCS name by calling it a kind of sugar to sidestep growing consumer sentiment is paradigmatically false and misleading advertising for several reasons.

5.    First, "corn sugar" is already the FDA-approved name of a distinct sweetener made from corn starch, and has been for decades.  Seeking to appropriate the name of an existing, natural and vastly different sweetener sends to the consuming public a literally false message about the nature of the product being advertised and sold, and misleads them in a manner that will cause confusion.

6.    Second, Defendants' re-branding efforts promoting HFCS as "natural"—despite the absence of any naturally occurring fructose in corn or corn starch and the fact that HFCS is a man-made product that did not even exist in commerce until the late 1960s—is also literally false and misleads consumers in a manner that will cause confusion.

7.    Third, Defendants' assertions that HFCS or "corn sugar" is nutritionally the same as the real sugar from cane and beet plants and handled in the same way by the body are also literally false and mislead consumers in a manner that will cause confusion.  Scientific studies demonstrate clear molecular differences between HFCS and sugar and clear differences in how the human body processes them.  Additionally, scientific studies demonstrate an increasingly likely link between consumption of HFCS and a variety of health problems, principally obesity, elevated cholesterol and triglycerides, diabetes but also extending to other metabolic disorders.

8.    Defendants' representations equating HFCS with real sugar—such as "sugar is sugar," "your body can't tell the difference" and "nutritionally the same as

table sugar"—misleads the consuming public in light of the emerging science showing otherwise and the resultant uncertainty (at best) as to the truth of Defendants' statements that HFCS is no different from sugar.

9.      Defendants' resort to such literally false and misleading statements harms consumers, harms the makers of real sugar and harms any dialogue based on the truth.  This lawsuit seeks to put an end to the deception.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over the subject matter presented by this Complaint because it includes a claim of false advertising under the Lanham Act, 15 U.S.C. §§1051, *et seq.*, including 15 U.S.C. §1121, which expressly provides that claims arising thereunder are subject to federal subject matter jurisdiction.  The Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338. The Court has subject matter jurisdiction over the state law claim because it arises from the same nucleus of operative facts underlying the Lanham Act claim, and 28 U.S.C. §1367 authorizes the Court to exercise supplemental jurisdiction over all other claims so related.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this district and because defendants are subject to personal jurisdiction in this District.

## PARTIES

### *Plaintiffs*

12.     Plaintiff C & H Sugar Company, Inc. ("C&H"), a sugar producer, refiner and distributor, is a corporation organized under the laws of the State of Delaware, having a principal place of business at 830 Loring Avenue, Crockett, CA 94525.

13.     Plaintiff Michigan Sugar Company ("Michigan Sugar"), also a sugar processor, producer and distributor, is a non-profit agricultural cooperative

1  corporation organized under the laws of the State of Michigan, having a principal

2  place of business located at 2600 South Euclid Avenue, Bay City, MI 48706.

3      14.    Plaintiff Western Sugar Cooperative ("Western Sugar"), also a sugar

4  processor, producer and a distributor, is a cooperative organized under the laws of

5  the State of Colorado, having a principal place of business at 7555 East Hampden

6  Avenue, Suite 600, Denver, CO 80231.

7                                    *Defendants*

8      15.    Defendant The Corn Refiners Association, Inc. ("CRA") is a Delaware

9  corporation with a principal place of business located at 1701 Pennsylvania Ave.

10  NW, Suite 950, Washington, DC 20006.

11      16.    Defendant Archer-Daniels-Midland Company ("ADM") is a Delaware

12  corporation with a principal place of business located at 4666 Faries Parkway, Box

13  1470, Decatur, IL 62525.  ADM is a CRA member, and two of its employees or

14  agents are members of CRA's board of directors.

15      17.    Defendant Cargill, Inc. ("Cargill") is a Delaware corporation with a

16  principal place of business located at PO Box 9300, Minneapolis, MN 55440-9300.

