UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN SUGAR COOPERATIVE, ET AL., <br><br> PLAINTIFFS, <br><br> V. <br><br> ARCHER-DANIELS-MIDLAND CO., ET AL., <br><br> DEFENDANTS. | No. 11-CV-3473 CBM(MANx) <br><br> ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS |

The matter before the Court is Defendants' Motion to Dismiss and Request for Judicial Notice.[1] [Docs. No. 24, 25.]

**FACTUAL AND PROCEDURAL BACKGROUND**

This is a dispute between producers of table sugar and those of high fructose corn syrup ("HFCS" or "corn syrup.") Plaintiffs are sugar producers and two trade associations comprised of companies, each of whom is a grower and/or producer and/or refiner of sugar in the United States.[2] (First Amended Complaint

---

[1] Plaintiffs filed objections in opposition to Defendants' motion. Plaintiffs' first objection, directed at Defendants' website found at www.sweetsurprise.com, is overruled, as Plaintiffs refer to the website in their complaint and therefore the site is properly incorporated. Plaintiffs' second and third objections, directed at references made to a medical report and to whether table sugar is "natural," are overruled. The Court finds that these references are Defendants' arguments, not evidence before the Court, and will only be considered as arguments.

[2] Plaintiffs are The Sugar Association, the American Sugar Cane League of the U.S.A., Inc., Minn-Dak Farmers Cooperative, Imperial Sugar Corporation, The Amalgated Sugar Company LLC, C & H Sugar Company, Inc., Michigan Sugar Company, Western Sugar Cooperative, United States Sugar Corporation, and American Sugar Refining, Inc.

("FAC") at ¶¶ 12-21) [Doc. No. 15.] Defendants are a national trade association, made up of business enterprises in the corn refining industry, and members of the trade organization.³ (*Id.* at ¶¶ 22-28.)

The First Amended Complaint ("FAC") alleges that in 2008, Defendant Corn Refiners Association ("CRA"), a trade association of corn refiners, began a campaign whereby the CRA bought television commercials, print advertisements, and other media to provide the public with information regarding High Fructose Corn Syrup ("HFCS" or "corn syrup"). (*Id.* at ¶¶ 45-48.) The campaign includes a website found at www.sweetsurprise.com. (*Id.*) The campaign employs the use of phrases such as "HFCS is corn sugar," "HFCS is natural," and "sugar is sugar." (*Id.*)

Plaintiffs also allege that HFCS is a "man-made product" that does not "naturally occur," making it different from table sugar, which they allege is extracted from cane and beets. (FAC at ¶¶ 29-31.) Plaintiffs also allege that HCFS is linked to the obesity epidemic and its effect on the human body differs from that of table sugar. (*Id.* at ¶¶32-39.) Finally, the FAC alleges that consumers and food and beverage providers are conscious of the difference between sugar and HFCS and are making business decisions based on that difference. (*Id.* at ¶¶ 42-44.)

The First Amended Complaint also alleges that in September 2010, Defendant CRA filed a petition with the FDA seeking to change the name of HFCS to "corn sugar." Pursuant to FDA regulations, that petition, called a "Citizen Petition," and all related submissions are filed under the Docket No. FDA-2010-P-049. (*Id.* at ¶¶ 50-51.)

Plaintiffs' suit against CRA and its members alleges that the campaign contains false representations about High Fructose Corn Syrup that constitute false

---

³ Defendants are the Corn Refiners Association, Archer-Daniels-Midland Company, Cargill, Inc., Corn products International, Inc., Penford products Co., Roquette America, Inc., and Tate & Lyle Ingredients Americas, Inc.

advertising under the Lanham Act and a violation of the California's Unfair Business Practices Act. 15 U.S.C. § 1125(a); CAL. BUS. & PROF. CODE §§ 17200 *et seq*. Plaintiffs allege that Defendants violates these laws by making claims that HFCS is "natural" and should be referred to as "corn sugar" and claims that CRA has made that HFCS is nutritionally and metabolically equivalent to other sugars. (FAC at ¶ 5, 49, 59, 60, 36, 39, 61.)

On August 22, 2011, Defendants filed the instant motion to dismiss, arguing that Plaintiffs' complaint failed to state a claim upon which relief can be granted. Defendants also submitted a request for judicial notice of the Citizen Petition documents submitted to the FDA and a court opinion in a separate litigation. The motion has been fully briefed and oral argument was heard on September 13, 2011.

