UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN SUGAR COOPERATIVE, ET AL.,<br><br>PLAINTIFFS,<br><br>V.<br><br>ARCHER-DANIELS-MIDLAND CO., ET AL.,<br><br>DEFENDANTS. | No. 11-CV-3473 CBM(MANx)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STRIKE |

The matter before the Court is Defendant CRA's Motion to Strike Plaintiffs' State Law Claim ("Motion to Strike").[1]  [Doc. No. 32.]

**FACTUAL AND PROCEDURAL BACKGROUND**

This is a dispute between producers of table sugar and those of high fructose corn syrup ("HFCS" or "corn syrup.")  Plaintiffs are sugar producers and two trade associations comprised of companies, each of whom is a grower and/or producer and/or refiner of sugar in the United States.[2]  (First Amended Complaint

---

[1] Plaintiffs also request judicial notice of certain documents, to which Defendant does not object, and also object to evidence submitted by Defendant in support of its motion to strike. [Docs. No. 38; 35.] The Court finds it appropriate to take judicial notice of the documents identified in Plaintiffs' request, but not of the facts contained therein.  Plaintiffs' objections are addressed in a separate order, and the Court has only considered the admissible evidence in ruling on this motion.

[2] Plaintiffs are The Sugar Association, the American Sugar Cane League of the U.S.A., Inc., Minn-Dak Farmers Cooperative, Imperial Sugar Corporation, The Amalgated Sugar Company LLC, C & H Sugar Company, Inc., Michigan Sugar Company, Western Sugar Cooperative, United States Sugar Corporation, and American Sugar Refining, Inc.

("FAC") at ¶¶ 12-21) [Doc. No. 15.]  Defendants are a national trade association representing the interests of the corn refining industry and members of the trade organization.[3]  (*Id.* at ¶¶ 22-28.)

The First Amended Complaint ("FAC") alleges that in 2008, Defendant Corn Refiners Association ("CRA"), a trade association of corn refiners, began a campaign whereby the CRA bought television commercials, print advertisements, and other media to provide the public with information regarding High Fructose Corn Syrup ("HFCS" or "corn syrup").  (*Id.* at ¶¶ 45-48.)  The campaign includes a website found at www.sweetsurprise.com.  (*Id.*)  The campaign regularly employs the use of phrases such as "HFCS is corn sugar," "HFCS is natural," and "sugar is sugar."  (*Id.*)

Plaintiffs also allege that HFCS is a "man-made product" that does not "naturally occur," making it qualitatively different from table sugar, which they allege is extracted from cane and beets.  (FAC at ¶¶ 29-31.)  Plaintiffs also allege that HCFS is linked to the obesity epidemic and its effect on the human body differs from that of table sugar.  (*Id.* at ¶¶ 32-39.)  Finally, the FAC alleges that consumers and food and beverage providers are conscious of the difference between sugar and HFCS and are making business decisions based on that difference.  (*Id.* at ¶¶ 42-44.)

The First Amended Complaint also alleges that in September 2010, Defendant CRA filed a petition with the FDA seeking to change the name of HFCS to "corn sugar" for food ingredient labeling purposes.  Pursuant to FDA regulations, that petition, called a "Citizen Petition," and all related submissions are filed under the Docket No. FDA-2010-P-049.  (*Id.* at ¶¶ 50-51.)

Plaintiffs' suit against CRA and its members alleges that the campaign contains false representations about High Fructose Corn Syrup that constitute false

---

[3] Defendants are the Corn Refiners Association, Archer-Daniels-Midland Company, Cargill, Inc., Corn products International, Inc., Penford products Co., Roquette America, Inc., and Tate & Lyle Ingredients Americas, Inc.

advertising under the Lanham Act and a violation of the California's Unfair Business Practices Act. 15 U.S.C. § 1125(a) (2006); CAL. BUS. & PROF. CODE §§ 17200 *et seq*. Plaintiffs allege that Defendants violate these two laws by making claims that HFCS is "natural" and should be referred to as "corn sugar" and claims that CRA has made that HFCS is nutritionally and metabolically equivalent to other sugars. (FAC at ¶¶ 5, 49, 59, 60, 36, 39, 61.)

On August 22, 2011, Defendant CRA filed the instant Motion to Strike, arguing that Plaintiffs' state law claim should be dismissed pursuant to California's "anti-SLAPP" statute, CAL. CIV. PROC. CODE § 425.16. The motion has been fully briefed and oral argument was heard on September 13, 2011.

## STANDARD OF LAW

California's "anti-SLAPP" statute provides that:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

CAL. CIV. PROC. CODE § 425.16(b)(1). The statute is designed "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).

A motion to strike brought pursuant to this provision requires a two-step inquiry by the Court. First, the moving defendant must make a prima facie showing that the suit arises from the defendant's act "in furtherance "of its "right of petition or free speech" as defined by § 425.16 and therefore the conduct is protected activity under the statute. *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 971-73 (9th Cir. 1999).

An act in furtherance of a person's right of petition or free speech in connection with a public issue is defined as:

3

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

CAL. CIV. PROC. CODE § 425.16(e).

If the defendant makes a prima facie showing, then the burden shifts to the plaintiff to make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor. *Church of Scientoloy v. Wollersheim*, 42 Cal. App. 4th 628, 646 (1996), *disapproved on other grounds in Equilon Enter. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 68 n.5 (2002). "A defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff." *New.net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1099 (C.D. Cal. 2004) (citation omitted).

## DISCUSSION

**A. Commercial Exception**

As an initial matter, Plaintiff argues that CRA cannot bring a motion to strike under § 425.16 because CRA's activity fits within an exception, the "commercial activity" exception, to the statute. The exception, codified at CAL. CIV. PROC. CODE § 425.17(c), provides that the anti-SLAPP law does not apply to claims "brought against a person primarily engaged in the business of selling or leasing goods or services."[4] CRA argues that the provision doesn't apply because it does not apply to trade associations that do not themselves sell goods, and the

---

[4] Section 425.17 was enacted "[d]ue to abuses of California's anti-SLAPP law." *See New.net, Inc.*, 356 F. Supp. 2d at 1103.

4

Court agrees. Plaintiffs argue that the exception does apply to organizations such as the CRA because CRA is acting as an agent for its member companies who would be subject to the exception.[5]

Because it is relatively new, the caselaw on the commercial activity exception is scant. Plaintiffs cite in support of their argument *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp.2d 1120, 1141-42 (C.D. Cal. 2009), where the court held that the governing body of American swimming, an organization that does not sell or lease any goods or services, could not bring a motion to strike because § 425.17 applied. The court noted that the defendant employed a spokesperson who endorsed a particular product, and the swimming team was only allowed to wear a particular brand of swimsuit.

Here, the Court is not persuaded that the commercial activity exception applies to CRA's actions. CRA, as a trade organization, is not in the business of selling or leasing any goods or services, and has not endorsed a particular brand or engaged in similar conduct to that at issue in *TYR Sport Inc.* Furthermore, Plaintiffs have not adequately pled an agency relationship such that the Court should hold CRA excepted because its member companies would be excepted under this provision.

## B.     Protected Activity

Defendant CRA argues that its Citizen Petition to the FDA seeking permission to use the term "corn sugar" on food labels as an alternative to "high fructose corn syrup" is an act in furtherance of its' right of petition or free speech under California's "anti-SLAPP" statute under § 425.16(e)(2), (e)(3), and (e)(4).

Section 425.16(e)(2) protects activity "made in connection with an issue

---

[5] Plaintiffs do not rely on the actual text of the statute in support of its argument, nor could they. In *All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*,183 Cal. App. 4th 1186 (2010), the California Court of Appeals held that the plain language of § 425.17 made clear that the exception does not apply to trade organizations. Plaintiffs argue that this is *dicta*, as the holding was unnecessary to the court's opinion. Regardless of whether it is dicta, Plaintiffs' argument seeks to hold the trade association responsible in place of its member companies – who would be subject to the exception – under agency principles.

5

under consideration or review by" an "official proceeding authorized by law." CRA argues that Plaintiffs' suit seeks to suppress CRA's speech made in connection with the Citizen Petition, thereby making the lawsuit subject to a motion to strike under this section. Although Plaintiffs challenge CRA's advertising campaign, CRA argues that the statements included in the advertisements are related to the FDA's petition. Plaintiffs argue that the case, based on advertising, is not petitioning activity, and it is "quite distinct" from the Citizen Petition, which only addresses food ingredient labels.

The cases cited by CRA do not support its position that its conduct is protected under (e)(2). In *Dupont Merck Pharmaceutical Co. v. Superior Court*, 78 Cal. App. 4th 562 (2000), the court did not decide whether (e)(2) covered any of the activity at issue because other provisions covered the defendant's activity. In *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 896-97 (2004), the court did not address whether the activity was protected under (e)(2), it only considered the activity under (e)(3) and (e)(4). CRA's argument, at its essence, is that an advertising campaign is protected under (e)(2). Advertising campaigns reach out to the public, while petitioning activity is directed at a governmental body. "In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (emphasis in original). The Court finds that CRA's campaign is not protected under § 425.16(e)(2).

Section 425.16(e)(3) protects written or oral statements made in a public forum in connection with an issue of public interest. Section 425.16(e)(4) protects any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. CRA argues that its conduct is protected under these subsections because it is engaging in a "public education campaign to the address

6

the merits of HFCS" including "vague and unsubstantiated opinions about HFCS" held by the public.[6]

An issue of public interest for purposes of § 425.16(e)(3) is not "mere curiosity," but rather should be of concern to a substantial number of people. *Terry v. Davis Community Church*, 131 Cal. App. 4th 1534, 1547 (2005). In addition, there must be "some degree of closeness between the challenged statements and the asserted public interest." *All One God Faith, Inc.*, 183 Cal. App. 4th at 1201-02. "The 'public interest' component of section 425.16, subdivision (e)(3) and (4) is met when 'the statement or activity precipitating the claim involved a topic of widespread public interest,' and 'the statement ... in some manner itself contribute[s] to the public debate." *Id*. at 1202 (citation omitted).

Under this standard, a debate about the health effects of high fructose corn syrup is an issue of public interest. The First Amended Complaint alleges that the public is interested in whether food contains HFCS as an ingredient, and that both consumers and food and beverage producers are making conscious purchasing decisions based on the presence of HFCS in products. (FAC at ¶ 29, 40-41, 51, 53) The cases cited by CRA on this point support this conclusion. *See, e.g., Dupont Merck Pharm. Co. v. Super. Ct.*, 78 Cal. App. 4th 562, 567 (2000) (issue was of "public interest" because of the number of persons affected and the seriousness of the conditions treated); *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1040-42 (2008) (statements made to a magazine about work experiences were an issue of public interest). The Court finds that CRA's conduct is protected under the anti-SLAPP statute because the conduct consists of written or oral statements made in a public forum in connection with an issue of public interest.

---

[6] Several courts evaluate these two subsections together. *See, e.g., Consumer Justice Ctr. v. Timedica Int'l, Inc.*, 107 Cal. App. 4th 595, 600 (2003). The Court finds it appropriate to analyze subsection (e)(3) and (e)(4) together in light of the caselaw.

### C. Probability of Prevailing on the Merits

Defendants having borne their burden for the instant motion, Plaintiffs must show a reasonable probability of prevailing on the merits in order to defeat the motion to strike. The state law claim at issue, an unfair business competition claim, is premised on Plaintiff's federal false advertising claim. *See Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994). The elements of a false advertising claim stated under the Lanham Act are:

> 1) in advertisements, defendant made false statements of fact about its own or another's product; 2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; 3) such deception is material, in that it is likely to influence the purchasing decision; 4) defendant caused its falsely advertised goods to enter interstate commerce; and 5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public.

15 U.S.C. § 1125(a)(1)(B); *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003).

CRA argues that Plaintiffs cannot establish a probability that they will prevail on the merits because they are not likely to prevail in showing that any of CRA's statements are false, deceptive, or misleading, and because they cannot establish that anyone relied on those statements in making purchasing decisions or that Plaintiffs suffered an injury as a result of the statements. Plaintiffs dispute CRA's arguments.

Plaintiffs allege in their First Amended Complaint that CRA is making false and misleading statements by equating high fructose corn syrup with "corn sugar," stating that HFCS is "natural," and stating that HFCS is nutritionally and metabolically the same as sugar. (FAC at ¶¶ 59-61.) CRA argues that none of the phrases used in its campaign are literally false or misleading. As to the term "corn sugar," CRA argues that the statement is not false or misleading because sugar is defined in an article cited by Plaintiffs in the operative complaint as "any free monosaccharide or disaccharide present in a food," and HFCS is made up of the

monosaccharide sugars glucose and fructose.[7] (*See* FAC at n.6; ¶31.)  Defendant CRA also offers evidence that the FDA requires HFCS to be listed among "sugars" in nutritional labeling.  (White Decl. ¶ 16.)  As to the use of "natural" in association with HFCS, Plaintiffs allege that CRA is using a false or misleading statement because HFCS is not "found in nature."  (FAC at ¶ 60.)  CRA argues that the use of the word "natural" to describe HFCS is not false because FDA policy allows the use of "natural" with any product that does not use added color, synthetic substances, and flavors.  *See* 58 Fed. Reg. 2407 (Jan. 6, 1993).[8]  CRA also submitted in support a declaration from CRA's president stating that he received a letter from a staff member of the FDA stating that the FDA "would not object to the use of the term 'natural' on a product containing" HFCS as long as the HFCS was produced in the manner described by the CRA's president to the FDA. (Erickson Decl. ¶4; Exhibit A.)

Plaintiffs argue that Defendants themselves have stated that HFCS is artificial because it has been "subjected to two molecular-level transformations." (Fox Decl., Exh. C at 8.)  Plaintiffs also argue that Dr. White's own description of the process by which HFCS is developed, through "enzyme-catalyzed molecular transformations" shows that the use of the tern "natural" is false.  Plaintiffs further argue that the molecular breakdown process required to make HFCS also means that it is false to call the product "corn sugar."  In support, Plaintiffs cite *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 14 (7th Cir. 1992), where the Seventh Circuit held that calling a product "rice-based" when it did not contain rice or was a whole grain solution, but was derived from rice, was literally false.  Plaintiffs also argue that Defendants submitted a document to the Mexican government admitting that their claims made in their current advertising campaign are false:

---

[7] The article is *Consumption of High-Fructose Corn Syrup in Beverages May Play a Role in the Epidemic of Obesity*, 79 Am. J. Clin. Nutr. 537 (2004) ("Bray article")

[8] CRA also argues that under Plaintiffs' proposed definition of "natural," Plaintiffs' own product – refined sugar – could not be described as natural.  Plaintiffs dispute this, and argue that sugar is made from "simple extraction" from sugar cane or sugar beet.

9

"the chemical structure of HFCS and sugar are quite distinct. These differences in chemical structure yield differing functional properties for HFCS and sugar respectively." (Fox Decl., Exh. C. at 13.)

Plaintiffs also allege that CRA makes false statements equating the metabolic and nutritional effects of HFCS and sugar. (FAC at ¶ 61.) CRA argues that these statements are not false and Plaintiffs cannot demonstrate otherwise. In support, CRA submits a declaration from John S. White, the president of an international consulting firm serving the food and beverage industry. (White Decl. ¶1.) Dr. White opines that once table sugar is consumed into the body, the chemical "bond" in sucrose (making up table sugar) breaks down and the body ingests the same two monosaccharide molecules found in HCFS, glucose and fructose. (White Decl. at ¶¶13-16;21.) Dr. White also opines that the majority of the scientific literature on the subject demonstrates that HFCS has a similar effect on the body as other sweeteners. (White Decl. at ¶¶ 23-26.) CRA claims, and Dr. White agrees, that Plaintiffs' sources, cited in the First Amended Complaint, have been "rejected by the medical and scientific communities."[9] (Defs' Memo at 19-23; White Decl. ¶¶ 27-44.)

At the motion to strike stage, a court should not weigh evidence – instead, a court should inquire whether the claim is "supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 823 (1994), *disapproved on other grounds in Equilon*. The court must also "accept all evidence favorable to the plaintiff as true and indulge every legitimate favorable inference that may be drawn from it." *Id*. at 828. Thus, a plaintiff, to meet its burden on a motion to strike on anti-SLAPP grounds, must only meet a "minimum level of legal sufficiency and triability." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) (citation omitted).

---

[9] The literature includes the Bray article, a Prince study on rats, and a Nielson editorial.

In this case, both parties have submitted evidence bearing on whether the statements made by CRA in its advertising campaign are false or misleading. There is evidence in the record indicating that Defendants have themselves made statements about the different chemical make-up between table sugar and HFCS. Plaintiffs have also submitted studies and papers that support its allegation that CRA's claim that HFCS is sugar and/or natural is false and/or misleading. Finally, the Court is not persuaded that the FDA's position, allowing HFCS to be marketed as "natural," conclusively determines that CRA's statement calling HFCS natural is not false or misleading. Because the Court cannot weigh the evidence at this stage, and must draw inferences in Plaintiffs' favor, the Court finds that Plaintiffs have met their burden in showing a reasonable probability of success on their argument that the statements are false.

However, Plaintiffs have not presented any evidence to support their burden on the claims that CRA's statements have influenced any purchasing decisions and that Plaintiffs have suffered an injury. In their opposition to CRA's motion, Plaintiffs refer to allegations in the FAC where they plead that food and beverage producers rely on the campaign and that they have been injured by CRA's campaign in the form of price erosion and lost profits. Allegations in a complaint are not admissible evidence on which a court can rely on to determine whether a plaintiff has a reasonable probability of prevailing on a claim. *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th at 656.

The Court concludes that Plaintiffs have not met their burden to show a probability of prevailing on their unfair business competition claim to defeat a motion to strike on anti-SLAPP grounds.

//
//
//
//

11

**CONCLUSION**

For the reasons provided above, Defendant CRA's Motion to Strike is GRANTED.  Plaintiff's California Unfair Business Competition claim is STRICKEN.

**IT IS SO ORDERED.**

DATED:  October   19, 2011

By _____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE