1   Adam R. Fox (State Bar No. 220584)
    Adam.Fox@squiresanders.com
2   SQUIRE SANDERS (US) LLP
    555 South Flower Street, 31st Floor
3   Los Angeles, CA  90071
    Telephone:   +1.213.624.2500
4   Facsimile:   +1.213.623.4581

5   David S. Elkins (State Bar No. 148077)
    David.Elkins@squiresanders.com
6   SQUIRE SANDERS (US) LLP
    600 Hansen Way
7   Palo Alto, CA  94304
    Telephone:  +1.650.856.6500
8   Facsimile:   +1.650.843.8777

9   [*Additional Counsel Identified On Signature Page*]

10  Attorneys for Plaintiffs WESTERN SUGAR
    COOPERATIVE, MICHIGAN SUGAR CO., C & H
11  SUGAR CO., INC., UNITED STATES SUGAR
    CORPORATION, AMERICAN SUGAR REFINING,
12  INC., THE AMALGAMATED SUGAR COMPANY
    LLC, IMPERIAL SUGAR CORPORATION, MINN-
13  DAK FARMERS COOPERATIVE, THE
    AMERICAN SUGAR CANE LEAGUE U.S.A.,
14  INC., AND THE SUGAR ASSOCIATION, INC.

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17

18  WESTERN SUGAR                    Case No. CV11-3473 CBM (MANx)
    COOPERATIVE, a Colorado
19  cooperative, *et al.*            **PLAINTIFFS' OPPOSITION TO
                                     CERTAIN DEFENDANTS' MOTION
20              Plaintiffs,          TO DISMISS PLAINTIFFS' SECOND
                                     AMENDED COMPLAINT**
21      vs.
                                     Date:     March 19, 2012
22  ARCHER-DANIELS-MIDLAND           Time:     11:00 a.m.
    COMPANY, a Delaware              Place:    Courtroom 2
23  Corporation, *et al.*            The Honorable Consuelo B. Marshall

24              Defendants.          Filed concurrently with Appendix of
                                     Electronic Authorities and [Proposed] Order
25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................1

II. SUMMARY OF ARGUMENT ...............................................................2

III. STATEMENT OF THE CASE ...............................................................3

IV. THE SAC MORE THAN ADEQUATELY ALLEGES FACTS
SUPPORTING THE MEMBER COMPANIES' VICARIOUS
LIABILITY FOR FALSE ADVERTISING ...........................................4

    A. GOVERNING LEGAL STANDARDS........................................4

    B. PLAINTIFFS ALLEGE AGENCY .........................................6

    C. PLAINTIFFS ALLEGE JOINT TORTFEASOR LIABILITY.......12

    D. THE MEMBER COMPANIES ARE NOT IMPROPERLY
       "LUMPED" TOGETHER ......................................................17

V. CONCLUSION ...................................................................................20

SQUIRE SANDERS (US)
LLP
555 South Flower Street, 31st
Floor
Los Angeles, California 90071

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abels v. Farmers Commodities Corp.*,
   259 F.3d 910 (8th Cir. 2001) ................................................................5, 8, 9, 10

*Alfus v. Pyramid Tech. Corp.*,
   745 F. Supp. 1511 (N.D. Cal. 1990) ................................................................ 13

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................................ 4

*Bauman v. DaimlerChrysler Corp.*,
   644 F.3d 909 (9th Cir. 2011) ............................................................................ 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 4, 17

*Bottoni v. Sallie Mae, Inc.*,
   2011 U.S. Dist. LEXIS 61626 (N.D. Cal. June 6, 2011) ..................................... 6

*Brave New Films 501(C)(4) v. Weiner*,
   626 F. Supp. 2d 1013 (N.D. Cal. 2009) ............................................................... 5

*Broam v. Bogan*,
   320 F.3d 1023 (9th Cir. 2003) ....................................................................... 4, 5

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ........................................................................... 5

*Buchanan v. Neighbors Van Lines*,
   2010 WL 4916644 (C.D. Cal. Nov. 29, 2010) ..................................................... 6

*Coca-Cola Co. v. Procter & Gamble Co.*,
   822 F.2d 28 (6th Cir. 1987) .............................................................................. 20

*Cognitim, Inc. v. Obayashi Corp.*,
   2005 U.S. Dist. LEXIS 30857 (N.D. Cal. Nov. 15, 2005) .................................. 13

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962) ......................................................................................... 17

OPP'N TO MOT. TO DISMISS
SECOND AMENDED COMPLAINT

*Davis v. E.I. DuPont de Nemours & Co.*,
240 F. Supp. 612 (S.D.N.Y. 1965) ...................................................................... 14

*Dion LLC v. Infotek Wireless, Inc.*,
2007 U.S. Dist. LEXIS 83980 (N.D. Cal. Oct. 30, 2007) ..................................... 6

*EEOC v. Zonta Int'l*,
1986 U.S. Dist. LEXIS 23933 (N.D. Ill. Jun. 20, 1986) ...................................... 7

*Energy Brands, Inc. v. Jorgensen*,
2011 U.S. Dist. LEXIS 6937 (W.D.N.Y. Jan. 24, 2011) ..................................... 16

*Fong v. United States*,
300 F.2d 400 (9th Cir. 1962) ................................................................................ 5

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) ................................................................................ 14

*Gallagher v. Gallagher*,
130 F. Supp. 2d. 359 (N.D.N.Y. 2001) ................................................................ 7

*General Bldg. Contractors Ass'n, Inc. v. Penn.*,
458 U.S. 375 (1982) ............................................................................................. 7

*Grant Airmass Corp. v. Gaymar Indus., Inc.*,
645 F. Supp. 1507 (S.D.N.Y. 1986) .................................................................... 14

*In re Gupta Corp. Securities Litig.*,
900 F.Supp.1217 (N.D. Cal. 1994) ....................................................................... 5

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
580 F. Supp. 2d 896 (N.D. Cal. 2008) .................................................................. 7

*In re: TFT-LCD (Flat Panel) Antitrust Lit.*,
2011 U.S. Dist. LEXIS 95053 (N.D. Cal. Aug. 23, 2011) .................................. 18

*In Re: TFT-LCD (Flat Panel) Antitrust Lit.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) .............................................................. 18

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .............................................................................. 9

*Lachmund v. ADM Investor Servs.*,
191 F.3d 777 (7th Cir. 1999) ........................................................................ 5, 8, 9

SQUIRE SANDERS (US) LLP
555 South Flower Street, 31st Flr
Los Angeles, California 90071

OPP'N TO MOT. TO DISMISS
SECOND AMENDED COMPLAINT

*Northern California Pharmaceutical Ass'n v. United States*,
  306 F.2d 379 (9th Cir. 1962) ................................................................ 13

*Palomares v. Bear Stearns Res. Mortg. Co.*,
  2008 U.S. Dist. LEXIS 19407 (S.D. Cal. Mar. 13, 2008) .................... 13, 18, 19

*Petro-Tech, Inc. v. Western Co. of N. Am.*,
  824 F.2d 1349 (3d Cir. 1987) .................................................................. 8

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
  19 F. Supp. 2d 157 (S.D.N.Y. 1998) ...................................................... 16

*Qwest Communs. Corp. v. Herakles, LLC*,
  2008 U.S. Dist. LEXIS 22154 (E.D. Cal. Mar. 20, 2008) ........................ 5

*Rpost Holdings, Inc. v. Trustifi Corp.*,
  2011 U.S. Dist. LEXIS 117260 (C.D. Cal. Oct. 11, 2011) ...................... 10, 12

*Santana Prods., Inc. v. Sylvester & Assocs., Ltd.*,
  2006 U.S. Dist. LEXIS 98045, *32 (E.D.N.Y. Nov. 8, 2006), aff'd at 279
  Fed.Appx. 42 (2d Cir. 2008) ............................................................... 15

*Specht v. Google, Inc.*,
  660 F. Supp. 2d 858 (N.D. Ill 2009) ...................................................... 19

*Swartz v. KPMG, LLP*,
  476 F.3d 756 (9th Cir. 2006) .............................................................. 19

*Trafficschool.com, Inc. v. Edriver, Inc.*,
  633 F. Supp. 2d 1063 (C.D. Cal. 2008), *aff'd in part and rev'd in part on
  other grounds*, 653 F.3d 820 (9th Cir. 2011) ...................................... 13, 14

*United States v. Bonds*,
  608 F.3d 495 (9th Cir. 2010) ............................................................ 6, 10

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................ 9, 13, 16

*Wool v. Tandem Computers Inc.*,
  818 F.2d 1433, 1439 (9th Cir. 1987) .................................................... 5

*York v. Tennessee Crushed Stone Ass'n*,
  684 F.2d 360 (6th Cir. 1982) ............................................................... 7

**OTHER AUTHORITIES**

4 *McCarthy on Trademarks and Unfair Competition* § 25:23 (4th ed. 2006) ........ 15

4 *McCarthy on Trademarks and Unfair Competition* § 25:23 (4th ed. 2007) ........ 13

Witkin, *Summary of California Law* (10th ed. 2005),
   Vol. 5, Torts. § 45 .............................................................................. 13

Restatement (Third) of Agency § 3.16 .................................................. 12

Rule 8 ............................................................................. 5, 8, 10, 19, 20

Rule 8(a) ......................................................................................... 9

Rule 9 ........................................................................................ 9, 10

Rule 9(b) ..................................................................................... 4, 7, 8 9

Rule 12(b)(6) .............................................................................. 4, 17

## I.   **INTRODUCTION**

The Court has already determined that "Plaintiffs have met their burden in showing a reasonable probability of success on their argument that the advertising statements [challenged in this lawsuit] are false." [Doc. 47 at 11:11-12.] The Court has also rejected Defendants' earlier efforts to evade liability by invoking the First Amendment and the primary jurisdiction doctrine. [Doc. 46 at 8:13-14, 14:9-10.] The Corn Refiners Association ("CRA") was thus compelled to answer Plaintiffs' Second Amended Complaint ("SAC") and admits that it engaged in the advertising that the Court identified as likely to be proven false. [Doc. 56 ¶¶ 3, 46.] CRA also admits that its governing body is dominated by high-ranking individuals from each of the other defendants and that they provided the bulk of the tens of millions of dollars spent on the challenged advertising. [Doc. 56 ¶¶ 23-29, 47, 50.]

These members of CRA ("Member Companies") nevertheless charge that Plaintiffs' allegations about their critical role in the campaign "lack plausibility and particularity." [Doc. 57 at 2:16.] The pending motion to dismiss is a simple case of trying to have one's cake and eat it too: Although the Member Companies are alleged to have initiated, funded and controlled the campaign—and reaped exclusively its benefits—they now seek to avoid liability and damages for their essential role in the misconduct. Neither law nor equity permits such a result.

To the contrary, the SAC's specific factual allegations support vicarious liability for each of the Member Companies. The SAC details: (1) each of the Member Companies' high-ranking personnel who dominate CRA's governing body; (2) the hundreds of hours they devote on an annual basis to CRA business, including the challenged advertising campaign; (3) their decisions to launch and fund the campaign with tens of millions of dollars in "special assessments;" and (4) the right and exercise of power by the Member Companies to subject decisions of CRA's Board of Directors to their approval, including the decisions to create, fund, launch, and annually continue the challenged advertising. [Doc. 54 ¶¶ 22-29.]

OPP'N TO MOT. TO DISMISS
SECOND AMENDED COMPLAINT

The SAC also alleges that the Member Companies' multimillion-dollar special assessments exceed the regular total revenue of CRA many times over. This funding is central to the collaborative effort by the Member Companies to set the advertising campaign in motion and control it. [Doc. 54 ¶¶ 46-50.] Indeed, the SAC alleges that, in each year since the campaign's inception in 2008, the Member Companies have repeatedly reaffirmed and ratified the challenged advertising. They did so by authorizing and making payments in the form of these special assessments (now well in excess of $50 million), and by taking separate actions to repeat, promote and endorse the campaign's false statements. These intentional acts by the Member Companies expose their individualized participation in the form of statements on certain of their websites, by spokespersons, and in direct communications to customers, including letters, presentations, annual reports and pricing sheets. [Doc. 54 ¶¶ 50, 60-64.]

These allegations in the SAC are hardly "inconsequential details" that merely "puff[] up" charges made in earlier iterations of the complaint, as the Member Companies argue. [Doc. 57 at 1:24.] Instead, these details belie the Member Companies' argument that Plaintiffs seek to impose liability on these defendants "simply because of their membership and participation in CRA as a trade association." [Doc. 57 at 1:8-9.] The facts alleged either facially state or give rise to reasonable inferences that support the imposition of vicarious liability for violating the Lanham Act, including the Member Companies' active participation in the advertising campaign. Their motion to dismiss should accordingly be denied.

## II.   SUMMARY OF ARGUMENT

The SAC chronicles how and why the Member Companies are vicariously liable for the false advertising of high-fructose-corn-syrup. Its allegations detail the Member Companies' power and control over CRA by: (1) directing its activities through their controlling voting presence on CRA's governing body, its Board of Directors, and subjecting decisions of that Board to the individual approval of each

of the Member Companies themselves; (2) actively managing CRA in formulating and carrying out the false advertising campaign; (3) providing tens of millions of dollars to finance and implement the campaign through CRA; and (4) ratifying and endorsing the key messages of the advertising campaign in numerous other venues using their own company spokespersons, publications and instruments.  The SAC's details more than adequately allege the Member Companies' vicarious liability through agency and as joint tortfeasors with CRA.  (As discussed below, joint tortfeasor liability is a theory of vicarious liability sometimes also called conspiracy but distinct from the separate claim of civil conspiracy.)

The Member Companies hope to avoid these conclusions by presenting selective quotations from both the SAC and a handful of court decisions.  The discussion below exposes these tactics.  It also reveals how and why the Member Companies' representations about even such basic matters as the applicable legal standards are often misleading or plain wrong.  At bottom, the discussion lays bare the Member Companies' strategy to escape liability for their roles in the misconduct—to convince this Court that those who plan, create and sponsor false advertising campaigns may escape Lanham Act liability if they hide behind an inadequately capitalized trade association they control, govern and fund.

Adopting such a rule would gut the Lanham Act.  Depriving private competitors—those with the greatest resources to protect the public—from obtaining damages or disgorging ill-gotten gains from those behind the deception would also eliminate the key incentive for enforcement.

## III.   <u>STATEMENT OF THE CASE</u>

Plaintiffs generally do not quarrel with the Member Companies' Statement of the Case; it summarizes the procedural history of this controversy while leaving out certain details with which the Court is already familiar.  Plaintiffs nevertheless object to the last sentence of the Member Companies' Statement of the Case because it is an inappropriate summary of their argument.  [Doc. 57 at 4:2-5.]

**IV.  THE SAC MORE THAN ADEQUATELY ALLEGES FACTS SUPPORTING THE MEMBER COMPANIES' VICARIOUS LIABILITY FOR FALSE ADVERTISING**

### A.  GOVERNING LEGAL STANDARDS

A Rule 12(b)(6)[1] motion is "viewed with disfavor." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  The Court should deem allegations sufficient to state a cognizable claim if they present "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the Court may disregard "[t]hreadbare recitals . . . supported by mere conclusory statements," (*Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009)), "heightened fact pleading of specifics" is not required.  *Twombly*, 550 U.S. at 570.  This minimal demand for "plausible grounds to infer" a claim "does not impose a probability requirement . . . .  [A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable."  *Id.* at 556 (footnote omitted).  The Member Companies nevertheless conflate: (1) plausibility with particularity; and (2) the substantive requirements for asserting a violation of the Lanham Act's false advertising bar with one's vicarious liability for it.  [See Doc. 57 at 7:3-5.]

Never mind that this Court has already acknowledged the split of authority regarding the application of Rule 9(b) to Lanham Act false advertising claims—and the fact that the Court has already found Plaintiffs' allegations of false advertising sufficiently detailed to satisfy Rule 9(b).  [Doc. 46 at 13 n.9.]  Even if Rule 9(b) properly applies to Plaintiffs' Lanham Act claim, it does not apply to the distinct allegations of the Member Companies' vicarious liability.  This is because the particularity demand of Rule 9(b) facially applies only to allegations of "fraud or mistake," not "[m]alice, intent, knowledge, and other conditions of a person's mind [which] may be alleged generally."  Fed. R. Civ. P. 9(b).

---

[1]     Unless specifically stated otherwise, all reference to "Rules" refer to the Federal Rules of Civil Procedure.

1       A party's vicarious liability thus need not be pled with particularity unless

2   the vicarious liability itself depends on fraud.  *See Abels v. Farmers Commodities*

3   *Corp.*, 259 F.3d 910, 916-917 & n.2 (8th Cir. 2001); *Lachmund v. ADM Investor*

4   *Servs.*, 191 F.3d 777, 783 (7th Cir. 1999).  That is not the case here.  Plaintiffs'

5   vicarious liability allegations are based on the Member Companies' exercise of

6   their right to control CRA and their collective actions as joint tortfeasors.  Indeed,

7   Plaintiffs' allegations—whether made on "information and belief" or otherwise[2]—

8   sufficiently demonstrate the Member Companies' vicarious liability.  *See, e.g.*,

9   *Qwest Communs. Corp. v. Herakles, LLC*, 2008 U.S. Dist. LEXIS 22154, *14-*15

10  (E.D. Cal. Mar. 20, 2008) (governing with Rule 8 allegations of vicarious liability

11  for underlying torts, and upholding the sufficiency of such allegations, after

12  *Twombly*, although many of the averments were made on "information and belief").

13      Setting aside these clarifications to the operative legal standards, even if a

14  ruling in favor of the Member Companies appeared warranted—and it is not—

15  "[d]ismissal without leave to amend is proper only in 'extraordinary' cases."

16  *Broam*, 320 F.3d at 1028.  This is not such a case.  The question now before the

17  Court "is not whether the plaintiff[s] will prevail in the action, but whether the

18  plaintiff[s are] entitled to offer evidence in support of [their] claim."  *Brave New*

19  *Films 501(C)(4) v. Weiner*, 626 F. Supp. 2d 1013, 1015 (N.D. Cal. 2009).

20

---

21  [2]      Although the Member Companies contend that the SAC's allegations made on
    information and belief "fail under Rule 9(b)" [Doc. 57 at 5 n.2] they do not—and cannot—
22  complain that they are improper under Rule 8.  *See, e.g., Browning v. Clinton*, 292 F.3d 235, 243
    (D.C. Cir. 2002) (explaining that even an "extremely general" allegation "based only 'on
23  information and belief' . . . satisfies Rule 8" if it provides fair notice of a claim and the grounds
    on which it is based).  As noted, because the alleged vicarious liability in this case does not
24  depend on fraud, Rule 9(b) and its heightened pleading standard do not govern.  But even if they
    did, the Member Companies fail to disclose that their requirements "may be 'relaxed as to matters
25  peculiarly within the opposing party's knowledge.'"  *In re Gupta Corp. Securities Litig.*, 900
    F.Supp.1217, 1228 (N.D. Cal. 1994) (quoting *Wool v. Tandem Computers Inc.*, 818 F.2d 1433,
26  1439 (9th Cir. 1987)).  Indeed, this is also why pleading allegations on information and belief is
    consistent with both Rule 9(b)'s particularity requirement as well as the notice pleading standard
27  imposed by Rule 8.  *See, e.g., Fong v. United States*, 300 F.2d 400, 409 (9th Cir. 1962) (deeming
    alter ego allegations sufficiently pled "even though plaintiff's factual allegations were upon
28  information and belief").

## B. PLAINTIFFS ALLEGE AGENCY

The Court has already held that "[a]n agency relationships [*sic*] exists when 'both the principal and the agent [] assent to the principal's right to control the agent.'" [Doc. 46 at 12:14-16 (quoting *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010)) (alteration in original)].   If control and the mutual assent to its exercise are alleged, "arguments regarding a right to control are better suited to a motion for summary judgment than a motion to dismiss" because the actual nature of the alleged "agency relationship is generally a question of fact." *Bottoni v. Sallie Mae, Inc.*, 2011 U.S. Dist. LEXIS 61626, *16 (N.D. Cal. June 6, 2011) (denying defendant's motion to dismiss claim based on pleading of agency).   A plaintiff may ordinarily allege agency without detailing all the facts supporting vicarious liability. *See*, *e.g.*, *Dion LLC v. Infotek Wireless, Inc.*, 2007 U.S. Dist. LEXIS 83980, *11-*12 (N.D. Cal. Oct. 30, 2007) (denying motion to dismiss although plaintiffs alleged agency without specifically pleading each of its three elements).[3]

The Member Companies attempt to avoid the SAC's agency allegations in two ways.   First, they depict the SAC as seeking to impose vicarious liability "simply because of their membership and participation in CRA as a trade association." [Doc. 57 at 1:8-9.]   This is not true.   The SAC includes detailed allegations addressing the Member Companies' control of the CRA to create, develop, fund and ratify the false advertising campaign.   [Doc. 54 ¶¶ 22-29, 47-50,

---

[3]     The Member Companies cite *Buchanan v. Neighbors Van Lines*, 2010 WL 4916644 (C.D. Cal. Nov. 29, 2010), for the proposition that each of the three legal elements of agency must be alleged to survive a motion to dismiss.   [Doc. 57 at 7 n.3.]   But whether the law is more accurately stated in *Buchanan* or *Dion* makes no difference.   The SAC alleges facts supporting all three elements: (1) CRA worked with third-party advertising and public relations companies— and even the FDA—on behalf of the Member Companies to further the challenged campaign, and even publicly acknowledged working with them on it, signifying CRA's power to alter legal relations of the Member Companies [Doc. 54 ¶¶ 48, 51, 56]; (2) CRA was entrusted with tens of millions of dollars earmarked for use on the advertising campaign, demonstrating CRA's role as a fiduciary for the Member Companies with respect to the advertising [*id.* ¶¶ 47, 50-51], and (3) CRA's decisions are governed by a Board of Directors comprised of and dominated by executives from the Member Companies, which have retained the right to subject such decisions to their ultimate approval, disclosing the ultimate touchstone of agency—the right of the principals to control the conduct of their agent [*id.* ¶¶ 22, 28-29].

53, 58, 60-62.]  Moreover, although the Member Companies argue that "a trade association is not the agent of its member companies" as a matter of law [Doc. 57 at 4:19-20][4], their trade association relationship with CRA is relevant, even if it cannot support a conclusion of agency standing alone.  *See, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d at 903 (observing that allegations of participation in trade associations "cannot alone support Plaintiffs' claims, but such participation demonstrates how and when Defendants had opportunities to exchange information or make agreements").

The Member Companies' second line of attack questions the sufficiency of the SAC's allegations under Rule 9(b)'s heightened pleading standard.  To make this case, they myopically focus on snippets from the SAC, and similarly zoom in on a few selective quotations from inapposite case law to portray the alleged agency relationship itself through a fraudulent prism.  But when the apertures are widened and the SAC and legal authorities are—as required—viewed in their full context, it becomes apparent that Plaintiffs' vicarious liability allegations are not themselves based upon fraudulent conduct and not subject to Rule 9(b)'s heighted pleading requirements.

Although the Member Companies cite some district court cases to support their legal analysis, they ignore several United States Court of Appeals decisions

---

[4]     To support this proposition, the Member Companies cite *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360 (6th Cir. 1982), *Gallagher v. Gallagher*, 130 F. Supp. 2d. 359 (N.D.N.Y. 2001), *EEOC v. Zonta Int'l*, 1986 U.S. Dist. LEXIS 23933 (N.D. Ill. Jun. 20, 1986) and *General Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375 (1982).  [Doc. 57 at 4:19-5:4.]  These cases make no such sweeping holdings.  The first three address the propriety of treating a trade association as the agent of its members for purposes of claims arising under the Age Discrimination in Employment Act, for which agency requires a showing of supervisory or managerial responsibilities and the delegation of employment decisions.  *See York*, 684 F.2d at 362; *Gallagher*, 130 F. Supp. at 362-63; *Zonta Int'l*, 1986 U.S. Dist. LEXIS 23933 at *6.  The last case similarly arises from an employment law controversy, although it deals with a race discrimination claim that the Supreme Court rejected because "the associations themselves do not hire operating engineers, and never have."  458 U.S. at 392.  Outside of the employment law paradigm, membership in a trade association is no bar to establishing vicarious liability.  *See, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (finding defendants' participation in industry groups relevant in determining that plaintiffs sufficiently pled an antitrust conspiracy).

that have rejected arguments the Member Companies now advance.  In *Lachmund*, for example, the Seventh Circuit dealt head-on with the relationship between Rule 8 and Rule 9(b) in evaluating the sufficiency of agency allegations, observing that:

> [W]e must take care not to permit the more demanding standard of Rule 9(b) to encroach unduly on the general approach to pleading that Congress has established in Rule 8.  Rule 9(b) can most effectively be confined to its proper domain when we remember that its purpose is to ensure that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a "wide variety of potential conduct," is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading.

191 F.3d at 783.  Noting that "[a]gency may be established in a number of ways," the Seventh Circuit held that "when the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship . . . the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim."  *Id.*  Because the plaintiff in *Lachmund* was relying on the self-same allegations of fraud to establish agency (the complaint alleged RICO and a conspiracy of fraudulent misrepresentation), the court therefore applied Rule 9(b) to the agency allegations.

On its facts, the *Lachmund* determination made sense.  The problem for the Member Companies is that the vicarious liability allegations in the SAC are more akin to those in *Abels*.  In that case, the Eighth Circuit distinguished *Lachmund* (despite holding the plaintiff had sufficiently pled agency even under Rule 9(b)) on the basis that the alleged agency was not "part of the fraud."  259 F.3d at 916 n.2. It was instead based on basic allegations that "one party supervised, controlled, and profited from the activities of another."  *Id.*; *see also Petro-Tech, Inc. v. Western Co. of N. Am.*, 824 F.2d 1349, 1362 (3d Cir. 1987) (acknowledging cases holding that a party's vicarious liability need not be pled with particularity, even while determining that the agency allegations at issue were sufficiently specific to satisfy heightened pleading standards anyway).

The Ninth Circuit has not squarely addressed the interplay between Rule 8(a) and Rule 9(b) in the same context as *Lachmund* and *Abels*.  But its precedent strongly suggests that it too would base its determination on whether an alleged agency relationship is dependent upon fraud.  Thus, the Ninth Circuit teaches that "where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)).  Rule 9(b) "does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct."  *Vess*, 317 F.3d at 1104.  Requiring "that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments . . . serves no similar reputation-preserving function, and would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a)."  *Id.*

This rationale forcefully refutes the argument that heightened pleading is required of the agency allegations in the SAC.  Even were Rule 9(b) to apply to a Lanham Act false advertising claim (a question that remains unresolved), it would be properly invoked to test only those allegations that relate to the "who, what, when, where, and how" of the false advertisements, *i.e.*, the allegations "grounded" in the falsity of the advertising.  *See Vess*, 317 F.3d at 1104-05.  This Court has already held that Plaintiffs' allegations meet that rigorous standard, whether it governs or not.  [Doc. 46 at 13 n.9.]  One defendant, CRA, has already answered those allegations.  [Doc. 56.]  The Member Companies have the same (more than sufficient) notice and ability to answer the substantive claims against them.  Because Plaintiffs' vicarious liability allegations do not depend on fraudulent conduct, those allegations are not subject to Rule 9(b).

Indeed, although the Member Companies' motion asserts that multiple "courts apply [Rule 9] to agency claims under the Lanham Act," they cite just one

1  case that purports to require heightened pleading in the false advertising context.

2  [Doc. 57 at 2:11-12 & 7:3-6 (citing *Rpost Holdings, Inc. v. Trustifi Corp.*, 2011

3  U.S. Dist. LEXIS 117260 (C.D. Cal. Oct. 11, 2011)).][5]  The *Rpost* court rejected a

4  false advertising claim against the United States Postal Service ("USPS") because

5  the plaintiff had vaguely alleged a "strategic alliance" between USPS and another

6  defendant without "explain[ing] USPS's role in the false statements."  *Id.* at *9.

7  Because the plaintiff failed to meet even Rule 8's standards in its pleading of

8  vicarious liability, the *Rpost* court's statements about Rule 9(b)'s application are

9  *dicta* and in any event untethered from any supporting authority.  *See id.*

10        Even so, the SAC goes beyond basic notice pleading requirements and, like

11  the pleading in *Abels*, makes ample factual allegations describing the nature of the

12  agency relationship between CRA and its Member Companies.  In particular, the

13  SAC alleges that:

14        •   "CRA was formed by and for its members, maintains its

15           existence subject to their support, and is funded by them to act

16           subject to their direction and control in promoting their shared

17           economic interests."

18        •   "The governing body of the CRA is its Board of Directors,

19           which includes and is dominated by two decision-making

20           individuals from each of the other Defendants . . . (collectively,

21           the 'Member Companies')."

22        •   "Each of the persons on its Board of Directors . . . work[s] on

23           CRA business, including the challenged advertising campaign."

24

25  [5]      The Member Companies' citations to *Bonds* and *Bauman v. DaimlerChrysler Corp.*, 644

26  F.3d 909 (9th Cir. 2011) regarding this issue do not advance their argument.  Neither case addressed the appropriate standard to test the pleading of agency.  *Bonds* confronted evidentiary

27  rulings in a perjury case and *Bauman* addressed agency on a personal jurisdiction motion, expressly cautioning that it was "not examining the rules governing the test for vicarious

28  liability."  644 F.3d at 923.

- "Certain decisions of the CRA Board of Directors—including, on information and belief, the decisions to launch and fund the multimillion dollar advertising campaign . . . as well as the day-to-day details about . . . the advertising's content—are subject to the approval of the Member Companies themselves."

- "[T]he Member Companies . . . provide the CRA with the overwhelming majority of regular membership dues and . . . special assessments earmarked to fund the advertising in this amended complaint."

- "Upon information and belief, both the CRA and the Member Companies assent to the right of the CRA members to control the CRA in this way, in particular with respect to the advertising challenged in this action."

- "The Member Companies orchestrated [the more than $50 million false advertising campaign] largely through their control and domination of the CRA, and authorized the CRA to receive from them the necessary funding for such an advertising campaign.  This funding exceeded the CRA's regular [annual] revenue many times over."

- "The Member Companies exercise their right of control over the CRA's marketing efforts and other activities in multiple ways. One way is through their placement of high-ranking Member Company executives on the CRA Board of Directors. Another way is by subjecting certain decisions (including, on information and belief, the decisions to fund, design, and launch the challenged false advertising campaign) of the CRA's Board of Directors to the approval of the CRA members themselves."

[Doc. 54 ¶¶ 22-29, 47, 49.]

The Member Companies brush aside these details and portray a single sentence—"Upon information and belief, both the CRA and the Member Companies assent to the right of the CRA members to control the CRA *in this way*, in particular with respect to the advertising challenged in this action"—as the SAC's "only allegation" relevant to "assent and right to control" and therefore "inadequate to sustain a claim of agency." [Doc. 57 at 8:3-7 (emphasis added)]. But the italicized phrase, "in this way," makes abundantly clear that the single sentence that the Member Companies characterize as so lonely actually keeps good company by expressly referring to other allegations that provide additional details. [Doc. 57 at 8:1-5; *see also id.* at 2:6-10].

Thus, unlike in *Rpost*, the SAC actually identifies factual bases for imposing vicarious liability on the Member Companies. [*See*, *e.g.*, Doc. 54 ¶ 29 ("The Member Companies thus enjoy both the actual power and right to control and authorize all significant decisions made and actions taken by the CRA, including those resulting in the advertising challenged in this amended complaint."); *id.* ¶ 49 ("The Member Companies exercise their right of control over the CRA's marketing efforts"); *id.* ¶ 66 ("[T]he Members Companies . . . enjoy the right to and exercise actual control over the CRA's actions through their respective representatives on the CRA Board of Directors")]. The Restatement (Third) of Agency § 3.16 provides: "Two or more persons may as coprincipals appoint an agent to act for them in the same transaction or matter." This precisely describes the nature of the Member Companies' vicarious liability arising from the Lanham Act violation.

## C.    PLAINTIFFS ALLEGE JOINT TORTFEASOR LIABILITY

Although the Member Companies concede that the SAC does not set forth "conspiracy as a stand–alone claim," they attempt to equate its joint tortfeasor allegations to formal charges of civil conspiracy to demand heightened pleading. [Doc. 57 at 8:17-19.] The Court should reject this legerdemain. "The use of the word 'conspiracy' [in civil tort law] is merely another way of describing a concert

of action and intent which will extend tort liability beyond the active wrongdoer to those who merely planned, assisted or encouraged his acts." *Trafficschool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1082-83 (C.D. Cal. 2008), *aff'd in part and rev'd in part on other grounds*, 653 F.3d 820, 834 (9th Cir. 2011).

Thus, defendants who in some circumstances may be called "conspirators," are more accurately called "joint tortfeasors" in the ordinary Lanham Act false advertising case.[6]  *Id.* at 1082 (quoting 4 *McCarthy on Trademarks and Unfair Competition* § 25:23 (4th ed. 2007)).  This is an important distinction.  Even if fraud is alleged as the ultimate wrongful act of a group of defendants, as long as the complaint plausibly alleges "that each defendant should be held responsible as joint tortfeasors for the fraud," that constitutes "fair notice." *Cognitim, Inc. v. Obayashi Corp.*, 2005 U.S. Dist. LEXIS 30857, *8-*9 (N.D. Cal. Nov. 15, 2005).  Indeed, "'the only significance of the conspiracy charge is that each member may be held responsible as a joint tortfeasor, regardless of whether that member directly participated in the [ultimate wrongful] act.'"  *Id.* (quoting Witkin, *Summary of California Law* (10th ed. 2005), Vol. 5, Torts, § 45).  No heightened pleading of the joint tortfeasor relationship is required.  *See id.*; *see also Vess*, 317 F.3d at 1104-05.

The Member Companies attempt to avoid this result, and assert that "membership in a trade association is insufficient to establish that the members of the association are part of a conspiracy."  [Doc. 57 at 9:6-8.]  But all parties agree that trade association membership without more is insufficient to form a conspiracy.  *See, e.g.*, *Northern California Pharmaceutical Ass'n v. United States*, 306 F.2d 379, 388-89 (9th Cir. 1962) ("The co-conspirators are the Association as

---

[6]   The Member Companies cite two civil conspiracy cases for a proposition they represent as specifically governing "false advertising claim[s]."   [Doc. 57 at 8:22-9:5.]  Neither case involved a Lanham Act false advertising claim; indeed, neither even confronted allegations of an actual agreement between defendants to act together.  *See Palomares v. Bear Stearns Res. Mortg. Co.*, 2008 U.S. Dist. LEXIS 19407, *14 (S.D. Cal. Mar. 13, 2008) (rejecting conspiracy claim in consumer fraud case because despite use of the word "conspiracy", there was no allegation that defendants ever actually "formed any agreement"); *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990) (same, but in securities fraud case).

an active and independent legal entity, its officers, directors and committeemen insofar as they have carried on proscribed conduct, and those members of the Association who have knowingly, intentionally and actively participated in an individual capacity in the scheme . . . .  This does not mean . . . that every member of the Association, by reason of his membership alone, becomes a co-conspirator. Knowledge and participation are required.") (citation and footnote omitted).

As previously noted, the SAC alleges much more than mere membership in CRA, with ample facts supporting a conclusion that the Member Companies knowingly participated "in the creation, development and propagation of the . . . false advertising campaign," *Trafficschool.com*, 633 F. Supp. 2d at 1082, sponsored it with massive financial support, and even individually ratified and reaffirmed the false messages contained in the advertising.  In *Trafficschool.com*, the court held that individual and corporate co-defendants to a Lanham Act false advertising claim were vicariously liable for the acts of another corporate defendant because they were active in overseeing its marketing decisions and drove its decision to launch the advertising.  *See id*. at 1082-83.

Funding or other sponsorship of conduct that violates the Lanham Act likewise may confer joint tortfeasor liability.  *See, e.g., Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (reversing dismissal of case against contributing and vicarious infringers because "it would be difficult for the infringing activity to take place in the massive quantities alleged without the support services provided" by them); *Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp. 1507, 1512 (S.D.N.Y. 1986) ("[A] defendant who supplies another with instruments by which another commits a tort may be found liable if he had 'knowledge that the other will or can reasonably be expected to commit a tort with the supplied instrument.'"); *Davis v. E.I. DuPont de Nemours & Co.*, 240 F. Supp. 612, 631-32 (S.D.N.Y. 1965) (holding vicariously liable a financial sponsor of infringing television programs because of its ultimate power over program content).

Other cases similarly support the conclusion that even a defendant's later ratification of a tortfeasor's Lanham Act violation is enough to hold the ratifying defendant liable as a joint tortfeasor.  As one leading treatise explains:

> All those who, in pursuance of a common plan to commit an act which is tortious, actively take part in it, or further it by cooperation or request, or lend aid or encouragement, or ratify and adopt the acts done, are as equally liable as the person who performs the tortious act itself.

4 *McCarthy on Trademarks and Unfair Competition* § 25:23 (4th ed. 2006), quoted in *Santana Prods., Inc. v. Sylvester & Assocs., Ltd.*, 2006 U.S. Dist. LEXIS 98045, *32 (E.D.N.Y. Nov. 8, 2006), *aff'd* at 279 Fed. Appx. 42 (2d Cir. 2008).

Plaintiffs allege in the SAC all of these things: The Member Companies conspired and collaborated with one another and with CRA to create, fund, and ratify the false and misleading advertising campaign.  The SAC alleges that all Defendants knew the false and misleading nature of the advertising's content.  [Doc. 54 ¶¶ 63, 64.]  Armed with this knowledge, the Member Companies collectively determined to initiate the advertising campaign through CRA in an effort to obtain an unfair commercial advantage detrimental to consumer choice.  [Doc. 54 ¶¶ 28, 29, 47-49.]  The Member Companies were uniquely positioned to propagate the campaign and develop or approve its content, because each positioned two employees—often senior executives—on CRA's governing body, its Board of Directors.  [Doc. 54 ¶¶ 24-27, 48, 49.]  Their collaboration occurred at or proximate to regular CRA board meetings.  [Doc. 54 ¶¶ 46, 47.]

The SAC also alleges—and CRA's answer admits—the Member Companies provided the predominant financial support required to undertake and annually renew sponsorship of the advertising campaign—far and above CRA's ordinary operating revenue.  [Doc. 54 ¶¶ 29, 47-50; Doc. 56 ¶¶ 29, 47, 50.]  This funding was critical to initiating and perpetuating the campaign, and was contributed by each of the Member Companies to advance their individual economic interests.

[Doc. 54 ¶¶ 47, 49.]  The Member Companies also took other measures to ratify individually and collectively the false advertising.  [Doc. 54 ¶¶ 3, 53, 58, 60-62.]  The SAC specifically avers, among other things, that several of the Member Companies tout on their websites or through spokespersons the advertising campaign and its false messages, or have similarly "ratified the messaging of the advertising campaign in direct communications to customers, ranging from detailed presentations to simple correspondence."    [Doc. 54 ¶ 53.]    Whether in presentations, annual reports, pricing sheets or otherwise, each of the Member Companies is alleged to have endorsed, supported and ratified one or more aspects of the false advertising that forms the subject of this lawsuit.  [Doc. 54 ¶¶ 61-62.]

These specific allegations combined with the others discussed above, show plausibly (and with sufficient particularity)[7] that CRA's Member Companies are joint tortfeasors that should be held liable for its violations of the Lanham Act.  *See*, *e.g.*, *Energy Brands, Inc. v. Jorgensen*, 2011 U.S. Dist. LEXIS 6937, *20 (W.D.N.Y. Jan. 24, 2011) ("[T]he complaint adequately alleges that the Jorgensen [co-]defendants were part of a conspiracy to distribute the expired *vitaminwater* back into New York, in violation of . . . the Lanham Act."); *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 173-74 (S.D.N.Y. 1998) (allegations that co-defendants purposefully conspired with infringing defendant was enough to meet notice pleading standards for joint tortfeasor liability).

---

[7]    The heightened pleading standard imposed by Rule 9(b) for a "fraudulent conspiracy" is triggered by neither fraud nor conspiracy allegations alone.    The trigger instead requires "[a]verments of fraud," coupled with a conspiracy with respect to which at least one participant "misrepresent[s] its connection" to another.  *Vess*, 317 F.3d at 1106 & 1107.  As previously noted, the SAC makes no such charge, and so its pleading of conspiracy need not satisfy Rule 9(b).  Yet even were heightened pleading required, the details averred in the SAC are a far cry from the "scant" allegations that have prompted dismissals within this circuit.  *See*, *e.g.*, *id.* at 1106 (finding a pleading wanting for sufficient particularity where even the alleged "financial contributions" from one alleged coconspirator to another lacked any detail).

### D.   THE MEMBER COMPANIES ARE NOT IMPROPERLY "LUMPED" TOGETHER

Tacitly conceding that Plaintiffs may have "somehow adequately alleged agency or conspiracy," the Member Companies maintain that "the SAC should be dismissed because Plaintiffs have improperly lumped all of the Member Companies together,"[8] rendering the vicarious liability allegations "vague." [Doc. 57 at 2:24, 10:15-18.]  In particular, the Member Companies charge that pleading vicarious liability requires that individualized allegations be made as to each Member Company—apparently even when their vicarious liability stems from conduct that is largely collective.[9]  [*See id.* at 2:18-26.]  This contention fails.

Plaintiffs appropriately group the Member Companies in making certain common averments, especially of their joint participation and collective action in certain aspects of the underlying claims.  For instance, the Member Companies collectively formed and fund CRA, and exercise control over its decisions and specifically the false advertising campaign at the center of this controversy.  [Doc. 54 ¶¶ 22, 28-29, 46-50.]  Plaintiffs likewise allege individualized facts to identify separate actions taken by the Defendants, particularly to demonstrate each of them endorsing, promoting and ratifying CRA's false advertising.  [Doc. 54 ¶¶ 53, 61-62.]   When viewed as a whole, Plaintiffs' allegations meet the pleading requirements set forth by Rule 12(b)(6) and *Twombly*.  Moreover, to the extent that

---

[8]     Ironically, the Member Companies also complain about the SAC's description of "independent and unilateral conduct" by several of the Member Companies.  [Doc. 57 at 11:26.]

[9]     The Member Companies' aversion to "lumping" is sufficiently compulsive to generate a complaint about the SAC's repeated use of the "mantra 'Member Companies.'"  [Doc. 57 at 10:27.]  But it is commonplace to refer collectively to defendants to avoid needless parsing of allegations, both to promote judicial economy and to adhere to longstanding pleading principles and the operative federal rules.  *See, e.g., Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962) (explaining that when evaluating the existence of a conspiracy, a court should avoid approaching claims as being "five completely separate and unrelated lawsuits" because "[t]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its parts, but only by looking at it as a whole") (internal citations omitted).

1  Rule 9(b) heightened pleading were required—and it is not—each of the Member

2  Companies is adequately on notice of its role in the Lanham Act violation.

3       Grouping together the Member Companies throughout much of the SAC

4  does not deprive them of fair notice about their alleged agency relationship with

5  CRA or their alleged joint tortfeasor status.  Indeed, pleading in this manner is

6  common when asserting vicarious liability.  *See, e.g., In Re: TFT-LCD (Flat Panel)*

7  *Antitrust Lit.*, 599 F. Supp. 2d 1179, 1185-85 (N.D. Cal. 2009) (rejecting

8  defendants' contention that the plaintiffs had failed to adequately allege each

9  defendant's role in a conspiracy because they were "lump[ed] together," noting that

10  "'[a]lthough Plaintiffs will [later] need to provide evidence of each Defendant's

11  participation in any conspiracy, they now only need to make allegations that

12  plausibly suggest that each Defendant participated'") (quotations omitted); *see also*

13  *In re: TFT-LCD (Flat Panel) Antitrust Lit.*, 2011 U.S. Dist. LEXIS 95053, *22-24

14  (N.D. Cal. Aug. 23, 2011) (rejecting defendants' repeated contention that a

15  pleading should be dismissed "because it does not allege facts particular to each

16  defendant" and holding "group pleading" sufficient, in combination with selected

17  allegations providing basic details, to notify defendants of the claims against them).

18       The Member Companies cite three cases to support their aversion to

19  "lumping," but each is inapposite.  In *Palomares*, the Court held that when alleging

20  fraud under either an agency or civil conspiracy theory, plaintiffs may be required

21  to "differentiate their allegations when suing more than one defendant . . . and

22  inform each defendant separately of the allegations surrounding his alleged

23  participation in the fraud."  2008 U.S. Dist. LEXIS 19407 at *12.  The court there

24  rejected boilerplate agency allegations that failed to include even the allegation that

25  defendant Bear Stearns "had the right to control the conduct of" the two other

26  defendants alleged to have directly engaged in fraud.  *Id.* at *13.  Conspiracy

27  allegations were similarly defective: they had "failed to allege that Bear Stearns

28  formed any agreement with [its co-defendants] to misrepresent . . . the first loan

product." *Id.* at *14.  Unlike *Palomares*, the SAC in this case specifically alleges the factual bases supporting the Member Companies' liability, detailing their collusion, their power to exercise control over CRA and its advertising decisions, and their repeated endorsement and ratification of decisions to further sponsor the false advertising.  [Doc. 54 ¶¶ 47-49, 53, 61-62.]

The Member Companies' reliance on *Swartz v. KPMG, LLP*, 476 F.3d 756 (9th Cir. 2006), is similarly misplaced.  Like *Palomares*, *Swartz* involved a common law fraud claim.  While recognizing "no absolute requirement that . . . the complaint . . . identify *false statements* made by each and every defendant," the court held that a plaintiff cannot "lump multiple defendants together" in a manner that obfuscates "'the role of [each] defendant[] in the alleged fraudulent scheme.'"  *Id.* at 764-765.  Plaintiffs' allegations that two defendants merely "'knew that [two other defendants] were making . . . false statements to clients, including [Plaintiff,]" did not viably render them "'active participants in the conspiracy.'"  *Id.* at 765.  The SAC's allegations suffer from no such defect, and instead detail, at length, facts alleging the Member Companies' roles in the false advertising at issue.  (Indeed, despite all their protests, the Member Companies never even feign confusion about why they have been sued.)

Finally, the plaintiffs in *Specht v. Google, Inc.*, 660 F. Supp. 2d 858 (N.D. Ill 2009), pled a Lanham Act claim generally alleging trademark infringement without making any distinctions among any of the nearly fifty individual defendants.  *Id.* at 865.  The plaintiffs also failed to identify even a single "specific act of infringement by any single Defendant or any service rendered or produced provided by any single Defendant."  *Id.*  Unsurprisingly, the court held that "Rule 8 'demands more than an unadorned, the defendant-unlawfully harmed me accusation.  Naked assertions [absent] further factual enhancement' are insufficient."  *Id.* (citations omitted).  In sharp contrast, the SAC specifies facts regarding each of the five Member Companies.

1   Yes, the SAC often groups these defendants (and even CRA) together to

2   emphasize their joint and collusive activities in furtherance of their common

3   scheme to deceive the public and harm their competitors in the caloric sweetener

4   market.  But the Member Companies cannot credibly contend that such "lumping"

5   somehow deprives them of sufficient notice of the claim against them and the bases

6   on which each is liable.  At bottom, their motion to dismiss is an effort to diminish

7   the "laudable public policy" of "[p]rotecting consumers from false or misleading

8   advertising" by eliminating from this case the opportunity for their competitors, the

9   Plaintiffs—who "have the greatest interest in stopping misleading advertising, and

10   . . . the greatest resources to devote to a lawsuit, to enforce the statute rigorously"—

11   to obtain a full recovery.  *Coca-Cola Co. v. Procter & Gamble Co.*, 822 F.2d 28, 31

12   (6th Cir. 1987).  CRA is undercapitalized and a mere tool the Member Companies

13   have employed to deceive the public and obtain an unfair economic advantage.

14   This Court should not allow them to have their cake and eat it too.

15   ## V.   **CONCLUSION**

16   The SAC sufficiently alleges the Member Companies' vicarious liability for

17   false advertising, whether based on agency or their status as joint tortfeasors with

18   CRA.  This is true whether analyzed under the pleading standards of Rule 8 or Rule

19   9(b), even though it does not apply.   For all of these reasons, the Member

20   Companies' motion to dismiss should be denied.

21

22   February 6, 2012                                    Respectfully submitted,

23                                                       SQUIRE SANDERS (US) LLP
                                                         By:*/s/ Adam R. Fox*
24                                                       Adam R. Fox
                                                         David S. Elkins
25
                                                         Attorneys for Plaintiffs
26                                                       WESTERN SUGAR COOPERATIVE,
                                                         MICHIGAN SUGAR CO., C & H SUGAR
27                                                       CO., INC., UNITED STATES SUGAR
                                                         CORPORATION, AMERICAN SUGAR
28                                                       REFINING, INC., THE AMALGAMATED

SUGAR COMPANY LLC, IMPERIAL SUGAR CORPORATION, MINN-DAK FARMERS COOPERATIVE, THE AMERICAN SUGAR CANE LEAGUE U.S.A., INC. AND THE SUGAR ASSOCIATION, INC.

*Additional Counsel for Plaintiffs:*

James P. Murphy (admitted *Pro Hac Vice*)
James.Murphy@squiresanders.com
John A. Burlingame (admitted *Pro Hac Vice*)
John.Burlingame@squiresanders.com
SQUIRE SANDERS (US) LLP
1200 19th St., NW, Ste. 300
Washington, DC  20036
Telephone:  +1.202.626.6793
Facsimile:    +1.202.626.6780

W. Mark Lanier (admitted *Pro Hac Vice*)
wml@lanierlawfirm.com
THE LANIER LAW FIRM P.C.
6810 FM 1960 West
Houston, Texas 77069
Telephone:  +1.713.659.5200
Facsimile:    +1.713.659.2204

## CERTIFICATE OF SERVICE

### (United States District Court)

I, Adam R. Fox, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 555 S. Flower Street, 31st Floor, Los Angeles, CA   90071.   On February 6, 2012, the following document(s):

**PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

was served on:

> Gail J. Standish
> WINSTON & STRAWN LLP
> 333 S. Grand Avenue
> Los Angeles, CA  90071-1543
> Dan K. Webb
> WINSTON & STRAWN LLP
> 35 W. Wacker Drive
> Chicago, CA  60601-9703

Service was accomplished as follows.

☒     **By Electronic Means**.   On the above date, I filed the above-mentioned document(s) by electronic means with the U.S. District Court for the Central District of California, over the internet, through its Case Management/Electronic Case Filing (CM/ECF) system.   As such, the Court electronically mailed such document(s) to the parties noted above, whose electronic mail address is set forth above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 6, 2012, at Los Angeles, California.

_____*/s/  Adam R. Fox*_____
Adam R. Fox