17  Cargill is a CRA member, and two of its employees or agents are members of

18  CRA's board of directors.

19      18.    Defendant Corn Products International, Inc. ("Corn Products") is a

20  Delaware corporation with a principal place of business located at 5 Westbrook

21  Corporate Center, Westchester, IL 60154.  Corn Products is a CRA member, and

22  two of its employees or agents are members of CRA's board of directors.

23      19.    Defendant Penford Products Co. ("Penford") is a Delaware corporation

24  with a principal place of business located at 1001 First St. SW, Cedar Rapids, IA

25  52404.  Penford is a CRA member, and two of its employees or agents are members

26  of CRA's board of directors.

27      20.    Defendant Roquette America, Inc. ("Roquette") is a Delaware

28  corporation with a principal place of business located at 1417 Exchange St.,

Keokuk, IA 52632.  Roquette is a CRA member, and two of its employees or agents are members of CRA's board of directors.

21.    Defendant Tate & Lyle Ingredients Americas, Inc. ("Tate & Lyle") is a Delaware corporation with a principal place of business located at 2200 East Eldorado St., Decatur, IL 62525.  Tate & Lyle is a CRA member, and two of its employees or agents are members of CRA's board of directors.

## FACTUAL BACKGROUND

### *What Is High-Fructose Corn Syrup?*

22.    High-fructose corn syrup, or HFCS, is a nearly ubiquitous commercial sweetener used in a variety of products, with soft drinks among the best known. Despite the presence of "corn" in the product's full name, HFCS is not a natural product—one cannot simply extract it from an ear of corn.  Rather, corn yields corn starch (sometimes called corn flour), which is commonly used in kitchens as a thickening agent.  Corn starch can be turned into corn syrup, which, as its name implies, is a viscous liquid that is about 100% dextrose, a type of glucose.  Corn starch can also be turned into "corn sugar," which the FDA identifies as a foodstuff "produced by the complete hydrolysis of corn starch with safe and suitable acids or enzymes, followed by refinement and crystallization."[1]  Like the substance from which it is made, corn sugar is almost 100% dextrose.

23.    The only sweetener that may be labeled simply as "sugar" is the natural sucrose found in sugar cane and sugar beet plants.[2]  Sucrose is an organic disaccharide consisting of equal parts glucose and fructose joined by a glycosidic bond.  Humans have used sugar for millennia to sweeten food and drink.

24.    HFCS is a man-made product.  It has been commercially available only since the late 1960s, when Japanese researchers discovered a method of

---

[1] 21 C.F.R. 184.1857.
[2] 21 C.F.R. 184.1854.

1   enzymatically transforming some of the glucose in corn syrup into fructose, which

2   does not naturally occur in the plant.  The glucose and fructose that primarily

3   comprise HFCS are monosaccharides, lacking the covalent molecular bond found in

4   the organic sucrose molecule.  Free fructose is highly soluble in water and makes

5   bread crusts browner, cookies softer and everything sweeter.[3]  As a result, over the

6   past 40 years HFCS has rapidly become a staple in food and beverage production,

7   particularly in the United States.  That popularity has been fueled in part by heavy

8   subsidies to the American corn industry that help make HFCS cheaper than sugar.

9   ***The Rise of HFCS Mirrors the Rise of the Obesity Epidemic***

10   25.    At least as early as 2003, the United States Surgeon General, testifying

11   before a House subcommittee, warned of "a health crisis affecting every state,

12   every city, every community, and every school across our great nation.  [¶]  The

13   crisis is obesity.  It's the fastest-growing cause of disease and death in America."[4]

14   26.    The obesity epidemic in the United States has received considerable

15   attention over the past few years—with good reason.  In 1970, about 15 percent of

16   the United States population met the definition for obesity.  Since 1970—about the

17   same time that the commercial use of HFCS began its rapid ascent—obesity rates

18   have also skyrocketed, as shown in the below chart.

19

20

21

22   

23

24

25

26

27   [3] E. Neilson, *The Fructose Nation*, 18 J. Am. Soc. Nephrology 2619 (2007) ("Neilson").

28   [4] http://www.surgeongeneral.gov/news/testimony/obesity07162003.htm.

SQUIRE, SANDERS &
DEMPSEY (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA  90071

- 6 -

COMPLAINT

*Overweight and Obesity Statistics*, U.S. Dept. Health & Human Servs., Nat'l Insts. Health (Feb. 2010) (http://win.niddk.nih.gov/publications/PDFs/stat904z.pdf). From 1980 to 2002 alone, obesity rates doubled; about one-third of the adult population was deemed obese as of 2006.[5]

27.     From 1970 to 1990, meanwhile, consumption of HFCS increased over 1000%, "far exceeding the changes in intake of any other food or food group. HFCS now represents > 40% of caloric sweeteners added to foods and beverages and [as of 2004 was] the sole caloric sweetener in soft drinks in the United States."[6]

28.     The existence of an association between the obesity epidemic and the meteoric rise in HFCS consumption has increasingly been the focus of attention by medical, health and food science researchers and by consumers.  In 2004, a landmark scientific report articulated the association in stark terms:

> The increased use of HFCS in the United States mirrors the rapid increase in obesity.  The digestion, absorption, and metabolism of fructose differ from those of glucose. . . .  Hepatic metabolism of fructose favors de novo lipogenesis. In addition, unlike glucose, fructose does not stimulate insulin secretion or enhance leptin production. Because insulin and leptin act as key afferent signals in the regulation of food intake and body weight, this suggests that dietary fructose may contribute to increased energy intake and weight gain.  Furthermore, calorically sweetened beverages may enhance caloric overconsumption.  Thus, the increase in consumption of

---

[5] C. Ogden, et al., Prevalence Of Overweight And Obesity In The United States, 1999–2004, 295:13 J. Am. Med. Ass'n 1549–55 (2006).

[6] G. Bray, et al., Consumption Of High-Fructose Corn Syrup In Beverages May Play A Role In The Epidemic Of Obesity, 79 Am. J. Clinical Nutrition 537 (2004) ("Bray").

SQUIRE, SANDERS &
DEMPSEY (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA  90071

COMPLAINT

HFCS has a temporal relation to the epidemic of obesity, and the overconsumption of HFCS in calorically sweetened beverages may play a role in the epidemic of obesity.[7]

29.   The precise role of HFCS in the obesity epidemic, as well as its contribution to a variety of health problems, is still the subject of scientific debate. Nevertheless, numerous researchers have identified as part of the likely problem the added fructose in the human diet, estimated to have "increased nearly 30% between 1970 and 2000."[8]   It is noted that "[f]ructose is metabolized differently than glucose," and as a result can lead to insulin resistance (a precursor to diabetes), increased hypertension, and accelerated endothelial dysfunction, which can aggravate heart disease.   "What we end up with is a familiar caloric additive provoking a new spate of metabolic dysfunction."[9]

30.   Although some have sought to spread the blame to reach sugar as well as HFCS, the results of a Princeton University study published in 2010 provides evidence that sucrose and HFCS have different metabolic effects.   Researchers observed that rats fed HFCS-55 (the kind commonly used in sweetened beverages) gained "significantly more body weight" than those fed sucrose—despite each control group consuming the same calories.   "This increase in body weight with HFCS was accompanied by an increase in adipose fat, notably in the abdominal region, and elevated circulating triglyceride levels.   Translated to humans, these results suggest that excessive consumption of HFCS may contribute to the incidence of obesity."[10]

---

[7] *Id.*

[8] *Id.*

[9] Neilson at 2619.

[10] M. Bocarsly, et al., High-Fructose Corn Syrup Causes Characteristics Of Obesity In Rats: Increased Body Weight, Body Fat And Triglyceride Levels, Pharmacol. Biochem. Behav. (2010) (the "Princeton study").

31.     Observing that "HFCS is different than sucrose in many ways," the Princeton study identified several important differences between the two sweeteners that may account for the study's results and conclusion recited above.  Among other noted differences:

- The fructose content of HFCS-55 is slightly higher than in sucrose;[11]
- Because fructose is absorbed further down the intestine than glucose, much of its metabolism occurs in the liver, where it is converted to a precursor to the backbone of the triglyceride molecule;
- The free fructose in HFCS is metabolically broken down before it reaches the rate-limiting enzyme required to cleave the disaccharide sucrose, resulting in increases in glycerol and fatty acids that are absorbed by adipose tissue; and
- HFCS bypasses the insulin-driven satiety system, suppressing "the degree of satiety that would normally ensue with a meal of glucose or sucrose, and this could contribute to increased body weight."[12]

32.     The Princeton study is not alone in observing these distinctions between HFCS and sucrose; other researchers have observed and published scholarly articles about such differences.  Indeed, even those researchers who have published testing suggesting alternative conclusions have readily admitted that the comparative analysis of HFCS and sucrose (at a minimum) remains the subject of debate and further analysis.

---

[11] An even more recent publication by researchers from the University of Southern California demonstrated that tested beverages sweetened with HFCS had a mean fructose content higher than 55%, with several major brands apparently produced with HFCS that is 65% fructose. *See* Ventura, et al., Sugar Content of Popular Sweetened Beverages Based on Objective Laboratory Analysis: Focus on Fructose Content, Obesity J. (Oct. 2010).

[12] Princeton study at 5.

*The HFCS Backlash Causes Sales To Drop*

33.    As the sampling of scientific literature shown above demonstrates, HFCS has become the focus of a maelstrom of events and serious research requiring a reassessment of its use:  the obesity epidemic's rise and concurrent rise in HFCS consumption; scientific research pointing to HFCS's likely role in obesity and other health problems; and an overall consumer preference for natural, as opposed to man-made, foodstuffs.

34.    Consumer concerns regarding the presence of HFCS in food and drinks is palpable.  For example, market research firm The NPD Group, Inc., in a 2008 survey of consumer food safety concerns, reported that 58% of those surveyed listed HFCS as a food safety concern—just under the level of concern about mad cow disease (65%) and ahead of consumer concern over the use of bovine growth hormone in milk-producing cows (54%).[13]

35.    Growing consumer concern about and reassessment of HFCS has already led a growing number of food and beverage producers to replace it with sugar.  For example, on May 17, 2010, www.msnbc.com reported:

> ConAgra Foods Inc. has removed high fructose corn syrup from its Hunt's brand ketchup.  Shoppers have been shying away from high-fructose corn syrup due to health concerns, and it was consumer demand that drove the changes, said Hunt's brand manager Ryan Toreson.  Hunt's is the latest brand to make the shift.  PepsiCo Inc. removed all high-fructose corn syrup from sports drink Gatorade and replaced it with cane sugar.[14]

---

[13] http://www.npd.com/press/releases/press_090330.html.

[14] http://www.msnbc.msn.com/id/37189171/ns/business-consumer_news/.

SQUIRE, SANDERS &
DEMPSEY (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA  90071

- 10 -

COMPLAINT

36.     Food and beverage producers switching from HFCS to sugar are doing so with consumer preferences and concerns in mind, as shown by the promotion of "real sugar" and/or the absence of HFCS in products, as the examples here show.

  

37.     The growing concern over HFCS has thus led to its decreased sales. Since the United States Surgeon General's testimony to Congress in 2003 warning of the rising obesity epidemic, sales of HFCS have declined 11%.[15]

### The CRA's $50 Million Campaign To Remake HFCS Into "Corn Sugar"

38.     Evidently alarmed by the growing vilification of HFCS and resulting drop in sales, HFCS producers—led by the CRA, acting as the other Defendants' agent— attempted to turn consumer sentiment around beginning in June 2008.  According to the New York Times, the CRA, working with its ad agency DDB and a team at Ogilvy Public Relations, had by May 2010, already "plowed more than $30 million over the last two years



into an ad campaign called 'Sweet Surprise' that highlights what it says are vague and unsubstantiated opinions."[16]

---

[15] UDSA Economic Research Service, Corn Sweetener Supply, Use, and Trade, Table 30: U.S. High Fructose Corn Syrup (HFCS) Supply and Use, by Calendar Year.

[16] http://www.nytimes.com/2010/05/02/business/02syrup.html?ref=corn&pagewanted=all.

39.     The CRA's "Sweet Surprise" campaign features a website dedicated to the re-branding effort (www.sweetsurprise.com), Internet banner advertising, exhibitions at professional organizations, TV commercials and print ads, such as the one on the preceding page.  The campaign attempts to recast HFCS as a natural product, nutritionally identical and directly comparable to sugar.  As the above ad claims, HFCS is "natural, nutritionally the same as table sugar and has the same number of calories."

40.     With HFCS sales continuing to slump, however, the CRA and its members re-doubled their re-branding effort in the second half of 2010.  While continuing to label HFCS as "natural" and "the same as sugar"—despite not being found in nature and despite the clear molecular differences between the two—CRA and its members sought to change consumers' attitudes by obtaining FDA approval to change the product's name so that consumers will no longer see "high fructose corn syrup" listed as an ingredient on food and drink labels.  Rather, consumers would see the name of a different sweetener:  "corn sugar."

41.     Impatient for this approval, the CRA and several of the Defendants have already jumped the gun, calling HFCS "corn sugar" in advertising and in pricing sheets for their food ingredient customers.  On information and belief, the CRA and other Defendants have thereby added to their investment to rebrand HFCS so that their total expenditure thus far is equal to or greater than $50 million.

42.     Corn sugar and HFCS are not the same.  The FDA and food industry have long recognized corn sugar as dextrose in crystalline form, derived from corn starch.  HFCS, on the other hand, is a processed syrup mixture created by enzymatically converting the naturally occurring dextrose into varying amounts of fructose, the percentage of which can be controlled according to the preferred industrial use (e.g., HFCS-42, HFCS-55 and HFCS-90, containing 42%, 55% and 90% fructose, respectively).  HFCS likewise has long been known by its name in the food industry.  Indeed, the corn-refining industry itself proposed the name "high

SQUIRE, SANDERS &
DEMPSEY (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA  90071

COMPLAINT

fructose corn syrup" to the FDA in a 1977 petition.  The FDA approved that label in 1983, and reaffirmed it in 1996 as part of the FDA's comprehensive review of sugar and syrup sweeteners.[17]

43.     Despite having proposed the FDA-approved label for HFCS over thirty years ago, Defendants, acting through the CRA, submitted a "citizen's petition" to the FDA on September 14, 2010 to change the name of HFCS.  Acknowledging that FDA regulations provide that "corn sugar" is the approved label for a real and distinct corn sugar product, Defendants' petition asks that the FDA radically change that agency's long-standing labeling system for sugars and syrups.  In particular, Defendants want the FDA to allow them to appropriate the name of the authentic corn sugar product so that they can re-label HFCS as "corn sugar."  Defendants did not make their request to more closely associate their product with corn.  Rather, Defendants' request seeks to appropriate the goodwill of natural sugar.

44.     Defendants' pending FDA petition received considerable media scrutiny when submitted,[18] and the FDA has received a large volume of public comments regarding the petition—approximately 10-1 against the change.

45.     Defendants, however, were not content to proceed through FDA or other formal channels to obtain approval to use their desired "corn sugar" label. Rather, they simply appropriated the name at the same time they submitted their petition to the FDA and began using it in advertising and other documentation.  In other words, despite recognizing the need for FDA approval to re-brand HFCS, Defendants simply started using "corn sugar" without waiting for such approval.

---

[17] 48 Fed. Reg. 5,716 (Feb. 8, 1983); 61 Fed. Reg. 43,447 (Aug. 23, 1996).

[18] See for example *A New Name for Corn Syrup*, N.Y. Times (Sept. 14, 2010), http://well.blogs.nytimes.com/2010/09/14/a-new-name-for-high-fructose-corn-syrup/#; *Corn Refiners Left with Bitter Taste Over Sugar*, Financial Times (Sept. 17, 2010), http://www.ft.com/cms/s/0/fcf19a16-c280-11df-956e-00144feab49a.html#axzz1JvvLCdly; *"Corn Sugar" Makers Hope You'll Buy the New Name*, NPR (Sept. 19, 2010), http://www.npr.org/templates/story/story.php?storyId=129971532.

46.     CRA admitted as much in its recent "reply to comments" letter submitted to the FDA on April 4, 2011.  The CRA states that

> When CRA filed its citizen petition, it conducted a nation-wide high profile campaign in connection with the petition.  This campaign has garnered more than 1.6 billion impressions in major broadcast and print media. *CRA is also continuously running national, educational television commercials that equate HFCS and corn sugar. These commercials have earned in excess of 2 billion impressions since September 2010.*  (Emphasis added.)

47.     The changed focus of Defendants' re-branding effort is further evident from the promotional statements on the CRA's www.corn.org and www.sweetsurprise.com websites (with emphases added):

- *"It is important that consumers recognize added sugars in the diet. Despite its confusing name, <u>high fructose corn syrup</u> is simply <u>corn sugar</u> - or an added sugar in the diet."*
- *"High fructose corn syrup is simply a kind of corn sugar. It has the same number of calories as sugar and is handled similarly by the body."*
- *"High fructose corn syrup is simply a kind of corn sugar that is handled by your body like sugar or honey."*
- *"Whether it's corn sugar or cane sugar, your body can't tell the difference. Sugar is sugar."*

48.     At about the same time that Defendants submitted their petition to the FDA, ADM, Cargill, Corn Products and Tate & Lyle also began using "corn sugar" as a synonym for HFCS in their marketing materials, including their price lists.

# FIRST CLAIM FOR RELIEF

## (VIOLATIONS OF SECTION 43(A) OF THE LANHAM ACT – FALSE ADVERTISING)

49.     Plaintiffs reallege and incorporate by this reference each and every allegation contained in paragraphs 1 through 48 above as if set forth in full here.

50.     Defendants have made and continue to make literally false and/or misleading representations of fact in their advertising and/or promotion in commerce regarding HFCS.  As detailed above, Defendants' false and/or misleading representations of fact generally fall into one of the following categories.

51.     The first category of Defendants' false and/or misleading representations of fact stems from their unilateral appropriation of the label "corn sugar"—"in excess of 2 billion impressions since September 2010"—when that label has long been used for a recognized form of sugar in crystalline form with no fructose.  Defendants have done so in defiance of the FDA's regulatory scheme for labeling for sweeteners and syrups.  In particular, Defendants' use of the label "corn sugar" falsely suggests to consumers that HFCS is or is similar to the actual corn sugar product, when in fact the two products are wholly different.

52.     The second category is comprised of Defendants' false and/or misleading representations of fact that HFCS is a "natural" product.  These representations falsely assert that HFCS is found in nature, when in fact it is a man-made product that did not exist for commercial consumption before the late 1960s.

53.     The third category is comprised of Defendants' false and/or misleading representations of fact that HFCS is nutritionally and metabolically the same as sugar, i.e., "sugar is sugar" and "your body can't tell the difference."  These representations are literally false or, at best, reckless and misleading in light of the irrefutable molecular differences between the free-floating monosaccharides fructose and glucose in HFCS and the bonded disaccharide sucrose, as well as the scientific studies and analyses, such as those published by Bray, Neilson and the

SQUIRE, SANDERS &
DEMPSEY (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA  90071

COMPLAINT

1   Princeton study, to name just a few, which demonstrate a likely causal link between

2   HFCS consumption and obesity, hyperlipidemia, hypertension and other health

3   problems that is not equally presented by the consumption of sucrose.

4       54.    Moreover, the false and/or misleading nature of these representations

5   are demonstrated by past statements of the CRA and some of its members

6   themselves—when it suited them to distinguish HFCS from sugar.  For example,

7   the CRA trumpeted (at a hearing in an antidumping investigation conducted by the

8   government of the United Mexican States in the late 1990s) the fundamental

9   physical, chemical and molecular differences between HFCS and sugar.

10       55.    Defendants' false and/or misleading representations of fact violate

11   Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)).  Defendants have made and

12   are making these false and/or misleading representations of fact in interstate

13   commercial advertising and/or promotion—in this district and elsewhere—and the

14   effects of Defendants' acts throughout the United States are intended to and do fall

15   upon Defendants in this district and elsewhere.

16       56.    As a result of the foregoing, Plaintiffs have been damaged in an

17   amount that will be ascertained according to proof.  Plaintiffs' damages include

18   actual damages in the form of price erosion and lost profits stemming from

19   artificially reduced demand caused by the Defendants' false and misleading

20   advertising (whether or not consumer demand has been retained by or driven to

21   HFCS or other competitive sweeteners); the disgorgement of any profits that

22   Defendants unfairly realized, retained or gained through their unlawful conduct; the

23   monetary expenditures that Defendants have made on their false and misleading

24   rebranding campaigns and that Plaintiffs have made and will be required to make

25   on corrective advertising and education to inform the consuming public of the truth;

26   and the costs of this action.

27       57.    Because Defendants made and continue to make their false and/or

28   misleading representations of fact about HFCS in intentional disregard of their

falsity and/or misleading nature, Plaintiffs are entitled to an award of enhanced damages under Section 35(a) of the Lanham Act (15 U.S.C. §1117(a)).  Moreover, this is an exceptional case for which the Court should award Plaintiffs' their reasonable attorneys' fees.

58.   Defendants' activities have caused and will cause irreparable harm to Plaintiffs for which they have no adequate remedy at law.  In particular, Defendants' past and continuing false and/or misleading representations of fact, as alleged above, are causing irreparable harm, continuing to the foreseeable future, and are a serious and unmitigated hardship.  Plaintiffs will continue to suffer irreparable injury to their goodwill, rights and businesses unless and until Defendants and any others in active concert with them are enjoined from continuing their wrongful acts.

### SECOND CLAIM FOR RELIEF

**(UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200)**

59.   Plaintiffs reallege and incorporate by this reference each and every allegation contained in paragraphs 1 through 58 above as if set forth in full here.

60.   California's unfair competition law (the "UCL"), codified in California Business & Professions Code §§17200, *et seq.*, in pertinent part prohibits unfair competition arising from any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.  Defendants' activities alleged above constitute (i) unlawful business acts and/or practices and (ii) unfair, deceptive, untrue and/or misleading advertising under the UCL.

61.   Defendants' violation of Lanham Act section 43(a) (15 U.S.C. §1125(a)), as set forth in Plaintiffs' First Claim for Relief, constitutes an unlawful business act or practice under the UCL.  *See Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (observing the Ninth Circuit's consistent holding that an action for unfair competition under the UCL is "substantially congruent" to a claim under the Lanham Act) (citations omitted); *Kelley Blue Book v. Car-Smarts, Inc.*,

1  802 F. Supp. 288-89 (C.D. Cal. 1992) (holding that when a plaintiff establishes a

2  Lanham Act violation based on a likelihood of confusion, an independent UCL

3  claim is also established) (citations omitted).

4       62.    As also alleged above, Defendants have made false and/or misleading

5  representations of fact about HFCS in at least print, Internet and television

6  advertising.  In so doing, Defendants have violated the UCL's prohibition against

7  unfair, deceptive, untrue and/or misleading advertising, independent of Defendants'

8  Lanham Act violations.

9       63.    Defendants' activities have caused and will cause irreparable harm to

10 Plaintiffs for which they have no adequate remedy at law.  In particular,

11 Defendants' past and continuing false and/or misleading representations of fact, as

12 alleged above, are causing irreparable harm, continuing to the foreseeable future,

13 and are a serious and unmitigated hardship.  Plaintiffs will continue to suffer

14 irreparable injury to their goodwill, rights and businesses unless and until

15 Defendants and any others in active concert with them are enjoined from continuing

16 their wrongful acts.

17                              **<u>PRAYER</u>**

18       WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of

19 them, as follows:

20       a.     That the Court enjoin Defendants from continuing to make false and/or

21 misleading representations of fact about HFCS;

22       b.     That Defendants pay Plaintiffs damages for the harms they have

23 suffered and continue to suffer as a result of Defendants' false and/or misleading

24 advertising, promotion and/or marketing, reflecting a disgorgement of illicit gains

25 from such advertising, promotion and/or marketing, and providing a corrective

26 advertising award as permitted by law;

27       c.     That this Court award Plaintiffs three times any damages award

28 pursuant to 15 U.S.C. §1117;

1        d.     That this case be found to be exceptional within the meaning of 15

2    U.S.C. §1117;

3        e.     That the Court award Plaintiffs their costs and expenses of suit,

4    including all reasonable attorneys' fees they have incurred and will incur in this

5    matter;

6        f.     That the Court award Plaintiffs prejudgment and post-judgment

7    interest; and

8        g.     That the Court grant Plaintiffs such other and further relief as the

9    Court deems just and proper.

10   April 22, 2011                  Respectfully submitted,

11                                   SQUIRE, SANDERS & DEMPSEY (US) LLP

12

13                                   By: */s/ Adam R. Fox*
                                    Adam R. Fox

14                                       David S. Elkins

15                                 Attorneys for Plaintiffs WESTERN SUGAR
                              COOPERATIVE, MICHIGAN SUGAR CO., and C & H

16                                 SUGAR CO., INC.

17   *Additional Counsel for Plaintiffs:*

18   James P. Murphy (*Pro Hac Vice* forthcoming)
    James.Murphy@ssd.com

19   John A. Burlingame (*Pro Hac Vice* forthcoming)
    John.Burlingame@ssd.com

20   SQUIRE, SANDERS & DEMPSEY (US) LLP
    1201 Pennsylvania Ave., N.W., Ste. 500

21   Washington, DC  20004
    Telephone:  +1.202.626.6793

22   Facsimile:  +1.202.626.6780

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury as to all issues so triable.

April 22, 2011                          Respectfully submitted,

                                        SQUIRE, SANDERS & DEMPSEY (US) LLP

                                        By:/s/ *Adam R. Fox*
                                                Adam R. Fox
                                                David S. Elkins

                                        Attorneys for Plaintiffs WESTERN SUGAR
                                        COOPERATIVE, MICHIGAN SUGAR CO., and C & H
                                        SUGAR CO., INC.

*Additional Counsel for Plaintiffs:*

James P. Murphy (*Pro Hac Vice* forthcoming)
James.Murphy@ssd.com
John A. Burlingame (*Pro Hac Vice* forthcoming)
John.Burlingame@ssd.com
SQUIRE, SANDERS & DEMPSEY (US) LLP
1201 Pennsylvania Ave., N.W., Ste. 500
Washington, DC  20004
Telephone:  +1.202.626.6793
Facsimile:  +1.202.626.6780