*Request for Judicial Notice*

**STANDARD OF LAW**

Federal Rule of Evidence 201 establishes guidelines for judicially noticing adjudicative facts. FED. R. EVID. 201(a). Under this rule, a court may judicially notice an adjudicative fact if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Furthermore, a court is required to take judicial notice of a fact "if requested by a party and supplied with the necessary information." FED. R. EVID. 201(d).

Pursuant to Fed. R. Evid. 201, a district court may take judicial notice of documents filed in any federal or state court. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (federal appellate court judicially noticed state appellate opinion and briefs and determined that waiver issue had not actually been litigated or necessarily decided). Accordingly, courts routinely hold that judicial notice may be taken of court filings in related litigation involving the same parties. *See*

*Biomedical Patent Mgmt. Corp. v. California Dep't of Health Servs.*, 505 F.3d 1328, 1331 n.1 (Fed. Cir. 2007) (holding district court did not abuse its discretion by taking judicial notice of filings from prior litigation between the same parties); *see also* CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FED. PRACTICE AND PROCEDURE § 5106.4 ("Writers generally agree that courts can take judicial notice of court records under Rule 201(b)(2)").  Courts may also take judicial notice of "matters of public record, including duly recorded documents . . . ." *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1138 (E.D. Cal. 2009).

However, while a court may take judicial notice that a party made a statement in a document filed with the court, it should not ordinarily take notice of the truth of such statement.  *See e.g.*, *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."). Thus, at the motion to dismiss stage, a court may take judicial notice of the existence of matters of public record, but not "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

## DISCUSSION

Defendants ask the Court to take judicial notice of all submissions to the United States Food and Drug Administration ("FDA") under Docket No. FDA-2010-P-049.  The submissions include the following documents which are cited in the Defendants' Motion to Dismiss:

(1)   CRA Citizen petition to FDA, September 14, 2010
(2)   The Sugar Association Comments to FDA, February 24, 2011
(3)   Shape Up America! Comments to FDA, February 7, 2011
(4)   National Consumers League Comments to FDA, February 10, 2011
(5)   CRA Supplemental Comments to FDA, April 4, 2011

 (6) CRA Supplemental Comments to FDA, June 30, 2011

 (7) A true and correct copy of the opinion in *Robert Stillwell v. Radioshack Corp.*, No. 07-cv-00607-JM (CAB) (S.D. Cal. Dec. 18, 2007).

Defendants argue that the instant suit places at issue the Citizen Petition filed with the FDA, and therefore the submissions related to that Citizen Petition are relevant to this lawsuit. Plaintiffs oppose Defendants' request except as to Defendants' request to take judicial notice of the opinion in *Stillwell v. Radioshack*, and argue that the request seeks judicial notice of disputed facts contained within public records.

The Court finds that judicial notice is appropriate of the existence of a Citizen Petition before the FDA, along with the existence of the submissions to the FDA that accompany the citizen petition. The Court also finds it appropriate to take judicial notice of the existence of litigation and an opinion in *Stillwell v. Radioshack*. To the extent that the request seeks to judicially notice facts contained within the submissions or the Citizen Petition to the FDA, that request is denied because it seeks judicial notice of disputed facts stated in public records.

<u>Motion to Dismiss</u>

## STANDARD OF LAW

I. *Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal of a complaint can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). On a motion to dismiss for failure to state a claim, the court accepts as true all well-pleaded allegations of material fact, and construes them in light most favorable to non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555 (citations omitted).

Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint, the court may consider evidence on which the "complaint necessarily relies if: (1) the complaint refers to the document, (2) the document is central to the plaintiff's claim, and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation omitted). The court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

II.     *Rule 9(b)*

Pleading requirements are normally governed by Rule 8(a), which requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). However, a claim sounding in fraud is subject to a heightened pleading requirement set forth in Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Under this standard, the complaint's allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

**DISCUSSION**

I.     *Claims against CRA*

In order to state a claim for false advertising under the Lanham Act, 15

6

U.S.C. § 1125(a)(1)(B), a plaintiff must sufficiently allege that:

> 1) in advertisements, defendant made false statements of fact about its own or another's product; 2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; 3) such deception is material, in that it is likely to influence the purchasing decision; 4) defendant caused its falsely advertised goods to enter interstate commerce; and 5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public.

*Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, n.4 (9th Cir. 2002).

Defendant CRA argues Plaintiff has failed to properly plead allegations to establish multiple elements of a false advertising claim.[4] The Court considers each element in turn.

### A. Commercial Advertising

CRA argues that the statements it made were part of an "education campaign," as opposed to advertising subject to the Lanham Act. A statement constitutes commercial advertising or promotion under the Lanham Act if it is: (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods and services; and (4) the representations must be sufficiently related to the purchasing public to constitute "advertising" or "promotion." *Rice*, 330 F.3d at 1181 (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)). The statements "need not be made in a classic advertising campaign" and could constitute "more informal types of promotion," but they "must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry." *Id.* (quotation marks omitted).

CRA advances several arguments as to why its conduct is not "advertising" under the Lanham Act. First, CRA argues that its activity is not pure commercial

---

[4] The only element not challenged by Defendant CRA is whether it caused the "goods" at issue, the campaign regarding HCFS, to enter interstate commerce.

speech because it focuses on the role of corn syrup in health and not on proposing a commercial transaction.  Second, CRA argues that it, as a trade organization, does not compete with Plaintiffs and does not promote or sell any products or services.

Plaintiffs argue that speech used to promote a product is commercial speech, even when the speech is not targeted specifically at proposing a commercial transaction.  Plaintiffs argue that CRA's statements constitute "commercial speech" because the statements are admittedly advertising, refer to a specific product, and an economic motive exists.  *See Bolger v. Youngs Drugs Product Corp.*, 463 U.S. 60, 66-67 (1983).  Plaintiffs point to allegations in the operative complaint related to the commercial nature of CRA's statements.  (FAC at ¶¶ 3, 22.)

For purposes of this motion, the Court finds that CRA's statements constitute "commercial speech."  First, the fact that the statements relate to a public health issue does not insulate them from regulation under the Lanham Act. *See, e.g., PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111 (4th Cir. 2011).  Second, although CRA's statements do not explicitly say "buy" or "purchase" HFCS, it is clear that the purpose of CRA's statements is to promote HFCS to purchasers.  As a trade organization made up of corn refiners, an economic motive exists, and the statements refer specifically to high fructose corn syrup.[5]  The statements themselves also clearly are promoting corn syrup to food and beverage purchasers.  *See, e.g., Nat'l Comm'n on Egg Nutrition v. F.T.C.*, 570 F.2d 157, 163-64 (7th Cir. 1977) (holding that trade association was engaging in commercial speech although the statements at issue were more than "mere[ly]

---

[5] Defendant CRA also argues that it does not compete with Plaintiffs because it is a trade association and does not promote or sell any products or services because HFCS is not a "product" under the Lanham Act.  However, Plaintiffs' allegations, that the CRA represents the interests of corn refiners and seeks to promote HFCS, are sufficient to establish at this stage that Defendant CRA competes with Plaintiffs and promotes HCFS.  The Court finds that Defendnat CRA was engaging in commercial speech because it was advertising a specific product (HCFS) for an economic purpose – that is, the economic gain of the members of the CRA.

8

propos[ing] a particular commercial transaction").

The cases cited by CRA do not hold otherwise. In those cases, either the purpose of the speech was not commercial, or the statements were not made in advertisements. *See Rice*, 330 F.3d at 1181 (holding that statements made in and during a television show, not separately, were not a promotion or marketing of the show); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 2001) (holding that picture of celebrities included in a feature article also aimed at "humor" and "editorial comment" on actors and not in a traditional advertisement was not commercial speech); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) (statements made by a defendant who "function[ed] like [a] consumer protection group[]" were not commercial speech); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 907 (9th Cir. 2002) (use of trademark in a song that "lampoons the . . . image and comments humorously on . . . cultural values" was exempted from regulation under the non-commercial exemption). Although CRA disputes that the goal of the campaign is to sell goods, the Court must assume the allegations in the complaint to be true at the motion to dismiss stage. This factual dispute therefore cannot be resolved at this stage.

B. <u>Falsity</u>

Plaintiffs' suit challenges three general claims that CRA is making in its advertising campaign about HCFS. They are: (1) that HFCS is "natural"; (2) that "sugar is sugar" (referring to HCFS as sugar); and (3) that HFCS is "corn sugar." CRA argues that Plaintiffs have failed to sufficiently pled that any of these statements are false.

The Court finds that Plaintiffs have adequately pled that the statements used by CRA in its campaign are false. Plaintiffs allege that the statement by CRA that HFCS is natural is false because it is not "found in nature" and cannot simply be extracted from an ear or stalk of corn (FAC at ¶¶ 6, 29, 31, 60.) Defendants argue that this definition is not applied by the FDA, but cite no authority for the

9

proposition that the FDA can conclusively determine whether a particular product or substance is natural.

As to the statements equating HFCS with sugar ("sugar is sugar," "HFCS is nutritionally the same as table sugar," "your body can't tell the difference," and "HFCS is corn sugar"), Defendants argue that the statements are not literally false even though they admit that the chemical make up of HFCS is different than table sugar. Defendants argue that this difference is not qualitatively significant. The Court finds that resolution of that question is inappropriate at the motion to dismiss stage. Plaintiffs identify various allegations in the FAC relating to the difference between table sugar and HFCS.[6] (FAC at ¶¶ 29-31, 61, 36, 7, 39.) The Court finds these allegations sufficient to state a claim that the statements equating HFCS with sugar are false.

Finally, as to the statement that HFCS is "corn sugar," Plaintiffs allege that the statement is false because, along with the claims that HFCS is natural and equivalent to table sugar, Defendants use the statement to equate HFCS with table sugar. (*Id.* at ¶ 4-5, 29-31, 54, 59.) For the same reasons that the Court finds the allegations sufficient at this stage to state a claim that equating HFCS with sugar is false, the Court finds that Plaintiffs have stated a claim that the statement, HFCS is "corn sugar," is false.

C. Consumer Deception

Defendant CRA argues that Plaintiffs failed to state a claim because they failed to allege that consumers would be deceived. Plaintiffs counter that advertising is presumed deceptive if the falsity is deliberate. *Harper House v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989); *U-Haul Int'l Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040-41 (9th Cir. 1986). In order to allege deception, a plaintiff can allege that the defendant has expended "substantial funds

---

[6] Finally, the statement that HFCS is "corn sugar" is, as Plaintiffs indicate, best understood in the context of a broad advertising campaign.

in an effort to deceive consumers and influence their purchasing decisions." *U-Haul*, 793 F.2d at 1041. Plaintiffs argue that the presumption is raised by the FAC with allegations that Defendants have spent about $50 million on their advertising campaign. (FAC at ¶¶ 3, 22-28, 45-48.) The Court finds these allegations sufficient at this stage to establish deception.

### D. Materiality

Defendants argue that Plaintiffs failed to allege that any deception was material. Specifically, Defendants argue that food and beverage buyers are too sophisticated to be confused by any potential deception in advertising. Plaintiffs identify various allegations that they argue include materiality. (FAC at ¶¶ 40-45.) The allegations relate to consumer concerns regarding the presence of HFCS in food products and food and beverage producers switching from HFCS to sugar with consumer preferences in mind. The Court finds these allegations sufficient to establish materiality.

### E. Injury

Defendants finally argue that Plaintiffs have failed to allege any injury or likelihood of injury resulting from the advertising campaign. Plaintiffs allege that Defendants' $50 million campaign is aimed to "turn consumer sentiment around" on HFCS and that the result of the campaign injures Plaintiffs in the form of price erosion and lost profits. (FAC at ¶¶ 42, 45-54, 64-66.) The Court finds these allegations sufficient at this stage to establish an injury.[7]

## II. Claims against CRA members

The remaining Defendants, made up of corn refiners who are board members of the CRA (collectively, "Member Defendants"), argue that Plaintiffs have failed to state a claim against them. First, the Member Defendants argue that Plaintiffs have not met Rule 9's requirements to state a claim of fraud or

---

[7] Having found that Plaintiffs have adequately pled their false advertising claim under the Lanham Act against CRA, the Court also finds that Plaintiffs have adequately pled their state law claim against CRA.

misrepresentation with particularity. Second, they argue that the FAC lacks any allegations that they engaged in commercial advertising. Finally, Defendants argue that there are no allegations that any statements by the Defendants were material, as required by the Lanham Act. Defendant Roquette separately argues that it should be dismissed from the suit because there are no allegations stated against it at all.

Plaintiffs argue that they have sufficiently pled that CRA is an agent of the other defendants such that CRA's conduct should be imputed to the remaining Defendants. Plaintiffs allege that the CRA is a trade organization representing the interest of the corn refining industry, including the promotion of HFCS, that Defendants (other than the CRA) are CRA members, that the campaign led by CRA is financed by the members, and that HCFS use CRA as their agents to affect consumer sentiment on HFCS. (FAC at ¶¶ 3, 22-28; 45-48; 50, 52.)

An agency relationships exists when "both the principal and the agent [] assent to the principal's right to control the agent." *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010). Actual control is not necessary, as long as there is an agreement that the principal has the right to control the agent, an agency relationship exists. *Id.*, 608 F.3d at 506.

Plaintiffs' allegations as to the relationship between CRA and its members are conclusory and do not establish the authority to control that is required to show an agency relationship. Hence, the Court cannot impute CRA's actions to the remaining defendants. Furthermore, Plaintiffs' allegations do not establish a false advertising claim against the individual member companies, as the First Amended Complaint lacks any allegations of the Member Defendants engaging in any advertising.[8] The allegations against the Member Defendants are not sufficient to establish an agency relationship and hold the Member Defendants responsible for

---

[8] Because the false advertising claim under the Lanham Act fails as to the Member Defendants, the state law claim that incorporates the same elements likewise fails.

actions carried out by CRA.[9]

### III. Primary Jurisdiction

The primary jurisdiction doctrine allows a court to stay or dismiss an action without prejudice pending resolution by a government agency of an issue within its special competence. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Courts traditionally look at the following four factors, although the ultimate decision is within the court's discretion: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

Defendants argue that, if the Court finds that Plaintiffs' claim has been sufficiently stated, the Court should dismiss the case under the primary jurisdiction doctrine because of the pending Citizen Petition that CRA filed with the FDA in September 2010.[10] That petition seeks approval of "corn sugar" as a name for corn syrup on food labels. (FAC at ¶¶ 47, 50-53.) The petition also requested an amendment relating to the standard of identity for a product already labeled as "corn sugar," dextrose monohydrate. (*Id.*) Defendants argue that the Court should stay or dismiss this case to allow the FDA to first consider the issue of whether HFCS should be labeled as "corn sugar."

Plaintiffs argue that the supposed misappropriation of the term "corn sugar" is not the "centerpiece" of Plaintiffs' claims. Rather, Plaintiffs argue, their claim

---

[9] Defendants also argue that Plaintiffs have failed to comply with Rule 9(b), which requires that certain claims be pled with specificity. The Court notes that courts are divided on this issue. *Compare John P. Villano, Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997) ("a claim of false advertising . . . falls outside the ambit of rule 9(b)") with *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (applying Rule 9(b) to a false advertising claim that the court found was "grounded in fraud"). In this case, assuming that Rule 9(b) applies to false advertising claims, the Court finds that Plaintiffs have met their burden as to Defendant CRA.

[10] The Citizen Petition and associated documents can be found at www.regulations.gov under the docket number FDA-2010-P-049.

13

is based on the totality of Defendants' advertising, which is not within the purview of the FDA's authority. Plaintiffs also argue that some of the pertinent allegations in the FAC, including the statement that HFCS is "natural" or "equivalent to real sugar" is not even at issue in the Defendants' Citizen Petition before the FDA. Lastly, Plaintiffs argue that if any administrative agency were to have primary jurisdiction over the issues raised in this case, it would be the Federal Trade Commission ("FTC"), which regulates advertising and has no pending proceeding involving the claims presented in this case.

The Court finds that the primary jurisdiction doctrine is inapplicable in a case such as this one, where a plaintiff challenges an advertising campaign. Defendants have not pointed to a single case where a case challenging an advertising campaign has been stayed under the doctrine. Even more importantly, resolution of the Citizen Petition before the FDA would not resolve the issues raised by Plaintiffs' suit. The issue of whether HFCS is just like table sugar has not been placed by Congress within the jurisdiction of the FDA. Furthermore, the issues presented here, revolving around allegations of falsity in advertising, do not call into question the FDA's expertise.

## CONCLUSION

For the reasons provided above, Defendants' Motion to Dismiss is DENIED as to Defendant CRA and GRANTED as to the Member Defendants, with leave to amend. If an amended complaint is to be filed, it must be filed no later than November 18, 2011.

**IT IS SO ORDERED.**

DATED: October 21, 2011

By _____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE