Adam R. Fox (State Bar No. 220584)
Adam.Fox@squiresanders.com
SQUIRE SANDERS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA  90071
Telephone:    +1.213.624.2500
Facsimile:    +1.213.623.4581

David S. Elkins (State Bar No. 148077)
David.Elkins@squiresanders.com
SQUIRE SANDERS (US) LLP
600 Hansen Way
Palo Alto, CA  94304
Telephone:   +1.650.856.6500
Facsimile:    +1.650.843.8777

[*Additional Counsel Identified On Signature Page*]

Attorneys for Plaintiffs WESTERN SUGAR COOPERATIVE, MICHIGAN SUGAR CO., C & H SUGAR CO., INC., UNITED STATES SUGAR CORPORATION, AMERICAN SUGAR REFINING, INC., THE AMALGAMATED SUGAR COMPANY LLC, IMPERIAL SUGAR CORPORATION, MINN-DAK FARMERS COOPERATIVE, THE AMERICAN SUGAR CANE LEAGUE U.S.A., INC., AND THE SUGAR ASSOCIATION, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN SUGAR COOPERATIVE, a Colorado cooperative, *et al.*<br><br>          Plaintiffs,<br><br>     vs.<br><br>ARCHER-DANIELS-MIDLAND COMPANY, a Delaware Corporation, *et al.*<br><br>          Defendants. | Case No. CV11-3473 CBM (MANx)<br><br>**APPENDIX OF ELECTRONIC AUTHORITIES CITED TO IN PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:    March 19, 2012<br>Time:    11:00 a.m.<br>Place:    Courtroom 2<br>The Honorable Consuelo B. Marshall<br><br>Filed concurrently with Opposition and [Proposed] Order |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE THAT** the following electronic authorities are cited to in Plaintiffs' Opposition to Certain Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint:

1. *Bottoni v. Sallie Mae, Inc.*, 2011 U.S. Dist. LEXIS 61626 (N.D. Cal. Jun. 6, 2011)

2. *Cognitim, Inc. v. Obayashi Corp.*, 2005 U.S. Dist. LEXIS 30857 (N.D. Cal. Nov. 15, 2005)

3. *Dion LLC v. Infotek Wireless, Inc.*, 2007 U.S. Dist. LEXIS 83980 (N.D. Cal. Oct. 30, 2007)

4. *EEOC v. Zonta Int'l*, 1986 U.S. Dist. LEXIS 23933 (N.D. Ill. Jun. 20, 1986)

5. *Energy Brands, Inc. v. Jorgensen*, 2011 U.S. Dist. LEXIS 6937 (W.D.N.Y. Jan. 24, 2011)

6. *In re: TFT-LCD (Flat Panel) Antitrust Lit.*, 2011 U.S. Dist. LEXIS 95053 (N.D. Cal. Aug. 23, 2011)

7. *Palomares v. Bear Stearns Res. Mortg. Co.*, 2008 U.S. Dist. LEXIS 19407 (S.D. Cal. Mar. 13, 2008)

8. *Qwest Communs. Corp. v. Herakles, LLC*, 2008 U.S. Dist. LEXIS 22154 (E.D. Cal. Mar. 20, 2008)

9. *Rpost Holdings, Inc. v. Trustifi Corp.*, 2011 U.S. Dist. LEXIS 117260 (C.D. Cal. Oct. 11, 2011)

10. *Santana Prods., Inc. v. Sylvester & Assocs., Ltd.*, 2006 U.S. Dist. LEXIS 98045 (E.D.N.Y. Nov. 8, 2006)

February 6, 2012

Respectfully submitted,

SQUIRE SANDERS (US) LLP
By: */s/ Adam R. Fox*
Adam R. Fox
David S. Elkins

Attorneys for Plaintiffs
WESTERN SUGAR COOPERATIVE, MICHIGAN SUGAR CO., C & H SUGAR CO., INC., UNITED STATES SUGAR CORPORATION, AMERICAN SUGAR REFINING, INC., THE AMALGAMATED SUGAR COMPANY LLC, IMPERIAL SUGAR CORPORATION, MINN-DAK FARMERS COOPERATIVE, THE AMERICAN SUGAR CANE LEAGUE U.S.A., INC. AND THE SUGAR ASSOCIATION, INC.

*Additional Counsel for Plaintiffs:*

James P. Murphy (admitted *Pro Hac Vice*)
James.Murphy@squiresanders.com
John A. Burlingame (admitted *Pro Hac Vice*)
John.Burlingame@squiresanders.com
SQUIRE SANDERS (US) LLP
1200 19th St., NW, Ste. 300
Washington, DC  20036
Telephone:  +1.202.626.6793
Facsimile:   +1.202.626.6780

W. Mark Lanier (admitted *Pro Hac Vice*)
wml@lanierlawfirm.com
THE LANIER LAW FIRM P.C.
6810 FM 1960 West
Houston, Texas 77069
Telephone:  +1.713.659.5200
Facsimile:   +1.713.659.2204

# EXHIBIT 1

LEXSEE



Analysis
As of: Feb 06, 2012

**ANGELO BOTTONI, et al., Plaintiffs, v. SALLIE MAE, INC., et al., Defendants.**

**No. C 10-03602 LB**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

**2011 U.S. Dist. LEXIS 61626**

**June 6, 2011, Decided
June 8, 2011, Filed**

**SUBSEQUENT HISTORY:** Later proceeding at Bottoni v. Sallie Mae, Inc., 2011 U.S. Dist. LEXIS 74324 (N.D. Cal., July 11, 2011)

**PRIOR HISTORY:** Bottoni v. Sallie Mae, Inc., 2011 U.S. Dist. LEXIS 18874 (N.D. Cal., Feb. 11, 2011)

**CORE TERMS:** collection, collector, leave to amend, consumer, borrower, rental, student loans, liquidated damages, independent contractors, retail, Rosenthal Act, Fair Debt Collection Practices Act, personal property, vicarious liability, agency relationship, previous order, predicated, reporting, vicarious, reply, defaulted, Unfair Competition Law, Act CLRA, matter of law, consumer credit, unfair practices, promissory note's, cause of action, theory of liability, failed to state

**COUNSEL:** [*1] For Angelo Bottoni, for themselves and all others similarly situated, Paul Roberts, for themselves and all others similarly situated, Tracie Serrano, for themselves and all others similarly situated, Plaintiffs: Dominic R Valerian, LEAD ATTORNEY, Patrick Victor Chesney, Ray Edwin Gallo, Gallo and Associates, San Rafael, CA.

For Shawnee Silva, Plaintiff: Patrick Victor Chesney, Dominic R Valerian, Gallo and Associates, San Rafael, CA.

For SLM Corporation, Sallie Mae, Inc., Defendants: Susan L. Germaise, LEAD ATTORNEY, McGuireWoods LLP, Los Angeles, CA; David L. Hartsell, PRO HAC VICE, McGuireWoods LLP, Chicago, Il.

**JUDGES:** LAUREL BEELER, United States Magistrate Judge.

**OPINION BY:** LAUREL BEELER

**OPINION**

**ORDER RE MOTION TO DISMISS**

[ECF No. 42]

**I. INTRODUCTION**

The plaintiffs in this putative diversity class action are former students at the California Culinary Academy who took out private (not federally-guaranteed) student loans from defendant Sallie Mae, Inc. and thereafter defaulted on the loans. Second Amended Complaint, ECF No. 35 at 3, 5-8, ¶¶ 8-10, 22-33. [1] After the default, according to Plaintiffs, Sallie Mae assessed collection charges of 25 percent of the principal and interest due (regardless of the actual collection [*2] costs incurred)

Page 1

and referred the loans to debt collectors. *Id.* at 4-8, ¶¶ 16, 22-33.

> 1 Citations are to the docket numbers in the Electronic Case File (ECF) with pin cites to the electronically-stamped pages at the top of the document (as opposed to numbers at the bottom).

The case was filed in state court, Sallie Mae removed it to federal court on August 16, 2010, and Plaintiffs filed their first amended complaint on August 18, 2010. Notice of Removal, ECF No. 1 at 2; First Amended Complaint, ECF No. 19. All parties have consented to this court's jurisdiction. ECF Nos. 11 and 15.

In the complaint, Plaintiffs alleged seven claims based on the collection fees and debt collection practices: (1) a violation of California Civil Code § 1671, which prohibits unreasonable liquidated damages provisions in contracts; (2) a violation of the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750 et seq., which prohibits unfair practices resulting in the sale of goods or services to a consumer; (3) a violation of California Business & Professions Code § 17200 et seq., known as the Unfair Competition Law, which prohibits unfair or unlawful conduct; (4) a breach of the promissory note's express [*3] terms, which allow only the collection of reasonable and actually-incurred costs; (5) a cause of action for declaratory relief based on the assessment, collection, and attempted collection of the collection fees; (6) a violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act" or "RFDCPA"), California Civil Code § 1788 et seq., which prohibits the collection of unlawful fees and unlawful debt collection practices; and (7) a violation of the Consumer Credit Reporting Agencies Act, California Civil Code § 1785.1 et seq., which prohibits the furnishing of incomplete or inaccurate information to a credit reporting bureau. First Amended Complaint, ECF No. 19 at 7-15.

Sallie Mae moved to dismiss all claims on the grounds that (A) Plaintiffs lacked standing because they never alleged injury, and (B) Plaintiffs did not state claims for relief under Federal Rule of Civil Procedure 12(b)(6). Motion to Dismiss First Amended Complaint, ECF No. 28 at 8.

After conducting a hearing on the motion on February 3, 2011, the court found standing as to all claims but dismissed without prejudice claims one (based on

on the section 1671(d) theory), two (the CLRA claim), three (on the CLRA [*4] and Rosenthal Act predicate theories), and six (the Rosenthal Act claim) for failure to state a claim. Order, ECF No. 35 at 26.

On March 10, 2011, Plaintiffs filed their second amended complaint, reasserting the same seven claims that were alleged in the first amended complaint. Second Amended Complaint, ECF No. 37 at 1. Shortly thereafter, Sallie Mae filed a motion to dismiss, arguing that Plaintiffs failed to state a claim with regard to claim one based on the section 1671(d) theory because the loans at issue are not goods or services, claim two because a student loan is a not a service within the Consumer Legal CLRA, claim six because Sallie Mae is not vicariously liable for the activities of third-party debt collectors under the RFDCPA, and claim three because the alleged violations of the CLRA and RFDCPA fail. Motion to Dismiss Second Amended Complaint, ECF No. 42.

The court dismisses claim one on the 1671(d) theory because the loans at issue are not goods or services and dismisses claim two because a student loan is a not a service within the Consumer Legal CLRA. The court also dismisses claim three to the extent that it relies on the CLRA claim. The court denies Sallie Mae's motion [*5] to dismiss Plaintiffs' claim six because Plaintiffs sufficiently alleged that the debt collectors are agents of Sallie Mae.

The following claims remain live: claim one (on the section 1671(b) theory); claim three (based on the section 1671(b) theory with regard to claim one as well as claims four, six, and seven); claim four; claim five; and claim seven.

## II. FACTS

The court described fully the facts in its earlier order. ECF No. 35 at 3-4. The amended complaint generally asserts the same facts. To the extent that in its previous order the court identified specific fact deficiencies that Plaintiffs possibly could cure by amendment, any new facts are discussed in the context of the specific claims.

Here, the court briefly summarizes the relevant background facts. Plaintiffs are four putative class representatives who obtained private (non-federally funded) student loans through Sallie Mae's Signature Student Loan program between September 2002 and September 2004 to pay for the costs of programs at the

Page 2

California Culinary Academy. Second Amended Complaint, ECF No. 37 at 5-7, ¶¶ 22, 25, 28 and 30. The promissory notes for the plaintiffs' loans contain the following or a similar provision about [*6] collection costs:

> [Borrower] agree[s] to pay [holder] reasonable amounts permitted by law, including attorneys' fees and court costs, which [holder] incurs in enforcing the terms of this Note, if [borrower is] in default.

*Id.* at 4, ¶ 14. Plaintiffs defaulted on their loans. *Id.* at 6-7, ¶¶ 23, 26, 29 and 31.

Thereafter, Plaintiffs contend, Sallie Mae added to the loan balance for each loan a collection charge of 25 percent of the outstanding principal and interest (regardless of the actual collection costs incurred) and then referred the loans to third-party debt collectors for collection. *Id.* at 4, ¶ 16. The debt collectors then tried to collect the principals, interest, and 25 percent collection costs from all four plaintiffs. *Id.* at 6-8, ¶¶ 23-24, 26, 29, 31-32. Plaintiffs allege that the collection costs were unreasonable because they were not a good-faith attempt to estimate actual damages and were assessed in part as leverage in the collection of the defaulted loans. *See id.* at 4, ¶ 18. Plaintiffs also allege the following: (A) the costs were unreasonable under the circumstances existing at the time of the contract; (B) it would not be impracticable or extremely difficult to fix the [*7] actual costs of collection; (C) the amount of the penalties does not represent the result of a reasonable endeavor by Sallie Mae to estimate a fair compensation for any loss that may be sustained; and (D) the penalties are designed to exceed the collection costs actually incurred. *See id.* at 9, ¶ 39.

### III. ANALYSIS

In its motion to dismiss, Sallie Mae argues that four of the claims as pled do not establish a claim for relief under state law. Motion, ECF No. 42. Because the court must analyze the sufficiency of the claims individually, the court first sets out the general legal standards and then analyzes each claim.

#### A. Legal Standards

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more [*8] than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly, 550 U.S. at 557.)* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555* (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id. at 550; Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); Vasquez v. Los Angeles County, 487 F.3d 1246, 1249 (9th Cir. 2007).*

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)* (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990)).* [*9] But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)* (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

#### B. Analysis of Individual Claims

#### 1. Claim One: Liquidated Damages Under California Civil Code § 1671

Plaintiffs claim that the 25 percent collection costs, which were imposed regardless of the actual collection costs incurred, operate as unlawful liquidated damages under California Civil Code § 1671(d), which governs

2011 U.S. Dist. LEXIS 61626, *9

liquidated damages provisions in contracts for the retail purchase of personal property or services primarily for personal, family, or household purposes. *See* Cal. Civil Code § 1671(c) & (d); Second Amended Complaint, ECF No. 37 at 8-9, ¶¶ 36-40. Sallie Mae argues that the claim as pled under section 1671(d) does not satisfy Rule 12(b)(6) because the loans at issue are not goods or services. Motion, ECF No. 42 at 7-9.

As to their § 1671(d) claim, in response to the court's order identifying factual deficiencies that might be cured by amendment, [*10] Plaintiffs offer one new allegation that goes to the argument that the loans are contracts for services. Specifically, Plaintiffs now allege the following:

> Sallie Mae services all of the Sallie Mae Private Loans, whether or not it is the lender. In this capacity, Sallie Mae performs a number of services, including, *inter alia*, processing loan payments, calculating and reporting account balances, and providing a website and call center for borrowers to access their loan information and make payments.

ECF No. 37 at 3, ¶ 12. As the court observed in its previous order, these services are like the ancillary housekeeping tasks of servicing a loan and do not change an extension of credit into a service under section 1671(c). *Cf. Fairbanks v. Superior Court*, 46 Cal. 4th 56, 65, 92 Cal. Rptr. 3d 279, 205 P.3d 201 (2009) (similar ancillary services did not make otherwise an otherwise intangible good (like life insurance or loans) a tangible good bought for personal, family, or household use under the Consumer Legal Remedies Act).

Plaintiffs also invite the court to reconsider its decision and devote the majority of this section of its opposition to reiterating the arguments made in the prior round of briefing. Opposition, ECF No. [*11] 45 at 7. Additionally, Plaintiffs assert that the court misapprehended Plaintiffs' argument in the earlier round of briefing and failed to address whether the loans "are contracts for the purchase or rental of money." *Id.* at 8.

The court reaffirms its reasoning as laid out in its earlier order. *See* Order, ECF No. 35 at 9-15. And, for clarity's sake, the court directly addresses Plaintiff's contention that the loans are contracts for the purchase or rental of money. First, Plaintiffs' argument is not supported by any direct authority that loans are contracts for the purchase or rental of money. And, although Plaintiffs seek to distinguish the cases, courts addressing liquidated damages provisions contained within loan documents have applied section 1671(b). *See Ridgley v. Topa Thrift & Loan Assn.*, 17 Cal. 4th 970, 977, 73 Cal. Rptr. 2d 378, 953 P.2d 484 (1998); *In re Hein*, 60 B.R. 769, 777-78 (S.D. Cal. 1986).

Second, a loan simply does not fit within an easy understanding of a contract for the "retail purchase . . . of personal property or services." Under Plaintiffs' proposed definitions and characterizations, the borrower is purchasing money with a promise to return the money (albeit, in this case, with interest) at [*12] a later date. *See* Cal. Civ. Code § 1912 ("A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed."). Treating the borrowed money as a purchased object basically turns a loan into a retail installment sale/contract for money. The structure of the California Civil Code suggests that the two are distinct. *See* Cal. Civ. Code § 1799.90 (separately listing retail installments contracts -- as defined in sections 1802.6 of the California Civil Code -- and loans in its definition of "consumer credit contract").

Nor does a loan fit within an easy understanding of a contract for the "rental . . . of personal property or services" because, according to Plaintiffs' own description of the operation of a loan, title to the lent sum passes to the borrower, ECF No. 45 at 8 n.3, and is not the payment for use of another's property. *Cf.* Black's Law Dictionary (9th ed. 2009) (defining "rent" as payment for use of another's property); *but see Wilshire Holding Corporation v. C.I.R.*, 262 F.2d 51, 53 (9th Cir. 1958) ("Roughly, interest is the rental price of money.").

Because the court is unpersuaded [*13] that the loans are contracts for retail purchases or rentals of personal property or services and Plaintiffs has not raised significant new arguments, the court dismisses without leave to amend claim one on the 1671(d) theory.

## 2. Claim Two: Unfair Practices Under the Consumer Legal Remedies Act

Plaintiffs claim that the collection costs violate the Consumer Legal Remedies Act (CLRA) because Sallie Mae represented that defaulting borrowers would be assessed only reasonable costs that were actually

Page 4

2011 U.S. Dist. LEXIS 61626, *13

incurred. Second Amended Complaint, ECF No. 37, at 9-10, ¶¶ 41-49. Sallie Mae again argues that extensions of credit are not services under the CLRA. Motion, ECF No. 42 at 10-12. Plaintiffs do not dispute Sallie Mae's contention that their CLRA claims fail as a matter of law and should be dismissed. Opposition, ECF No. 42 at 14. Given Plaintiffs' lack of objection and the court's analysis on the issue in its previous order, ECF No. 35 at 15-16, the court dismisses claim two without leave to amend.

### 3. Claim Six: Violation of the Rosenthal Fair Debt Collection Practices Act

Plaintiffs claim Sallie Mae violated the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). Specifically, Plaintiffs [*14] allege the following new facts in response to the court's identification of factual deficiencies in the earlier complaint:

> In demanding and/or collecting the 25% Collection Penalties on behalf of Sallie Mae, Sallie Mae's debt collectors act as the agents of Sallie Mae. Sallie Mae has the right to, and does in fact, control the manner and method by which these debt collectors demand payment and collect debt. In addition, Sallie Mae's debt collectors are authorized to act and act on Sallie Mae's behalf by demanding, collecting, and compromising debts. Amongst other things, Sallie Mae directs the debt collectors to demand and collect the 25% Collection Penalties.

Second Amended Complaint, ECF No. 37 at 4, ¶ 17.

Sallie Mae argues that Plaintiffs failed to state a claim because there are no allegations that they engaged in debt collection and the court should ignore what Sallie Mae characterizes as "the Plaintiffs' conclusory allegations (and legal implications) that the third-party debt collection companies act as 'agents' of Sallie Mae." Motion to Dismiss, ECF No. 42 at 13.

Sallie Mae notes that no reported California case decided under the RFDCPA that has attributed the debt collection activities [*15] of a third-party debt collection company to the original creditor for the purpose of imposing liability under the statute. Id. Sallie Mae claims that the only case to have held a creditor vicariously liable for the activities of a third-party collector was

based on an attorney-client relationship, which is a principal-agent relationship as a matter of law. Id. (citing Oei v. N. Star Capital Acquisitions, LLC, 486 F. Supp. 2d 1089, 1094-96 (C.D. Cal. 2006)). On the other hand, Plaintiffs point to a number of non-California cases in which courts have found that vicarious liability under the federal Fair Debt Collection Practices Act may be imposed based on the conduct of non-attorney debt collector. Opposition, ECF No. 45 at 12 n.8.

Sallie Mae also notes that there is no California authority holding a third-party debt collector to be an agent of the creditor. Motion to Dismiss, ECF No. 42 at 13. Sallie Mae further argues that the debt collectors are independent contractors and, therefore, that vicarious liability does not apply. Id. Plaintiffs argue that being an independent contractor and being an agent are not mutually exclusive. Opposition, ECF No.45 at 14. Plaintiffs also argue that [*16] Sallie Mae misidentifies the test for whether an entity is an independent contractor or employee as the test for distinguishing between an agent and non-agent. Id. at 13.

Debt collectors may be independent contractors and agents. See City of Los Angeles v. Meyers Bros. Parking System, Inc., 54 Cal. App.3d 135, 138, 126 Cal. Rptr. 545 (Cal. Ct. App. 1975) ("One who contracts to act on behalf of another and subject to the other's control except as to physical conduct is both an agent and an independent contractor."). Moreover, an agency relationship generally is a question of fact, Seneris v. Haas, 45 Cal.2d 811, 831, 291 P.2d 915 (1955) ("Unless the evidence is susceptible of but a single inference, the question of agency is one of fact for the jury."), and Sallie Mae's arguments regarding a right to control are better suited to a motion for summary judgment than a motion to dismiss. See Dion LLC v. Infotek Wireless, Inc., No. C07-1431 SBA, 2007 U.S. Dist. LEXIS 83980, 2007 WL 3231738 at *4 (N.D. Cal. Oct. 30, 2007) (denying motion to dismiss vicarious liability claim where plaintiffs alleged agency relationship between parties without additional factual allegations) but compare Hawkins v. First Horizon Home Loans, CIV No. S-10-1876 FCD/GGH, 2010 U.S. Dist. LEXIS 124529, 2010 WL 4823808 (E.D. Cal. Nov. 22, 2010) [*17] ("[P]laintiffs do not allege any facts to show how Horizon authorized any other defendant to represent and/or bind it. Plaintiffs must allege such facts to sufficiently apprise defendants of the nature of the agency relationship."); see also Greenberg v. Sala, 822 F.2d 882, 886 (9th Cir.1987) ("A person legally responsible for an

act may be alleged to have committed it without going into the theories which support that ultimate fact.").

In Plaintiffs's first amended complaint, they merely alleged that Salle Mae referred the debt to professional debt collectors. First Amended Complaint, ECF No. 19 at 4, ¶ 14. In Plaintiffs' second amended complaint, they explicitly allege that the debt collectors act as the agents of Sallie Mae and that Sallie Mae has the right to, and does in fact, control the manner and method by which these debt collectors demand payment and collect debt, including that the debt collectors are directed to demand and collect the 25% collection penalties. Second Amended Complaint, ECF No. 37 at 4, ¶ 17. Plaintiffs might not be able to prove these allegations but they are sufficient to state a vicarious liability claim against Sallie Mae under the RFDCPA. At the motion [*18] hearing, Sallie Mae agreed that the issue was more appropriate for a motion for summary judgment instead of a motion to dismiss.

**4. Claim Three: Violations of the Unfair Competition Law**

In relevant part to the issues in this motion, Plaintiffs allege in the second amended complaint that Sallie Mae's practices violate the unlawful prong of section 17200 of the California Business and Professions Code (the "UCL") because they violate section 1671 of the California Civil Code; the CLRA (when Sallie Mae did not issue the loan itself); the terms of the Notes; the Rosenthal Act; and the CCRAA. Second Amended Complaint, ECF No. 37 at 10-11 at ¶ 52.

Sallie Mae argues that Plaintiffs' unlawful UCL claim fails to the extent that their CLRA and RFDCPA claims fail. Motion, ECF No. 42 at 10. In its reply, Sallie Mae asserts for the first time that UCL claims cannot be predicated on vicarious liability. Reply, ECF No. 47 at 7 (citing *Emery v. VISA Int'l Serv. Ass'n, 95 Cal. App. 4th 952, 960, 116 Cal. Rptr. 2d 25 (2002)* (holding that an "unfair practices claim under section 17200 cannot be predicated on vicarious liability.")).

Plaintiffs concede that their unlawful UCL claim fails to the extent that it is based on their [*19] CLRA claim. Opposition, ECF No. 45 at 15.

The prohibition against bringing vicarious liability claims under the UCL is predicated on a lack of "personal 'participation in the unlawful practices' and 'unbridled

control.'" *Emery, 95 Cal. App. 4th at 960* (citing *People v. Toomey, 157 Cal. App. 3d 1, 14, 203 Cal. Rptr. 642 (1984)).* Again, Plaintiffs allege that Sallie Mae controls the debt collectors in that Sallie Mae directs the debt collectors to demand and collect the allegedly illegal collection penalties, which are the actions prohibited by the RFDCPA. Second Amended Complaint, ECF No.37 at 4, ¶ 17. The court has construed this as an agency theory of liability -- and, indeed, that is the express theory in the complaint, ECF No. 37 at 4, ¶ 17 --that is sufficient to survive a motion to dismiss. See *Toomey, 157 Cal. App. 3d at 14* (holding corporation liable for violations of UCL by employees, but limiting individual liability to cases where individual directly participated in violations). Furthermore, "[i]ssues raised for the first time in the reply brief are waived." *Bazuaye v. I.N.S., 79 F.3d 118, 120 (9th Cir. 1996).*

The court dismisses without leave to amend Plaintiffs' unlawful UCL claim to the extent [*20] that it is based on their failed CLRA claim and a 1671(d) theory of liability. See *Ingles v. Westwood One Broadcasting, Servs., Inc., 129 Cal. App. 4th 1050, 1060, 28 Cal. Rptr. 3d 933 (2005)* (holding that a defendant "cannot be liable under § 17200 for committing unlawful business practices without having violated another law").

**IV. CONCLUSION**

For the foregoing reasons, the court dismisses claim one (based on the section 1671(d) theory only), claim two (the CLRA claim), and claim three (based on the CLRA predicate theory only) without leave to amend. The following claims remain live: claim one (on the section 1671(b) theory); claim three (based on the section 1671(b) theory with regard to claim one as well as claims four, six, and seven); claim four; claim five; and claim seven.

Sallie Mae shall file its answer by June 20, 2011. Fed. R. Civ. P. 12(a)(4). An initial case management conference is set for July 28, 2011 in Courtroom 4, 1301 Clay Street, Oakland, California, at 10:30 a.m. A joint case management statement is due on July 21, 2011.

This disposes of ECF No. 42.

**IT IS SO ORDERED.**

Dated: June 6, 2011

# EXHIBIT 2

LEXSEE



Analysis
As of: Feb 06, 2012

COGNITIM, INC., a California corporation, Plaintiff, v. OBAYASHI CORPORATION, a Japanese Corporation; TOSHINORI IWAMOTO; SAVIO FERNANDES, Defendants.

No. C-05-3747 SC

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2005 U.S. Dist. LEXIS 30857

November 15, 2005, Decided
November 15, 2005, Filed

**SUBSEQUENT HISTORY:** Motion granted by, Claim dismissed by Cognitim, Inc. v. Obayashi Corp., 2006 U.S. Dist. LEXIS 25186 (N.D. Cal., Feb. 15, 2006)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, a Japanese corporation and a former employee of plaintiff California corporation, filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss plaintiff's action alleging fraud, conspiracy to commit fraud, breach of the implied covenant of good faith and fair dealing, intentional and negligent interference with a prospective economic advantage, and breach of an implied covenant.

**OVERVIEW:** Plaintiff contracted with the Japanese corporation to perform computer networking tasks, and it assigned defendant employee to the job. Plaintiff asserted that defendant employee under-reported the hours he worked at the Japanese corporation, that a potential customer refused to hire plaintiff because defendant employee sabotaged an interview, and that the Japanese corporation ultimately hired defendant employee without paying a required conversion fee to plaintiff. The court found that the claim of under-reporting hours met the

heightened pleading requirements of Fed. R. Civ. P. 9(b). Plaintiff's claim that each defendant should be held responsible as joint tortfeasors for the fraud gave fair notice of the conspiracy claim. Plaintiff adequately pled facts to support a claim for breach of the covenant of good faith and fair dealing by declaring that defendants breached contracts each had with plaintiff. Also, plaintiff was entitled to plead both express and implied contracts. The interference claims failed because plaintiff failed to allege facts demonstrating that defendants' interference was in itself wrongful by some legal measure other than the fact of the interference itself.

**OUTCOME:** The court denied defendants' motion with respect to plaintiff's claims for fraud, conspiracy to commit fraud, breach of the implied covenant of good faith and fair dealing, and breach of an implied covenant. The court granted defendants' motion with respect to the interference claims, and it granted plaintiff 30 days' leave to amend its complaint.

**CORE TERMS:** conspiracy, hire, conversion, breached, wrongful act, interview, leave to amend, fair notice, economic advantage, implied contract, satisfaction, covenant, visa, particularity, implied covenant, fair dealing, misrepresentation, under-reported, quitting, pled,

2005 U.S. Dist. LEXIS 30857, *

Federal Rules, causes of action, factual allegations, constituting, heightened, diversity, definite, pleader's, prepare, notice

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
[HN1]A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In reviewing a Fed. R. Civ. P. 12(b)(6) motion, the court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. The complaint need not set out the facts in detail; what is required is a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). Thus, the court's task is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.

*Civil Procedure > Federal & State Interrelationships > Erie Doctrine*
[HN2]In diversity cases, state law determines whether claims exist and what defenses are recognized. The Federal Rules of Civil Procedure, however, govern the manner in which these claims and defenses are raised.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN3]The Federal Rules of Civil Procedure provide for notice pleading. This means that (a) the pleadings need not set out in detail the alleged facts constituting the claim for relief or defense, unless heightened pleading standards are required and (b) the pleadings need give, through a short and plain statement, only fair notice of the pleader's claim or defense so that opposing parties can respond, undertake discovery, and prepare for trial.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN4]In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Fed. R. Civ. P. 9(b). Plaintiffs must put forth the who, what, where, and when of the alleged fraud in order to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate. Rule 9(b)'s particularity requirement is in place so that the defendant can prepare an adequate answer from the allegations and not just deny that they have done anything wrong.

*Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > Elements*
[HN5]Fraud, under California law, consists of the following elements: (1) misrepresentation; (2) scienter; (3) intent to induce reliance; (4) justifiable reliance on the misrepresentation; and (5) damage caused by reliance on the misrepresentation.

*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > General Overview*
[HN6]There is no civil action for conspiracy to commit a recognized tort in California unless the wrongful act itself is committed and damage results from that act. Hence, where the complaint charges a conspiracy and the commission of a wrongful act, the only significance of the conspiracy charge is that each member may be held responsible as a joint tortfeasor, regardless of whether that member directly participated in the act.

*Contracts Law > Types of Contracts > Express Contracts*
*Contracts Law > Types of Contracts > Implied-in-Fact Contracts*
[HN7]Under California law, contracts can be express or implied, the difference between the two being only the manifestation of assent.

*Torts > Business Torts > Commercial Interference > Prospective Advantage > Elements*
[HN8]One element of the tort of intentional interference with prospective economic advantage is conduct that was wrongful by some legal measure other than the fact of the interference itself. Examples of these wrongful acts are bribery or offering sexual favors. The other elements are: (a) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (b) the defendant's knowledge of the relationship; (c) intentional acts by the defendant

designed to disrupt the relationship; (d) actual disruption of the relationship; and (e) economic harm to the plaintiff proximately caused the acts of the defendant.

*Torts > Business Torts > Commercial Interference > Prospective Advantage > Elements*

[HN9]As with the tort of intentional interference with prospective economic advantage, a plaintiff must plead and prove that defendant's conduct, other than the interference itself, was wrongful in a claim for negligent interference with prospective economic advantage.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Sanctions > Baseless Filings*

[HN10]A party, subject to the requirements of Fed. R. Civ. P. 11, may set forth inconsistent theories and inconsistent factual allegations. Fed. R. Civ. P. 8(e)(2).

**COUNSEL:** [*1] For Cognitim, Inc., Plaintiff: Mark Aaron Serlin, Serlin & Whiteford, LLP, Sacramento, CA.

For Obayashi Corporation, Toshinori Iwamoto, Savio Fernandes, Defendants: Thomas P. McGuire, Monteleone & McCrory, LLP, Los Angeles, CA.

**JUDGES:** Samuel Conti, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Samuel Conti

**OPINION**

*ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS*

**T I. INTRODUCTION**

Cognitim, Inc. ("Plaintiff" or "Cognitim") brought this action in the Superior Court for the County of San Francisco, California against the Obayashi Corporation ("Obayashi"), Toshinori Iwamoto ("Iwamoto"), and Savio Fernandes ("Fernandes"), (collectively "Defendants"), alleging, *inter alia*, fraud and interference with economic expectation. Plaintiff's Complaint at 3-8 ("Compl.").

Presently before the Court is Defendants' motion to

dismiss Plaintiff's six causes of action pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b) (6) or to order Plaintiff to file a more definite statement under FRCP 12 (e). Defendants' Memorandum in Support of Motion to Dismiss at 6 ("Defs.' Mem."). The [*2] Court, having reviewed the parties' submissions, hereby DENIES Defendants' motion to dismiss Plaintiff's first, second, third, and sixth claims. The Court GRANTS Defendant's motion as to Plaintiff's fourth and fifth claims. The Court DISMISSES Plaintiff's fourth and fifth claims and GRANTS Plaintiff thirty days' leave to amend its Complaint as to its fourth and fifth claims.

**II. BACKGROUND**

The following allegations are taken from Plaintiff's Complaint and will be assumed as true for purposes of the present motion.

Obayashi contracted with Plaintiff, a computer technical support firm, to perform computer networking tasks. [1] Compl. at 2, 3. Plaintiff assigned its employee, Fernandes, to perform these tasks for Obayashi. *Id.* While there, Fernandes "habitually and systematically under-reported" to Cognitim the hours he worked at Obayashi. *Id.*

> 1   Neither party has stated what sort of business Obayashi engages in.

Iwamoto, an employee of Obayashi, told Vipin Suneja ("Suneja"), president of [*3] Cognitim, that Obayashi wanted to hire Fernandes. *Id.* Suneja agreed, provided that Obayashi would pay the conversion fee for taking Fernandes. [2] *Id.* Iwamoto said that Obayashi did not want to pay the conversion fee and that it would not hire Fernandes directly. *Id.*

> 2   A conversion fee is, apparently, a courtesy amount one business pays to another in order to compensate the other company for the costs it paid to obtain the services of a non-U.S. citizen employee. Compl. at 2.
>
>      Fernandes is a citizen of India. *Id.* at 1. Cognitim sponsored Fernandes for purposes of obtaining a H-1B visa for him, posted the bond for his visa, and paid for his relocation fees. *Id.* at 2.

DirectApps, an entity not a party to this action,

wanted to hire Cognitim but wanted to interview Fernandes, as the primary Cognitim employee on the proposed project, before agreeing to hire Cognitim. Compl. at 2-3. After the interview, DirectApps told Obayashi that it would not hire Cognitim. *Id.* at 3. A week after that, Fernandes [*4] quit his job at Cognitim and told Suneja that he was taking a job in Dallas. *Id.* The following week, Suneja learned that Fernandes had "bombed the interview" with DirectApps causing DirectApps not to hire Cognitim. *Id.* Some time after this, Cognitim learned that Fernandes had taken a position with Obayashi. *Id.*

Plaintiff brought an action in the Superior Court for the County of San Francisco, California alleging that Defendants (1) committed fraud, (2) conspired to commit fraud, (3) breached the implied covenant of good faith and fair dealing, (4) intentionally interfered with a prospective economic advantage, (5) negligently interfered with a prospective economic advantage, and (6) breached an implied contract. *Id.* at 3-8. Defendants timely removed the action to Federal Court, alleging that complete diversity existed between Plaintiff and Defendants. Notice of Removal at 1-2.

In the present motion, Defendants contend that the six claims should be dismissed under FRCP 12 (b) (6). Defs.' Mem. at 6. In the alternative, Defendants move the Court to order Plaintiff to file a more definite statement under FRCP 12 (e) [*5] because the "claims are confusingly written and fail to identify which defendant is the target of which claim." *Id.* at 2.

### III. *LEGAL STANDARD*

"[A] complaint [HN1]should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). "In reviewing a 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996); *see also Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The complaint need not set out the facts in detail; what is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a); *see also La Salvia v. United Dairymen*, 804 F.2d 1113, 1116 (9th Cir. 1986). Thus, the Court's task "is merely to assess the legal feasibility

of the complaint, not to assay the weight of the evidence which might [*6] be offered in support thereof." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

[HN2]In diversity cases, state law determines whether claims exist and what defenses are recognized. *See Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir. 1987). The Federal Rules, however, govern the manner in which these claims and defenses are raised. 5 Wright & Miller, *Federal Practice and Procedure*, § 1204.

[HN3]The Federal Rules provide for notice pleading. *See Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). This means that (a) the pleadings need not set out in detail the alleged facts constituting the claim for relief or defense, unless heightened pleading standards are required and (b) the pleadings need give, through a short and plain statement, only fair notice of the pleader's claim or defense so that opposing parties can respond, undertake discovery, and prepare for trial. *Id.*

### IV. *DISCUSSION*

A. *First Claim: Fraud*

Defendants contend that Plaintiff has failed to meet the heightened pleading requirements for fraud under FRCP 9(b). Defs.' Mem. at 7.

Plaintiff alleges that Fernandez [*7] "under-reported", to Cognitim the hours he worked at Obayashi. Compl. at 2.

[HN4]In all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated "with particularity." FRCP 9(b). Plaintiffs must put forth the "who, what, where, and when of the alleged fraud" in order to "assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mutual Life Insurance Company*, 172 F.3d 467, 469 (7th Cir. 1999). FRCP 9(b)'s particularity requirement is in place so that the "defendant can prepare an adequate answer from the allegations," *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989), and "not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[HN5]Fraud, under California law, consists of the following elements: (1) misrepresentation; (2) scienter;

Page 4

(3) intent to induce reliance; (4) justifiable reliance on the misrepresentation; and (5) damage caused by reliance on the misrepresentation. Witkin, *Summary* [*8] *of California Law* (10th ed. 2005), Volume 5, Torts, § 772.

The Court finds that the Plaintiff has put forth with particularity a set of facts sufficient to state a claim of fraud. Specifically, Plaintiff has stated that Fernandes, during the time he worked for Obayashi and at Obayashi's behest, under-reported to Plaintiff the hours he worked, so that Obayashi could pay Plaintiff less than it should have. Compl. at 2. This pleading gives Defendants fair notice of the nature of the claim.

The Court denies Defendants' motion to dismiss the first claim.

The following section discusses Defendants' contention that Plaintiff's first claim does not make it clear against whom the allegations are directed.

B. *Second Claim: Conspiracy to Defraud*

Defendants contend that there is no cause of action for conspiracy to defraud under California law. Defs.' Mem. at 9. Defendants also contend that Plaintiff's second claim simply duplicates the first claim. *Id.*

Defendants are right and wrong. "[T]here [HN6]is no civil action for conspiracy to commit a recognized tort unless the wrongful act itself is committed and damage results from that act." Witkin, *Summary of California Law* (10th [*9] ed. 2005), Volume 5, Torts, § 45. "Hence, where the complaint charges a conspiracy and the commission of a wrongful act, the only significance of the conspiracy charge is that each member may be held responsible as a joint tortfeasor, regardless of whether that member directly participated in the act." Id.

The Court finds that Plaintiff has properly pled a charge of conspiracy. Specifically, Plaintiff has alleged, in his first claim, a claim of fraud. Then, by bringing a charge of conspiracy, Plaintiff claims that each defendant should be held responsible as joint tortfeasors for the fraud. This pleading gives Defendants fair notice of the nature of the claim.

The Court therefore denies Defendants' motion to dismiss Plaintiff's second claim.

C. *Third Claim: Breach of Implied Covenant of Good Faith and Fair Dealing*

Defendants contend that Plaintiff has failed to "allege or identify any contract language or operative transactional facts from which the Court can infer an implied covenant." Defs.' Mem. at 10. More specifically, Defendant asserts that when parties rely on a written contract, the exact terms of that contract must be given in order to demonstrate a breach of the [*10] covenant. *Id.*

Plaintiff contends that Fernandes breached the covenant by falsely representing his continued employment with Cognitim and that Obayashi breached the covenant by misrepresenting its intentions in regard to Cognitim and Fernandes. Compl. at 5-6.

Defendants' contentions are without merit. First, Plaintiff does not contend that there were written contracts. [HN7]Under California law, contracts can be express or implied, the difference, between the two being only the manifestation of assent. *See* Witkin, *Summary of California Law* (10th ed. 2005), Volume 1, Contracts, § 102.

The Court finds that Plaintiff has adequately pled a set of facts to support a claim for breach of the covenant of good faith and fair dealing by declaring that Fernandes and Obayashi breached contracts each had with Plaintiff. This pleading gives Defendants fair notice of the nature of the claim.

As to Plaintiff's third claim, the Court denies Defendants' motion to dismiss.

D. *Fourth Claim: Intentional Interference with Prospective Economic Advantage*

Plaintiff contends that despite Obayashi's assurances, it intended to have Fernandes work for Obayashi immediately, without the payment [*11] of the conversion fee. Compl. at 6. As part of this conspiracy, Plaintiff contends, Fernandes "sabotaged his interview with DirectApps" which caused DirectApps not to hire Cognitim for the networking contract, even though DirectApps "was already an existing client of Cognitim." *Id.* Plaintiff also alleges that as part of this interference "defendants falsely represented to Cognitim that Cognitim's services were no longer needed and that Fernandes was quitting to go to work for another firm in Dallas, Texas." *Id.*

Defendants contend that Plaintiff's "theory makes no sense, because even if Mr. Fernandes did well at the

interview, there was nothing to stop Mr. Fernandes from quitting and going to work for Obayashi." Defs.' Mem. at 11.

[HN8]One element of the tort is "[c]onduct that was wrongful by some legal measure other than the fact of the interference itself." [3] Witkin, *Summary of California Law* (10th ed. 2005), Volume 5, Torts, § 742. Examples of these wrongful acts are bribery or offering sexual favors. *Id.* at § 744.

> 3   The other elements are (a) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (b) the defendant's knowledge of the relationship; (c) intentional acts by the defendant designed to disrupt the relationship; (d) actual disruption of the relationship; and (e) economic harm to the plaintiff proximately caused the acts of the defendant. Witkin, *Summary of California Law* (10th ed. 2005), Volume 5, Torts § 742.

[*12]   Plaintiff has not alleged to the Court's satisfaction any facts demonstrating that Defendants' interference was in itself wrongful by some legal measure other than the fact of the interference itself. [4] Without alleging such facts, it is not legally feasible for the Plaintiff to bring this claim.

> 4   Plaintiff has not demonstrated to the Court's satisfaction that the failure to pay the conversion fee is a legally wrongful act.

The Court grants Defendants' motion as to the fourth claim. The Court therefore dismisses the fourth claim and grants Plaintiff thirty days' leave to amend its Complaint as to this claim.

E. *Fifth Claim: Negligent Interference with Prospective Economic Advantage*

Plaintiff puts forth the same allegations in his fifth claim as he put forth in his fourth claim. Compl. at 7.

[HN9]As with the former tort, a plaintiff must plead and prove that defendant's conduct, other than the interference itself, was wrongful. Witkin, *Summary of California Law* (10th ed. 2005), Volume 5, Torts, § 742.

[*13]   Plaintiff has not alleged to the Court's satisfaction, any facts that Defendants' interference was

wrongful in some legal measure other than the fact of the interference itself. [5] Without such allegations of fact, it is not legally feasible for the Plaintiff to bring this claim.

> 5   Plaintiff has not demonstrated to the Court's satisfaction that the failure to pay the conversion fee is a legally sufficient wrongful act.

The Court grants Defendants' motion as to the fifth claim. The Court therefore dismisses the fifth claim and grants Plaintiff thirty days' leave to amend its Complaint as to this claim.

F. *Sixth Claim: Breach of Implied Contract*

Plaintiff contends that Fernandes, by quitting his job at Cognitim and accepting a position at Obayashi, breached his implied contract with Cognitim, which required him to work for Plaintiff long enough to compensate it for paying for his visa. Compl. at 7-8.

Defendants contend that Plaintiff "already alleged [that] these terms were the subject of an express [*14] contract" as stated in Paragraph 6 of Plaintiff's Complaint. Defs.' Mem. at 15-16. Specifically, Defendants contend that because an express contract and an implied contract -- both embracing the same subject matter at the same time -- cannot exist, this claim should be dismissed. *Id.* at 16.

Paragraph 6 states that Fernandes "agreed to work for Cognitim for a sufficient period of time to" allow Cognitim to recoup its costs of sponsoring Fernandes for [the] visa." Compl. at 2.

The Court does not agree with Defendants' contentions. [HN10]A party, subject to the requirements of Rule 11, may set forth inconsistent theories and inconsistent factual allegations. *See* FRCP 8(e)(2); *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994).

The Court therefore denies Defendants' motion to dismiss Plaintiff's sixth claim.

V. *CONCLUSION*

The Court finds that Plaintiff's first, second, third, and sixth claims are sufficiently pled. The Court further finds that Plaintiff's fourth and fifth claims do not allege facts sufficient to sustain them.

For the reasons discussed above, the Court hereby

Page 6

2005 U.S. Dist. LEXIS 30857, *14

DENIES Defendants' motion [*15] to dismiss Plaintiff's first, second, third, and sixth claims. The Court hereby GRANTS Defendants' motion as to Plaintiff's fourth and fifth claims. The Court hereby DISMISSES Plaintiff's fourth and fifth claims and GRANTS Plaintiff thirty days' leave to amend its Complaint as to these claims. If Plaintiff fails to refile within the thirty-day period, the Court will bar Plaintiff from bringing these claims against Defendants.

IT IS SO ORDERED.

Dated: November 15, 2005

Samuel Conti

UNITED STATES DISTRICT JUDGE

# EXHIBIT 3

LEXSEE



Cited
As of: Feb 06, 2012

DION LLC, Plaintiff, v. INFOTEK WIRELESS, INC. AND INFOTEK ASSOCIATES, INC., Defendants.

No. C 07-1431 SBA, [Docket No. 23]

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

2007 U.S. Dist. LEXIS 83980

October 30, 2007, Decided
October 30, 2007, Filed

**CORE TERMS:** breach of contract, alter ego, promissory estoppel, notice, definite, alter ego doctrine, consulting agreement, cause of action, termination, consulting, stricken, written agreement, pleading requirements, breach-of-contract, entity, legal theories, agency relationship, responsive pleading, unity of interest, inequitable result, summary judgment, ownership, estoppel, ego, sister, owed, theory of recovery, liability arising, facts supporting, legally cognizable

**COUNSEL:** [*1] For Dion LLC, a limited liability company, Plaintiff: Beth E. Terrell, LEAD ATTORNEY, Tousley Brain Stephens, Seattle, WA.

For Infotek Wireless, Inc., a California corporation, Infotek Associates, Inc., a Delaware corporation, Defendants: William Edward Taggart, Jr., LEAD ATTORNEY, Taggart & Hawkins, Oakland, CA.

**JUDGES:** Saundra Brown Armstrong, United States District Judge.

**OPINION BY:** Saundra Brown Armstrong

**OPINION**

**ORDER**

Before the Court is a motion to dismiss [Docket No. 23] by defendant Infotek Associates, Inc. (Associates) or, in the alternative, a motion for a more definite statement or a motion to strike. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, Associates' motion to dismiss pursuant to Federal Rule 12(b)(6) is hereby DENIED. Associates alternative motions pursuant to Rules 12(e) and 12(f) are also DENIED.

**BACKGROUND**

This case arises from a consulting agreement between Dion LLC (Dion), a Washington-based company, and a California corporation known as InfoTek Wireless, Inc (Wireless). A. Edward Mohebi, the sole member of Dion, alleges that upon termination [*2] of his consulting work, Wireless refused to honor the terms of their written agreement under which he was owed more than $ 75,000. *See* Docket No. 19 at P 5.9. Mohebi subsequently filed this lawsuit against both Wireless and Infotek Associates, Inc. (Associates), a sister corporation of Wireless that Mohebi claims has assets to pay him and has sufficient connections to Wireless such that it is

Page 1

2007 U.S. Dist. LEXIS 83980, *2

obligated to pay Wireless' debt. *See* Docket No. 30 at 1-2.

In September 2006, Wireless president Siavash Poursartip approached Mohebi and discussed the possibility of an agreement for consulting services. *See* Docket No. 19 at 3. The discussions, during which Poursartip supposedly provided financial statements showing the viability of Wireless, resulted in the execution of several agreements: a consulting agreement, a stock purchase agreement and a service termination agreement. *Id.* The service termination agreement provided compensation to Mohebi in the event of termination for anything other than "cause." *See* Docket No. 25, Ex. C.

The employment agreement between Mohebi's company, Dion, and Wireless proved to be short-lived. *See* Docket No. 24 at 4. Mohebi claims that soon after he began working, [*3] he discovered that virtually all of Wireless' assets were held by its sister corporation, Associates. *See* Docket No. 19 at 4. After explaining his concern to Wireless board members, Mohebi says Wireless executed an agreement with Associates to transfer assets in order for both entities to become solvent. *Id.* Wireless disclaims knowledge of or information about any such agreement in its answer. *See* Docket No. 22 at 4. After several subsequent disputes between Mohebi, on behalf of his company Dion, and Wireless board members, Mohebi finally declared that the terms of the "service termination agreement" had been met and he requested payment. To date, Mohebi claims he is owed more than $ 75,000 for his February consulting fees and his severance pay. *Id.* at 6.

On March 13, 2007, Dion filed a complaint against Wireless and its related company, Associates, claiming breach of contract. *See* Docket No. 1. In its second amended complaint, Dion has expanded its allegations against Associates, claiming that Associates is liable to Dion under several legal theories including the alter ego doctrine and agency principles. *See* Docket No. 19. On June 21, 2007, Associates filed a motion to dismiss under [*4] Federal Rule of Civil Procedure 12(b)(6) arguing that, since no written agreement exists between Associates and the plaintiff, there can be no basis for contractual liability. *See* Docket No. 24 at 6. In the alternative, Associates moves for a more definite statement under Rule 12(e) or a motion to strike under Rule 12(f). *See* Docket No. 23.

The issues before the Court are whether Dion's second amended complaint is sufficient to withstand the requirements of Rule 12(b)(6), 12(e) or 12(f).

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if it does not "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-pleaded facts are taken as true. *Syverson v. IBM,* 472 F.3d 1072, 1075 (9th Cir. 2007). However, conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences are insufficient to defeat a motion to dismiss. *See Fields v. Legacy Health Sys.,* 413 F.3d 943, 950 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

Courts generally do not look [*5] outside the pleadings, including any attachments thereto, in deciding a motion to dismiss. *See United States v. LSL Biotechs.,* 379 F.3d 672, 699 (9th Cir. 2004). A document is not considered outside the complaint if it is "incorporated by reference," *i.e.,* the complaint specifically refers to the document and if its authenticity is not questioned. *See Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005); *Cooper v. Pickett,* 137 F.3d 616, 622-23 (9th Cir. 1997). If dismissal of the complaint is warranted, it is generally without prejudice, unless it is clear that the complaint can not be saved by any amendment. *See Sparling v. Daou,* 411 F.3d 1006, 1013 (9th Cir. 2005), *cert. denied,* 546 U.S. 1172, 126 S. Ct. 1335, 164 L. Ed. 2d 51 (2006); *Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir. 2002).

Federal rule of Civil Procedure 12(e) states that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Under Rule 12(f), "[u]pon motion made by a party before responding to a pleading . . . the court may order stricken from any pleading [*6] any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Federal Rule 8(a), which governs federal pleading standards, states that "[a] pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain . . . a short and plain statement of the claim showing that the pleader

Page 2

is entitled to relief."

## ANALYSIS

### A. Breach of contract

The crux of Associates' argument for dismissal under Rule 12(b)(6) rests upon the absence of any written contract between Dion and Associates. *See* Docket No. 24 at 6. Associates reasons that since no written agreement exists with Dion, there can be no breach of a non-existent document. *See* Docket No. 24 at 6. Because Dion's Second Amended Complaint [1] contains only a single cause of action -- for breach of contract -- Associates concludes that the pleading contains no legally cognizable claim against it. Dion counters this argument by stating two theories -- alter ego and agency -- by which Associates can be held liable for breach of contract. *See* Docket No. 30 at 4-6.

> 1   *See* Docket No. 19.

Associates points to several California state court decisions that set forth [*7] minimum pleading requirements in the context of contract disputes. *See* Docket No. 24 at 6-7. But it is hornbook law that the federal standard, not the California counterpart, that governs. In federal court, "[p]leadings need suffice only to put the opposing party on notice of the claim . . . . Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004)* (quoting *Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001)).* Accordingly, Associates' reliance on state court pleading requirements for breach-of-contract claims is misplaced.

### 1. Alter ego liability

"A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself." *Local 159 v. Nor-Cal Plumbing, Inc. 185 F.3d 978, 985 (9th Cir. 1999).* In other words, "a claim against a defendant based on the alter ego theory is a derivative of the substantive cause of action against the corporate defendant." [2] *Rachford v. Air Line Pilots Ass'n, Int'l, 2006 U.S. Dist. LEXIS 44070, WL 1699578 (N.D. Cal. 2006).*

> 2   Other jurisdictions recognize that "[a]lter ego

claims [*8] . . . may arise out of contract." *In re Elegant Custom Homes, Inc., 2007 U.S. Dist. LEXIS 35564, WL 1412456 (D. Ariz. 2007)*; *see Southeast Texas Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 679 n. 16 (6th Cir. 2006)* ("[t]he alter ego doctrine and its criteria are applicable to impose substantive liability whether that liability is in causes of action in tort, in contract, or both. . . .").

In this case, Dion is suing both Wireless and Associates for breach of contract, but there exists no written agreement between Dion and Associates. *See* Docket No. 24 at 2. Because of this, Dion is basing its claim on its contract with Wireless, which is the alleged alter ego of Associates. *See* Docket No. 19 at P 6.5. While Dion's initial complaint is noticeably stark, the second amended complaint filed June 18, 2007 states that "[t]he unity of interest and ownership between Wireless and Associates . . . prevented the two from functioning as separate entities . . . . [The two companies] conduct the same type of business, shared the same office space, used the same business address, and had the same bookkeeper, lawyers and CPA." *See* Docket No. 19 at 7. The complaint further alleges that "[i]t would be inequitable to allow [*9] Associates to now assert a distinction between the corporations to avoid liability arising from the Consulting Agreement." *Id.* Unlike later evidentiary stages of this lawsuit, in which Dion would be required to prove the elements not only of a breach of contract but of alter ego liability, a pleading need only provide "the bare outlines of [a] claim" within the federal notice pleading framework under Federal Rule of Civil Procedure 8(a). *Bautista v. Los Angeles County, 216 F.3d 837, 843 (9th Cir. 2000).*

Associates relies on *Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101 (C.D. Cal. 2003)* for the proposition that a claim of alter ego liability requires heightened pleading standards. *See* Docket No. 31 at 5. *Neilson* explains that "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Id. at 1116.* These two elements are 1) a unity of interest or ownership between a corporation and its individual owner and 2) that if the acts are treated as those of the corporation alone, an inequitable result will follow. *Id. at 1115-1116.*

Assuming [*10] that Dion was required to allege both elements of alter-ego liability in its pleading, the second amended complaint does just this. *See* Docket No. 19 at 7. Dion states that

[t]he unity of interest and ownership between Wireless and Associates, as well as the operational practices of 'InfoTek,' prevented the two from functioning as separate entities . . . These practices, among others, caused the companies to operate as one entity and reasonably misled Dion about the business it would be providing services for as well as the actual value of the Consulting Agreement it was offered. It would be inequitable to allow Associates to now assert a distinction between the corporations to avoid liability arising from the Consulting Agreement.

*Id.* The amended complaint also sets forth facts supporting both elements. *Id.* at PP 5.3-5.9. [3]

3    Paragraph 5.9 states that "Don Fowler informed Dion that Wireless was insolvent and unable to pay Dion the compensation due under the Service Termination Agreement . . . To date, Dion has not been paid for its February consulting fees or the severance pay as required. The amount owed Dion exceeds $ 75,000." *See* Docket No. 19 at 6. In its reply, Associates concludes [*11] "Dion has failed to expressly plead facts to substantiate the second element of an alter ego theory -- that an inequitable result will flow from the failure to allow Dion to maintain an alter ego claim against Associates." *See* Docket No. 31 at 7. The Court fails to see how a loss of more than $ 75,000 resulting from an allegedly insolvent sister corporation is not an "inequitable result" in the alter ego context.

## 2. Agency relationship between Associates and Wireless

In response to Dion's opposition to the motion to dismiss, Associates argues that Dion fails to plead a claim based on an agency relationship between Wireless and Associates because Dion provides no facts to support the three elements necessary to prove agency. [4] Associates

again cites to a district court case, *Bowoto v. Chevron Texaco Corp., 312 F. Supp. 2d 1229 (N.D. Cal. 2004)* (Illston, J.), to support Dion's alleged failure to plead agency liability. Associates confuses the federal pleading standard with an evidentiary standard; the *Bowoto* decision came in the context of summary judgment, not a 12(b)(6) motion. *Id.* Associates reinforces the meritless nature of its argument by blatantly misrepresenting the holding [*12] of *Bowoto* in its claim that a "plaintiff asserting a claim based on an agency relationship *must plead* the [three elements of agency]." [5] *See* Docket No. 31 at 8 (emphasis added). *Bowoto* stands for no such proposition because the case dealt with a summary judgment motion, not a Rule 12(b)(6) motion. In its pleading, Dion is only required by Rule 8(a) to place Associates "on notice" of its claim for breach of contract based on Associates' agency relationship with Wireless. *See Bautista, 216 F.3d at 843*. In its complaint, Dion states that "Associates is also liable for breach of contract because Wireless was acting as its agent in entering the Consulting Agreement. Associates created Wireless and sought the Consulting Agreement with Dion as a vehicle for funding and growing Associates' existing business." *See* Docket No. 19 at P 6.6. Dion's complaint adequately places Associates on notice of its claim.

4    The three elements are 1) a manifestation by the principal that the agent shall act for him or her, 2) the agent must accept the undertaking and 3) an understanding that the principal is to be in control of the undertaking. *Bowoto v. Chevron Texaco Corp., 312 F. Supp. 2d 1229, 1239 (N.D. Cal. 2004).*
5    In [*13] the context of a summary judgment discussion, the actual words used by the *Bowoto* court are: "To establish actual agency a party *must demonstrate* the following elements. . . ." *Bowoto, 312 F. Supp. 2d at 1239* (emphasis added).

Lastly, Associates argues that even if Dion states a claim under the alter ego doctrine, agency or some other legally cognizable theory, Dion must make such a claim separately from its breach-of-contract action. *See* Docket No. 31 at 3-4. The only authority Associates cites to support this reasoning is *Neilson, 290 F. Supp. 2d 1101*, which recognizes the alter ego theory as a claim separate from a breach-of-contract claim. But such a recognition, by itself, does not force litigants to separately describe claims under separate counts, nor does Associates point

Page 4

to any authority for this proposition. [6] *See Self Directed Placement Corp. v. Control Data Corp., 908 F.2d 462, 466 (9th Cir. 1990)* ("while it is not necessary that plaintiff state sufficient facts to constitute a cause of action, plaintiff must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery.") [*14] Even though separate headings or counts in the complaint may have made the pleading easier to read, Associates was put on notice because the second amended complaint mentions alter ego, agency and estoppel as the theories under which Associates could be held liable for the contractual obligations of Wireless. *See* Docket No. 19 at 7-8. A complaint need only contain affirmative statements sufficient to "establish a basis for judgment against the defendant." *Yamaguchi v. U.S. Dept. of the Air Force, 109 F.3d 1475, 1481 (9th Cir. 1997).*

> [6]    *See also* THE RUTTER GROUP, CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL, CH. 8-B(3)(B)(2) ("It is not always necessary to specify the precise nature of the claim asserted as long as the facts alleged put defendant on notice thereof").

### B. Promissory estoppel

Although Dion never expressly uses the phrase "promissory estoppel" in its complaint, it does mix an estoppel argument into its breach-of-contract claim. *See* Docket No. 19 at P 6.7. Associates' reply attacks Dion's claim of promissory estoppel because "[n]othing in [the complaint] suggests promissory estoppel aside from Dion's single use of the word 'promise' in [Paragraph 6.7]." *See* [*15] Docket No. 31 at 9. The elements of promissory estoppel are 1) a clear promise, 2) reliance, 3) substantial detriment and 4) damages measured by the extent of the obligation assumed and not performed. *Toscano v. Greene Music, 124 Cal. App. 4th 685, 692, 21 Cal. Rptr. 3d 732 (4th Dist. 2004)* (citations omitted). Dion's complaint says "Dion reasonably relied on Associates' representations" and "is damaged by this promise because Wireless now asserts an inability to pay the contracted compensation." *See* Docket No. 19, P 6.7. This section of the complaint asserts all four elements of promissory estoppel. *Id.* That Dion fails to use the precise phrase "promissory estoppel" is not enough to render the complaint inadequate given the Court's duty to "take all

allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Parks School of Business, 51 F.3d at 1484. See also Coleman v. Standard Life Ins. Co., 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003)* (quoting *Pair-A-Dice Acquisition Partners, Inc. v. Bd. of Trustees of the Galveston Wharves, 185 F. Supp. 2d 703, 708 n. 6 (S.D. Tex 2002)* ("Although [plaintiff] fails to use the term 'promissory estoppel' to describe its [*16] theory of recovery . . . the Court assumes that [plaintiff intended to plead promissory estoppel as an alternative theory of recovery] and will consider the merit of such argument").

### C. Motion for a more definite statement

If its motion to dismiss under Rule 12(b)(6) is not granted, Associates requests that the Court require Dion to amend its complaint to form a more definite statement of the claims as permitted under Rule 12(e) of the Federal Rules of Civil Procedure. A host of decisions from this District have concluded that "[m]otions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." *Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1077 (N.D. Cal. 1994)* (citing *In re American Intern. Airways, Inc., 66 B.R. 642 (E.D. Penn. 1986); Hunter v. Ohio Indem. Co., 2006 U.S. Dist. LEXIS 63372, WL 2458715 (N.D. Cal. 2006); Info Vista S.A. v. Visanet IT, Inc.,* WL 1176628, 1 (N.D. Cal. 2007); *Podesta v. City of San Leandro, 2005 U.S. Dist. LEXIS 45772, WL 2333802, 2 (N.D. Cal. 2005); Whiteway v. FedEx Kinko's Office and Print Services, 2005 U.S. Dist. LEXIS 30879, WL 3095864, 1 (N.D. Cal. 2005); Northwest Pipe Co. v. Travelers Indem. Co. of Conn., 2003 U.S. Dist. LEXIS 26416, WL 24027882 (N.D. Cal. 2003).*

As [*17] stated above, Dion's second amended complaint satisfies the federal pleading requirements of Rule 8(a) because Associates has been put on notice of the legal theories that could hold Associates liable to Dion for breach of contract. Since the complaint is adequate, there is no need for Dion to amend it under Rule 12(e).

### D. Motion to strike

Associates also requests that Paragraphs 6.5, 6.6 and 6.7 of Dion's second amended complaint be stricken under Federal Rule 12(f) because they "bear no relationship to the subject matter of Dion's complaint."

Page 5

*See* Docket No. 24 at 8. Motions to strike, like motions for a more definite statement, are generally viewed with disfavor because they are often used as delaying tactics. *Bowoto v. Chevron Corp.*, WL 2349338 (N.D. Cal. 2007); *See Rosales v. Citibank, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)*; *Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996)*. Additionally, Rule 12(f) "is neither an authorized nor a proper way to procure the dismissal of all or part of a complaint." *Yamamoto v. Omiya, 564 F.2d 1319, 1327 (9th Cir. 1977)* (quoting 5 WRIGHT & MILLER, FEDERAL PRAC. & PROC. § 1380 AT 782 (1969)).

The paragraphs Associates requests to be [*18] stricken concern Dion's legal theories by which Associates may be held liable for breach of contract -- namely, the alter ego doctrine, agency and promissory estoppel. *See* Docket No. 19 at 7-8. Since these areas of the complaint relate directly to the subject matter of Dion's action for breach of contract against both Wireless and Associates, they should not be stricken. Nor has Associates presented any reason why these paragraphs should be stricken because they are "impertinent or scandalous." FED. R. CIV. P. 12(f).

**CONCLUSION**

Accordingly, Associates' motion to dismiss pursuant to Rule 12(b)(6) [Docket No. 23] is DENIED. Associates' alternative motions pursuant to Rules 12(e) and 12(f) are also DENIED.

IT IS SO ORDERED.

October 30, 2007

/s/ Saundra Brown Armstrong

Saundra Brown Armstrong

United States District Judge

# EXHIBIT 4

LEXSEE

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, v. ZONTA
INTERNATIONAL, Defendant**

**No. 85 C 9287**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

**1986 U.S. Dist. LEXIS 23933**

**June 19, 1986, Decided; June 20, 1986, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, the Equal
Employment Opportunity Commission (EEOC), brought
an action against defendant corporation alleging that it
had discriminated against an employee on the basis of her
age in violation of the Age Discrimination in
Employment Act (ADEA), 29 U.S.C.S. §§ 621 et seq.
The corporation filed a motion to dismiss the action
under Fed. R. Civ. P. 12(b)(1) for want of jurisdiction
because it was not an employer as defined in the ADEA.

**OVERVIEW:** The EEOC alleged that the corporation
dismissed the employee, who was almost 65, because she
filed a complaint objecting to the mandatory policy
requiring retirement at age 65. The corporation consisted
of three levels, the international organization, regional
districts, and over 900 clubs. The corporation contended
that it was not bound by the prohibitions of the ADEA
because it had less than 20 employees. The EEOC
contended that the international organization and its
constituent clubs should be treated as one integrated
organization. The court held that only the corporation's
employees, which was less than 20, working directly for
it should be considered in the ADEA context. First, case
law did not support a conclusion that a parent association
was an agent for its active members. Second, the court
found that the clubs should not be combined with the
international organization to form a single integrated
enterprise because there was no interrelationship between
their administrative operations, and they did not share
management. Finally, the corporation did not have
control over the club's personnel, and there was no

common ownership or consolidated financial control.

**OUTCOME:** The EEOC has not met that burden,
therefore, the complaint is dismissed for want of subject
matter jurisdiction.

**CORE TERMS:** executive director, integrated, bylaws,
subject matter jurisdiction, attributed, discrepancy,
convention, biennial, hire, common ownership, record
keeping, bank accounts, labor relations, autonomous,
personnel, calendar, annual, board of directors, number of
employees, active members, compensation insurance,
headquarters, involvement, discipline, retirement,
regional, manage

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter
Jurisdiction > Jurisdiction Over Actions > General
Overview*
*Civil Procedure > Pleading & Practice > Defenses,
Demurrers & Objections > Motions to Dismiss*
[HN1]Under a Fed. R. Civ. P. 12(b)(1) motion to dismiss
a court may consider any relevant evidence submitted to
determine the existence of subject matter jurisdiction.

*Labor & Employment Law > Discrimination > Age
Discrimination > Coverage & Definitions > Employers*
*Labor & Employment Law > Employment Relationships
> Employment at Will > Employers*

Page 1

[HN2]Section 11(b) of the Age Discrimination in Employment Act defines an "employer" as a person engaged in an industry affecting commerce who has 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. 29 U.S.C.S. § 630.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview*
[HN3]The United States District Court for the Northern District of Illinois, Eastern Division, concurs with the Sixth Circuit's holding that case law does not support the conclusion that the parent association is an agent for its active members.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview*
[HN4]There are four factors that should be considered in determining whether several autonomous but connected organizations should be treated as an integrated enterprise. They are: (1) Interrelation of operations, i.e. common offices, common record keeping, shared bank accounts and equipment. (2) Common Management, common directors and boards. (3) Centralized control of labor relations and personnel. (4) Common ownership and financial control.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
[HN5]The burden of proving subject matter jurisdiction rests with a plaintiff.

**OPINION BY:** [*1]  HOLDERMAN

**OPINION**

MEMORANDUM OPINION AND ORDER

HOLDERMAN, D.J.,

The Equal Employment Opportunity Commission ("EEOC") brings this action against Zonta International alleging that Zonta International has discriminated against an employee on the basis of age in violation of

the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"). Zonta International has moved to dismiss the action under Rule 12(b)(1) for want of jurisdiction. Zonta International claims that it is not an "employer" as defined under the ADEA act so that it is not bound by the prohibitions of the ADEA.

*DISCUSSION*

1

1   The facts relied upon in this decision were derived from the filings and submissions of the parties. [HN1]Under a Rule 12(b)(1) motion to dismiss the court may consider any relevant evidence submitted to determine the existence of subject matter jurisdiction. *Western Transportation Co. v. Couzens Warehouse*, 695 F.2d 1033, 1038 (7th Cir. 1982).

Zonta International is an organization of professional and executive women dedicated to, among other things, the promotion of high ethical standards in business and the improvement of the legal, political, economic and professional [*2] status of women. The organization consists of three levels: the international organization; regional districts; and over 900 local Zonta Chapters ("Zonta Clubs"). First Affidavit of Valerie Levitan, Executive Director of Zonta International at pp. 1-2. The Zonta bylaws provide for a biennial convention to which each zonta club sends representatives. The biennial convention establishes the general policies of Zonta International and elects the officers of Zonta International. The elected officers together with the district governors constitute the board of Zonta International. The bylaws further provide that the International Board is charged with the administration of the affairs and finances of Zonta International. To execute the International Board's responsibilities to manage the affairs of Zonta International, the Board hires an executive director who manages the day-to-day affairs of Zonta International. The executive director is responsible for executing the policies of Zonta International as established by the biennial convention and the International Board. The executive director also hires, fires, supervises, trains and disciplines the employees of Zonta International. The [*3] executive director and all of the individuals working directly for Zonta International work at the International's headquarters located in Chicago, Illinois.

The allegations in the complaint relate to the dismissal of Heidi Wiederkehr, an employee of Zonta International, by Valerie Levitan Zonta's executive director. Ms. Wiederkehr, who was approaching 65 years of age, was allegedly dismissed because she filed an EEOC complaint objecting to Zonta International's mandatory retirement policy which required her retirement at age 65.

At issue is whether Zonta International must conform its conduct to the mandates of the Age Discrimination in Employment Act. Zonta International claims that it is outside the ADEA's jurisdictional reach because it does not employ 20 or more individuals, a prerequisite to ADEA application. Section 11(b) of the ADEA [HN2]defines an "employer" as a "person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630.

According to the facts presented, Zonta International employed no more than 19 persons during any given period [*4] in 1983; no more than 18 persons during any given period in 1984; and no more than 17 persons in any given period in 1985. Third Affidavit of Valerie Levitan, Zonta International's Executive Director at pp. 2-4. These figures have not been specifically disputed by plaintiff EEOC.

EEOC does assert, however, that some of the time cards which serve as the foundation for these employee figures contain discrepancies. These alleged discrepancies have no bearing on this Court s determination as employee calculations were made in a conservative manner, erring in favor of a greater number of employees whenever a discrepancy arose. Affidavit of Wesley Kennedy, Attorney for Zonta International, at pp. 1-2.

The central question is not how many employees work directly for Zonta International, but rather who among the several layers on the Zonta organization should have their employees included in the Zonta International count. Although the number of employees specifically attributable to Zonta International is less than 20, the EEOC asserts that all the employees of the individual Zonta Clubs must also be attributed to Zonta International for the purposes of determining ADEA application. The [*5] EEOC believes that Zonta International and its constituent clubs must be treated as one integrated organization. Zonta International contends that only the employees working directly for Zonta International should be considered in the ADEA context. The later interpretation is correct.

The situation in York v. Tennessee Crushed Stone Association, 684 F.2d 360 (1982) is instructive in this case. [2] In York the plaintiff was a secretary to the executive director of a trade association. Plaintiff was allegedly dismissed in violation of the ADEA.

> 2  See also Copley v. Morality in Media, Inc., 25 E.P.D. 31,570 at 19,342 (S.D.N.Y. 1981) where the court found in a Title VII case that employees of affiliated state organizations could not be attributed to the national non-profit organization.

The trade association in York consisted of 29 persons, firms or corporations involved in the production or sale of crushed stone. The trade association was managed by a board of directors which was responsible for electing the officers of the corporation (the trade association was a not-for-profit corporation) and appointing an executive director. The executive director in turn had [*6] the authority to hire and fire the employees of the association. The trade association itself never had more than two employees, but most of the trade association s "active" members had more than 15 employees. The plaintiff in York attempted to attribute the employees of the trade association members to the trade association itself on the basis of either an "integrated enterprise" or an agency theory. The district court rejected both of these arguments and the Sixth Circuit affirmed that decision.

Although the EEOC has not specifically raised the agency theory, [HN3]this Court concurs with the Sixth Circuit's holding in York that the case law does not support the conclusion that the parent association is an agent for its active members. Therefore, the employees of the autonomous individual Zonta clubs should not be attributed to Zonta International for determining the applicability of the ADEA.

Similarly, the EEOC s integrated organization approach also fails to show ADEA application in this case. [HN4]There are four factors that should be considered in determining whether several autonomous but connected organizations should be treated as an integrated enterprise. They are:

Page 3

(1) [*7] Interrelation of operations, i.e. common offices, common record keeping, shared bank accounts and equipment.

(2) Common Management, common directors and boards.

(3) Centralized control of labor relations and personnel.

(4) Common ownership and financial control.

*York v. Tennessee Crushed Stone Association*, 684 F.2d 360, 362 (6th Cir. 1982).

Analyzing these four factors, it is clear that the member clubs should not be combined with Zonta International to form a single integrated enterprise for ADEA purposes. First, Zonta International does not share offices, bank accounts or equipment with any of the local Zonta clubs. (*See generally* First and Second Affidavits of Valerie Levitan.) Although documents and reports are apparently exchanged between the local Zonta clubs and the regional districts of Zonta and some of these reports eventually work their way to Zonta International Headquarters, there is no evidence that Zonta International intermingles its record keeping with that of the individual Zonta clubs. Every Zonta club is independently responsible for its own funds, accounts and records. Simply stated, there is no interrelationship between the administrative operations [*8] of Zonta International and the individual Zonta clubs.

Second, Zonta International and the local Zonta clubs do not share management. Zonta International and each Zonta club has their own separate management structure and their own board of directors. Zonta International's involvement in the affairs of Zonta clubs is limited to the formation and termination of the individual clubs. According to the bylaws, Zonta International may revoke the charter of a local club only in certain narrowly defined circumstances, specifically if the local club fails to maintain a 15 women membership base or does not pay their annual dues to the International. Zonta Bylaws Article IV § 8, Article XIII § 8. In all other events, Zonta International is without authority to intercede in the affairs and operations of the individual Zonta club. Each local Zonta club retains exclusive control over its own governance, administration and other activities.

Third, and most important, Zonta International does not have control over the labor relations and personnel of the individual Zonta club. Each individual Zonta club determines its employment needs and establishes their own terms and conditions of employment. [*9] Zonta International has no involvement in the hiring, firing, supervision, training or discipline of any of the Zonta clubs, employees. In fact, Zonta International has no knowledge or records of the identity of any Zonta club employees, nor of the terms and conditions of their employment. The health insurance, workers. compensation insurance and unemployment compensation insurance programs of Zonta International do not include any employees of the local Zonta clubs. Moreover, Zonta International has its own IRS employer identification number separate and apart from any of the local Zonta clubs and Zonta International withholds state and local taxes solely for its own employees. (*See generally* Second Affidavit of Valerie Levitan and December 16, 1986 Deposition of Valerie Levitan.) In short, plaintiff has presented no evidence indicating that Zonta International has any influence over the employment process or practices of the individual Zonta clubs.

Finally, common ownership and consolidated financial control does not exist between Zonta International and the local Zonta clubs. The International and the individual clubs each have their own accounting systems, financial records [*10] and bank accounts. The fact that the member clubs pay annual fees to the International does not in itself necessitate a finding of common ownership and financial control, particularly where, as here, each of the Zonta clubs and Zonta International have their own separate tax status. *EEOC v. Wooster Brush Co. Employee Relief Association*, 727 F.2d 566, 573 (6th Cir. 1984); *York v. Tennessee Crushed Stone Association*, 684 F.2d 360, 363 (6th Cir. 1982).

*CONCLUSION*

[HN5]The burden of proving subject matter jurisdiction rests with the plaintiff. *Graves v. Methodist Youth Services, Inc.*, 624 F.Supp. 429, 431 (N.D.Ill. 1986). The EEOC has not met that burden, therefore, the complaint is dismissed for want of subject matter jurisdiction.

# EXHIBIT 5

LEXSEE



Cited
As of: Feb 06, 2012

**ENERGY BRANDS, INC. d/b/a GLACEAU, Plaintiff, v. DEXTER JORGENSEN, JORGENSEN FARMS, INC., NOREEN JORGENSEN, WARREN JORGENSEN, BEN BALDWIN, TIMOTHY AVERS, AVERS MERCHANDISING GROUP, INC., GAEL COAKLEY, HOFFMANS TRADE GROUP LLC., Defendants.**

**09-CV-591A**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK**

**2011 U.S. Dist. LEXIS 6937**

**January 24, 2011, Decided
January 25, 2011, Filed**

**CORE TERMS:** farm, long-arm, cross-claims, venue, personal jurisdiction, expired, prima facie, anywhere, out-of-state, buyer, doing business, joint venturers, joint venture, vitaminwater, recycling, failure to state a claim, evidentiary hearing, common carrier, intentional interference, redistributed, purposefully, convenience, machinery, prong, reasons stated, transacts business, exclusive contracts, choice of forum, indemnification, jurisdictional

**COUNSEL:** [*1] For Energy Brands Inc., doing business as Glaceau, Plaintiff: Christopher J. Belter, LEAD ATTORNEY, Goldberg Segalla LLP, Buffalo, NY.

For Dexter Jorgensen, individually and doing business as Jorgensen Farms, doing business as Food Waste Recycling Systems, Warren Jorgensen, individually and doing business as Jorgensen Farms, doing business as Food Waste Recycling Systems, Noreen Jorgensen, individually and doing business as Jorgensen Farms, doing business as Food Waste Recycling Systems, Ben Baldwin, individually and doing business as Jorgensen Farms, doing business as Food Waste Recycling Systems, Defendants: Lawrence J. Vilardo, LEAD ATTORNEY,

Connors & Vilardo, LLP, Buffalo, NY; Emmett B. Lewis, Miller & Chevalier, Washington, DC; Jeffrey M. Hahn, PRO HAC VICE, Miller & Chevalier Chartered, Washington, DC.

For Jorgensen Farms, Inc., Defendant: For Timothy Avers, indivdually and doing business as Avers Merchandising Group, Avers Merchandising Group, Inc., Defendants: Matthew G. McAndrews, LEAD ATTORNEY, PRO HAC VICE, Niro, Scavone, Haller & Niro, Chicago, IL; Amber E. Storr, Stephen Michael O'Neill, Damon Morey LLP, Buffalo, NY.

For Gael Coakley, individually and doing business as Hoffmans [*2] Trade Group, Defendant: Salvatore D. Ferlazzo, LEAD ATTORNEY, Girvin & Ferlazzo, P.C., Albany, NY; Chris G. Trapp, Greco Trapp, PLLC, Buffalo, NY.

For Hoffmans Trade Group, Defendant, Cross Claimant, Cross Defendant: Salvatore D. Ferlazzo, LEAD ATTORNEY, Girvin & Ferlazzo, P.C., Albany, NY.

For Gael Coakley, individually and, Cross Claimant, Cross Defendant: Salvatore D. Ferlazzo, LEAD ATTORNEY, Girvin & Ferlazzo, P.C., Albany, NY.

For Noreen Jorgensen, individually and, Ben Baldwin, individually and, Dexter Jorgensen, individually and, Warren Jorgensen, individually and, Cross Defendants: Lawrence J. Vilardo, LEAD ATTORNEY, Connors & Vilardo, LLP, Buffalo, NY.

For Timothy Avers, indivdually and, Avers Merchandising Group, Inc., Cross Defendants, Cross Claimant: Stephen Michael O'Neill, Damon Morey LLP, Buffalo, NY.

For Avers Merchandising Group, Inc., Cross Claimant: Stephen Michael O'Neill, Damon Morey LLP, Buffalo, NY.

**JUDGES:** HONORABLE RICHARD J. ARCARA, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RICHARD J. ARCARA

**OPINION**

DECISION AND ORDER

## INTRODUCTION

Plaintiff Energy Brands Inc., doing business as Glaceau, commenced an action against defendants Jorgensen Farms, Inc. ("Jorgensen Farms"), Dexter Jorgensen ("Dexter"), [*3] Noreen Jorgensen ("Noreen"), Warren Jorgensen ("Warren"), and Ben Baldwin, all sued individually and doing business as Jorgensen Farms and Food Waste Recycling Systems (collectively the "Jorgensen defendants"). Plaintiff also sued Avers Merchandising Group, Inc. and Timothy Avers (the "Avers defendants"), and Hoffmans Trade Group, LLC and Gael Coakley (the "Hoffmans defendants"). Plaintiff, who is in the business of manufacturing and selling beverage products including *vitaminwater*, asserts claims for breach of contract, fraud, violations of the Lanham Act and violations of New York's General Business Law. Plaintiff's claims arise as a result of a contract it made with Dexter, as principal for Jorgensen Farms, to remove and destroy *vitaminwater* product that had been designated as "off-spec" and no longer appropriate for sale and consumption (i.e. expired). Plaintiff asserts that instead of destroying the expired product as agreed to in the contract, the Jorgensen defendants conspired with the Avers defendants and the Hoffmans defendants to resell the expired product to various retail stores in New York. Plaintiff commenced this action after discovering that the expired product was  [*4] being resold in retail stores throughout New York and elsewhere.

The Jorgensen defendants move to dismiss the complaint for lack of personal jurisdiction and, alternatively, to transfer venue. Additionally, defendants Noreen and Warren Jorgensen and Ben Baldwin move to dismiss various causes for failure to state a claim and all of the Jorgensen defendants move to dismiss cross-claims brought by the Avers defendants and Hoffmans defendants.

Plaintiff opposes the motions to dismiss and/or transfer venue. The Avers and Hoffmans defendants also oppose the motions to dismiss the pending cross-claims.

For the reasons stated, Count VII of plaintiff's complaint is dismissed for failure to state a claim, and the Avers and Hoffmans defendants' cross-claims are dismissed without prejudice. However, the remaining motions to dismiss or transfer venue are denied in all respects.

## DISCUSSION

**I. Motions to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2)**

The Jorgensen defendants move to dismiss plaintiff's complaint on the ground that this Court lacks personal jurisdiction over them. Personal jurisdiction over a defendant is determined by the law of the forum state in which the district court [*5] sits. See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984). On a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), the plaintiff bears the burden of making a *prima facie* showing that jurisdiction exists. Id. In evaluating a motion to dismiss pursuant to 12(b)(2), the Court may properly rely on pleadings and affidavits, or it may conduct a "full blown evidentiary hearing" on the issue. See DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (citing Marine Midland Bank, N.A. v. Miller, 664 F.2d 899 (2d Cir. 1981)). If the Court chooses not to conduct a full-blown evidentiary hearing, plaintiff need only make a *prima facie* showing of jurisdiction through its own affidavits and supporting materials. Id. Eventually, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial

Page 2

evidentiary hearing or at trial. But until such a hearing is held, a *prima facie* showing suffices. Id. In the absence of an evidentiary hearing on the jurisdictional allegations, all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, [*6] they are resolved in the plaintiff's favor. CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364-65 (2d Cir. 1986).

The jurisdictional analysis is a two-step inquiry. First, this Court must determine whether the plaintiff has shown that the defendants are amenable to service of process under New York law. Second, the Court must assess whether the assertion of jurisdiction comports with the requirements of constitutional due process. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

With regard to the first requirement, plaintiff asserts the Jorgensen defendants are subject to jurisdiction under CPLR § 301 because they are "doing business" in New York. Alternatively, plaintiff argues that the Jorgensen defendants are subject to New York's long-arm jurisdiction, CPLR § 302(a). Because plaintiff has made a *prima facie* showing that all of the Jorgensen defendants are subject to New York's long-arm jurisdiction, the Court finds it unnecessary to address whether they are also "doing business" in New York within the meaning of CPLR § 301.

New York's long-arm statute provides:

(a) [A] court may exercise personal jurisdiction over any nondomiciliary, or his executor or [*7] administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state . . . ; or

3. commits a tortious act without the state causing injury to person or property within the state .... if he (i) regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . .

N.Y CPLR §302(a)(1)-(3).

*1. Jurisdiction over Jorgensen Farms and Dexter Jorgensen*

With regard to Dexter Jorgensen and Jorgensen Farms, plaintiff has established a *prima facie* showing that they are subject to jurisdiction under § 302(a)(1) because they entered into a contract to perform services for a New York plaintiff in New York. Subsection (a)(1) of New York's long-arm statute provides two alternative means for obtaining jurisdiction over an out-of-state defendant. Jurisdiction may be asserted if the out-of-state defendant [*8] "transacts business" within the state, or if he "contracts anywhere to supply goods or services within the state." A showing under either clause is sufficient to establish jurisdiction under subsection (a)(1). With regard to the "contracts anywhere" prong, the Second Circuit has explained:

The New York Legislature added this second prong to the provision in 1979 in order to "ease the plight of New York residents seeking to obtain jurisdiction over those outside its borders who may be deemed virtually or constructively to do business in this state." Waldorf Associates, Inc. v. Neville, 141 Misc.2d 150, 533 N.Y.S.2d 182, 185 (Sup. Ct.1988). This provision captures cases where there are minimal contacts in New York, and, for example, a contract is made elsewhere for goods to be delivered or services to be performed in New York. See Report of the

Law Revision Commission for 1979, Leg. Doc. No. 65, 1979 N.Y. Laws A-31, A-59 (McKinney's). Thus, even if a defendant never enters the state to negotiate one of these contracts, to complete performance or for any other reason, the second prong of § 302(a)(1) can provide long-arm jurisdiction over a defendant who has minimal contacts with the state [*9] and who has entered a contract anywhere to supply goods or services in the state. See, e.g., Island Wholesale Wood Supplies, Inc. v. Blanchard Indus., Inc., 101 A.D.2d 878, 879-80, 476 N.Y.S.2d 192 (2d Dep't 1984).

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 789 (2d Cir. 1999).

Plaintiff's allegations suffice to establish that Dexter and Jorgensen Farms are subject to jurisdiction under the "contracts anywhere" prong. Plaintiff alleges that Dexter, on behalf of Jorgensen Farms, contracted to supply services in New York - namely, removal and destruction and/or recycling of the expired *vitaminwater* product. In furtherance of that contract, Dexter: (1) sent numerous emails, telephone calls and fax transmissions to plaintiff in New York; (2) arranged for trucks to go to plaintiff's New York facilities to pick up the expired product; and (3) conspired to redistribute that expired product back into New York despite the fact that he had promised to have it removed to South Dakota for recycling and destruction. Those acts satisfy New York's long-arm jurisdiction where, as here, the causes of action arises out of a purported breach of that contract. See Empire Beef Co., Inc. v. Meyners-Robinson Co., Inc., 248 A.D.2d 1012, 669 N.Y.S.2d 998 (4th Dep't 1998)(holding [*10] that long-arm jurisdiction existed where plaintiff's product was "loaded onto defendant's trucks in Rochester for immediate delivery outside the State"); Kaddis Mfg. Corp. v. Gil-Bar Rubber Prods. Co., 103 A.D.2d 1010, 478 N.Y.S.2d 216 (4th Dep't 1998) (holding that long-arm jurisdiction existed by virtue of defendant's "taking delivery of the goods in Rochester through its carrier and thereafter by returning a portion of the goods to Rochester for repair"); Comely v. Dynamic HVAC Supply, LLC, 44 A.D. 3d 986, 845 N.Y.S.2d 797 (2d Dep't 2007) (finding personal jurisdiction where the defendant "often sent its trucks to Mount Vernon to take delivery of materials. . . and also sold its products to other New York companies.").

Dexter Jorgensen asserts that his use of a common carrier to pick up the product from the plaintiff's facilities in New York defeats long-arm jurisdiction where there is no allegation that he physically entered New York. Citing Galgay v. Bulletin Co., 504 F.2d 1062, 1066 (2d Cir. 1974), he claims that the mere receipt and transportation of goods in New York by a common carrier is not sufficient to trigger personal jurisdiction under New York's long-arm statute. In Galgay, the Second Circuit held that [*11] long-arm jurisdiction was lacking where an out-of-state buyer purchased machinery from a New York seller and, in furtherance of that contract, the buyer sent its common carrier to New York to pick up the machinery. Although the Circuit determined that actions of the common carrier hired to cart the goods from New York to the out-of-state buyer could be imputed to the buyer under principles of agency, the Circuit also determined that long-arm jurisdiction was lacking because the "transportation [of the machinery] from New York, while a necessary link, was ... of minor or accidental importance" and involved "a single shipment . . . of machinery in one transaction." Id. at 1065.

The facts of this case are readily distinguishable from Galgay. First, the issue in Galgay was whether the out-of-state buyer was "transacting business" within the meaning of § 302(a)(1). The "contracts anywhere" language that this Court is relying upon was added post-Galgay. As noted above, the "contracts anywhere" language was added to broaden the reach of CPLR § 302(a)(1) to the limits of the due process clause. See Island Wholesale Wood Supplies, Inc. v. Blanchard Indus., Inc., 101 A.D. 2d 878, 476 N.Y.S.2d 192 (2d Dep't 1984). [*12] In any event, the entry into New York by Jorgensen's carrier was not "minor" or incidental as it was in Galgay. Rather, the very point of the contract was for Jorgensen Farms, or its agent, to enter into New York to remove the expired product. Such purposeful contacts are sufficient to establish jurisdiction under § 302(a)(1).

Dexter and Jorgensen Farms are also subject to jurisdiction under § 302(a)(2), which provides that an out-of-state defendant is subject to New York's long-arm jurisdiction when it commits a tortuous act within the state. Plaintiff alleges that, rather than removing the expired product as agreed to under the contract, defendants arranged for it to be redistributed back into New York stores, thereby damaging its goodwill with its

Page 4

New York customers. A trademark infringement tort occurs at the location where the offending product is purchased. See Roberts-Gordon, LLC v. Superior Radiant Prods., 85 F. Supp. 2d 202, 213 (W.D.N.Y. 2000); Lipton v. The Nature Company, 781 F. Supp. 1032, 1035 (S.D.N.Y.1992) (same with regard to copyright infringement). Plaintiff's allegations that Dexter and Jorgensen Farms conspired with third parties to purposefully redistribute the [*13] infringing product back into New York stores are sufficient to establish a *prima facie* case of personal jurisdiction under CPLR § 302(a)(2). See, e.g., Pecoware Co. v. Posh Int'l., Ltd., 2004 U.S. Dist. LEXIS 1353, 2004 WL 210634, at *1 (S.D.N.Y. Feb. 4, 2004) (holding that the sale of even "a small amount of allegedly infringing goods to one or more buyers in New York" was sufficient to satisfy 302(a)(2)). [1] Plaintiff's allegations that the defendants purposefully redistributed the expired product back into New York State satisfies the requirements of CPLR § 302(a)(2).

> [1] In light of the foregoing, the Court finds it unnecessary to determine whether subsection (a)(3) provides yet another basis for obtaining long-arm jurisdiction over Dexter and Jorgensen Farms.

## 2. Jurisdiction over Noreen Jorgensen, Warren Jorgensen and Ben Baldwin

As to defendants Noreen Jorgensen, Warren Jorgensen, and Ben Baldwin, plaintiff asserts that all three are liable as partners or joint venturers of Jorgensen Farms. "A Court obtains personal jurisdiction over a defendant regardless of whether it is the defendant himself who transacts business within the state or whether it is the defendant's partner or co-venturer who transacts business [*14] within the state." See Stone v. Patchett, No. 08-cv-5171(RPP), 2009 U.S. Dist. LEXIS 35049, 2009 WL 1108596 (S.D.N.Y. Apr. 23, 2009) (citing CPLR § 302(a), which provides for jurisdiction over anyone who, "in person or through an agent . . . . transacts business within the state"); see also CutCo Indus., 806 F.2d at 366 (holding that "joint participation in a partnership or joint venture establishes 'control' sufficient to make each partner or joint venturer an agent of the others"); Pennie & Edmonds v. Austad Co., 681 F. Supp. 1074, 1077-78 (S.D.N.Y. 1988) (explaining that, under New York law, "purposeful activity" within New York by an agent or joint-venturer of the non-domiciliary

is sufficient to establish personal jurisdiction").

At this juncture, plaintiff has provided sufficient evidence to make a *prima facie* showing that Noreen Jorgensen, Warren Jorgensen and Ben Baldwin were joint venturers with Dexter in Jorgensen Farms. According to plaintiff, Dexter Jorgensen represented that Jorgensen Farms was a "family owned farm" that was started by his father. Warren Jorgensen is Dexter's father. Noreen Jorgensen is Dexter's wife. Plaintiff provided evidence showing that the official address for Jorgensen Farms [*15] lies on property owned by Dexter and Noreen. However, the actual recycling operations of Jorgensen Farms are located across the street, on property owned by Warren Jorgensen. Additionally, post-motion discovery yielded email correspondence and other evidence suggesting that both Noreen and Ben Baldwin are involved in the operation of Jorgensen Farms, in direct contradiction to their affidavits. See Dkt. No. 76, Exhs. D and E. Moreover, the names of Dexter, Noreen and Ben Baldwin all appear on Jorgensen Farms' letterhead sent to plaintiff, thus suggesting a financial interest, ownership and control in that enterprise.

In sum, plaintiff's allegations, supported by the post-discovery evidence, satisfy plaintiff's *prima facie* burden of demonstrating that Ben Baldwin, Dexter, Noreen and Warren Jorgensen are co-venturers in Jorgensen Farms and jurisdiction over them is therefore proper under CPLR § 302(a)(1) and (2).

## 3. Due Process Considerations

Having determined that long-arm jurisdiction applies, the Court must also determine whether subjecting the Jorgensen defendants to jurisdiction here comports with due process principles. The Court finds that it does. Due process is satisfied where [*16] a defendant took some action that "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and the protection of its laws.'" See A. I. Trade Fin. v. Petra Bank, 989 F.2d 76, 82 (2d Cir. 1993)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). For the reasons stated, the Court finds that the Jorgensen Farms, through Dexter, purposefully availed itself of the privilege of doing business in New York with a New York company. Likewise, the assertion of jurisdiction over Noreen, Warren and Ben Baldwin, as purported principals in that joint venture and co-conspirators in a scheme to redistribute the *vitaminwater* back into New

Page 5

York, does not offend "traditional concept[s] of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

Accordingly, the motions to dismiss the Jorgensen defendants for lack of personal jurisdiction are denied.

## II. Motion to dismiss for Failure to State a Claim

The Jorgensen defendants have also moved to dismiss various claims for failure to state a claim under Rule 12(b)(6). In ruling on a Rule 12(b)(6) motion, a court is required to accept [*17] the material facts alleged in the complaint as true. See Cohen v. Koenig, 25 F.3d 1168, 1171 -72 (2d Cir. 1994). The task of a court in ruling on a Rule 12(b)(6) motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998).

To survive a motion to dismiss, a complaint must meet a "plausibility standard" as articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court explained that the pleading standard set forth in Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. Nor do "naked assertion[s]" devoid of "further factual enhancement" suffice under Rule 8. Id. Accordingly, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. "A [*18] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### 1. As to Claims against Noreen Joregensen, Warren Jorgensen and Ben Baldwin

In addition to moving to dismiss for lack of personal jurisdiction, Noreen and Warren Jorgensen and Ben Baldwin all move to dismiss the claims against them on the ground that there are insufficient facts to support a claim of liability. In other words, they assert that any

harm caused to plaintiff was done by Dexter Jorgensen, not by his wife (Noreen), father (Warren) and friend (Ben Baldwin).

These motions are denied for the same reason that the § 12(b)(2) motions are denied. As stated above, the complaint provides sufficient assertions to plausibly state a claim against Noreen, Warren and Ben Baldwin as joint venturers in the Jorgensen Farms enterprise. Under New York law:

> The indicia of the existence of a joint venture are: acts manifesting the intent of the parties to be associated as joint venturers, mutual contribution to the joint undertaking through a combination of property, financial resources, effort, skill or knowledge, [*19] a measure of joint proprietorship and control over the enterprise, and a provision for the sharing of profits and losses.

See Brown v. Cara, 420 F.3d 148, 159-60 (2d Cir. 2005) (quotation omitted); see also SCS Communs., Inc., v. Herrick Co., 360 F.3d 329, 341 (2d. Cir. 2004).

The complaint alleges that all of the Jorgensen defendants are principals in Jorgensen Farms, that Dexter entered into an agreement with plaintiff on behalf of Jorgensen Farms and the other Jorgensen defendants, and that the Jorgensen defendants breached their commitments under that agreement when they provided false certificates of destruction for the expired *vitiaminwater* and instead arranged for the product to be resold into New York stores. As noted, the names of Ben Baldwin, Dexter and Noreen all appear on Jorgensen Farms' letterhead thus suggesting that they have a financial interest and control over that enterprise, and Warren is alleged to own the property on which Jorgensen Farms' recycling operations sit. While each defendants' role in the purported joint venture remains to be seen after discovery, the allegations in the complaint are sufficient to state a claim for liability against each of the [*20] Jorgensen defendants under a joint venture theory.

Additionally, the complaint adequately alleges that the Jorgensen defendants were part of a conspiracy to distribute the expired *vitaminwater* back into New York, in violation of their contractual obligations and the

Lanham Act. If that conspiracy is proven, the acts of each co-conspirator will be attributable to all members of the conspiracy.

Therefore, the motions to dismiss for failure to adequately assert claims against Noreen and Warren Jorgensen and Ben Baldwin are denied.

### 2. Motions for Dismissal of Count VII and Partial Dismissal of Count V

The Jorgensen defendants move to dismiss Count VII of plaintiff's complaint which asserts a claim for intentional interference with a contract, and partial dismissal of Count V to the extent that it seeks injunctive relief under § 360-l of New York's General Business Law. With regard to the latter, the motion for partial dismissal of Count V is denied. Count V alleges deceptive business practices under § 349 of New York's General Business Law, and seeks damages under § 349 and injunctive relief under § 360-l. Since the § 360-l relates only to a remedy, and not the underlying claim itself, the [*21] Court finds it unnecessary to address the issue of whether part of the remedy (as opposed to the claim) is now moot. That issue can be addressed at a later point in the litigation.

With regard to Count VII, however, the Court agrees that the complaint fails to state a claim for intentional interference with a contract. To prove intentional interference with a contract under New York law, a party is required to prove: (1) the existence of a valid contract, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of the breach of that contract, and (4) damages caused by the breach. See Excellus Health Plan, Inc. v. Tran, 287 F. Supp. 2d 167, 176 (W.D.N.Y. 2003). Although plaintiff alleges in its complaint that it had exclusive contracts with authorized resellers of its *vitaminwater*, and that the defendants' actions interfered with those exclusive contracts, plaintiff has failed to allege any facts showing that the defendants were aware of those exclusive contracts and, despite that knowledge, defendants took some action to intentionally procure a breach of those contracts. Absent such allegations, Count VII fails to state a claim for intentional interference [*22] with a contract and must be dismissed. However, to the extent that plaintiff is aware of facts to support each of those absent elements, plaintiff is granted leave to replead Count VII within 30 days of this Order.

### 3. Motions for Dismissal of Cross-Claims

The Avers and Hoffmans defendants have brought two nearly identical cross-claims against the Jorgensen defendants for contribution and indemnification. The Jorgensen defendants move to dismiss those cross-claims, asserting that the cross-claims fail to comply with the pleading standards set forth in Rule 8(a).

As to the cross-claims, the Court finds that the conclusory allegations set forth by the Avers and Hoffmans defendants are simply insufficient to meet Rule 8 pleading standards. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 129 S. Ct. at 1950. Here, the cross-claims are devoid of any factual assertions and merely state that if the Avers or Hoffmans defendants are found liable to plaintiff, the Jorgensen defendants are liable to the Avers and/or Hoffmans defendants under a theory of contribution or indemnification. The Avers and Hoffmans defendants fail [*23] to set forth actions taken by the Jorgensen defendants that would give rise to a claim of indemnification and/or contribution. Such bare bones conclusory allegations of liability are insufficient to meet Rule 8 pleading requirements post-Iqbal. Accordingly, the cross-claims brought by the Avers defendants and the Hoffmans defendants against the Jorgensen defendants are dismissed. However, as with Count VII above, the Court will grant dismissal without prejudice with leave to replead those cross-claims within 30 days of this Order.

### III. Motion to Transfer Venue to South Dakota

Alternatively, the Jorgensen defendants request that this Court transfer venue to the District of South Dakota pursuant to 28 U.S.C. § 1404(b). Under that provision, this Court may exercise its discretion to transfer venue "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Among the factors to be considered in determining whether to grant a motion to transfer venue are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, [*24] (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 105 (2d Cir. 2006). To prevail on their motion to transfer venue, the defendants "must demonstrate that an adequate alternative forum exists and that . . . the balance of

convenience tilts strongly in favor of trial in the foreign forum." R. Maganlal & Co. v. M.G. Chemical Co., 942 F.2d 164, 167 (2d Cir. 1991). A party requesting transfer of venue "carries the 'burden of making out a strong case for transfer,'" by clear and convincing evidence. New York Marine and General Ins. Co. v. Lafarge North America, Inc., 599 F.3d 102, 113-14 (2d Cir. 2010). Ordinarily, plaintiff's choice of forum should not be disturbed unless the balance of factors weigh heavily in defendant's favor.

The defendant has failed to meet that burden. As plaintiff points out, there is no one single venue in which all parties reside. Plaintiff is in New York, as are the Hoffmans defendants. The Jorgensen defendants reside in South Dakota, and the Avers defendants are in Illinois. The contract at issue was to [*25] be performed, at least in part, in New York, when the product was removed, thus making venue proper here. Similarly, as to the Lanham Act claims, venue is also proper in New York because that is where the product was allegedly redistributed and passed off as saleable. At least some of the witnesses reside in New York as that is where the product was removed and then later redistributed. How that happened remains to be seen. However, since it is unknown whether any of the product ever made its way to South Dakota in the first place, it is unknown whether any non-defendant witnesses are located in South Dakota.

In sum, upon review of the relevant factors and after

according plaintiff's choice of forum the proper weight, the Court finds that plaintiffs have failed to meet their burden of making out a strong case for transfer. Accordingly, the motion to transfer is denied.

## CONCLUSION

For the reasons stated, the Jorgensen defendants' motion to dismiss Count VII is **granted**, but the motions to dismiss for lack of jurisdiction, for failure to state a claim and/or to change venue (Dkt. Nos. 39, 56, 57) are **denied** in all other respects; and the motions to dismiss the cross-claims asserted by the [*26] Avers and Hoffmans defendants are **granted** (Dkt. Nos. 41, 52 and 72). **Count VII of the complaint and cross-claims brought by the Avers defendants and the Hoffmans defendants are dismissed, without prejudice to reassert those claims on or before February 24, 2011**. Plaintiff's motion for jurisdictional discovery (Dkt. 61) is denied as moot.

SO ORDERED.

/s/ Richard J. Arcara

HONORABLE RICHARD J. ARCARA

UNITED STATES DISTRICT JUDGE

DATED: January 24, 2011

# EXHIBIT 6

LEXSEE



Caution
As of: Feb 06, 2012

IN RE: TFT-LCD (FLAT PANEL) ANTITRUSTLITIGATION; This Order Relates To: EASTMAN KODAK COMPANY, Plaintiff, v. EPSON IMAGING DEVICES CORPORATION, et al., Defendants.

No. M 07-1827 SI,MDL No. 1827,No. C 10-5452 SI

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2011 U.S. Dist. LEXIS 95053; 2011-2 Trade Cas. (CCH) P77,580

August 23, 2011, Decided
August 23, 2011, Filed

**SUBSEQUENT HISTORY:** Motion granted by SB Liquidation Trust v. AU Optronics Corp. (In re TFT-LCD Antitrust Litig.), 2011 U.S. Dist. LEXIS 95054 (N.D. Cal., Aug. 23, 2011)

**PRIOR HISTORY:** In re TFT-LCD (Flat Panel) Antitrust Litig., 2011 U.S. Dist. LEXIS 90730 (N.D. Cal., Aug. 12, 2011)

**CORE TERMS:** conspiracy, subsidiary, Cartwright Act, antitrust laws, indirect-purchaser, price-fixing, display, cameras, entities, price-fixed, competitors

**COUNSEL:** [*1] Martin Quinn, Special Master, Pro se, San Francisco, CA.

Mr. Daniel Weinstein, Special Master, Pro se, JAMS, Inc., San Francisco, CA.

For Giles Patricia, 07-3078, Plaintiff: Samuel W. Lanham, Jr., LEAD ATTORNEY, Lanham & Blackwell, Bangor, ME; Ian Otto.

For Gina Cerda, 07-1339, Linda Klare, 07-1339, Plaintiffs: Mario Nunzio Alioto, LEAD ATTORNEY, Trump Alioto Trump & Prescott LLP, San Francisco, CA.

For ATS Claim, LLC, 09-1115, Plaintiff: David Paul Germaine, LEAD ATTORNEY, Chicago, IL; David Paul Germaine, LEAD ATTORNEY, PRO HAC VICE; Jason C. Murray, Crowell & Moring LLP, Los Angeles, CA.

For Direct Purchaser Plaintiffs, Plaintiff: Daniel L. Warshaw, LEAD ATTORNEY, Pearson, Simon, Warshaw & Penny LLP, Sherman Oaks, CA; Eric B. Fastiff, LEAD ATTORNEY, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA; Hilary Kathleen Ratway, LEAD ATTORNEY, Hausfeld, LLP, Washington, DC; Andrew Scirica Kingsdale, Lieff, Cabraser, Heimann & Bernstein, San Francisco, CA; Brendan Patrick Glackin, Lieff, Cabraser, Heimann & Bernstein LLP, San Francisco, CA; Bruce Lee Simon, Pearson, Simon, Warshaw & Penny, LLP, San Francisco, CA.

For Hewlett-Packard Company, Interested Party (5/19/09), 10-5577, Plaintiff: [*2] Beatrice B. Nguyen, Gregory D. Call, Esq., LEAD ATTORNEYS, Suzanne E. Rode, Crowell & Moring LLP, San Francisco, CA; Bryan Leach, Fred H. Bartlit, Jr., Karma Micaela Giulianelli, Lester Houtz, PRO HAC VICE, Bartlit Beck Herman Palenchar & Scott, Denver, CO; Mark E Ferguson, Barlitt Beck Herman Palenchar & Scott, Chicago, Il; Mark S. Ouweleen, Attorney at Law, Bartlit Beck Herman

Page 1

34

2011 U.S. Dist. LEXIS 95053, *2; 2011-2 Trade Cas. (CCH) P77,580

Palenchar & Scott LLP, Chicago, IL.

For BellSouth Telecommunications, Inc., 09-4997, Pacific Bell Telephone Company, 09-4997, Southwestern Bell Telephone Company, 09-4997, Plaintiff: Christopher T. Leonardo, Kenneth L. Adams, R. Bruce Holcomb, Adams Holcomb LLP, Washington, DC; Jason C. Murray, Crowell & Moring LLP, Los Angeles, CA; Jeffrey H. Howard, PRO HAC VICE, Crowell & Moring LLP, Washington, DC; Jerome A. Murphy, Joshua C. Stokes, Crowell & Moring LLP; Liaison Counsel for Direct Aciton Plaintiffs, Washington, DC; Joshua Courtney Stokes, Crowell & Moring, Los Angeles, CA.

For Nokia Corporation, 09-5609, Nokia Inc., 09-5609, Plaintiff: Brian Parker Miller, Donald MacKaye Houser, Joann Elizabeth Johnston, Kacy Christine McCaffrey, Lisa Kathleen Bojko, Matthew D. Richardson, Peter Konito, Valarie Cecile Williams, [*3] PRO HAC VICE, Donald MacKaye Houser, Alston & Bird LLP, Atlanta, GA; Matthew Scott Orrell, Atlanta, GA; Randall Lee Allen, Alston and Bird, Menlo Park, CA; Richard W. Stimson, Alston & Bird LLP, Dallas, TX.

For AT & T Corp., 09-4997, AT & T Datacomm, Inc., 09-4997, AT & T Mobility LLC, 09-4997, AT & T Operations, Inc., 09-4997, AT & T Services, Inc., 09-4997, Plaintiff: Christopher T. Leonardo, Kenneth L. Adams, R. Bruce Holcomb, Adams Holcomb LLP, Washington, DC; Jason C. Murray, Crowell & Moring LLP, Los Angeles, CA; Jeffrey H. Howard, PRO HAC VICE, Crowell & Moring LLP, Washington, DC; Jerome A. Murphy, Joshua C. Stokes; Joshua Courtney Stokes, Crowell & Moring, Los Angeles, CA.

For Motorola, Inc., 09-5840, Plaintiff: Jason C. Murray, Crowell & Moring LLP, Los Angeles, CA; Jeffrey H. Howard, PRO HAC VICE, Crowell & Moring LLP, Washington, DC; Jerome A. Murphy; Joshua Courtney Stokes, Crowell & Moring, Los Angeles, CA; R. Bruce Holcomb, Adams Holcomb LLP, Washington, DC.

For Electrograph Systems, Inc., 10-117, Electrograph Technologies, Corp., 10-117, Plaintiff: Jason C. Murray, Crowell & Moring LLP, Los Angeles, CA; Philip J Iovieno, William A. Isaacson; Philip J. Iovieno, Boies, Schiller [*4] & Flexner LLP, Albany, NY.

For Dell Inc., 10-1064, Dell Products, L.P., 10-1064, Plaintiff: Andrew Jacob Tuck, Debra Dawn Bernstein, Elizabeth Helmer Jordan, Matthew David Kent, Michael

P. Kenny, Rodney J Ganske, Alston & Bird LLP, Atlanta, GA; Steven Daniel Hemminger, Alston & Bird LLP, Menlo Park, CA.

For Indirect Purchaser Plaintiffs, Plaintiff: Joseph M. Alioto, Sr., LEAD ATTORNEY, Daniel R. Shulman, Derek G. Howard; Michael Morteza Kowsari, Attorney at Law, Los Angeles, CA; Stephen Gerard Larson, Girardi & Keese, Los Angeles, CA; Steven J Foley, Hellmuth and Johnson PLLC, Edina, MN Unites Sta; Gregory W. Landry, LaMarca & Landry, P.C.; Marvin A. Miller, Miller Law LLC.

For State of Oregon, 10-4346, ex rel. John Kroger, Attorney General, Plaintiff: Blake Lee Harrop, Office of the Attorney General, Antitrust Bureau, Chicago, IL; Brady R. Johnson, Attorney General of Washington, Seattle, WA; Michael E. Haglund, Michael K. Kelley, Haglund Kelley Horngren Jones & Wilde LLP, Portland, OR; Tim David Nord, Oregon Department of Justice, Financial Fraud/Consumer Protection, Salem, OR.

For Direct Purchaser Plaintiffs, Plaintiff: Joseph Richard Saveri, LEAD ATTORNEY; Aaron M. Sheanin, Girard [*5] Gibbs LLP, San Francisco, CA; Andrew Scirica Kingsdale, Lieff, Cabraser, Heimann & Bernstein, San Francisco, CA; Brendan Patrick Glackin, Lieff, Cabraser, Heimann & Bernstein LLP, San Francisco, CA; Bruce Lee Simon, Pearson, Simon, Warshaw & Penny, LLP, San Francisco, CA; Eric B. Fastiff, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA; Richard Martin Heimann, Lieff Cabraser Heimann & Bernstein, San Francisco, CA.

For Tracfone Wireless, Inc., 10-3205, Plaintiff: David Bedford Esau, James Blaker Baldinger, Carlton Fields, P.A., West Palm Beach, FL; Robert L. Ciotti, Carlton Fields, Tampa, FL.

For State of Missouri, 10-3619, ex rel. Chris Koster, Attorney General, Plaintiff: Anne E. Schneider, Attorney General of Missouri; Liaison Counsel for the State Actions, LEAD ATTORNEY, Jefferson City, MO.

For State of Arkansas, 10-3619, ex rel. Dustin McDaniel, Attorney General, Plaintiff: David A. Curran, Assistant Attorney General, Little Rock, AR.

For State of Michigan, 10-3619, ex rel. Michael A. Cox, Attorney General, Plaintiff: Mary Elizabeth Lippitt, Michigan Attorney General, Assistant Attorney General,

Page 2

35

2011 U.S. Dist. LEXIS 95053, *5; 2011-2 Trade Cas. (CCH) P77,580

Lansing, MI.

For State of Missouri, 10-3619, ex rel Chris Koster, Attorney [*6] General, Plaintiff: Andrew McNally Hartnett, Office of the Missouri Attorney General, Jefferson City, MO; Anne E. Schneider, Attorney General of Missouri, Consumer Protection, Jefferson City, MO.

For State of West Virginia, 10-3619, ex rel Darrell McGraw, Attorney General, Plaintiff: Douglas Lee Davis, Attorney General, Consumer Protection and Antitrust, Charleston, WV; Jill L. Miles, Assistant Attorney General, Charleston, WV.

For State of Wisconsin, 10-3619, ex rel J.B. Van Hollen, Attorney General, Plaintiff: Gwendolyn J. Cooley, Wisconsin Attorney General, Madison, WI.

For State of Florida, Office of the Attorney General, Department of Legal Affairs, 10-3517, Plaintiff: Eli Friedman, Nicholas J. Weilhammer, Office of the Attorney General, State of Florida, Tallahassee, FL; Lizabeth Ann Leeds Brady, Office of the Attorney General, Antitrust Division, Tallahassee, FL; Liaison Counsel for the State Actions, Tallahassee, FL; Robert Scott Palmer, Office of the Attorney General, Anititrust Division, State of Florida, Tallahassee, FL.

For Best Buy Co., Inc., 10-4572, Best Buy Enterprise Services, Inc., 10-4572, Best Buy Purchasing LLC, 10-4572, Best Buy Stores, L.P., 10-4572, Magnolia Hi-Fi, [*7] Inc., 10-4572, Plaintiff: David Martinez, LEAD ATTORNEY, Robins Kaplan Miller & Ciresi L.L.P., Los Angeles, CA; Matthew David Taggart, LEAD ATTORNEY, Attorney at Law, Robins Kaplan Miller and Ciresi LLP, Los Angeles, CA; Elliot S. Kaplan, Robins Kaplan Miller & Ciresi, Minneapolis, MN; K. Craig Wildfang, Attorney at Law, Minneapolis, MN; Roman M. Silberfeld, Robins Kaplan Miller & Ciresi L.L.P., Los Angeles, CA.

For Target Corp., 10-4945, Kmart Corp, 10-4945, Sears, Roebuck and Co., 10-4945, Good Guys, Inc., 10-4945, Newegg Inc., 10-4945, Old Comp Inc., 10-4945, Radioshack Corp., 10-4945, Plaintiff: Christopher T. Leonardo, Kenneth L. Adams, R. Bruce Holcomb, Adams Holcomb LLP, Washington, DC; Jason C. Murray, Crowell & Moring LLP, Los Angeles, CA; Jeffrey H. Howard, Crowell & Moring LLP, Washington, DC; Jerome A. Murphy; Joshua Courtney Stokes,

Crowell & Moring, Los Angeles, CA.

For Eastman Kodak Company, 10-5452, Plaintiff: John R. Foote, Karl David Belgum, Nixon Peabody LLP, San Francisco, CA.

For SB Liquidation Trust, 10-5458, Plaintiff: Allan Diamond, Jason Paul Fulton, Jim McCarthy, Diamond McCarthy LLP, Dallas, TX; Erica W. Harris, Susan Godfrey LLP, Houston, TX; Marc M. Seltzer, [*8] Ryan Christopher Kirkpatrick, Steven Gerald Sklaver, Susman Godfrey LLP, Los Angeles, CA.

For Costco Wholesale Corp., 11-0058, Plaintiff: Cori G. Moore, Noah G. Purcell, Perkins Coil LLP, Seattle, WA; David J. Burman, Perkins Coie LLP, Seattle, WA; Troy Philip Sauro, Perkins Coie LLP, San Francisco, CA.

For Sony Computer Entertainment America, LLC, 10-5616, (10-5620 - voluntery dismissa), Sony Electronics, Inc., 10-5616, (10-5620 - voluntery dismissal), Plaintiff: David Mark Goldstein, Esq., Shannon Christine Leong, Stephen V. Bomse, Orrick, Herrington & Sutcliffe LLP, San Francisco, CA; Richard James Mooney, Robert L. Stolebarger, Holme Roberts & Owen LLP, San Francisco, CA.

For Alfred H. Siegel, 10-5625, as Trustee of the Circuit City Stores, Inc. Liquidating Trust, Plaintiff: David Humberto Orozco, Marc M. Seltzer, Susman Godfrey LLP, Los Angeles, CA; H. Lee Godfrey, Kenneth S. Marks, Susman Godfrey LLP, Houston, TX; Jordan Connors, Parker C. Folse, III, Susman Godfrey LLP, Seattle, WA.

For State of New York, 11-0711, Plaintiff: Geralyn Jeanette Trujillo, Richard L. Schwartz, Office of the Attorney General, State of New York, New York, NY; Jeremy R. Kasha, New York State Office of the [*9] Attorney General (NYC), New York, NY; John Andrew Ioannou, New York State Attorney General's Office, Antitrust Bureau, New York, NY.

For MetroPCS Wireless Inc., 11-0829, Plaintiff: Philip J Iovieno, LEAD ATTORNEY, William A. Isaacson; Anne M. Nardacci, Boies Schiller & Flexner LLP, Albany, NY; Lewis Titus LeClair, Mike McKool, Jr., Scott R Jacobs, McKool Smith, P.C., Dallas, TX; Philip J. Iovieno, Boies, Schiller & Flexner LLP, Albany, NY.

For LG Display Co., Ltd., (D, I, 09-1115) formerly

Page 3

2011 U.S. Dist. LEXIS 95053, *9; 2011-2 Trade Cas. (CCH) P77,580

known as LG Philips LCD Co., LTD., Defendant: Michael Robert Lazerwitz, LEAD ATTORNEY, Cleary Gottlieb Steen & Hamilton, Washington, DC; Arman Oruc, Jane Lee, Jonathan Lin, Simpson Thacher & Bartlett LLP, Washington, DC; Jeremy James Calsyn, Cleary Gottlieb Steen & Hamilton LLP, Washington, DC.

For Samsung Electronics Co. Ltd., (D, I, 09-1115), Samsung Electronics America, Inc., (D, I, 09-1115), Defendant: Simon J. Frankel, LEAD ATTORNEY, Jeffrey Michael Davidson, Steven D Sassaman, Timothy C. Hester, Covington & Burling LLP, San Francisco, CA; Daniel M Suleiman, Derek Ludwin, Neil K. Roman, Robert D. Wick, Theodore Paul Metzler, Covington & Burling LLP, Washington, DC.

For Sharp Corporation, (D, I, [*10] 09-1115), Sharp Electronics Corporation, (D, I, 09-1115), Defendant: Jacob R. Sorensen, LEAD ATTORNEY, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, CA; Anne Benton Kaldor, Erin Alysa Smart, Kristen A. Palumbo, Bingham McCutchen LLP, San Francisco, CA; Colin C. West, McCutchen, Doyle, Brown & Enersen, LLP, San Francisco, CA; John M. Grenfell, Lindsay A. Lutz, Ryan Takemoto, Pillsbury Winthrop Shaw PittmanLLP, San Francisco, CA; Kenneth I. Schacter, Richard S. Taffet, Bingham McCutchen LLP, New York, NY; Jon R. Roellke, Bingham McCutchen.

For Toshiba Corporation, (D, I, 09-1115), Toshiba Mobile Display Co., Ltd., Toshiba America Electronics Components, Inc., (D, I, 09-1115), Toshiba America Information Systems, Inc., (D, I, 09-1115), Defendants: Christopher M. Curran, Kristen Jentsch McAhren, LEAD ATTORNEYS, White & Case LLP, Washington, DC; John H. Chung, LEAD ATTORNEY, White & Case LLP, New York, NY.

For Toshiba Matsushita Display Technology Co., Ltd., (D, I, 09-1115), Defendant: John H. Chung, LEAD ATTORNEY, Wayne A. Cross, White & Case LLP, New York, NY.

For Hitachi Ltd., (D, I, 09-1115), Hitachi Displays, Ltd., (D, I, 09-1115), Defendant: Kent Michael Roger, Michelle Minju Kim-Szrom, [*11] Morgan Lewis & Bockius LLP, San Francisco, CA; John Clayton Everett, Jr., PRO HAC VICE, Morgan, Lewis & Bockius LLP, Washington, DC.

For Hitachi Electronic Devices (USA), Inc., (D, I, 09-1115), Defendant: Kent Michael Roger, LEAD ATTORNEY, Michelle Minju Kim-Szrom, Morgan Lewis & Bockius LLP, San Francisco, CA; Courtney Lynn Landis; John Clayton Everett, Jr., PRO HAC VICE, Morgan, Lewis & Bockius LLP, Washington, DC.

For AU Optronics Corporation, (D, I, 09-1115), Defendant: Christopher Alan Nedeau, LEAD ATTORNEY, Allison Marie Dibley, Esq., Bryan B. Barnhart, Carl Lawrence Blumenstein, Nossaman LLP, San Francisco, CA; Jessica Rae Madrigal, Nossaman Guthner Knox Elliott, San Francisco, CA; Kirk Christopher Jenkins, Sedgwick Detert Moran Arnold, Chicago, IL; Michael F. Healy, Esq., Sedgwick Detert Moran & Arnold LLP, San Francisco, CA.

For AU Optronics Corporation America, (D, I, 09-1115), Defendant: John C. McGuire, LEAD ATTORNEY, Sedgwick, Detert, Moran & Arnold, Newark, NJ; Matthew Clark Lovell, LEAD ATTORNEY, Sedgwick LLP, San Francisco, CA; Allison Marie Dibley, Esq., Bryan B. Barnhart, Carl Lawrence Blumenstein, Christopher Alan Nedeau, Nossaman LLP, San Francisco, CA; Jason Haruo [*12] Wilson, Willenken Wilson Loh & Lieb LLP, Los Angeles, CA; Jessica Rae Madrigal, Nossaman Guthner Knox Elliott, San Francisco, CA; Kirk Christopher Jenkins, Sedgwick Detert Moran Arnold, Chicago, IL; Michael F. Healy, Esq., Sedgwick Detert Moran & Arnold LLP, San Francisco, CA.

For Chi Mei Optoelectronics USA, Inc., (D, I, 09-1115), Defendant: John Lyle Williams, Jr., LEAD ATTORNEY, Manchester, Williams & Seibert, San Jose, CA; Nathan Loy Walker, LEAD ATTORNEY, WilmerHale, Palo Alto, CA; Adam Michael Raviv, Brent J. Gurney, Leon B. Greenfield, Stephanie K. Wood, Steven F. Cherry, Therese Lee, PRO HAC VICE, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC; Christopher B. Hockett, Neal Alan Potischman, Davis Polk & Wardwell, Menlo Park, CA; Samantha Harper Knox, Davis Polk & Wardwell LLP, Menlo Park, CA; Sandra D West, Davis Polk Wardwell, Menlo Park, CA; Wilmer Cutler, Hale and Dorr LLP, Washington, DC.

For Chunghwa Picture Tubes Ltd., (D, I, 09-1115), Defendant: Joel Calcar Willard, Joel Steven Sanders, Rachel S. Brass, Rebecca Justice Lazarus, Gibson, Dunn & Crutcher LLP, San Francisco, CA; William S Farmer, Collette Erickson Farmer & O'Neill LLP, San Francisco,

Page 4

2011 U.S. Dist. LEXIS 95053, *12; 2011-2 Trade Cas. (CCH) P77,580

CA; Robert W.  [*13] Tarun, Roxane C. Busey, Baker & McKenzie LLP.

For Hannstar Display Corporation, (D, I, 09-1115), Defendant: Christoher M. Wyant, LEAD ATTORNEY, Hugh Frederick Bangasser, Julie Anne Halter, Ramona M. Emerson, K&L Gates LLP, Seattle, WA; Mark K. Davis, PRO HAC VICE, Donald H. Mullins, Badgley Mullins Law Group PLLC, Seattle, WA; Hugh Frederick Bangasser, K&L Gates, Seattle, WA; Ismail Jomo Ramsey, Mary Kelly Persyn, Ramsey & Ehrlich LLP, Berkeley, CA; Jeffrey L. Bornstein, K&L Gates LLP, San Francisco, CA.

For Samsung Semiconductor, Inc., (D, I, 09-1115), Defendant: Simon J. Frankel, LEAD ATTORNEY, Jeffrey Michael Davidson, Steven D Sassaman, Timothy C. Hester, Covington & Burling LLP, San Francisco, CA; Daniel M Suleiman, Derek Ludwin, Robert D. Wick, Theodore Paul Metzler, Covington & Burling LLP, Washington, DC; Neil K. Roman, Covington & Burling, Washington, DC; Tyler Mark Cunningham, Sheppard Mullin Richter & Hampton, San Francisco, CA.

For CMO Japan Co., Ltd., (D, I, 09-1115), Nexgen Mediatech, Inc. ("Nexgen"), (D, 09-1115), Defendants: John Lyle Williams, Jr., LEAD ATTORNEY, Manchester, Williams & Seibert, San Jose, CA; Adam Michael Raviv, Leon B. Greenfield, Stephanie K. Wood, Wilmer  [*14] Cutler Pickering Hale and Dorr LLP, Washington, DC; Christopher B. Hockett, Neal Alan Potischman, Davis Polk & Wardwell, Menlo Park, CA; Samantha Harper Knox, Davis Polk & Wardwell LLP, Menlo Park, CA; Sandra D West, Davis Polk Wardwell, Menlo Park, CA.

For Chi Mei Corporation, (D, I, 09-1115), Defendant: John Lyle Williams, Jr., LEAD ATTORNEY, Manchester, Williams & Seibert, San Jose, CA; Adam Michael Raviv, Leon B. Greenfield, Stephanie K. Wood, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC; Christopher B. Hockett, Neal Alan Potischman, Davis Polk & Wardwell, Menlo Park, CA; Samantha Harper Knox, Davis Polk & Wardwell LLP, Menlo Park, CA.

For Nexgen Mediatech USA Inc, (D, 09-1115), Defendant: Caren K. Khoo, LEAD ATTORNEY, Wilmer Cutler Pickering Hale & Dorr, New York, NY; John Lyle Williams, Jr., LEAD ATTORNEY, Manchester, Williams & Seibert, San Jose, CA; Adam Michael Raviv,

Brent J. Gurney, Leon B. Greenfield, Stephanie K. Wood, Therese Lee, PRO HAC VICE, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC; Christopher B. Hockett, Neal Alan Potischman, Davis Polk & Wardwell, Menlo Park, CA; Samantha Harper Knox, Davis Polk & Wardwell LLP, Menlo Park, CA; Sandra  [*15] D West, Davis Polk Wardwell, Menlo Park, CA; Wilmer Cutler, Hale and Dorr LLP, Washington, DC.

For Chi Mei Optoelectronics Corporation, (D, I, 09-1115), Defendant: John Lyle Williams, Jr., LEAD ATTORNEY, Manchester, Williams & Seibert, San Jose, CA; Adam Michael Raviv, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC; Christopher B. Hockett, Neal Alan Potischman, Davis Polk & Wardwell, Menlo Park, CA; Samantha Harper Knox, Davis Polk & Wardwell LLP, Menlo Park, CA; Sandra D West, Davis Polk Wardwell, Menlo Park, CA.

For IPS Alpha Technology, LTD., (D), dismissed from IP amended complaint on 2/21/08, Defendant: Kent Michael Roger, Morgan Lewis & Bockius LLP, San Francisco, CA.

For Epson Electronics America, Inc., (D), Dismissed as a indirect purchaser defendant on 4/1/08, Defendant: Jeffrey E. Faucette, LEAD ATTORNEY, Derek Francis Foran, Kimberly Linnell Taylor, Stephen E. Taylor, Stephen P. Freccero; Kevin C. McCann, LEAD ATTORNEY, Paul Hastings Janofsky & Walker LLP, San Francisco, CA; Melvin R. Goldman, Morrison & Foerster, San Francisco, CA; Sean David Unger, Paul, Hastings, Janofsky & Walker LLP, San Francisco, CA; David Lawrence Meyer, Morrison & Foerster, Washington, DC  [*16] United Sta.

For Tatung Company of America, Inc. ("Tatung America"), (D, 09-1115), Defendant: Bruce H. Jackson, LEAD ATTORNEY, Baker & McKenzie, San Francisco, CA; Joel Steven Sanders, LEAD ATTORNEY, Joel Calcar Willard, Rebecca Justice Lazarus, Gibson, Dunn & Crutcher LLP, San Francisco, CA; Karen Sewell, Roxane C. Busey, PRO HAC VICE, Baker & McKenzie LLP, Chicago, Il; Nancy Chung Allred, Robert Walter Tarun, Baker & McKenzie LLP, San Francisco, CA; Patrick J. Ahern, PRO HAC VICE, Baker & McKenzie, Chicago, IL.

For LG Display America, Inc., (D, I, 09-1115) formerly known as LG Philips LCD America, Inc., Defendant: Michael Robert Lazerwitz, LEAD ATTORNEY, Cleary

Page 5

38

Gottlieb Steen & Hamilton, Washington, DC; Arman Oruc, Jane Lee, Jonathan Lin, Simpson Thacher & Bartlett LLP, Washington, DC; Katerina S Colitti, PRO HAC VICE, Jeremy James Calsyn, Cleary Gottlieb Steen & Hamilton LLP, Washington, DC.

For Au Optronics Corporation America, Inc, 09-4997, Defendant: Allison Marie Dibley, Esq., Nossaman LLP, San Francisco, CA.

For Mitsui & Co. (Taiwan), Limited, (D), Defendant: Lisa Cox Ghannoum, Michael Edward Mumford, Baker Hostetler LLP, Cleveland, OH; Peter Wethrell James, Baker Hostetler, Los [*17] Angeles, CA; Ernest E. Vargo, Baker & Hostetler LLC; Tracy Lynn Cole, Baker & Hostetler LLP.

For Sanyo Consumer Electronics Co., Ltd., (D), Defendant: Allison Ann Davis, LEAD ATTORNEY, Sam N. Dawood, Davis Wright Tremaine LLP, San Francisco, CA; Nick Steven Verwolf, Davis Wright Tremaine LLP, Bellevue, WA.

For Samsung SDI America, Inc., Samsung SDI Co., Ltd., Defendant: Michael W. Scarborough, Sheppard Mullin Richter & Hampton LLP, San Francisco, CA.

For Chimei Innolux Corp., Defendant: Christopher B. Hockett, Neal Alan Potischman, Davis Polk & Wardwell, Menlo Park, CA; Adam Michael Raviv, Leon B. Greenfield, Stephanie K. Wood, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC; Samantha Harper Knox, Davis Polk & Wardwell LLP, Menlo Park, CA; Sandra D West, Davis Polk Wardwell, Menlo Park, CA.

For Philips Electronics North America Corporation, Defendant: Brendan P. Cullen, Sullivan & Cromwell, Palo Alto, CA.

For Tatung Company, Defendant: Joel Steven Sanders, LEAD ATTORNEY, Gibson, Dunn & Crutcher LLP, San Francisco, CA; Patrick J. Ahern, LEAD ATTORNEY, Baker & McKenzie, Chicago, IL.

For Apple Inc., Interested Party: Caroline Nason Mitchell, Robert Allan Mittelstaedt, LEAD ATTORNEYS, [*18] Jones Day, San Francisco, CA.

For State of California, Amicus: Adam Miller, LEAD ATTORNEY, CA Dept of Justice, San Francisco, CA; Emilio Eugene Varanini, IV, State Attorney General's Office, San Francisco, CA.

For United States Antitrust Division, Department of Justice, Intervenor: Peter K. Huston, LEAD ATTORNEY, Department of Justice, Antitrust Division, San Francisco, CA; Alexandra Jill Shepard, David J. Ward, Heather S. Tewksbury, Michael L. Scott, U.S. Department of Justice, Antitrust Division, San Francisco, CA.

For State of Illinois, Intervenor: Blake Lee Harrop, LEAD ATTORNEY, Office of the Attorney General, Antitrust Bureau, Chicago, IL; Brady R. Johnson, Attorney General of Washington, Seattle, WA; Michael E. Haglund, Michael K. Kelley, Haglund Kelley Horngren Jones & Wilde LLP, Portland, OR.

For State of Washington, 10-5711 (plaintiff), Intervenor: Brady R. Johnson, LEAD ATTORNEY, Jonathan A Mark, Attorney General of Washington, Seattle, WA; Blake Lee Harrop, Office of the Attorney General, Antitrust Bureau, Chicago, IL; Michael E. Haglund, Michael K. Kelley, Haglund Kelley Horngren Jones & [*19] Wilde LLP, Portland, OR; Tina E. Kondo, Senior Assistant Attorney General, Seattle, WA.

For NEC LCD Technologies, Ltd., Intervenor: Stephen Holbrook Sutro, LEAD ATTORNEY, Duane Morris LLP, San Francisco, CA.

**JUDGES:** SUSAN ILLSTON, United States District Judge.

**OPINION BY:** SUSAN ILLSTON

**OPINION**

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS KODAK'S FIRST AMENDED COMPLAINT**

Now before the Court is defendants' joint motion to dismiss the first amended complaint ("FAC") of plaintiff Eastman Kodak Company ("Kodak"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for decision without oral argument and therefore VACATES the hearing currently scheduled for August 26, 2011. Having considered the arguments presented in the moving papers, the Court hereby GRANTS IN PART defendants' motion.

**BACKGROUND**

Page 6

2011 U.S. Dist. LEXIS 95053, *19; 2011-2 Trade Cas. (CCH) P77,580

Kodak sells digital still cameras to customers throughout the United States, including cameras that utilize thin-film transistor liquid crystal display panels ("LCD panels"). FAC at ¶1. Through this antitrust action, Kodak seeks to recover for an international price-fixing conspiracy that had "the purpose and effect of fixing, raising, stabilizing, and maintaining prices for LCD panels." FAC at ¶2.  [*20] Kodak's FAC includes claims under the Sherman Act, 15 U.S.C. § 1, and the antitrust laws of California, Nevada, and New York. FAC at ¶¶96-128. It names as defendants entities from three corporate families: Epson,[1] Toshiba,[2] and AU Optronics ("AUO").[3] FAC at ¶16-26.

1    Epson Imaging Devices Corporation and Epson Electronics Corporation America, Inc.
2    Toshiba Corporation, Toshiba America Electronics Components, Inc., and Toshiba Mobile Display Technology Co., Ltd.
3    AU Optronics Corporation and AU Optronics Corporation America, Inc.

On July 22, 2011, defendants filed a joint motion to dismiss Kodak's FAC under Federal Rule of Civil Procedure 12(b)(6). Defendant's motion raises just two grounds for dismissal. First, defendants claim that Kodak's FAC fails to provide an adequate description of the involvement of each defendant in the price-fixing conspiracy. Second, defendants claim that Kodak's claim under California's Cartwright Act must be dismissed to the extent Kodak's purchases were not made in California.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint that fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6)  [*21] motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief may be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

As mentioned above, defendants' motion challenges only two aspects of Kodak's complaint: (1) Kodak's  [*22] use of "group pleading"; and (2) and Kodak's attempt to recover under California antitrust law for LCD panel purchases that it made outside of California.

**I. Adequacy of Group Pleading**

Defendants claim that Kodak's FAC should be dismissed because it does not allege facts particular to each defendant. They argue that the complaint fails to allege "which defendant sold TFT-LCD Panels in what locations, or how any particular defendants' 'business activities' substantially affected interstate commerce." Motion at 5. Further, defendants assert that the FAC impermissibly groups defendants together by corporate family, and does not sufficiently allege "that each individual defendant joined the conspiracy and played some role in it." *Id.* at 6; *see also, e.g.,* FAC at ¶18 ("Defendants AUO and AUOA are referred to collectively herein as 'AU Optronics.'"); FAC at ¶¶ 21, 25.

This Court has previously evaluated a similar challenge to "group pleading" allegations in this multi-district litigation. In *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 599 F. Supp. 2d 1179 (N.D. Cal. 2009), the Court found that the direct-purchaser plaintiffs and the indirect-purchaser plaintiffs had both stated valid claims  [*23] against defendants, despite their use of group pleading. *Id.* at 1184.

Kodak's FAC, filed well after the Court issued the above order, bears a predictable resemblance to the direct- and indirect-purchaser complaints. The FAC alleges that the conspiracy was organized at the highest level of the defendant organizations and carried out by both executives and subordinate employees. FAC at ¶36;

Page 7

2011 U.S. Dist. LEXIS 95053, *23; 2011-2 Trade Cas. (CCH) P77,580

*see also* In re TFT LCD (Flat Panel) Antitrust Litig., 599 F. Supp. 2d at 1184-85. The FAC alleges that the conspiracy was implemented by subsidiaries and distributors within a corporate family, and that "individual participants entered into agreements on behalf of, and reported these meetings and discussions to, their respective corporate families." FAC at ¶ 26; *In re TFT LCD (Flat Panel) Antitrust Litig., 599 F. Supp. 2d at 1184-85*. Kodak also alleges that "the individual participants in conspiratorial meetings and discussions did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family." FAC at ¶26; *In re TFT LCD (Flat Panel) Antitrust Litig., 599 F. Supp. 2d at 1184-85*.

In addition to these general allegations, Kodak's [*24] FAC contains substantial detail concerning the subsidiary corporations' actions in furtherance of the conspiracy. For example, the FAC alleges that Epson Imaging Devices "participated in the conspiracy through meetings, conversations, and communications with competitors in Japan and the United States." FAC at ¶61. It also alleges that Epson's American subsidiary, Epson Electronics Corporation America, "was an active, knowing participant in the alleged conspiracy," both by acting as Epson Imaging Device's agent and by "engag[ing] in bilateral discussions with other defendants and co-conspirators." FAC, ¶63; *see also* FAC at ¶65-66 (alleging that "AUO senior level employees instructed AUOA employees in the United States to contact employees of other LCD Panel manufacturers" to discuss pricing); FAC at ¶71 (alleging that Toshiba Corporation instructed Toshiba's American subsidiary to communicate with competitors in the United States).

The Court finds that the allegations in Kodak's FAC are sufficient to put the defendants on notice of the charges against them. Accordingly, it DENIES defendants' motion to dismiss based on Kodak's use of group pleading.

**II. Cartwright Act Claims**

Kodak's FAC [*25] includes two claims under the

Cartwright Act: its second claim for relief seeks to recover under the Cartwright Act for all U.S. purchases of price-fixed LCD products; while its third claim for relief only seeks to recover for those purchases made in California. FAC ¶¶102-17. Defendants argue that Kodak's second claim must be dismissed because due process forbids application of California antitrust law to purchases that occurred outside of California.

In June 2010, this Court addressed this issue in the context of claims brought by AT&T Mobility LLC. *See* Order Granting Defendants' Joint Motion to Dismiss and Granting Plaintiffs Leave to Amend, Master Docket No. 1823 (June 28, 2010). The Court concluded that, "in order to invoke the various state laws at issue, plaintiffs must be able to allege that 'the occurrence or transaction giving rise to the litigation' - plaintiffs' purchases of allegedly price-fixed goods - occurred in the various states." *Id.* at 5.

Kodak acknowledges this Court's prior ruling; it seeks only to preserve this claim in the event the Ninth Circuit reverses this Court's order in the pending interlocutory appeal. Accordingly, the Court GRANTS defendants' motion to [*26] dismiss Kodak's second claim for relief.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion to dismiss the first amended complaint. Docket No. 25 in 105452; Docket No. 3251 in 07-1827.

**IT IS SO ORDERED.**

Dated: August 23, 2011

/s/ Susan Illston

SUSAN ILLSTON

United States District Judge

Page 8

# EXHIBIT 7

LEXSEE



Positive
As of: Feb 06, 2012

APOLONIO PALOMARES, an Individual; TERESA PALOMARES, an Individual, Plaintiffs, vs. BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION, a Delaware corporation; FASTLINK FINANCIAL. INC., a California corporation; YAZMIN ESPARZA, an Individual; and DOES 1 through 25, inclusive, Defendants.

CASE NO. 07cv01899 WQH (BLM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

2008 U.S. Dist. LEXIS 19407

March 13, 2008, Decided
March 13, 2008, Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff homeowners sued defendants, lender and mortgage broker, alleging violations of federal and state laws in connection with the refinancing of their residence. The lender moved to dismiss portions of the complaint.

**OVERVIEW:** The homeowners spoke and read only in Spanish. They were contacted by the mortgage broker who presented them with three different refinancing options. The homeowners stated that the broker made these presentations in Spanish and they elected the five year fixed rate interest only option. The homeowners claimed that the broker then presented the refinancing documents written only in English and claimed they were the five year interest only loan. In fact, the documents were for another more expensive refinancing loan which was offered by the lender. The lender moved to dismiss the claims against it for violation of Cal. Civ. Code §§ 1920 and 1921, intentional misrepresentation, intentional infliction of emotional distress (IIED) and other claims. The court found that the complaint did not allege facts with the required specificity to support that the lender

personally made a misrepresentation, or that the lender was jointly liable for statements made by the broker based on an agency or civil conspiracy theory. The homeowners sufficiently alleged that they suffered severe emotional distress and that defendants' alleged outrageous conduct caused this severe emotional distress.

**OUTCOME:** The motion to dismiss was denied with regard to the IIED claim and was granted in all other respects. The homeowners were granted leave to file an amended complaint.

**CORE TERMS:** misrepresentation, intentional infliction of emotional distress, causes of action, negligent misrepresentation, fair dealing, emotional distress, concealment, mortgage, intentional misrepresentation, outrageous, covenant of good faith, civil conspiracy, conspiracy, severe, loan documents, intentional misrepresentation, monthly payments, outrageous conduct, particularity, oppose, loan applications, jointly liable, co-conspirator, fiduciary, emotional, favorable, Covenant, hazard, wrongful act, false representations

**LexisNexis(R) Headnotes**

2008 U.S. Dist. LEXIS 19407, *

***Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims***
***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***

[HN1]A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the pleadings. A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right of relief above the speculative level. Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss***

[HN2]Courts will grant a motion to dismiss when the non-moving party files a notice of non-opposition.

***Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > Elements***

[HN3]To state a claim for intentional misrepresentation, a plaintiff must allege: (1) a misrepresentation, (2) knowledge that the representation was false, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.

***Business & Corporate Law > Agency Relationships > Duties & Liabilities > Authorized Acts of Agents > Liability of Principal***
***Business & Corporate Law > Agency Relationships > Establishment > Elements > General Overview***

[HN4]Principals are liable for the tortious acts of their agents committed within the scope of the agency. To allege an agency relationship, a plaintiff must allege: (1) that the agent or apparent agent holds power to alter legal relations between principal and third persons and between principal and himself; (2) that the agent is a

fiduciary with respect to matters within scope of agency; and (3) that the principal has right to control conduct of agent with respect to matters entrusted to him.

***Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > Elements***

[HN5]All conspirators are jointly liable for the acts of their co-conspirators. To allege a civil conspiracy, a plaintiff must allege: (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts. To allege the formation and operation of the conspiracy, the plaintiff must allege an agreement to commit the wrongful acts.

***Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims***

[HN6]Pursuant to Fed. R. Civ. P. 9(b), in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. To state a claim of intentional misrepresentation, the plaintiff must satisfy this heightened pleading standard for fraud pursuant to Rule 9(b). When a plaintiff alleges that a defendant is liable for intentional misrepresentation under either an agency or civil conspiracy theory, Rule 9(b) requires that the plaintiff allege with particularity facts that support the existence of an agency relationship or civil conspiracy. Rule 9(b) requires that the pleader state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation. Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. The plaintiffs must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.

***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***

[HN7]A complaint may not lump together allegations against multiple defendants.

***Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements***

[HN8]To state a claim for intentional infliction of

Page 2

43

emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. In order to be "outrageous," conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized society. Severe emotional distress may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview*
[HN9]With regard to a claim of intentional infliction of emotional distress, where reasonable minds may differ, the trier of fact is to determine whether the conduct has been sufficiently extreme and outrageous to result in liability.

**COUNSEL:**  [*1] For Apolonio Palomares, an Individual, Teresa Palomares, an Individual, Plaintiffs: Jonathan Kurniadi, LEAD ATTORNEY, The JK Law Firm, La Jolla, CA.

For Bear Sterns Residential Mortgage Corporation, a Delaware Corporation, Defendant: Andrea Hackett Henningsen, LEAD ATTORNEY, Severson & Werson, San Francisco, CA.

For Fastlink Financial Inc, a California Corporation, Yazmin Esparza, an Individual, Defendants: Joseph Anton Fette, LEAD ATTORNEY, Sunderland McCutchan, San Diego, CA.

**JUDGES:** WILLIAM Q. HAYES, United States District Judge.

**OPINION BY:** WILLIAM Q. HAYES

**OPINION**

**ORDER**

   HAYES, Judge:

   The matter before the Court is the Motion to Dismiss Portions of Plaintiffs' Complaint (Doc. # 12) filed by Defendant Bear Stearns Residential Mortgage Corporation.

**BACKGROUND**

   On September 28, 2007, Apolonio Palomares and Teresa Palomares ("Plaintiffs") filed a Complaint against Bear Stearns Residential Corporation ("Bear Stearns"), Fastlink Financial, Inc. ("Fastlink"), and Yazmin Esparza. (Doc. # 1). The Complaint alleges the following causes of action: (1) violation of the Truth and Lending Act, (2) violation of the Real Estate and Settlement Procedures Act, (3) violation of California Civil Code sections 1920 and 1921, (4) violation [*2] of the Unfair Competition Act, (5) violation of the False Advertising Act, (6) Constructive Fraud, (7) Intentional Misrepresentation, (8) Concealment, (9) Negligent Misrepresentation, (10) Fraud on the Public, (11) Rescission/Cancellation, (12) Breach of Fiduciary Duty, (13) Negligence, (14) Breach of Implied Covenant of Good Faith and Fair Dealing, and (15) Intentional Infliction of Emotional Distress. *Id.*

   The Complaint alleges that in April of 2007, Plaintiffs received a phone call from a woman by the name of Yazmin Esparza, who told Plaintiffs that she was a representative of a company by the name of Fastlink. *Id.* at PP 2, 28. The Complaint alleges that Esparza represented to Plaintiffs that Esparza and Fastlink could and would consolidate Plaintiffs' existing home loans, and obtain a mortgage with monthly payments of less than $ 2,700, which would include property taxes and hazard insurance, and would not have a prepayment penalty period of more than 12 months. *Id.* at P 36. The Complaint alleges that Plaintiffs only speak, read, and write Spanish, that Esparza was aware that Plaintiffs only speak, read and write Spanish, and that Esparza made these representations in Spanish. *Id.* at PP 30-32.

   The [*3] Complaint alleges that Esparza visited Plaintiffs' home several weeks after the initial phone call and offered to Plaintiffs, in writing, the following three alternative loan products from Fastlink: (1) a five-year fixed rate loan with interest-only monthly obligations of $ 2,700 that included property tax and hazard insurance ("first loan product"); (2) an "Option Adjustable Rate Mortgage" with monthly payment obligations of $ 3,366.73 ("second loan product"); and (3) a thirty-year fixed mortgage with monthly payments exceeding $ 4,000. *Id.* at P 38.

The Complaint alleges that Plaintiffs told Esparza that they wanted the first loan product, and that Esparza promised Plaintiffs that she would obtain the first loan product for Plaintiffs. *Id.* at PP 39-40.

The Complaint alleges that in or about May of 2007, Esparza visited Plaintiffs' home with a set of loan documents. The Complaint alleges that the documents were really associated with the second loan product, despite Esparza's representation that the documents were associated with the first loan product. *Id.* at P 46. The Complaint alleges that the loan documents also included a second mortgage note on Plaintiffs' home in the amount of [*4] $ 62,000, with an interest rate of 10.87%. *Id.* The Complaint alleges that Esparza instructed the Plaintiffs to sign the documents, which were written in English; that Plaintiffs asked Esparza to verify the set of loan documents as Fastlink's first loan product; that Esparza assured Plaintiffs, in Spanish, that the set of loan documents was Fastlink's first loan product; and that Plaintiffs could not understand the documents because they only read, write, and speak Spanish. *Id.* at PP 49-53. The Complaint alleges that Plaintiffs signed the documents associated with the second loan product. *Id.* at P 59.

The Complaint alleges that the representations made to the Plaintiffs by Esparza that Plaintiffs would receive the first loan product were false; that "Defendants knew that these representations were false at the time they were made or made the false representations in reckless disregard of the truth;" that "Defendants intended that Plaintiffs rely on the misrepresentations;" and that "Plaintiffs reasonably relied on Defendants' misrepresentations because they thought Defendants were acting as their agent and in their best interests." *Id.* at PP 53-58, 132-35.

The Complaint alleges that Bear [*5] Stearns was the lender for the second loan product. *Id.* at PP 23, 68-70. The Complaint alleges that Fastlink and Esparza were acting as "agents" of Bear Stearns when they secured the second loan product for Plaintiffs. *Id.* at PP 22-23. The Complaint alleges that Esparza, Fastlink, and Bear Stearns formed a "civil conspiracy" that included a common plan to falsify the loan documents, obscure the terms of the loan applications and mislead Plaintiffs. *Id.* at P 24. The Complaint alleges that "Defendants, and each of them, falsified Plaintiffs' loan information, and/or closed their eyes to the ability [of] Plaintiffs herein to

repay [the] loan." *Id.* at P 84. The Complaint alleges that Bear Stearns motivated Esparza and Fastlink to sell the second loan product by providing a $ 7,362.20 incentive that Fastlink and Esparza would not have received had they not secured the second loan product for Plaintiffs. *Id.* at PP 71-72.

The Complaint alleges that the total monthly obligation under the new loans is $ 4,279.01, and that the new loans do not include property taxes and hazard insurance. *Id.*

The Complaint alleges that "Defendants" acted with "conscious and outrageous disregard towards Plaintiffs" [*6] by misrepresenting the characteristics of the loans and placing Plaintiffs in loans that "Defendants" knew Plaintiffs could not afford. *Compl.* at PP 33, 43, 190.

On November 30, 2007, Bear Stearns filed the Motion to Dismiss Portions of Plaintiffs' Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 12). Bear Stearns moves to dismiss the claims against Bear Stearns for violation of California Civil Code sections 1920 and 1921, intentional misrepresentation, concealment, negligent misrepresentation, negligence, breach of the implied covenant of good faith and fair dealing and intentional infliction of emotional distress. *Motion to Dismiss,* p. 2-3.

On December 24, 2007, Plaintiffs filed Opposition to Defendants' Motion to Dismiss. (Doc. # 21). Plaintiffs oppose dismissal of the causes of action for intentional misrepresentation and intentional infliction of emotional distress. *Opposition,* p. 2. Plaintiffs do not oppose dismissal of the causes of action for violation of California Civil Code sections 1920 and 1921, concealment, negligent misrepresentation, negligence and breach of the implied covenant of good faith and fair dealing. *Id.*

On December 28, 2007, [*7] Bear Stearns filed a Reply Motion in Support of the Motion to Dismiss. (Doc. # 22).

## STANDARD OF REVIEW

[HN1]A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings. *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6)

Page 4

2008 U.S. Dist. LEXIS 19407, *7

where the factual allegations do not raise the "right of relief above the speculative level." *Bell Atlantic v. Twombly,* 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show "that the pleader is entitled to relief." *See id.* (citing Fed. R. Civ. P. 8(a)(2)). In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. *See Broam v. Bogan,* 320 F.3d 1023, 1028 (9th Cir. 2003). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Robertson v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1981). "Nor [*8] is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187 (9th Cir. 2001).

## DISCUSSION

### I. Causes of Action for Violation of California Civil Code Sections 1920 and 1921, Concealment, Negligent Misrepresentation, Negligence and Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs state in the Opposition to the Motion to Dismiss that "Plaintiffs do not oppose Bear Stearns 12(b)(6) Motion to Dismiss as to the following Causes of Action of Plaintiffs' Complaint: (a) Third Cause of Action--Violation of California Civil Code §§ 1920 and 1921; (b) Eight Cause of action--Concealment, California Civil Code §§ 1709 and 1710; (c) Ninth Cause of Action--Negligent Misrepresentation, California Civil Code §§ 1709 and 1710; (d) Thirteenth Cause of Action--Negligence; and (e) Fourteenth Cause of Action--Breach of Implied Covenant of Good Faith and Fair Dealing." *Opposition,* p. 2 (emphasis in original).

[HN2]Courts will grant a motion to dismiss when the non-moving party files a notice of non-opposition. *Newdow v. Cong. of the United States,* 435 F.Supp.2d 1066, 1070 (E.D. Cal. 2006); [*9] S.D CAL. L.R. 7.1(f)(3). The Court will grant the Motion to Dismiss the causes of action against Bear Stearns for violation of California Civil Code sections 1920 and 1921, concealment, negligent misrepresentation, negligence and breach of the implied covenant of good faith and fair

dealing because Plaintiffs have made a clear statement of non-opposition to dismissal of these claims. *See id.; Opposition,* p. 2.

## II. Intentional Misrepresentation

Bear Stearns contends that Plaintiffs have not adequately alleged a misrepresentation made by Bear Stearns, or that Esparza and Fastlink were agents or co-conspirators of Bear Stearns such that Bear Stearns is liable for statements made by Esparza and Fastlink. *Mot. to Dismiss,* p. 7; *Reply to Opposition,* p. 3. Bear Stearns moves to dismiss Plaintiffs' cause of action against Bear Stearns for intentional misrepresentation on grounds that Plaintiffs have failed to allege any misrepresentation attributable to Bear Stearns with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.

Plaintiffs contend that they have alleged that Bear Stearns acted as a principal and co-conspirator through allegations that Bear Stearns provided [*10] Bear Stearns and Esparza with a $ 7,362.20 incentive for selling the second loan product. Plaintiffs contend that Bear Stearns is jointly liable for misrepresentations made by Esparza and Fastlink, under either an agency or a civil conspiracy theory. *Opposition,* p. 6.

[HN3]To state a claim for intentional misrepresentation, a plaintiff must allege: (1) a misrepresentation, (2) knowledge that the representation was false, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *Agosta v. Astor,* 120 Cal.App.4th 596, 599, 603, 15 Cal. Rptr. 3d 565 (Cal. Ct. Appeal 2005); 5 Witkin Summary of Cal. Law (10th ed. 2005) Torts §772, p. 1121.

[HN4]Principals are liable for the tortious acts of their agents committed within the scope of the agency. *Holley v. Crank,* 400 F.3d 667, 673 (9th Cir. 2004); RESTATEMENT (THIRD) OF AGENCY § 7.03 (2006). To allege an agency relationship, a plaintiff must allege: (1) that the agent or apparent agent holds power to alter legal relations between principal and third persons and between principal and himself; (2) that the agent is a fiduciary with respect to matters within scope of agency; and (3) that the principal [*11] has right to control conduct of agent with respect to matters entrusted to him. *Garlock Sealing Technologies LLC v. NAK Sealing Technologies, Corp.* 148 Cal.App.4th 937, 965, 56 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007).

Page 5

[HN5]All conspirators are jointly liable for the acts of their co-conspirators. *See Swartz v. KPMG, LLP,* 476 F.3d 756, 765 (9th Cir. 2007) (citing *Beltz Travel Serv., Inc. v. Int' Air Transp. Ass'n,* 620 F.2d 1360, 1367 (9th Cir. 1980)). To allege a civil conspiracy, a plaintiff must allege: "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." *Cellular Plus, Inc. v. Superior Court,* 14 Cal. App. 4th 1224, 1236, 18 Cal. Rptr. 2d 308 (Cal.Ct. App. 1993). To allege the formation and operation of the conspiracy, the plaintiff must allege an agreement to commit the wrongful acts. *Wasco Products, Inc. v. Southwall Tech., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006).

[HN6]Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To state a claim of intentional misrepresentation, the Plaintiff [*12] must satisfy this heightened pleading standard for fraud pursuant to Rule 9(b). Fed. R.Civ. P. 9(b); *Henry v. Lehman Commer. Paper, Inc.,* 471 F.3d. 977, 998 (9th Cir. 2005). When a plaintiff alleges that a defendant is liable for intentional misrepresentation under either an agency or civil conspiracy theory, Rule 9(b) requires that the plaintiff allege with particularity facts that support the existence of an agency relationship or civil conspiracy. *Swartz,* 476 F.3d at 764-65. Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *Id.; Sebastian International, Inc. v. Russolillo,* 128 F. Supp. 2d 630, 634-35 (C.D. Cal. 2001). Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz,* 476 F.3d at 764-65. "[T]he plaintiffs must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" *Id.* (quoting *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir. 1989)).

Plaintiffs [*13] allege that Esparza and Fastlink made various misrepresentations, including that the documents Plaintiffs signed were for the first loan product. *Compl.* at P 53. Plaintiffs generally allege that "Defendants" engaged in fraudulent conduct, but only attribute specific conduct to Esparza and Fastlink. *Id.*

Plaintiffs have failed to allege that Bear Stearns personally made any misrepresentations. *See Swartz,* 476 F.3d at 764-65 (a [HN7]complaint may not lump together allegations against multiple defendants).

The Complaint alleges that "each and every Defendant was an agent and/or employee of each and every other Defendant," and that "[e]ach and every Defendant was acting within the course and scope of this agency or employment with the consent, permission, and authorization of the remaining Defendants, or otherwise acting with apparent authority." *Id.* at P 22. However, Plaintiffs have failed to allege that Esparza or Fastlink had the power to alter legal relations between Bear Stearns and the Plaintiffs, that either Esparza or Fastlink was a fiduciary of Bear Stearns, or that Bear Stearns had the right to control the conduct of either Esparza or Fastlink. *See Garlock,* 148 Cal.App.4th at 965. The [*14] Court finds that Plaintiffs have failed to allege with particularity that Esparza and Fastlink were agents of Bear Stearns.

The Complaint alleges that "there existed a civil conspiracy between Defendants, and each of them, the object of which was to reap substantial profits by targeting Plaintiffs, and those similarly situated," and that there was "a common plan or design to falsify the loan applications, to obscure the terms of the loan applications and to mislead" the Plaintiffs. *Compl.* at P 24. Plaintiffs, however, have failed to allege that Bear Stearns formed any agreement with Esparza and Fastlink to misrepresent that the Plaintiffs would receive the first loan product. *See Wasco,* 435 F.3d at 992. The Court finds that Plaintiffs have failed to allege with particularity that Bear Stearns was a party to a civil conspiracy.

Viewing the allegations in the light most favorable to Plaintiffs, the Court concludes that the Complaint does not allege facts with the required specificity to support that Bear Stearns personally made a misrepresentation, or that Bear Stearns is jointly liable for statements made by Esparza and/or Fastlink based on an agency or civil conspiracy theory. The Court [*15] will grant the Motion to Dismiss Plaintiffs' claim against Bear Stearns for intentional misrepresentation.

### III. Intentional Infliction of Emotional Distress

Bear Stearns moves to dismiss Plaintiffs' claim for intentional infliction of emotional distress against Bear Stearns on grounds that Plaintiffs have failed to

Page 6

sufficiently allege that Bear Stearns' conduct was extreme and outrageous. *Mot. to Dismiss* at p. 4. Bear Stearns contends that, as a matter of law, Plaintiffs have not alleged that Bear Stearns' conduct was outrageous because the Complaint alleges that Bear Stearns gave Plaintiffs a written disclosure clearly informing Plaintiffs that they were receiving an adjustable rate mortgage. *Mot. to Dismiss* at p. 5.

Plaintiffs oppose the Motion to Dismiss the claim for intentional infliction of emotional distress on grounds that California law allows recovery for emotional distress damages as a result of intentional tortious conduct. *Opposition* at p. 6-7. Plaintiffs assert that they have stated a claim for intentional infliction of emotional distress because they have alleged misrepresentations regarding Plaintiffs' refinancing and have alleged that "Defendants, intentionally, or at [*16] least recklessly, placed the Plaintiffs into mortgages which they knew were specifically beyond the realm of the Plaintiffs' ability to pay." *Opposition*, p. 7-8.

[HN8]To state a claim for intentional infliction of emotional distress, Plaintiffs must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1001, 25 Cal. Rptr. 2d 550, 863 P.2d 795 (1993)* (citing *Christensen v. Superior Ct., 54 Cal. 3d 868, 903, 2 Cal. Rptr. 2d 79, 820 P.2d 181 (1991))*. In order to be "outrageous," conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Garamendi v. Golden Eagle Ins. Co., 128 Cal. 4th 452, 480, 27 Cal. Rptr. 3d 239 (2005)*. Severe emotional distress "may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry." *Hailey v. California Physicians' Service, 158 Cal. App. 4th 452, 476, 69 Cal. Rptr. 3d 789 (9th Cir. 2007)*.

"[HN9]Where reasonable [*17] minds may differ, the trier of fact is to determine whether the conduct has been sufficiently extreme and outrageous to result in liability." *Tekle v. United States, 511 F.3d 839, 856 (9th Cir. 2006)*.

The cause of action for intentional infliction of emotional distress alleges in full:

> Defendants, and each of them, acted with conscious and outrageous disregard towards Plaintiffs by implementing their 2-part Deceptive Acts and Practices Predatory Lending Scheme as alleged above, so as to foreseeably cause Plaintiffs severe and enduring emotional distress including persistent and strong feelings of fear, shock, worry, anxiety, anger, depression, sadness, embarrassment, humiliation, shame and disappointment, constituting an extreme and outrageous invasion of Plaintiffs' mental and emotional tranquility.

*Compl.* at P 190. The Complaint also alleges that "Defendants promised and represented to Plaintiffs that they would provide a five (5) year fixed mortgage with an interest-only, fully impounded monthly payment of $ 2,700 as a decoy, but Defendants had no intention of selling that loan to Plaintiffs." *Id.* at P 33. The Complaint alleges that "Defendants' solicitation and promise to obtain a [*18] 5-year fixed loan for Plaintiffs was a fraud, and Defendants instead engaged to obtain for Plaintiffs two (2) more expensive and unaffordable loans than Plaintiffs'." *Id.* at P 43. The Complaint alleges that "Defendants, and each of them, falsified Plaintiffs' loan information, and/or closed their eyes to the ability [of] Plaintiffs herein to repay [the] loan." *Id.* at P 84. The Court finds that reasonable minds may differ with regard to whether this alleged conduct is "so extreme as to exceed all bounds of that usually tolerated in a civilized society." *See Garamendi, 128 Cal. App. 4th at 480*. The Court also finds that Plaintiffs have alleged that Plaintiffs suffered severe emotional distress and that Defendants' alleged outrageous conduct caused this severe emotional distress. Viewing the allegations in the light most favorable to the Plaintiffs, the Court concludes that the Complaint states a claim against Bear Stearns for intentional infliction of emotional distress. The Court will deny the Motion to Dismiss Plaintiffs' claim against Bear Stearns for intentional infliction of emotional distress.

## CONCLUSION

IT IS HEREBY ORDERED that Court **DENIES** the Motion to Dismiss the cause of action [*19] against Bear Stearns for intentional infliction of emotional distress. It

2008 U.S. Dist. LEXIS 19407, *19

is further ordered that the Court **GRANTS** the Motion to Dismiss the causes of action against Bear Stearns for violation of California Civil Code sections 1920 and 1921, negligent misrepresentation, concealment, negligence, breach of the implied covenant of good faith and fair dealing and intentional misrepresentation. The causes of action against Bear Stearns for violation of California Civil Code sections 1920 and 1921, negligent misrepresentation, concealment, negligence, breach of the implied covenant of good faith and fair dealing and intentional misrepresentation are **DISMISSED with**

**leave to amend.** If Plaintiffs wish to amend the Complaint they must file and serve a first amended complaint within sixty (60) days of the date of this order.

DATED: March 13, 2008

/s/ William Q. Hayes

WILLIAM Q. HAYES

United States District Judge

# EXHIBIT 8

LEXSEE



Caution
As of: Feb 06, 2012

QWEST COMMUNICATIONS CORPORATION, Plaintiff, v. HERAKLES, LLC, et al, Defendants.

No. 2:07-cv-00393-MCE-KJM

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

2008 U.S. Dist. LEXIS 22154

March 20, 2008, Decided
March 20, 2008, Filed

**SUBSEQUENT HISTORY:** Motion denied by Qwest Commun. v. Herakles, LLC, 2008 U.S. Dist. LEXIS 72660 (E.D. Cal., Aug. 18, 2008)

**PRIOR HISTORY:** Qwest Communs. Corp. v. Herakles, LLC, 2008 U.S. Dist. LEXIS 22151 (E.D. Cal., Mar. 20, 2008)

**CORE TERMS:** customer, cause of action, alter egos, tortious interference, leave to amend, ownership, manager, restitution, quotations, entity, conspiracy, injustice, fiduciary duties, unfair competition, constructive fraud, unjust enrichment, unity of interest, agency relationship, efendant, potential customers, common law, fiduciary relationship, resulting damage, independent contractor, advertising, contractual, conclusory, contracted, withstand, implicate

**COUNSEL:** [*1] For Qwest Communications Corporation, a Delaware Corporation, Plaintiff: Charles W. Steese-PRO HAC VICE, Phillip L. Douglass, PHV, LEAD ATTORNEYS, Steese and Evans, PC, Denver, CO; Mark Douglas Epstein, LEAD ATTORNEY, Alborg Veiluva & Epstein LLP, Walnut Creek, CA.

For Herakles, LLC, d/b/a Herakles Data, Defendant: Stacey N. Knox, Winston and Strawn (LA), Los Angeles, CA.

For Sandy Beaches I LP, a California Limited Partnership, Riptide I LLP, a California Limited Partnership, Defendants: Harry A. Olivar, Jr., LEAD ATTORNEY, Quinn Emanuel Urquhart Oliver & Hedges, LLP, Los Angeles, CA; Loren Kieve, LEAD ATTORNEY, Quinn Emanuel Urquhart Oliver and Hedges, San Francisco, CA.

For Capital Lease Funding, Inc., a Delaware Corporation, Capital Lease Funding, LP, a Delaware Limited Partnership, Defendants: Catherine Ann Allen, Hunton & Williams LLP, Los Angeles, CA; Shawn Patrick Regan-PRO HAC VICE, Hunton and Williams, New York, NY; Stacey N. Knox, Winston and Strawn (LA), Los Angeles, CA.

**JUDGES:** MORRISON C. ENGLAND, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MORRISON C. ENGLAND, JR.

**OPINION**

MEMORANDUM AND ORDER

Through the present action, Plaintiff Qwest

Page 1

Communications Corporation ("Qwest") seeks damages from Defendants [*2] Herakles, LLC ("Herakles"), Sandy Beaches I LP ("Sandy Beaches"), Riptide I LP ("Riptide"), and Capital Lease Funding, Inc. and Capital Lease Funding, LP, for deceptive advertising, breach of contract, constructive fraud and breach of fiduciary duty, statutory and common law unfair competition, tortious interference with both prospective economic advantage and with contract, unjust enrichment, civil conspiracy, and aiding and abetting. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Herakles, Sandy Beaches, and Riptide (collectively "Defendants") filed the present Motions to Dismiss all counts pled against them. [1] As set forth below, those Motions will be granted in part and denied in part.

> 1   The two other named Defendants, Capital Lease Funding, Inc. and Capital Lease Funding LP ("CapLease Funding Defendants"), have collectively filed another Motion to Dismiss in this matter. Because both the allegations levied against the CapLease Funding Defendants, as well as the resolution of their motion, vary from the other Defendants considered herein, the CapLease Funding Motion will be addressed by separate Order.

## BACKGROUND

2

> 2   This section is derived from the allegations in Plaintiff's [*3] Complaint.

This action arises from the circumstances surrounding the performance of three contracts, which governed the construction, occupation, and management of a Data Center in Sacramento, California. Originally, Qwest and Wavve Telecommunications, Inc. ("Wavve") contemplated entering only one agreement to achieve these objectives. However, when the now defunct Wavve was unable to obtain financing from the CapLease Defendants, the parties restructured their arrangement via the three current contracts. First, Qwest leased the Data Center from Sandy Beaches ("Lease"). Next, Qwest subleased a portion of the Data Center to Riptide ("Sublease"). Finally, Qwest entered a Real Estate Services Agreement ("RESA") with Wavve for the management of Qwest's portion of the Data Center.

Riptide subsequently assigned its rights in the

Sublease to Herakles. Wavve assigned its rights in the RESA to Surferr LLC, an entity alleged to be related to Herakles, Sandy Beaches, and Riptide. Surferr LLC then assigned its rights in the RESA to Riptide, who subsequently re-assigned those rights to Herakles. Qwest alleges that Herakles is now both its competitor and sublessor tenant, as well as the manager of [*4] Qwest's portion of the Data Center.

The Lease terms extend for a period of ten years, with the option to renew for another nine. Qwest uses the leased space to provide co-location, data center, telecommunications, internet access, content hosting, network management, and internet security services. The Lease provides for a "Tier IV data center" with 99.999% operational availability and contains a confidentiality clause, which, according to Qwest, Sandy Beaches has violated.

Qwest alleges that the RESA requires Herakles to act as Qwest's "exclusive agent" in managing the Data Center and Qwest further alleges that the parties agreed that the Data Center manager would be the "face of Qwest" to Qwest's customers and potential customers. However, Qwest now claims that, instead, Herakles, as the current manager, diverted customers from Qwest to itself, in its separate capacity as Qwest's sublessor.

Qwest also claims that Herakles engaged in deceptive advertising by making statements purporting to be the Data Center owner on the Herakles website and within the Data Center. Additionally, Qwest alleges that Herakles misrepresented the property in Data Center sign-in sheets by omitting Qwest's [*5] name on the logs and that Herakles took Qwest's proprietary customer and potential customer information.

Qwest further states that Herakles has failed to perform certain construction work as obligated under the RESA and that, in its capacity as sublessor, Herakles has failed to hire a required third-party manager for its own portion of the Data Canter. Instead, despite being a competitor of Qwest, Herakles allegedly manages both the Qwest facility and its own facility, to save itself added management costs.

Finally, Qwest alleges that Herakles, Riptide, Sandy Beaches and the CapLease Defendants are alter egos of one another. Qwest alleges that the Defendants have common ownership, use one company as a conduit for another, and share offices, employees, and bank accounts.

Page 2

Qwest alleges that this practice enables Herakles to breach its contract without liability, all the while collecting Qwest's rent payments through Sandy Beaches and diverting customers to itself.

## STANDARD

### A. Motion to Dismiss Under Rule 12(b) (6)

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the [*6] nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* at 1964-65 (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* at 1965 (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more... than... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

A court granting a motion to dismiss a complaint must [*7] then decide whether to grant leave to amend. A court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment...." Fed. R. Civ. P. 15(a); *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).* Generally, leave to amend is denied only when it is clear the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).*

### B. General Pleading Requirements

"Rule 8(a)(2) ... requires a 'showing,' rather than a blanket assertion of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 1965 n.3. (Factual allegations necessary to plead "grounds" on which claim rests.)

A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. If the "plaintiffs...have not nudged their claims across the line from conceivable to plausible, their complaint [*8] must be dismissed." *Id.* Nevertheless, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 1965.

Federal Rule of Civil Procedure 9(b) provides that "a party must state with particularity the circumstances constituting fraud." "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993)* (internal quotations and citations omitted). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Id.* at 672.

## ANALYSIS

### A. Defendants' Alter Ego Liability

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson, 538 U.S. 468, 474, 123 S. Ct. 1655, 155 L. Ed. 2d 643 (2003).* Alter ego liability, however, provides a means to pierce the corporate veil for purposes of imposing liability on a defendant for an underlying cause of action. *See Dion LLC. v. Infotek Wireless, Inc., 2007 U.S. Dist. LEXIS 83980, 2007 WL 3231738 at *3 (N.D. Cal. Oct. 30, 2007)* [*9] (quoting *Local 159 v. Nor-Cal Plumbing, Inc., 185 F.3d 978, 985 (9th Cir. 1999)).*

Assessing a corporate entity's alter ego status is an equitable determination within the province of the trial court. *Assoc. Vendors, Inc., v. Oakland Meat Co., Inc., 210 Cal. App. 2d 825, 837, 26 Cal. Rptr. 806 (1st Dist. 1962).* Decisions are necessarily fact-dependent and "vary according to the circumstances in each case." Id.

Page 3

(internal quotations omitted). Nevertheless, the general requirements for proving liability are "1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and 2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id.* "Bad faith in one form or another is an underlying consideration and will be found in...those cases wherein the trial court was justified in disregarding the corporate entity." *Id.* at 838.

Among the factors supporting a "unity of interest" finding are "financial issues (e.g., was the corporation adequately capitalized?); corporate formality questions (e.g., was stock issued, are minutes kept and officers and directors elected, are corporate records segregated?); [*10] ownership issues (e.g., what is the stock ownership picture?); commingling issues (e.g., are corporate assets commingled, does the parent company merely use the corporate shell of the subsidiary to obtain goods and services for the parent company?); etc." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 n.13, 31 Cal. Rptr. 2d 433. (citing *Assoc. Vendors, Inc. at 837-842*). Notably, "[t]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004)(citing *Dole Food Co. at 475*).

Under the second prong of the doctrine, "[a]lter ego is...invoked only where recognition of the corporate form would work an injustice to a third person." *Id.* (quoting *Tomaselli* at 1285). "The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." *Katzir's Floor and Home Design* at 1149. Facts relevant to the "injustice" inquiry include "inadequate capitalization, commingling of assets, [a] disregard of corporate formalities ... [and] any other [*11] facts which demonstrate the critical element: that an inequitable result would have followed." *Tomaselli* at 1285.

Conclusory allegations are not sufficient to support an alter ego finding. *Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 647 (C.D. Cal. 1983); *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 607 (N.D. Cal. 2007). In *Brennan v. Concord EFS, Inc.*, the Northern District determined that a statement alleging only that "Bank One exercised such dominion and control

over Bank One, NA and Bank One Arizona that it [was] liable according to the law for the acts of Bank One" was an inadequate legal conclusion. 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005).

Similarly, in *Nordberg v. Trilegiant Corp.*, the Northern District granted a motion to dismiss, stating that allegations of "routine control by a parent [were] insufficient to support the contention that a subsidiary is a mere instrumentality." 445 F. Supp. 2d 1082, 1102 (N.D. Cal. 2006). Additionally, in *Long v. Postorivo*, the plaintiffs' allegations "that Postorivo was the founder and former CEO and president of National...that Postorivo worked 'in close coordination' with National,...that Postorivo personally assured [plaintiff] [*12] of the success of their business transactions," and that defendant sold off corporate assets to prevent recovery were "only slightly beyond conclusory" and insufficient to withstand defendants' motion for judgment on the pleadings. 2007 U.S. Dist. LEXIS 78386, 2007 WL 2990457 at *1-2 (N.D. Cal. 2007).

Other plaintiffs, however, have met the minimum factual pleading threshold. In *Maganallez v. Hilltop Lending Corp.*, the Northern District found the following allegations sufficient to allege alter ego liability:

> "[Hilltop Lending] was inadequately capitalized, failed to maintain corporate formalities and was designed to limit the liability of Nguyen. There was such a unity of interest and ownership between Nguyen and [Hilltop Lending] that the individuality and separateness of Nguyen and [Hilltop Lending] has ceased to exist and adherence to the fiction of the separate existence of [Hilltop Lending] would sanction fraud and promote injustice."

505 F. Supp. 2d 594, 607 (N.D. Cal. 2007).

Likewise, in *In re Napster, Inc. Copyright Litigation*, the allegation that the defendant exercised "essentially full operational control" over Napster was sufficient to withstand a motion to dismiss. 354 F. Supp. 2d 1113, 1122 (N.D. Cal. 2005). [*13] Furthermore, in *Dion LLC v. Infotek Wireless, Inc.*, the plaintiff successfully alleged that

> "[t]he unity of interest and ownership

between [the defendants]. . . prevented the two from functioning as separate entities . . . [The two companies] conduct[ed] the same type of business, shared the same office space, used the same business address, and had the same bookkeeper, lawyers and CPA. . . [I]t would be inequitable to allow [the defendant] to now assert a distinction between the corporations to avoid liability."

2007 U.S. Dist. LEXIS 83980, 2007 WL 3231738 at *3 (N.D. Cal. 2007).

In this case, Qwest specifically alleges the following:

Herakles is located at 1100 North Market Boulevard in Sacramento, California. Compl., P 6. The Data Center is also housed at 1100 North Market Boulevard. Compl., P 12.

Sandy Beaches, Riptide, and the now defunct Wavve all operated out of 9322 Tech Center Drive, in Sacramento, California. Compl., PP 7-8, 10.

The Defendants share common officers and directors. For example, Lou Kirchner is both the President and CEO of Herakles, as well as the CEO of Sandy Beaches, and he sits on the Board of Directors of Sandy Beaches. As a further example, William Pollert and Shawn Seale of the CapLease [*14] Defendants are also officers of Riptide.

Finally, the Lease, RESA, and Sublease were all signed by Diana Bushard as "Vice President of Legal." Compl., P 53.

On information and belief, the Defendants have substantially similar equitable ownership. Compl., P 53.

On information and belief, the Defendants use the same offices and employees. For example, on information and belief, some of the senior managers of the CapLease Defendants are part owners

of the Data Center. Sandy Beaches, Wavve, and Riptide have the same address. Compl., P 53.

On information and belief, the Defendants use one entity as a mere conduit for the affairs of the other, e.g., the parent company merely uses the subsidiary to take Qwest's Lease payments (which, upon information and belief, the parent company uses to remain financially afloat) in one hand, and with the other hand, misappropriates Qwest of the business that is the essential purpose of the Lease. Compl., P 53.

On information and belief, the Defendants commingle corporate assets. For example, Qwest pays rent to a common account for Sandy Beaches and Herakles. Indeed, Herakles' [sic] has presented itself on its website as the owner of Sandy Beaches' main asset, [*15] the Data Center. Compl., P 53.

The circumstances surrounding the execution of the Lease, RESA and Sublease, including the cost structure and language of the three agreements establish that the agreements should be construed together and that Sandy Beaches should be construed as the real party-in-interest or that the Defendants should be treated as one entity or the alter egos of each other. Compl., P 53.

Honoring the Defendants' corporate shells would promote a fraud or injustice against Qwest because the same officers, directors, and employees have caused Herakles to breach its agreements and fiduciary duties to Qwest, depriving Qwest of its ability to obtain and serve customers... while simultaneously collecting rent from Qwest under the Lease. Compl., P 54.

The above allegations are far from conclusory, and allege a unity of interest that renders the Defendants' separate entities illusory.

Qwest's allegations that it would be unjust to allow Defendants to hide behind this illusory shield are sufficient as well. Accordingly, the Court finds that Qwest's allegations that Herakles, Sandy Beaches, and Riptide are the alter egos of one another meet the requirements of Rule 8(a).

**B. Qwest's [*16] Claims Against Defendants**

1.  **Count I - False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125, Sections 43(a) and 43(b) (Against Herakles/All Defendants)**

"The elements of the Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

Notably, Herakles does not challenge this Count in its Motion to Dismiss. Additionally, Sandy Beaches raises a challenge only on its own behalf stating, "All of these allegations implicate Herakles' conduct, but make absolutely no mention of [Sandy] Beaches."

Sandy Beaches' Motion to Dismiss, [*17] 15:12-13. Similarly, Riptide states, "Qwest's Lanham Act allegations implicate only Herakles, not Riptide." Riptide's Motion to Dismiss, 4:23-24. Neither Sandy Beaches nor Riptide raised any challenges to the sufficiency of the allegations against Herakles. Therefore, Defendants' collective lack of opposition to Qwest's claim against Herakles, coupled with Plaintiff's alter ego allegations, which could extend liability to all Defendants, are sufficient to withstand Defendants' Motions to Dismiss.

Even if that were not the case, Plaintiff's allegations are independently sufficient to withstand a Motion to Dismiss. Plaintiff alleges that Herakles made numerous inaccurate or false statements regarding Data Center ownership and services on Herakles' website. Plaintiff

further alleges facts sufficient to show that the statements were both material and damaging. These allegations provide sufficient notice to allow Defendants to answer the Complaint. Hence, Defendants' Motions to Dismiss Count I are DENIED.

**2. Counts II - IV - Breach of Contract - Lease (Against Sandy Beaches/All Defendants); RESA - (Against Herakles/All Defendants); Sublease (Against Herakles/All Defendants)**

To prove a breach [*18] of contract claim, Plaintiff must show: 1) a contract; 2) Plaintiff's performance or excuse for nonperformance; 3) Defendant's breach; and 4) resulting damage to the Plaintiff. *Wise v. Southern Pac. Co.*, 223 Cal. App. 2d 50, 59, 35 Cal. Rptr. 652 (1st Dist. 1963), overruled on other grounds by *Applied Equipment Corp. v. Litton Saudi Arabia Limited*, 7 Cal. 4th 503, 28 Cal. Rptr. 2d 475, 869 P.2d 454 (1994).

Defendants are correct that "[u]nder California law, only a signatory to a contract may be liable for any breach." *Clemens v. American Warranty Corp.*, 193 Cal. App. 3d 444, 452, 238 Cal. Rptr. 339 (2d Dist. 1987). In reliance on that proposition, Defendants spend much of their arguments pointing out that the allegations of breach of the various agreements were not made against them individually, but were made based on the actions of their Co-Defendants. At no point do any of the Defendants argue that the allegations against the actual parties to each contract are insufficient.

As an example, Sandy Beaches states, "[w]hile the Complaint is replete with allegations regarding Herakles' conduct in connection with various other claims and Agreements, Qwest does not identify any conduct by [Sandy] Beaches that could support a breach of contract claim against [Sandy] [*19] Beaches." Sandy Beaches' Motion to Dismiss, 6:10-12. Sandy Beaches' argument serves to emphasize the thoroughness of the allegations against Herakles, its alleged alter ego.

Therefore, Defendants' Motions fail. Plaintiff has pled all elements of breach of contract as to each agreement. Since Plaintiff has also pled sufficient facts to support the alter ego liability of all Defendants, Defendants' Motions to Dismiss Counts II through IV are DENIED. [3]

3   The parties dispute whether Qwest's filing of this suit is premature in light of contract

Page 6

55

provisions in the Lease purporting to give Sandy Beaches an opportunity to cure. Construing all pleadings in the light most favorable to Qwest, for purposes of the current Motions the disputed Contract provision will be interpreted as Qwest suggests, to indicate just one of the remedies available to it. Case law cited by Defendants is inapposite because it involves a standstill provision related to a settlement agreement and the parties in that case disputed only the calculation of the applicable period, not the application of the actual provision. *See Willis Corroon Corp. of Utah, Inc. v. United Capital Ins. Co., 1998 U.S. Dist. LEXIS 23226, 1998 WL 30069 (N.D. Cal. 1998).*

**3.** [*20] **Count V - Common Law and Cal. Civ. Code § 1573 - Constructive Fraud - Breach of Fiduciary Duty (Against Herakles/All Defendants)**

"In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence, and resulting in damages to another. Constructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated-that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud." *Barrett v. Bank of America,* 183 Cal. App. 3d 1362, 1368-1369, 229 Cal. Rptr. 16 (4th Dist. 1986) (internal citations and quotations omitted).

The elements of constructive fraud are: 1) a fiduciary or confidential relationship; 2) an act, omission, or concealment involving a breach of that duty; 3) reliance; and 4) resulting damage. *Neilson v. Union Bank of California,* 290 F. Supp. 2d 1101, 1142 (C.D. Cal. 2003). Breach of fiduciary duty constitutes a constructive fraud. *California Real Estate Loans, Inc. v. Wallace,* 18 Cal. App. 4th 1575, 1581, 23 Cal. Rptr. 2d 462 (1st Dist. 1993).

An agency relationship creates a fiduciary duty. *Maganallez v. Hilltop Lending Corp.,* 505 F. Supp. 2d 594, 608 (N.D. Cal. 2007). [*21] The parties primary current disagreement is whether Herakles is an agent of Qwest for purposes of the RESA. To properly allege this fiduciary relationship and the remaining elements of the Count, Qwest must meet Rule 9(b)'s particularity requirements for pleading fraud.

To meet its pleading threshold, Qwest specifically alleges that Herakles was contractually obligated to act as its "exclusive agent." [4] Herakles subsequently points to language in the same paragraph to support its argument that Herakles is an "independent contractor." This apparently contradictory language is not dispositive, however, because an independent contractor can also be an "agent." In re Coupon Clearing Service, Inc., 113 F.3d 1091, 1100 (9th Cir. 1997); Channel Lumber Co., Inc. v. Porter Simon, 78 Cal. App. 4th 1222, 1230, 93 Cal. Rptr. 2d 482 (3d Dist. 2000); City of Los Angeles v. Meyers Bros. Parking System, Inc., 54 Cal. App. 3d 135, 138, 126 Cal. Rptr. 545 (2d Dist. 1975).

> 4   Herakles argues that Qwest cannot claim that a fiduciary relationship arises out of the parties' contractual obligations. This argument is misguided. Herakles relies on *Rickel v. Schwinn Bicycle Co.*, which states, "Plaintiffs have failed to allege facts which imply that anything [*22] more than a contractual relationship existed here; a fiduciary relationship does not exist." 144 Cal. App. 3d 648, 655, 192 Cal. Rptr. 732 (2d Dist. 1983). However, this ignores the preceding language, "California law is that parties to a contract, by that fact alone, have no fiduciary duties toward one another." Id. at 654. This language would not apply if the parties contracted to enter a fiduciary relationship, as is alleged here. It would be an absurd result indeed if the contract itself negated the fiduciary duties arising from an alleged agency agreement.

"One who contracts to act on another's behalf and is subject to the other's control...may still be acting as an agent and also as an independent contractor." In re Coupon Clearing Service, Inc., 113 F.3d 1091, 1100 (9th Cir. 1997). "One of the chief characteristics of an agency relationship is the authority to act for and in the place of the principal for purposes of bringing him or her into legal relations with third parties." DSU Aviation, LLC v. PCMT Aviation, LLC, 2007 U.S. Dist. LEXIS 86835, 2007 WL 3456564, *5 (N.D. Cal. 2007). "The other important aspect in determining the existence of an agency relationship is the degree of control exercised by the principal over [*23] the activities of the agent." Id. "If the principal has the right to control the agent's day-to-day operations, then an agency relationship exists. If, however, the principal has no control over the day-to-day operations and only has [the] right to dictate

the end result of the agent's activities, then an 'independent contractor' relationship exists." Figi Graphics, Inc. v. Dollar General Corp., 33 F. Supp. 2d 1263, 1266 (S.D. Cal. 1998) (citing Coupon Clearing Services at 1099-1100).

In DSU Aviation, the plaintiffs' allegations that the defendants were responsible for securing insurance and had the authority to enter into contracts with third-parties were sufficient to evidence that those plaintiffs had relinquished to the defendants the "authority to transact. . .or manage some affair." DSU Aviation, 2007 U.S. Dist. LEXIS 86835, [WL] at *5 (citing Coupon Clearing Services at 1099).

The Southern District, in Figi Graphics, in analyzing a motion to dismiss for lack of personal jurisdiction, determined that allegations were insufficient to show the requisite "right to control." Figi Graphics at 1266. In that case there was no evidence that the alleged principal decided where the alleged agent would find its products, what [*24] products it would buy, from whom it would purchase or the price it would pay. Id. at 1266-1267.

Plaintiff's agency allegations similarly fall short of the mark. Plaintiff alleges that under its contemplated agreement with Wavve, "Wavve was to be the face of Qwest to Qwest's customers and prospective customers." Compl., P 12. However, Plaintiff does not allege that this agreement ever came to fruition. Rather, Plaintiff alleges that the three agreements replacing the originally contemplated agreement "were intended to and did provide Qwest with the same operational rights and commitments that the contemplated agreement between Qwest and Wavve envisioned; namely...a third-party manager who was the face of Qwest at the Data Center." Id. P 14. Plaintiff otherwise relies on the contract term "exclusive agent" and further alleges that under the original contemplated agreement with Waave, "the parties agreed that the manager under the RESA would conduct themselves at all times as Qwest's fiduciary and exclusive agent." Compl., P 27. Qwest's allegations do not show that Qwest controlled Herakles in any manner or that Herakles had the "authority to transact. . .or manage some affair" on Qwest's [*25] behalf.

Plaintiff's allegations that Herakles acted as its agent are wholly conclusory. Even without applying Rule 9(b)'s heightened pleading standard, Qwest has not sufficiently alleged the required elements to establish the existence of an agency relationship and, therefore, is unable to establish the breach of such a relationship. Hence, Defendants' Motions to Dismiss Count V are GRANTED, with leave to amend.

**4. Count VI - Violation of the Unfair Competition Act, Cal. Bus. & Prof. Code §§ 17200, 17500 et seq. (Against Herakles/All Defendants)**

Herakles does not challenge the allegations in this Count. Both Sandy Beaches and Riptide argue that this claim is directed only at Herakles and does not implicate them individually. Therefore, considering the lack of opposition to the allegations against Herakles in conjunction with the above alter ego allegations, Defendants' Motions to Dismiss must fail. Hence, the Motions to Dismiss Count VI are DENIED.

**5. Count VII - Common Law Unfair Competition (Against All Defendants)**

"Claim[s] of unfair competition can encompass a variety of theories." Self Directed Placement Corp. v. Control Data Corp., 908 F.2d 462, 467 (9th Cir. 1990). There is some [*26] confusion among the parties as to the theory of competition on which Qwest relies.

Nevertheless, regardless of theory, in order for competition to rise to the level of "unfair," it must involve "wrongful conduct such as fraud, misrepresentation, intimidation, coercion, [or] obstruction." Scudder Food Products v. Ginsberg, 21 Cal. 2d 596, 599, 134 P.2d 255 (1943) (quoting Katz v. Kapper, 7 Cal. App. 2d 1, 4, 44 P.2d 1060 (2d Dist. 1935)).

Defendants argue that Qwest only alleged one theory of unfair competition, misappropriation. Under this theory Plaintiff must prove that it "invested substantial time and money in development of its. . .property,. . .that [D]efendant[s] appropriated the property at little or no cost, and. . .that [Qwest] has been injured by the [D]efendant[s]' conduct." Self Directed at 467 (quoting Balboa Ins. Co. v. Trans Global Equities, 218 Cal. App. 3d 1327, 1342, 267 Cal. Rptr. 787 (3d Dist. 1990) (internal quotations omitted)).

Qwest alleges that Herakles misappropriated the names and identities of customers and potential customers whose relationships Qwest cultivated. Defendants counter that Qwest could not have spent the requisite labor, skill, and money to compile customer

information since the visitors to [*27] the Data Center provided their own information to Herakles via the visitor sign-in sheets.

Defendants' argument is flawed for two reasons. First, since Qwest alleges that Herakles was acting as Qwest's "exclusive agent" when Herakles acquired the relevant information, it can be inferred that Qwest invested funds in management fees to Herakles to acquire that data.

Second, it can also be inferred that Qwest invested time and funds in cultivating customer and potential customer relationships in the first place.

Because this Court finds that Plaintiff adequately alleged a claim for unfair competition based on misappropriation, there is no need for this Court to address all additional potential unfair competition claims that Plaintiff might have intended. Defendants' Motion to Dismiss Count VII is DENIED.

### 6. Count VIII - Tortious Interference with Prospective Economic Advantage (Against Herakles/All Defendants); Count IX - Tortious Interference with Contract (Against Herakles/All Defendants); Count X - Tortious Interference with Contract (Against Herakles)

"In order for [Qwest] to prove tortious interference with prospective economic advantage[("TIPEA")], it must show 1) an economic relationship [*28] between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; 2) [D]efendant[s'] knowledge of the relationship; 3) intentional, wrongful acts on the part of [D]efendant[s] designed to disrupt the relationship; 4) actual interference with or disruption of the relationship; and 5) economic harm to the [P]laintiff proximately caused by the acts of the [D]efendant[s]." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-1154, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003).

"This tort. . . 'protects the expectation that the relationship eventually will yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will arise.'" *Id.* at 1164 (quoting *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th, 507, 524, 49 Cal. Rptr. 2d 793 (5th Dist. 1996). Additionally, the requisite wrongfulness must derive from something other than the fact of interference itself. *Id.* at 1153. "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable standard." *Id.* at 1159. Finally, Plaintiff need not prove that Defendants specifically [*29] intended to interfere with its business expectancy, but must show that Defendants "knew that the interference was certain or substantially certain to occur as a result of [their] action[s]." *Id.* at 1154.

Alternatively, in order for Plaintiff to properly allege tortious interference with contract ("TIC"), Plaintiff must show 1) the existence of a valid contract with a third party; (2) Defendants' knowledge of that contract; (3) Defendants' intentional acts designed to induce a breach or to disrupt the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting damage. *Bank of N.Y. v. Fremont General Corp.*, 514 F.3d 1008, 2008 WL 269458 (9th Cir. 2008).

The intent requirement is the same for claims of tortious interference with contract as it is for tortious interference with prospective business advantage. *See Korea Supply Co.* at 1155-1157.

However, the California Supreme Court has cautioned against conflating the claims stating, "Our courts should . . . firmly distinguish the two kinds of business contexts, bringing a greater solicitude to those relationships that have ripened into agreements, while recognizing that relationships short of [*30] that subsist in a zone where the rewards and risks of competition are dominant." *Id.* at 1157 (quoting *Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 378, 45 Cal. Rptr. 2d 436, 902 P.2d 740 (1995)). Though Plaintiff can plead both causes of action simultaneously, claims for tortious interference with contract do not require pleading that Defendants' conduct was independently wrongful because "intentionally interfering with a contract is a wrong in and of itself." *Id.* at 1158.

Turning now to the pertinent allegations of Plaintiff's Complaint, Defendants challenge Qwest's TIPEA claim as alleged in Count VIII, arguing that Qwest has failed to identify specific prospective customers with which it had a relationship. Qwest alleges that it had relationships with prospective customers who were in the market for the services Qwest provides and who had taken steps toward

Page 9

engaging Qwest. Therefore, Qwest alleges that it had existing relationships with a finite group of potential customers sufficient to state a viable cause of action.

Qwest's allegations in that regard are more substantial than those rejected in *Janda v. Madera Community Hosp.* 16 F. Supp. 2d 1181, 1189 (E.D. Cal. 1998). In that case, the court dismissed [*31] the plaintiff's TIPEA claim because he alleged only that the defendants had interfered with his relationship with "'future' lost patients." *Id.*

Qwest's allegations differ because Qwest actually pointed Defendants to prospective customers with whom Qwest had already engaged in some form of relationship. The pool of parties in the market for Qwest's services is much smaller than the pool in the market for a doctor's services. Additionally, Qwest alleges that Herakles, as manager of the Data Center, has access to the list of prospective customers via the visitor logs. Therefore, Qwest's allegations are sufficient to satisfy its obligations under Rule 8, and Defendants' Motions to Dismiss Count VIII are accordingly DENIED.

Defendants also challenge Qwest's TIC claim against all Defendants (Count IX, for alleged interference with current customer relationships) for failure to identify any specific current customers. However, again for the purposes of Rule 8, it is sufficient that Plaintiff identified "third party customers." *See Id.* Qwest's allegations point Defendants to a discrete group of third parties with which Qwest had already contracted. Additionally, Qwest again alleges that Herakles [*32] would have known of Qwest's contracts with its customers via information gleaned from its position as manager of the Data Center. Finally, Qwest alleges that Herakles' actions caused at least one of Qwest's customers to breach its agreement with Qwest. Therefore, Qwest met its pleading burden as to Count IX and Defendants' Motions to Dismiss that Count are DENIED.

Finally, Defendants challenge Qwest's allegation that Herakles interfered with the Lease, as stated in Count X. Qwest specifically repeated and realleged each and every one of the Complaint's prior allegations into this Count.

Therefore, Qwest alleges that Herakles, Sandy Beaches, and Riptide are alter egos of one another while it simultaneously argues that Herakles interfered with the Sandy Beaches' Lease.

However, "[t]he tort duty not to interfere with contract falls only on strangers." Applied Equip. at 514. A party to the contract cannot be held liable for tortious interference with that contract. Id. Herakles could not, as a matter of law, interfere with a contract to which it is alleged to be a party.

Qwest finds no relief in its argument that it is pleading in the alternative. Though Plaintiff is correct that it could [*33] plead alternative and inconsistent theories for relief, Plaintiff failed to do so here. "Inconsistent allegations can be made in separate claims or defenses under Federal Rule of Civil Procedure 8(e)(2), but no authority is known. . .which permits blowing hot and cold in the same cause of action." [5] Steiner v. Twentieth Century-Fox Film Corp., 140 F. Supp. 906, 908 (D.C. Cal. 1953); See also Friendship Medical Center, Ltd. v. Space Rentals, 62 F.R.D. 106 (N.D. Ill. 1974).

> [5] This case was decided under a prior version of Rule 8. However, the most recent amendments were stylistic only and did not affect the substance of the Rule.

Qwest inadvertently acknowledges its pleading failure in its Opposition to the Defendants' Motions to Dismiss. Qwest addresses an unpublished case raised by Herakles and states that because that plaintiff had included allegations of alter ego in every cause of action, it was appropriate for the court to dismiss. *See Rachford v. Air Line Pilots Ass'n, Int'l,* 2006 U.S. Dist. LEXIS 44070, 2006 WL 1699578 (N.D. Cal. 2006).

Qwest cannot avoid the fact that it similarly incorporated its alter ego allegations into Count X, thereby depriving itself of its own cause of action. Qwest's claim against [*34] Herakles cannot stand, and Defendant's Motion to Dismiss that claim will be GRANTED, with leave to amend.

### 7.   Count XI - Unjust Enrichment (Against Herakles/All Defendants)

Defendants are correct that "[u]njust enrichment is not a cause of action. . .or even a remedy, but rather 'a general principle, underlying various legal doctrines and remedies. . . .It is synonymous with restitution." *McBride v. Boughton,* 123 Cal. App. 4th 379, 387, 20 Cal. Rptr. 3d 115 (1st Dist. 2004) (quoting *Melchior v. New Line Productions, Inc.,* 106 Cal. App. 4th 779, 793, 131 Cal.

Page 10

Rptr. 2d 347 (2d Dist. 2003)). Indeed, "[u]njust enrichment has. . .been characterized as describing 'the result of a failure to make restitution. . . .'" *Id.* (quoting *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 198 n.15, 98 Cal. Rptr. 2d 44 (1st Dist. 2000)).

However, this Court must "ignore [e]rroneous or confusing labels. . .if the complaint pleads facts which would entitle the plaintiff to relief." *McBride* (quoting *Saunders v. Cariss*, 224 Cal. App. 3d 905, 908, 274 Cal. Rptr. 186 (4th Dist. 1990)). The court in *McBride* looked "to the actual gravamen of [the] complaint to determine what cause of action, if any, [was] stated, or could have [been] stated if given leave to amend. In accordance with this principle, [the [*35] court] construed [the] purported cause of action for unjust enrichment as an attempt to plead a cause of action giving rise to a right to restitution." *Id.* at 387-388.

This construction is consistent with the liberal pleading standards embodied in Rule 8. *See Ritchie v. United Mine Workers of America*, 410 F.2d 827, 832 (6th Cir. 1969) ("The designation of counts is not controlling of the interpretations to be placed on these claims."). "A pleading, according to the liberal concepts of Rule 8, is to be judged by its substance rather than by its form or label." *In re Blewett*, 14 B.R. 840, 842 (9th Cir. 1981). "It would be improper to dismiss a claim which raises a cognizable cause of action where that claim is mislabeled." Id. (quoting *Voytko v. Ramada Inn of Atlantic City*, 445 F. Supp. 315, 325 (D.C.N.J. 1978)). [6]

> 6  *Voytko* cited a prior version of Rule 8, but the subsequent amendments to the Rule have merely been in form, not substance.

"There are several potential bases for a cause of action seeking restitution. For example, restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective [*36] for some reason." *McBride* at 388. "Alternatively, restitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct. In such cases, the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory." *Id.*

Riptide challenges this Count, arguing that it is inconsistent with Qwest's allegations that the parties expressly contracted with one another. Riptide Motion to Dismiss, 3:8-13, 12:11-15. "Under California law, unjust enrichment is an action in quasi-contract.

An action based on quasi-contract cannot lie where a valid express covering the same subject matter exists between the parties." *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004); see also *Kessler v. Sapp*, 169 Cal. App. 2d 818, 824, 338 P.2d 34 (2d Dist. 1959).

Plaintiff again argues that it is pleading in the alternative. However, "[e]ven though Rule 8(e)(2) . . .allows a party to state multiple, even inconsistent claims, it does not alter a substantive right between the parties and accordingly does not allow a plaintiff [to invoke] state law to an unjust enrichment claim while also alleging an express contract." [*37] *Gerlinger at 856*. Since Qwest incorporated all prior allegations, including those stating that the parties expressly contracted with one another, into its claim for restitution, Count XI must fail. The Defendants' Motions to Dismiss Count XI are GRANTED, with leave to amend.

## 8. Count XII - Civil Conspiracy (Against All Defendants)

"[C]ivil conspiracy is not a separate and distinct cause of action under California law." *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 947 (N.D. Cal. 2003). "To state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts. General allegations of agreement have been held sufficient, and the conspiracy averment has even been held unnecessary, providing the unlawful acts or civil wrongs are otherwise sufficiently alleged." *Chicago Title at 316*.

"The conspiracy 'may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances." *Id.* (internal quotations and citations omitted). "As long as two or more persons [*38] agree to perform a wrongful act, the law places civil liability for the resulting damages on all of them, regardless of whether they actually commit the tort themselves. The effect of charging. . .conspiratorial conduct is to implicate all. . .who agree to the plan to commit the wrong as well as those who actually carry it out." *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 784, 157 Cal. Rptr. 392, 598 P.2d 45 (1979)

Page 11

(internal citations and quotations omitted).

Nevertheless, it is logical that a party cannot conspire with itself. *See Webber v. Inland Empire Investments, 74 Cal. App. 4th 884, 910, 88 Cal. Rptr. 2d 594 (4th Dist. 1999)* ("If [the defendant] was the alter ego of all the corporations, there could be no coconspirators.") As in Count XI, Qwest incorporated its alter ego allegations into this claim, ultimately sabotaging its viability because of those allegations.

Hence, Defendants' Motions to Dismiss Count XII are GRANTED, with leave to amend.

### 9. Count XIII - Aiding and Abetting (Against All Defendants)

"Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other [*39] to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person. Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting. As a general rule, one owes no duty to control the conduct of another. . . ." *Fiol v. Doellstedt, 50 Cal. App. 4th, 1318, 1326, 58 Cal. Rptr. 2d 308 (2d Dist. 1996)* (internal citations and quotations omitted).

The very elements of this cause of action show that, as in Counts X and XII, a party cannot aid and abet itself. The cause of action presumes the presence of more than one party. Since Plaintiff incorporated its alter ego allegations into this cause of action, it defeated its own argument. Hence, Defendants' Motions to Dismiss Count XIII are GRANTED, with leave to amend.

### CONCLUSION

Pursuant to Rule 12(b)(6), Defendants' Motions to Dismiss Counts I-IV and VI-IX are DENIED and Defendants' Motions to Dismiss Counts V and X-XIII are GRANTED with leave to amend. [7] Plaintiff is directed to file a Second Amended Complaint, should he choose to do so, not later than thirty (30) calendar days following [*40] the date of this Order.

7   Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. Local Rule 78-230(h).

IT IS SO ORDERED.

Dated: March 20, 2008

/s/ Morrison C. England, Jr.

MORRISON C. ENGLAND, JR.

UNITED STATES DISTRICT JUDGE

# EXHIBIT 9

LEXSEE

**RPost Holdings, Inc. v. Trustifi Corp., et al.**

**CV 11-2118 PSG (SHx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**2011 U.S. Dist. LEXIS 117260**

**October 11, 2011, Decided**
**October 11, 2011, Filed**

**CORE TERMS:** email, false advertising, particularity, Lanham Act, apparent authority, false statements, vicarious liability, message, false and misleading, tort claims, pleaded, unfair, matter of law, legal conclusions, allegations of fraud, quotation marks omitted, vicariously liable, solicitation, strategic, alliance, lottery, notice, logo, Lanham Act, provider, state law claims, false representations, false advertising, unfair competition, agency relationship

**COUNSEL:** [*1] Attorneys Present for Plaintiff(s): Not Present.

Attorneys Present for Defendant(s): Not Present.

**JUDGES:** The Honorable Philip S. Gutierrez, United States District Judge.

**OPINION BY:** Philip S. Gutierrez

**OPINION**

**CIVIL MINUTES - GENERAL**

**Proceedings: (In Chambers) Order GRANTING USPS's Motion to Dismiss**

Before the Court is Defendant United State Postal Service's motion to dismiss. The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having considered the papers submitted in support of and in opposition to the motion, the Court GRANTS the motion.

I. Background

Plaintiff RPost Holdings, Inc. ("Plaintiff") provides a managed email service that permits senders of emails to electronically sign, encrypt, contract, record, and diagnose message transmission metadata, prove the contents of an email message, and authenticate message metadata to reconstruct a validated original email message with all attachments. Plaintiff's proof of email delivery product is called "Registered Email®." (Compl. ¶ 1.) Plaintiff's complaint alleges violation of the Lanham Act, violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. ("FAL"), and violation of California's [*2] Unfair Competition Law, Cal. Bus. & Prof. § 17200 et seq. ("UCL") by Defendants Trustifi Corporation ("Trustifi"), Authentidate Holding Corp. ("Authentidate"), [1] and United States Postal Service ("USPS").

> 1   Plaintiff filed a request for the Clerk to enter Authentidate's default on May 16, 2011 [Dkt. No. 14]. Default was entered on the same day [Dkt. No. 17]. On July 27, 2011, Plaintiff filed a notice of voluntary dismissal with prejudice as to Authentidate [Dkt. No. 32].

Defendant Trustifi advertises and provides an email authentication service called Trustifi Postmarked Email ("TPE"). Trustifi claims that TPE allows users to prove when emails were sent, delivered, and received. (Compl. ¶ 2.) Trustifi represents that TPE can be used as a replacement product for USPS Certified Mail and other similar services offered by private couriers. (Id. ¶ 11(e).) Notwithstanding these advertising claims, Plaintiff

Page 1

alleges that Trustifi cannot provide proof that an email message was delivered to or received by the intended recipient. (*Id.* ¶ 13.) Plaintiff points out that in connection with a related patent infringement lawsuit, Trustifi has asserted that TPE only proves that a sender *sent* an email, [*3] not whether a recipient received or read the email. (*Id.*)

Plaintiff alleges that USPS authorizes Authentidate to provide USPS's Electronic Postmark® ("EPM"), a product that provides proof of when an email was sent to third parties. (*Id.* ¶¶ 14, 16.) Entities such as Trustifi license EPM from Authentidate, a licensee of USPS. (*Id.*) Based on this relationship, Plaintiff alleges that when Trustifi makes its false and misleading statements, it is "acting as the actual agent of both Authentidate and USPS." (*Id.* ¶ 16.) Plaintiff contends that Trustifi has "entered into a formal strategic alliance with USPS through which USPS has designated Trustifi as an authorized [EPM] provider." (*Id.*) Even if no actual agency relationship exists between Trustifi, and Authentidate, and USPS, Plaintiff alleges that Trustifi "has apparent authority from both Authentidate and USPS" to make false and misleading statements regarding its email verification services. (*Id.* ¶ 17.)

On June 20, 2011, Defendant USPS filed a motion to dismiss [Dkt. No. 25]. USPS's motion seeks dismissal of Count I (Lanham Act violation) under Federal Rule of Civil Procedure 12(b)(6), and because Plaintiff failed to plead agency with particularity [*4] under Rule 9(b). USPS seeks dismissal with prejudice of Counts II and III (FAL and UCL violations) pursuant to Rules 12(b)(1), 12(b)(6), and 9(b).

On August 29, 2011, Plaintiff opposed USPS's motion [Dkt. No. 33]. On September 2, 2011, USPS filed its reply [Dkt. No. 34]. The Court took the matter under submission on September 15, 2011 [Dkt. No. 35].

II. Legal Standard

A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly, 550*

U.S. 544, 546, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (abrogating *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)*. A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the [*5] alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief is a context-specific task requiring the Court to draw on its judicial experience and common sense. *Id.*

B. Rule 9(b)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), allegations of fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Namely, allegations of fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must allege particular facts explaining the circumstances of the fraud, "including time, place, persons, statements made[,] and an explanation of how or why such statements are false or misleading." *Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1265 (C.D. Cal. 2007)*. The circumstances of the alleged fraud must be specific enough "to give defendants notice of the particular misconduct . . . so that [*6] they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp., USA, 317 F.3d 1097, 1106 (9th Cir. 2003)* (internal quotation marks omitted).

Under Rule 9(b), a plaintiff must plead each of the elements of a fraud claim with particularity, i.e., a plaintiff "must set forth more than the neutral facts necessary to identify the transaction." *Cooper v. Pickett, 137 F.3d 616, 625 (9th Cir. 1997)* (emphasis in original). Fraud claims must be accompanied by the "who, what, when, where, and how" of the fraudulent conduct charged. *Vess*, 317 F.3d at 1106. A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. *Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)*.

Page 2

2011 U.S. Dist. LEXIS 117260, *6

While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient. *Id.*

III. Discussion

USPS argues that the Lanham Act false advertising claim should be dismissed because where Plaintiff seeks to hold USPS vicariously liable under an agency theory for a claim rooted in [*7] deception, the agency allegations must be pleaded with particularity. USPS contends that the agency theory is a legal conclusion unsupported by factual allegations. USPS further argues that the government cannot be held liable based on "apparent authority," and even if it could, Plaintiff fails to plead facts consistent with its apparent authority argument. With respect to the California FAL and UCL claims, USPS argues that the Court lacks subject matter jurisdiction because Plaintiff did not name the proper party and has not complied with the Federal Tort Claims Act ("FTCA"). USPS also contends that there can be no vicarious liability for false advertising or unfair competition under §§ 17500 and 17200, respectively.

Plaintiff disagrees with each one of these contentions. Specifically, Plaintiff argues that agency need not be alleged with particularity, its apparent authority claim against USPS is proper, the FTCA does not apply, and USPS can be liable under California's FAL and UCL as an agent.

A. The Lanham Act Claim as to USPS is Deficient

1. Applicability of Rule 9(b)

Although the Ninth Circuit has not addressed whether false advertising claims under the Lanham Act must be pleaded [*8] with particularity, several district courts in this circuit have so held. *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (applying Rule 9(b) to Lanham Act false advertising claims); *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2010 U.S. Dist. LEXIS 136345, 2010 WL 5141843, *7 (N.D. Cal. Dec. 13, 2010) (same); *Architectural Mailboxes, LLC v. Epoch Design, LLC*, No. 10-cv-974 DMS (CAB), 2011 U.S. Dist. LEXIS 46180, 2011 WL 1630809, *5 (S.D. Cal. Apr. 28, 2011) (same); *VIP Prods., LLC v. Kong Co. LLC*, No. CV10-0998-PHX-DGC, 2011 U.S. Dist. LEXIS 3158, 2011 WL 98992 (D. Ariz. Jan.12, 2011); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1123-24 (C.D. Cal. 2009). The Ninth Circuit has applied Rule 9(b) to other types of false advertising claims, suggesting that this rule also applies to false advertising claims under the Lanham Act. *See Architectural Mailboxes*, 2011 U.S. Dist. LEXIS 46180, 2011 WL 1630809 at *5 (collecting cases). Accordingly, the Court concludes that Rule 9(b) applies to Plaintiff's false advertising claim under the Lanham Act.

2. Plaintiff's Lanham Act Claim

"To satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must allege the time, place, and specific content of the false representations [*9] as well as the identities of the parties to the misrepresentation." *Kilopass Tech.*, 2010 U.S. Dist. LEXIS 136345, 2010 WL 5141843 at *7 (internal quotation marks omitted). Here, Plaintiff does not allege any false representations by USPS. Plaintiff merely alleges that Trustifi made false statements about TPE's capabilities, and Trustifi is an actual agent of USPS because Trustifi has formed a "strategic alliance" with USPS. (Compl. ¶ 16.) Plaintiff bases this allegation on the fact that Trustifi advertises USPS's EPM product on its website. (*Id.*) These allegations suggest that Plaintiff seeks to hold USPS vicariously liable under an agency theory. Indeed, Plaintiff confirms as much in its opposition. *Opp'n* at 2:14-17.

The fact that Plaintiff is proceeding under an agency theory does not absolve Plaintiff of the Rule 9(b)'s requirement to explain USPS's role in the false statements. Asserting that Trustifi is an agent of USPS is a legal conclusion. Plaintiff has not alleged any facts to support its false-advertising-agency theory, let alone pleaded this theory with particularity. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (affirming dismissal of fraud-based claim where complaint contained general allegations [*10] of "defendants," but attributed specific misconduct to only two defendants; conclusory allegations that other defendants knew of false statements and/or were acting as agents of two defendants were insufficient under Rule 9(b) as a matter of law); *Buchanan v. Neighbors Van Lines*, No. CV 10-6206 PSG (RCx), 2010 U.S. Dist. LEXIS 130511, 2010 WL 4916644, *3 (C.D. Cal. Nov. 29, 2010) (dismissing claim where plaintiff failed to plead elements of agency relationship, including: "(1) that the agent or apparent agent holds power to alter legal relations between [the] principal and third persons and between

Page 3

[the] principal and himself; (2) that the agent is a fiduciary with respect to matters within [the] scope of [the] agency; and (3) that the principal has right to control [the] conduct of [the] agent with respect to matters entrusted to him.").

Plaintiff contends that Rule 9 does not apply to its allegations of agency. Opp'n at 2. Plaintiff points to the language of Rule 9, which does not mention agency allegations. This argument ignores the purpose of Rule 9, which is to give fair notice of fraud-based claims so a defendant may respond accordingly. Because Plaintiff's false advertising claim is based on allegations of [*11] false and misleading statements, it is rooted in fraud and it must therefore be pleaded with particularity. Part of Plaintiff's false advertising claim hinges on the allegation that Trustifi acted as an agent of USPS, and USPS is therefore on the hook for the false statements. Regardless of what theory Plaintiff uses to implicate USPS, because Rule 9(b) applies to the underlying claim, Plaintiff must plead all facts necessary to support the claim with particularity, including facts explaining USPS's role as a principal in the deception.

Plaintiff's allegation that USPS was in a formal strategic alliance with Trustifi based on the fact that Trustifi is an authorized EPM provider is insufficient. Plaintiff does not explain what being an authorized EPM provider has to do with Trustifi's false statements, nor does Plaintiff allege any of the elements of an agency relationship. Thus, USPS's motion is granted as to the Lanham Act claim and this claim as against USPS is dismissed without prejudice.

Plaintiff's claim is not saved by its alternative theory of apparent authority. While none of the cases cited by USPS or Plaintiff are relevant here, [2] even assuming Plaintiff may rest its Lanham [*12] Act claim on a theory of apparent authority, which is doubtful, Plaintiff has not alleged any facts in support of this theory. "Apparent authority, which generally will not suffice to bind the government, arises when a principal causes a third party to believe, correctly or not, that the principal has authorized the agent to engage in particular conduct." Thomas v. I.N.S., 35 F.3d 1332, 1339 (9th Cir. 1994). Plaintiff makes no attempt to explain how USPS caused third parties to believe that USPS authorized Trustifi to engage in false and misleading statements.

[2]   The cases cited by USPS discuss whether the United States may be sued where a government employee makes statements beyond his or her actual authority. Mot. at 10-11. The cases cited by Plaintiff also deal with actual employees or agents of the government, not non-governmental third parties alleged to act on apparent authority of the government. Opp'n at 5-6.

B. Plaintiff's State Law Claims Fail as A Matter of Law

Plaintiff's false advertising and unfair competition claims hinge on Trustifi's allegedly false statements. Accordingly, the foregoing analysis regarding Rule 9(b) applies with equal force here. Setting aside these pleading [*13] deficiencies, however, Plaintiff's state law claims must be dismissed with prejudice as a matter of law.

1. Exhaustion of Administrative Remedies under the FTCA

As an initial matter, it is unclear whether Plaintiff was required to exhaust administrative remedies under the FTCA in order to bring its FAL and UCL claims. USPS is correct that a party may not maintain an action under the FTCA until it first presents the claim to the appropriate federal agency. Mot. at 14. It is also true that the FTCA only applies to the commencement of a tort suit. 28 U.S.C.§ 2675(a).

However, the Court is unconvinced that UCL and FAL claims brought under §§ 17200 and 17500, respectively, are tort claims encompassed by the FTCA. [3] While the Court was unable to find a case analyzing this issue, cases mentioning the statutes in passing vary in their characterizations thereof. For example, in some cases, UCL claims are referred to as being distinct from torts, while in others they are likened to having civil tort liability or referred to as statutory torts. Compare Flamingo Indus. (USA) Ltd. v. U.S. Postal Service, 302 F.3d 985, 995-97 (9th Cir. 2002), rev'd on other grounds by 538 U.S. 1056, 123 S. Ct. 2215, 155 L. Ed. 2d 1104 (2003) (considering [*14] whether breach of implied covenant claim was properly exhausted under the FTCA, but performing no similar analysis for a section 17200 claim); Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1266-67, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (1992) ("In drafting the act, the Legislature deliberately traded the attributes of tort law for speed and administrative simplicity. As a result, to state a claim under the [UCL] one need not plead and prove the elements of a tort.") (internal quotation marks omitted); Cortez v. Purolator Air Filtration Products Co., 23 Cal.

4th 163, 173, 96 Cal. Rptr. 2d 518, 999 P.2d 706 (2000) (A *section 17200* claim "is not an all-purpose substitute for a tort or contract action.") *with Rubin v. Green*, 4 Cal. 4th 1187, 1201, 17 Cal. Rptr. 2d 828, 847 P.2d 1044 (1993) (where conduct falls under a statutory litigation privilege, and is thus "absolutely immune from civil tort liability," "[t]o permit the same . . . acts to be the subject of an injunctive relief proceeding brought by this same plaintiff under the [UCL] undermines that immunity."); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 335, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (2011) ("While Proposition 64 clearly was intended to abolish the portions of the UCL and false advertising law that made suing under them [*15] *easier* than under other comparable statutory and common law torts, it was not intended to make their standing requirements comparatively *more* onerous.") (emphasis in original). [4]

3   If they are tort claims, then USPS is an improper party defendant. *See Kennedy v. U.S. Postal Service*, 145 F.3d 1077, 1078 (9th Cir. 1998) ("Because the United States is the only proper party defendant in an FTCA action, the district court correctly dismissed [plaintiff's] complaint as improperly filed against the Postal Service and [another defendant]. The FTCA is the exclusive remedy for tort actions against a federal agency, and this is so despite the statutory authority of any agency to sue or be sued in its own name.) (citing 28 U.S.C. § 2679(a) (1998)). *See also Dolan v. U.S. Postal Service*, 546 U.S. 481, 484, 126 S. Ct. 1252, 163 L. Ed. 2d 1079 (2006) ("Although the Postal Reorganization Act generally waives the immunity of the Postal Service from suit by giving it the power to sue and be sued in its official name, the statute also provides that the FTCA shall apply to tort claims arising out of activities of the Postal Service[.]") (internal citations and quotations omitted).

4   The Court finds *Toho Co. Ltd. v. Sears Roebuck & Co.*, 645 F.2d 788, 793-94 (9th Cir. 1981), [*16] cited by USPS, to be unhelpful because it references the plaintiff's claims in the context of the former unfair competition tort.

The Court need not resolve the issue of whether sections 17200 and 17500 are torts triggering the administrative exhaustion requirements under the FTCA because the Court finds these claims should be dismissed on other grounds.

2. Vicarious Liability under §§ 17200 and 17500

USPS argues that there is no vicarious liability under sections 17200 and 17500. *Mot.* at 15. In support of this argument, USPS cites *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960, 116 Cal. Rptr. 2d 25 (2002). In *Emery*, plaintiffs received deceptive solicitations from lotteries that accepted payment by Visa and displayed Visa's logo on their solicitation materials. Visa did not participate in the lotteries, but merely licensed its payment system and allowed usage of its logo where Visa was accepted. Plaintiffs brought §§ 17200 and 17500 claims against Visa for Visa's failure to stop lottery merchants from using the Visa mark, which allegedly led to the implication that statements in the solicitations were true. The California Court of Appeal made clear that "[a] defendant's liability must be based [*17] on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate sections 17200 or 17500." *Id. at 960*. The court concluded "there can be no civil liability for unfair practices" where the defendant "played no part in preparing or sending any 'statement' that might be construed as untrue or misleading under the unfair business practices statutes." *Id. at 964*.

The Court agrees that this case is analogous to the present situation. Here, Trustifi licensed permission to use USPS's EPM logo on its website, and it was Trustifi who made the statements alleged by Plaintiff to be false. Plaintiff does not allege that USPS made any such statements. Instead, Plaintiff seeks to hold USPS vicariously liable for Trustifi's statements. In opposition, Plaintiff questions the language in *Emery*, but the cases cited by Plaintiff in support are irrelevant to the present facts. As USPS points out, the principle adopted in *Emery*, rejecting a theory of vicarious liability in §§ 17200 and 17500 claims, has also been applied by numerous federal courts. *Mot.* at 8 (citing *Kenneally v. Bank of Nova Scotia*, 711 F. Supp. 2d 1174, 1192-93 (S.D. Cal. 2010); *Laster v. T-Mobile USA, Inc.*, No. 05-1167, 2009 U.S. Dist. LEXIS 116228, 2009 WL 4842801, *8 (S.D. Cal. Dec. 14, 2009); [*18] *In re Jamster Mktg. Litig.*, No. 05-cv-0819 JM, 2009 U.S. Dist. LEXIS 43592, 2009 WL 1456632, *8-9 (S.D. Cal. May 22, 2009); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. C 04-0371 JW, 2004 U.S. Dist. LEXIS 15895, 2004 WL 1773349, *8 (N.D. Cal. Aug. 5, 2004)).

Because Plaintiff does not suggest these claims can

Page 5

2011 U.S. Dist. LEXIS 117260, *18

be premised on anything other than vicarious liability, and because this theory is untenable as a matter of law, Plaintiff's second and third causes of action are dismissed with prejudice.

IV. Conclusion

For the foregoing reasons, the Court GRANTS USPS's motion to dismiss. Plaintiff's Lanham Act claim is dismissed without prejudice. The Court grants Plaintiff leave to amend this claim until October 25, 2011. Failure to amend by this date will result in dismissal of the case as to USPS. Plaintiff's FAL and UCL claims are dismissed with prejudice.

**IT IS SO ORDERED.**

# EXHIBIT 10

LEXSEE



Positive
As of: Feb 06, 2012

**SANTANA PRODUCTS, INC., Plaintiff, -against- SYLVESTER & ASSOCIATES, LTD., and FREDERICK E. SYLVESTER, Defendants.**

**98 CV 6721 (ARR)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

**2006 U.S. Dist. LEXIS 98045**

**November 8, 2006, Decided**

**NOTICE:**   Designated as not for publication on the slip opinion.

**SUBSEQUENT HISTORY:** Affirmed by, Motion granted by Santana Prods. v. Sylvester & Assocs., 279 Fed. Appx. 42, 2008 U.S. App. LEXIS 11149 (2d Cir. N.Y., 2008)

**PRIOR HISTORY:** Santana Prods. v. Sylvester & Assocs., 121 F. Supp. 2d 729, 2000 U.S. Dist. LEXIS 20213 (E.D.N.Y., 2000)

**CORE TERMS:** Lanham Act, attorneys' fees, partition, bad faith, misleading, bulletin, conspiracy, advertising, advertisement, advisory, summary judgment, videotape, customer, toilet, architectural, paneling, literally, prevailing party, co-conspirator, discovery, rating, architects, sheet, non-party, trademark, promotion, campaign, video, smoke, sufficient evidence

**COUNSEL:** [*1] For Santana Products, Inc., Plaintiff: B. Aaron Schulman, William E. Jackson, LEAD ATTORNEYS, Stites & Harbison, PLLC, Alexandria, VA; Paul Joseph Esatto, Jr., Peter I. Bernstein, LEAD ATTORNEYS, Scully, Scott, Murphy & Presser, Garden City, NY.

For Sylvester & Associates, Ltd., Frederick E. Sylvester, Defendants: Carl W. Hittinger, LEAD ATTORNEY,

Piper Rudnick Gray Cary US LLP, Philadelphia, PA; Frederick A. Nicoll, LEAD ATTORNEY, New York, NY; Gregory J. Samurovich, LEAD ATTORNEY, Piper Rudnick LLP, Philadelphia, PA; Walter Benzija, STEVENS & LEE, P.C., New York, NY.

**JUDGES:** Allyne R. Ross, United States District Judge.

**OPINION BY:** Allyne R. Ross

**OPINION**

OPINION AND ORDER

    ROSS, United States District Judge:

    On March 6, 2006, plaintiff Santana Products ("Santana") moved to dismiss the instant action with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure with each party to bear its own attorneys' fees and costs. Defendants Sylvester & Associates, Ltd. and Fred E. Sylvester (collectively "the Sylvesters") opposed plaintiff's motion, contending that an award of attorneys' fees is justified pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117. On June 9, 2006, the Honorable Michael L. Orenstein, [*2] Chief United States Magistrate Judge, rendered an oral report and recommendation recommending that plaintiff's

Page 1

motion to dismiss with prejudice be granted and defendant's application for attorneys' fees be denied. Defendants timely filed objections to this report on July 20, 2006. Having conducted a de novo review of the record, see 28 U.S.C. § 636(b)(1), the court grants plaintiff's motion to dismiss and denies defendants' application for attorneys' fees for the reasons given below.

## BACKGROUND

The factual and procedural background of this action is described at length in the December 29, 1999 Decision and Order by the late Judge Mishler. See Santana Products. Inc. v. Sylvester & Associates. Ltd., 121 F.Supp.2d 729, 731-734 (E.D.N.Y. 1999). Familiarity with that decision is presumed and, consequently, this opinion merely summarizes facts relevant to the resolution of the pending motion. In particular, this opinion provides relevant background with regard to the plaintiff's Lanham Act claim, the only claim for which defendants request attorneys' fees.

Plaintiff Santana manufactures and sells restroom toilet partitions made of high density polyethylene ("HDPE") for use in public restrooms [*3] and locker room facilities. Plaintiff claims that HDPE toilet partitions are more cost-effective, durable and vandalism resistant than those manufactured using conventional materials. The complaint alleges that, starting in the mid-to-late 1980s, sellers and manufacturers of toilet partitions made of other materials conspired to discourage acceptance of Santana's HDPE partitions by falsely representing that HDPE partitions constituted a fire hazard. Compl.P23. Platiff contends that these "fire scare tactics" resulted in the misclassification of HDPE partitions as "interior wall finish" for building code purposes, thereby imposing unwarranted fire safety requirements and necessitating efforts by plaintiff to ensure the partitions were properly characterized. Compl. PP 25-26.

The instant action is the third in a series of actions initiated by plaintiff in attempt to counter this alleged fire scare campaign. In November 1994, plaintiff filed a complaint in the Middle District of Pennsylvania alleging antitrust violations and false advertising under the Lanham Act against the Formica Corporation, eleven toilet compartment manufactures, and a trade association called the Toilet Partition [*4] Manufacturer's Council (TPMC). The case settled for an undisclosed amount, and

the defendants agreed to cease the use of an allegedly false videotape, known as the Formica videotape, and to "use their best efforts to retrieve" any copies. Pl. Resp. 6. Plaintiff executed a release against defendants and their employees for any and all claims up to January 27, 1995. Santana Products, 121 F.Supp.2d at 734.

In October 1996, Santana filed a complaint in the Middle District of Pennsylvania ("Pennsylvania litigation") against Bobrick Washroom Equipment, Inc. and its parent company, the Bobrick Corporation, (collectively, "Bobrick") and several of Bobrick's architectural sales representatives, including Sylvester & Associates, Ltd. ("Sylvester") and Fred Sylvester individually ("Mr. Sylvester"). Def. Ex. 8. The complaint alleged that the defendants conspired with the TPMC to dissuade specification and purchase of the HDPE toilet partitions manufactured by Santana in violation of, inter alia, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125. The plaintiff specifically claimed that defendants made false and misleading representations regarding the flammability of HDPE partitions in interstate [*5] commerce about plaintiff's products through their use and distribution of five allegedly false materials: (1) the Formica videotape; (2) a videotape prepared by Bobrick entitled "You Be The Judge"; (3) Bobrick's "Advisory Bulletin TB-73"; (4) advertisements placed by Bobrick in the American School and University Magazine; and (5) "box lunch" slide presentations and sales scripts created for Bobrick's architectural representatives. See Santana Products Inc. v. Bobrick Washroom Equipment, Inc., 249 F.Supp.2d 463, 476 (M.D. Pa, 2003). In July 1997, the defendants in the instant action filed a motion for summary judgment in the Pennsylvania litigation for lack of personal jurisdiction. On July 24, 1998, Judge Vanaskie in the Middle District of Pennsylvania granted defendants' motion to dismiss, finding that Sylvester, a New York corporation that serves as Bobrick's architectural representative for New York and New Jersey, and Mr. Sylvester, a resident of New York State, lacked sufficient minimum contacts with Pennsylvania. Santana Products, Inc. v. Bobrick Washroom Equipment, Inc., 14 F.Supp.2d 710 (M.D. Pa 1998).

On October 30, 1998, plaintiff filed the instant action against Sylvester [*6] and Mr. Sylvester in the Eastern District of New York alleging that the defendants, inter alia, engaged in a conspiracy with non-party co-conspirators, including Bobrick and other toilet partition manufacturers, to make false and misleading

Page 2

representations regarding the flammability of HDPE partitions. The complaint alleges violations of Section 43(a) of the Lanham Act based on (1) distribution of Bobrick's Advisory Bulletin TB-73 to specifiers and architects, (2) distribution of a "Fact Sheet" prepared by his former employer Medpar Corporation ("Medpar/Sylvester Fact Sheet") to prospective purchasers of Bobrick's toilet partitions, and (3) conducting "box lunch" presentations for specifiers and architects employing Bobrick's script and slides. Compl. PP 49-51; see also PP Compl. 77, 78. Plaintiff prayed for injunctive relief and damages on its Lanham Act claims. Compl. PP 4, 5.

In May 1999, the defendants moved for a stay of discovery pending resolution of the Pennsylvania litigation on the grounds that (1) a stay would avoid duplicative and burdensome discovery and (2) a determination that Bobrick was not involved in a conspiracy to violate the Sherman Act would preclude, under the [*7] doctrine of collateral estoppel, a finding of liability against the defendants for engaging in the alleged conspiracy. Judge Mishler ruled that a stay of discovery was not warranted, because defendants, by refusing to subject themselves to personal jurisdiction in Pennsylvania, bore responsibility for the separate litigation in New York, and plantiff s desire to proceed with the litigation was reasonable. See Memorandum of Decision and Order, Santana Products, Inc. v. Sylvester & Associates, Ltd., No. 98-6721 (E.D.N.Y Oct. 19, 1999) (Def. Ex. 5). Judge Mishler further determined that the burden on defendants was insignificant as much of the discovery had already been completed in Pennsylvania and the issues in the two actions were not identical such that a decision in Pennsylvania would necessarily resolve the claims in New York. See id. Judge Mishler subsequently granted in part defendants' motion for partial judgment on the pleadings dismissing plaintiffs claims under Section 2 of the Sherman Act. Memorandum of Decision and Order, Santana Products, Inc. v. Sylvester & Associates, Ltd., No. 98-6721 (E.D.N.Y Jan. 1, 2000). Upon completion of discovery, plaintiff moved to stay the proceeding [*8] pending disposition of cross-motions for summary judgment filed in the Pennsylvania litigation, and Judge Mishler granted the stay on April 26, 2001.

On March 3, 1999, the United States District Court for the Middle District of Pennsylvania granted in part and denied in part Bobrick's motion for summary judgment and granted summary judgment in favor of the two remaining Bobrick architectural representatives. Santana Products, Inc. v. Bobrick Washroom Equipment Inc., 249 F.Supp.2d 463 (M.D. Pa. 2003). The Pennsylvania court extended the Noerr/Pennington doctrine to include the plaintiffs Lanham Act claims, acknowledging that there was no Supreme Court or Third Circuit precedent addressing whether Noerr/Pennington immunity applies to claims under Section 43(a) of the Lanham Act. Id. at 492-94. On this basis, the court dismissed all claims against Bobrick's architectural representatives, as their sales activity was directed exclusively at public entities and restricted Bobrick's liability to injuries sustained as a result of private sector conduct. Id. at 494. The court denied Bobrick's motion for summary judgment based on the doctrine of laches, finding that the defendant suffered no [*9] material prejudice as a result of delay by the plaintiff in bringing the action. Id. at 501.

The Pennsylvania court further assessed each of the disputed materials to determine whether a material issue of fact was presented as to whether the standard for "literal falsity" under the Lanham Act had been met. The court held that the Advisory Bulletin TB-73 was not literally false, entitling Bobrick to summary judgment on this aspect of the plaintiffs Lanham Act claim. Id. at 204. The court determined that genuine issues of material fact as to falsity were presented by aspects of the Formica videotape, the Bobrick "You be the Judge" videotape, and the architectural advertisements. Id. at 200, 206, 211. The court held that aspects of the box lunch scripts and slides were materially false, entitling plaintiff to summary judgment on that aspect of their claim. Id. at 208. The court further held that the plaintiff's evidence supporting their claims of injury as a result of all the materials except for the two videos was "very thin," and therefore granted summary judgement to the defendants with respect to claims for damages for any materials except the videos. Id. at 222. The court certified [*10] its order for immediate appellate review pursuant to 28 U.S.C. § 1292(b).

The Third Circuit held that the plaintiff's Lanham Act claim was barred by laches and therefore did not reach any other issues related to the claim. Santana Products, Inc. v. Bobrick Washroom Equipment, Inc., 401 F.3d 123, 140 (3d Cir. 2005), cert. denied, 546 U.S. 1031, 126 S. Ct. 734, 163 L. Ed. 2d 569 (Nov. 28, 2005). Santana subsequently sought to dismiss their complaint

Page 3

2006 U.S. Dist. LEXIS 98045, *10

with prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure.

**DISCUSSION**

The sole remaining issue in this litigation is whether an award of attorneys' fees to defendants for the time spent in litigating plaintiff's Lanham Act claims is justified, pursuant to 15 U.S.C. § 1117. Defendants contend that Chief Magistrate Judge Orenstein's Report and Recommendation to the court applied the incorrect legal standard to review defendants' application for legal fees. Defendants further claim that, applying the correct legal standard of "fraud or bad faith," the court should require plaintiff to pay the attorneys' fees of defendants incurred in connection with the Lanham Act claim because (1) plaintiff filed and prosecuted claims having no real substance; (2) plaintiff filed [*11] its suit without any investigation of the merits of its claim; and (3) plaintiff filed suit as a competitive ploy.

**A.   Legal  Standard  Governing  Award  of Attorneys' Fees**

Chief Magistrate Judge Orenstein's Report and Recommendation relies primarily on the Second Circuit's decision in Colombrito v. Kelly, 764 F.2d 122 (2d Cir. 1985), as the relevant legal standard for the disposition of the dispute over attorneys' fees. In that case, the Second Circuit held that, absent statutory authority, a fee award is generally not justified when the court dismisses a claim with prejudice pursuant to Rule 41(a). See id. at 134-35. In so holding, the Second Circuit declined to adopt the "exceptional circumstances" test applied by other circuits for determining when fee awards might be appropriate for dismissals with prejudice when there is no statutory authority. Colombrito, 764 F.2d at 134. The defendants contend that Colombrito is not dispositive of whether an award of attorneys' fees is appropriate in this case, because there is a relevant statutory fee-shifting provision and, thus, the instant action falls within the recognized exception to the Second Circuit's general rule relating to attorneys' [*12] fees. The court agrees. As both plaintiff and defendants acknowledge in their initial submissions to the court on the issue of fees, Section 35(a) of the Lanham Act provides the only relevant authority potentially enabling an award of fees here. See Mem. of Law in Support of Pl.'s Mot. to Dismiss, at 6 ("Of the causes in this case to be dismissed, only the Lanham Act includes a provision allowing for the discretionary award of reasonable attorneys fees"); Def. Mem. of Law in

Opp'n to Pl.'s Mot., at 23. Because the Second Circuit expressly reserved its holding in Colombrito to circumstances where there was not a statutory authority, the resolution of the instant dispute over fees requires an examination of the applicability of the Lanham Act standard for award of attorneys' fees.

Section 35(a) of the Lanham Act provides that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In the Second Circuit, an award of fees is justified under the Lanham Act only when there is a showing of fraud or bad faith. Conopco v. Campbell Soup Co., 95 F.3d 187, 194-95 (2d Cir. 1996). This standard applies whether the prevailing party is a [*13] plaintiff or defendant. Id. at 195. The burden is on the defendants to show that the case is exceptional such that it warrants an award of fees. See Conopco v. Campbell Soup Co., 1995 U.S. Dist. LEXIS 9331 (S.D.N.Y. 1995), aff'd Conopco, 95 F.3d at 194-95.

As a preliminary matter, plaintiff contends that this statutory provision should not be applied to the instant action, because a defendant is not a "prevailing party" within the meaning of the statute when the plaintiff moves to dismiss the action with prejudice. In support of this contention, the plaintiff relies on Second Circuit precedent stating that "generally the defendant is not considered the prevailing party when . . . there is a voluntary dismissal of the action with prejudice." Nemeroff v. Abelson, 620 F.2d 339, 350 (2d Cir. 1980) (citing Mobile Power Enterprises, Inc. v. Power Vac, Inc., 496 F.2d 1311, 1312 (10 Cir. 1974)); see also Colombrito v. Kelly, 764 F.2d 122, 130 (2d Cir. 1985) (quoting Nemeroff). It is unclear whether this statement in Nemeroff is binding on this court, because it is dicta, no reasoning is provided to justify the general rule provided, and the sole case cited, Mobile Power, 496 F.2d at 1311, was [*14] subsequently overturned. See Surprise v. GTE Service Corp., 202 F.R.D. 79, 80 (D. Conn. 2000) (holding that Nemeroff is not binding and concluding that defendant is a prevailing party when the plaintiff moves to dismiss an action with prejudice); see also Beer v. John Hancock Life Ins. Co., 211 F.R.D. 67, 70 (N.D.N.Y. 2002) (same). Moreover, in Nemeroff, the Second Circuit considered whether costs should be awarded under Rule 54(d) of the Federal Rules of Civil Procedure rather than the provision of the Lanham Act governing award of attorneys' fees at issue here. See Nemeroff, 620 F.2d at 350-51. In addition, subsequent to

Page 4

Nemeroff but prior to Colombrito, the Second Circuit stated, also in dicta, that "[t]he phrase "prevailing party" should not be limited to a victor only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing if . . . the plaintiff has sought a voluntary dismissal of a groundless complaint." McGill v. Secretary of Health & Human Servs., 712 F.2d 28, 30 (2d Cir. 1983) (citing Corcoran v. Columbia Broadcasting System, Inc., 121 F.2d 575 (9th Cir. 1941)). [1] Nevertheless, the court does not need to resolve this question [*15] here, as, even if the Lanham Act applies, the defendants have not satisfied their burden of showing fraud or bad faith in plaintiff's filing or litigation of its claim.

> [1] It should also be noted that the general rule among the circuits is that a defendant can constitute a prevailing party for the purpose of fee awards under Rule 54(d) when an action is dismissed with prejudice. See, e.g., Cantrell v. Int'l Brotherhood of Electrical Workers, AFL--CIO, 69 F.3d 456, 458 (10th Cir.1995); Kollsman v. Cohen, 996 F.2d 702, 706 (4th Cir.1993); Zenith Ins. Co. v. Breslaw, 108 F.3d 205, 207 (9th Cir.1997); Schwarz v. Folloder, 767 F.2d 125, 130-31 (5th Cir. 1985); see also 10 Moore's Federal Practice § 54.171 (3d ed. 2006) ("a dismissal with prejudice is an adjudication on the merits that changes the legal relationship between the plaintiff and the defendant, extinguishing whatever claim the plaintiff might have had against the defendant. Accordingly, a dismissal with prejudice makes the defendant a prevailing party"); c.f. Marquart v. Lodge 837. Int'l Ass'n of Machinists & Aerospace Workers, 26 F.3d 842, 852-53 (8th Cir. 1994) (defendant not a "prevailing party" when the plaintiff moved for [*16] voluntary dismissal with prejudice prior to a summary judgment motion on the merits).

Within the Second Circuit, courts have found the bad faith requirement for award of fees under the Lanham Act to be satisfied when: (1) "plaintiffs claims had no real substance;" (2) "plaintiff brought suit in bad faith without an investigation of the merits of his claim;" and (3) "plaintiff filed suit as a competitive ploy." New Sensor Corp. v. CE Distribution LLC, 367 F.Supp.2d 283, 287 (E.D.N.Y. 2005) (quoting 17 P.L.I. Trademark L. Prac. Guide § 17:3:6). Defendants contend that, although one of these prerequisites is sufficient, all three are satisfied

here, I will address each in turn.

**B. Defendants' Arguments**

**1. Substance of Plaintiff's Claim**

Defendants contend that plaintiffs claim against the defendants had no real substance when initially filed in Pennsylvania or when subsequently filed and litigated in New York. Defendants argue that the action is "exceptional" under the standards of the Lanham Act due to "Santana's utter lack of a basis for commencing and continuing the Lanham Act claim on the merits against Sylvester . . . after costly discovery, coupled with a glaring absence of the requisite [*17] proof of injury." Defs.' Objections to the Chief Magistrate Judge's June 26 Rep. & Rec. [hereinafter Defs.' Obj.], at 38. Addressing this contention by the defendants, therefore, requires an exploration of the merits of the plaintiff's Lanham Act claims against the Sylvesters to determine whether there was sufficient basis for them.

In examining defendants' allegations, the court is mindful that the defendant bears the heavy burden of showing that plaintiffs claims have lacked merit, not merely that the claims would not have succeeded had this action gone forward. See Gordon and Breach Science Publishers S.A. v. Am. Inst. of Physics, 166 F.3d 438, 439 (2d Cir, 1999) (upholding a district court's denial of attorneys' fees under the Lanham Act when the litigation "may not have been strong on the merits but raised enough nonfrivolous claims to preclude the awarding of fees"). In general, "[a] prevailing defendant is entitled to attorney's fees only if the plaintiff's claim was baseless, capricious, unreasonable, or otherwise pursued in bad faith." Jewelers Vigilance Comm., Inc. v. Vitale Inc., 1997 U.S. Dist. LEXIS 14386, at *14-15 (S.D.N.Y. Sept. 19, 1997). Therefore, an award of attorneys' [*18] fees to a prevailing defendant under Section 35(a) of the Lanham Act is justified when the plaintiff pursued "patently frivolous claims." Nat'l Distillers Products Co., LLC v. Refreshment Brands, Inc., 2002 U.S. Dist. LEXIS 13962, at *2-3 (S.D.N.Y. July 29, 2002); see, e.g., New Sensor, 367 F.Supp.2d at 292 (awarding fees when the object of plaintiff's suit was only to restrain truthful speech and plaintiff should have realized that its claim lacked merit); IMAF, S.p.A., v. J.C. Penney Co., Inc., 810 F.Supp. 96, 100 (S.D.N.Y. 1992) (awarding fees under the Lanham Act when there was an "absolute failure to make a sincere attempt validly to establish an essential element of a section 43(a) claim," namely customer confusion);

Page 5

Diamond Supply Co. v. Prudential Paper Products Co., Inc., 589 F.Supp. 470, 476-77 (S.D.N.Y. 1984) (awarding fees under the Lanham Act when plaintiff's claim was "patently baseless" and the plaintiff presented "virtually no evidence whatsoever" against the defendant); Viola Sportswear, Inc. v. Mimun, 574 F.Supp 619, 620-21 (E.D.N.Y. 1983) (awarding fees for a Lanham Act claim when "[t]he complaint charges the defendants with a trademark conspiracy that was nationwide [*19] in scope, based entirely on . . . one pair of jeans").

## A. False Advertising under Section 43(a) of the Lanham Act

In plaintiff's complaint, Santana alleged that defendants violated Section 43(a) of the Lanham Act "by publication and dissemination of false and/or misleading representations regarding the nature and/or qualities of Bobrick's toilet partitions." Compl. P 77. Section 43(a) of the Lanham Act provides, in relevant part, that:

> Any person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125 (a)(1)(B). The Sylvesters contend that Santana filed its claim knowing that it could not establish, as required, that: (1) defendants made a false or misleading description or representation of fact about their own or plaintiff's product with regard to some of the disputed materials; (2) the Sylvesters' conduct was sufficiently widespread to satisfy the Second Circuit's definition of "commercial advertising [*20] or promotion" under the Lanham Act," see Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 57-58 (2d Cir. 2002); and (3) plaintiff has been or is likely to be injured as a result of defendants' activities. Defs.' Obj. 41. [2] The court finds that, although plaintiff's case against the Sylvesters may have had weaknesses, defendants have failed to establish that plaintiff's showing in each of these areas sufficiently lacked substance such that their claim was brought in bad faith.

2   Defendants also argue that none of Mr. Sylvester's conduct while previously employed by the Metpar Corporation is relevant for the purposes of establishing plaintiff's Lanham Act claim, as it would be barred by the statute of limitations on Lanham Act claims and by the release executed in the 1994 Pennsylvania action. The section of plaintiff's complaint entitled "Defendants and the Co-Conspirators" contains descriptions of conduct of Mr. Sylvester while employed at Medpar, one of the companies included in the 1994 settlement. See Compl. PI 32-38. Defendants contend that laisserting a Lanham Act claim for such clearly barred and settled conduct was manifestly done in bad faith." Defs.' Obj. [*21] 52. Plaintiff, however, previously conceded that this conduct was only relevant as background for the purpose of demonstrating the defendants' state of mind. See Santana Products, 121 F.Supp.2d at 734; see also Pl. Resp., at 34. Nothing in the complaint contradicts plaintiff's concession. Because it is conceivable that Mr. Sylvester's conduct while at Metpar could be relevant to plaintiff's claims against the corporate defendant, the court does not find defendants argument in this regard to be convincing.

## B. False and/or Misleading Representation or Description

Defendants allege that Santana failed to present evidence sufficient to establish that some of the disputed materials were false and/or misleading. The Sylvesters do not dispute the decision of the Pennsylvania court, which found material issues of fact to be presented as to the literal falsity of aspects of the Formica videotape, the Bobrick "You be the Judge" videotape, and the architectural advertisements. Nor do defendants dispute the Pennsylvania court's determination that aspects of the box lunch scripts and slides were literally false. Defendants do, however, contend that insufficient evidence was presented to show that [*22] Advisory Bulletin TB-73 and the Medpar Fact Sheet (prepared by Medpar and subsequently distributed by Sylvester Associates on its letterhead) were either false or misleading. While a determination that plaintiffs claim was not brought in bad faith does not require each argument made by the plaintiff to be nonfrivolous, see Gordon and Breach Science Publishers, 166 F.3d at 439,

Page 6

the evidence presented with respect to these two materials is particularly relevant because allegations relating to their dissemination form the crux of Santana's claim against the Sylvesters.

Demonstrating false advertising under the Lanham Act requires showing either that: "(1) the advertisement is literally false, or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers." Societe Des Hotels Meridien v. LaSalle Hotel Operating Partnership, L.P., 380 F.3d 126, 132 (2d Cir. 2004) (internal citations and quotations omitted). If an advertisement is not literally false, then the plaintiff must present extrinsic evidence showing that the advertisement could mislead or confuse potential purchasers. This requirement is typically accomplished through the use of consumer surveys. [*23] See McNeil-PPC, Inc. v. Pfizer Inc., 351 F.Supp.2d 226, 249 (S.D.N.Y. 2005).

## 1. Advisory Bulletin TB-73

Advisory Bulletin TB-73, entitled "Surface Burning Characteristics of Solid Phenolic Paneling and Solid Polyethylene Paneling," presents a comparison of the results of each type of paneling on "ASTM E-84 Test for Surface Burning Characteristics of Building Materials." See Pl. Compl. Ex. I. The test results given on the first page of the bulletin show that Bobrick phenolic paneling has a "Smoke Develop Index" rating of 93.1 while the solid polyethylene (HDPE) product has a "Smoke Develop Index" rating of 715.4. See id. Immediately beneath the listing of the two types of paneling, the Smoke Develop Index rating for the "National Protection Association Life Safety Code Class B Interior Wall & Ceiling Finish Classification Standard" ("NPAL Life Safety Code B classification") is presented, showing an allowable range of between zero and 450.0. See id. "Flame Spread Index" results are also provided for both types of paneling, with Bobrick paneling receiving a rating of 69.3 and the HDPE paneling rating 71.0, both within the NPAL Life Safety Code B classification. See [*24] id. Below the test results, a "Special Note" reads:

> After the conclusion of the test, the solid polyethene paneling continued to burn and formed molten residue which also became ignited and sustained significant levels of temperature, flame and smoke. The solid

polyethylene continued to burn until the paneling was completely consumed.

Id.

In support of their claim that the Advisory Bulletin TB-73 was literally false, plaintiff argued, in its summary judgment motion to the Pennsylvania court, that the bulletin lacked a "disclaimer that the test results may not depict performance in actual fire conditions." Santana, 249 F.Supp.2d at 535. Plaintiff also argued that the advertisement falsely implies that the NPAL Life Safety Code B classification was applicable to toilet compartments. See id. After considering these contentions, the Pennsylvania court held that the advisory bulletin was not literally false, entitling Bobrick to summary judgment on this action of the plaintiff's Lanham Act claim. Id. at 204. See id. Despite this holding, this court finds that plaintiffs claim that this material was false and/or misleading was not brought in bad faith.

First, plaintiffs allege that, in bringing [*25] the claim, they relied on a Federal Trade Commission consent order which stated that representing, directly or indirectly, that the ASTM E-84 Test is a reliable methods for evaluating or predicting the burning characteristics of plastics products under actual fire conditions is "unfair, false, misleading and deceptive" and required an appropriate warning to be displayed prominently when the flame spread rating was provided to avoid such a misimpression. See In re Society of the Plastics Industry, Inc., 84 F.T.C. 1253 (1974). On its face this seems to be a plausible justification for plaintiff's allegation that the use of the ASTM Test in the advisory bulletin was literally false.

Second, the issue before the Pennsylvania court on the summary judgment motion was only whether the advertisements were literally false, not whether they were misleading. In fact, the Pennsylvania court noted, with respect to the Formica video, that the absence of a disclaimer explaining that performance in controlled testing might be different in actual fire conditions might make the video misleading. See Santana, 249 F.Supp.2d at 528. As evidence that this advertisement could be misleading, Santana filed [*26] two expert reports with the court in October 2000. Mr. H.J. Roux, a fire safety consultant, opined that, if the term "paneling" in the bulletin meant "toilet compartments," then the advisory

bulletin is misleading because it implies that they need to meet a Class B fire safety code when they do not. Decl. Jackson, Ex. 13, at 11. In the second report, Mr. Philip Johnson, a market research consultant, reported the findings of a study he designed and conducted with 150 architects in ten different market areas who were responsible for making decisions regarding the washroom materials in buildings they design. Decl. Jackson, Ex. 14, at P 6. Based on this survey, Mr. Johnson opined that the advisory bulletin supported or confirmed the false impression among architects that HDPE does not comply with code requirements, with approximately half of architects surveyed stating this belief. Id. at P 27. Defendants dispute the methodology of this report, contending that "in many cases, the participants were not qualified to participate because they had no knowledge of specifications, relevant codes, or any issues particular to public washrooms or toilet partitions, did not recall participating, [*27] and/or thought the questions were confusing or unclear." Defs.' Obj. 47 n.23. At this juncture in the litigation, however, the court does not need to make a finding as to the appropriate weight to afford the survey results. Rather, the court determines only that Santana furnished sufficient evidence that the technical bulletin could be considered misleading to refute defendants' contention that plaintiff's claim was brought in bad faith. In the New Sensor case cited by the defendants, the court awarded attorneys' fees under the Lanham Act when the plaintiff "proffered no evidence that it conducted, or planned to conduct, a survey to establish customer confusion and secondary meaning, a practice which courts in this circuit have endorsed for purposes of trial." New Sensor, 367 F.Supp.2d at 288. By contrast, Santana commissioned an individual with significant market research expertise to conduct a survey of a sizable group of people who were at least arguably likely purchasers of the plaintiffs products.

### 2. Medpar/Sylvester Fact Sheet

Defendants similarly contend that Santana has failed to provide evidence that the Medpar/Sylvester Fact Sheet is false and/or misleading. The disputed fact [*28] sheet is a side-by-side table comparing several characteristics of phenolic with those of HDPE. See Compl., Ex. J. Under the item "Fire Rating (E-84 Test) Smoke Developed," phenolic is described as "Class 'B' Self Extinguishing; 35 Flamespread; 90 Smoke Developed" and HDPE is described as "Class 'B' Considerable; Afterflame 50 Flamespread; 625 Smoke Developed;

Greatly Exceeding, National Fire Protection Limit of 450." Id. As the fact sheet greatly resembles Advisory Bulletin TB-73 in both information conveyed and methods for doing so, the analysis from the section above is largely applicable, even though the market survey conducted did not test participants' reaction to this particular advertisement. Defendants have therefore failed to meet their burden of showing that plaintiff's claim that this advertisement was false and/or misleading lacked substance.

### B. Commercial Advertising or Promotion

Defendants further argue that Sylvester's limited distribution of the materials in question did not meet the standard for "commercial advertising or promotion." The test for commercial advertising or promotion within the meaning of the Lanham Act is:

> the contested representations must be (1) commercial [*29] speech; . . . [(2)] for the purpose of influencing consumers to buy defendants goods or services; and [(3)] although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.

Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48 (2nd Cir. 2002) (internal quotations omitted); see also Boule v. Hutton, 328 F.3d 84, 90 (2d Cir. 2003). Defendants contend that, here, the plaintiff failed to establish a viable Lanham Act claim because they could not meet the third element of this test. In making this argument, defendants rely primarily on the Second Circuit's Fashion Boutique decision. In Fashion Boutique, the Second Circuit held that the plaintiff had not established that the alleged representations by the defendant regarding the quality of the Fendi bags sold by the plaintiff had been sufficiently disseminated to constitute commercial advertising or promotion. The court found that plaintiff Fashion Boutique's evidence, consisting of 27 oral statements made by defendant Fendi USA about plaintiff's products "in a marketplace of thousands of customers," did not [*30] suggest that there was an "organized campaign to penetrate the marketplace." See Fashion Boutique, 314 F.3d at 48. The Sylvesters contend that, similarly, Santana provided insufficient evidence of Sylvester's role in dissemination

Page 8

2006 U.S. Dist. LEXIS 98045, *30

of the disputed materials.

Santana argues in response that it provided sufficient evidence of widespread dissemination to establish that their claim was not brought in bad faith. In particular, plaintiff alleges that the criteria for commercial advertising and promotion are met by "Bobrick's 'Fire Scare' Marketing Campaign" at issue in the Pennsylvania litigation. PL's Resp. 29. Santana alleged in its complaint in the instant action that "Sylvester, Sylvester & Associates, and the non-party co-conspirators conspired to use scare tactics to discourage specification and acceptance of Santana's HDPE partitions in lieu of or as a replacement material for conventional materials by falsely alleging that Santana's partitions posed a dangerous fire hazard." Compl. 23. [3] Plaintiff claims that this campaign was carried out nationwide by Bobrick's 150 architectural and sanitary supply representatives and that Bobrick distributed false and/or misleading advertisements [*31] to the 44,000 subscribers to the American School & University trade journal. Id. Consequently, according to plaintiff, Sylvester -- as Bobrick's architectural representatives in New York and New Jersey -- could have been found liable as a joint tortfeasor for conspiring with Bobrick and other non-party co-conspirators to violate the Lanham Act. Id. at 29-31. Defendants argue that Santana failed to establish a viable claim against Bobrick in the Pennsylvania litigation, Defs.' Obj. 60, and, even if they had, Santana has not proffered evidence that Sylvester actually engaged in the alleged campaign, id. at 41 n.20. They also contend that Santana could not establish joint and several liability because it did not name Bobrick as a defendant in the New York litigation and failed to show a sufficient agency relationship to meet the requirements of the Lanham Act. Id. at 60-61.

3   Defendants claim that plaintiff never pleaded "joint and several liability" in their complaint. However, throughout the complaint, the defendants refer to Bobrick as a "non-party co-conspirator," see. e.g., Compl. P 5, and the complaint is replete with allegations that Sylvester engaged in a conspiracy with non-parties, [*32] see. e.g., Compl. 1123, who are specifically named in the complaint, see Compl. 5-18. This is sufficient to show that plaintiffs contention is not an "eleventh hour argument" as defendants allege. See Def.'s Obj. 62.

The court finds that the plaintiffs presented sufficient evidence that a conspiracy to violate the Lanham Act existed and that Sylvester participated in it to show that plaintiff's claim was not brought in bad faith. Violations of the Lanham Act's prohibitions on trademark infringement and unfair competition can be established under the doctrine of joint tortfeasors. 4 McCarthy on Trademarks § 25:23 (4th Ed.). Establishing joint liability means that: "[a]ll those who, in pursuance of a common plan to commit an act which is tortious, actively take part in it, or further it by cooperation or request, or lend aid or encouragement, or ratify and adopt the acts done, are as equally liable as the person who performs the tortious act itself." 4 McCarthy on Trademarks § 25:23; see also *Piccoli, 19 F.Supp.2d at 173*. Finding individuals or companies liable as joint tortfeasors requires showing that "the defendant and the direct infringer have an apparent or actual partnership, have [*33] authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." Id.; see also *Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F.Supp.2d 157,173-74 (S.D.N.Y. 1998)*. Here, at a minimum, Sylvester's agreement to serve as Bobrick's sales representative, see Jackson Decl., Ex. 5, at 20-25, establishes that an apparent partnership agreement existed between Bobrick and Sylvester. In the agreement, Sylvester agreed to "promote the sale, specification and recommendation of the products of Bobrick Washroom Equipment, Inc. through architects, engineers and others in [its] territory." Id. P 4. Bobrick agreed to "diligently aid [Sylvester's] efforts with suitable literature, direct mailings, and other promotional assistance." Id. P 5.

Plaintiff has also provided evidence that the Sylvesters were engaged in the alleged conspiracy to use fire scare tactics to discourage specification and purchase of HDPE partitions. The deposition of Mr. Sylvester taken in the context of discovery in the Pennsylvania litigation prior to the initiation of the instant action revealed that:

1. Sylvester included the Bobrick Advisory Bulletin TB-73 in [*34] binders of materials distributed to architects and potential customers in the New York and New Jersey area, although he never directly referred to it, Sylvester 10/22/97 Dep. at 101, Def. Ex. 6;

Page 9

2. Mr. Sylvester "borrowed" the Medpar Fact Sheet and placed it on Sylvester & Associates letterhead and distributed it, although he does not remember who it was sent to, Sylvester 10/22/97 Dep. at 128, Jackson Decl., Ex. 5, at 10; and

3. Sylvester used Bobrick's box lunch presentation approximately 4 or 5 times that included a slide showing an HDPE partition burning, Defs.' Obj. 50-51; Sylvester 10/22/97 Dep. at 89, 95-96, Def. Ex. 6. [4]

These admissions establish sufficient involvement by the Sylvesters in the alleged conspiracy to show that Santana's suit against the defendants was not brought in bad faith.

[4] The deposition also revealed that Sylvester made little use of the two videotapes. According to Mr. Sylvester, Sylvester & Associates did not use the Formica videotape as part of sales calls or promotional activities but had given it to one unknown potential customer who had requested it. Defs.' Obj. 42-43; Sylvester 10/22/97 Dep. at 40-41, Def. Ex. 6. In addition, a Sylvester sales representative [*35] used the Bobrick video once. Defs.' Obj. 44; Sylvester 10/22/97 Dep. at 140-43, Def. Ex. 6. However, plaintiff's complaint did not make allegations specific to the Sylvesters' use of the videotapes in their complaint. The references to the videotapes in the complaint, therefore, can be appropriately construed as background information.

The Sylvesters' allegation that plaintiff could not establish a viable claim because the alleged co-conspirators were not parties to the action similarly fails. It would be unfair to penalize Santana for failing to join Bobrick in the instant action when it was the Sylvesters' refusal to submit to personal jurisdiction in Pennsylvania that meant that it would be impossible to join all the parties in one action. Furthermore, in light of the overlap between the factual allegations in the two cases, Santana eventually agreed to "be bound by the determinations of the Pennsylvania Court in the New York action contingent upon the exhaustion of appellate review in the Third Circuit." Pl. Mem. of Law in Support

of Mot. to Stay Proceedings, at 3. [5] Thus, before any dispositive motions were filed in the instant action, the status of Santana's claim against Bobrick, [*36] the Sylvesters' primary alleged co-conspirator, would have been resolved. Moreover, evidence of acts by non-party co-conspirators is admissible to establish a defendant's liability, as long as independent evidence is introduced to establish the existence of the conspiracy. See Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 38 S. Ct. 65, 62 L. Ed. 260 (1917); Davidson v. Scully, 148 F.Supp.2d 249, 253 (S.D.N.Y. 2001).

[5] The Sylvesters contend that Santana's earlier opposition to a stay of the proceedings pending the outcome of the Pennsylvania litigation and their subsequent turnaround demonstrates plaintiff's bad faith. However, as Judge Mishler stated when he denied the Sylvesters' motion for a stay, "while the facts underlying the conspiracy claims against Bobrick and Defendants overlap significantly, a finding that *Bobrick* took part in a conspiracy with Defendants or Other Parties would not be 'identical' to the question of whether a conspiracy existed between *Defendants* and Bobrick or Other Parties." Mem. of Decision and Order, Santana Products, Inc. v. Sylvester & Associates, Ltd., No. 98-6721, at 10 (E.D.N.Y Apr. 26, 2001). Therefore, since different facts needed to be established in each action to determine [*37] whether the respective defendants were involved in a conspiracy, it would have been possible for the two proceedings to be litigated simultaneously. In addition, the court notes that defendant's initial motion for a stay occurred at a point in the litigation when discovery had not been completed in either action and therefore a stay was arguably premature. When Santana requested to stay the instant action pending disposition the Pennsylvania litigation, discovery in both actions had been completed and there were pending cross-motions for summary judgment before the Pennsylvania court.

The fact that Santana's Lanham Act claim against Bobrick was not ultimately successful does not mean that it was frivolous. The Third Circuit dismissed the claim as barred by laches so never reached the merits of the claim. See Santana Products, 401 F.3d at 140. The Supreme Court's denial of certiorari with respect to the Third Circuit's decision, 546 U.S. 1031, 126 S. Ct. 734, 163 L.

Ed. 2d 569 (Nov. 28, 2005) does not reflect on the merits of Santana's claim. The Middle District of Pennsylvania's decision on the cross-motions for summary judgment reached only the Noerr-Pennington doctrine, a question of first impression; the issue of [*38] whether the materials allegedly produced and disseminated by Bobrick were literally false; and the likelihood of injury to Santana. Santana, 249 F.Supp.2d 463. The Pennsylvania district court's ruling left intact, with respect to distribution to prospective clients in the private sector, Santana's Lanham Act claims for injunctive relief on the Bobrick "You Be the Judge" Videotape and the Bobrick box lunch program and slides as well as claims for injunctive relief and compensatory damage on the two videos. Id. at 545. Therefore, defendant's allegation that "Santana cannot ignore the dispositive fact that the Pennsylvania District Court, the United States Court of Appeals for the Third Circuit, and the Supreme Court of the United States all concluded Santana failed to state a single viable claim against Bobrick," Defs.' Obj. 60, is disingenuous.

## C. Plaintiff's Evidence of a Previous or Potential Injury

Establishing a violation of the Lanham Act under Section 35(a) requires establishing that the plaintiff "has been or is likely to be injured as a result of [defendant's] activities either by direct diversion of sales from itself to [defendant] or by injury to the goodwill its products enjoy [*39] with the buying public." Barr Laboratories, Inc. v. Quantum Pharmics, Inc., 827 F.Supp 111, 117 (E.D.N.Y. 1993). Defendants contend that an award of attorney's fees in this action is justified because of the "glaring absence of proof of injury" presented by Santana in support of their Lanham Act claim. Defs.' Obj. 53. Indeed, plaintiff presented minimal evidence showing that it was directly injured by the alleged campaign or any participation by the Sylvesters in it. However, plaintiff does not need to establish actual loss of sales in order to obtain injunctive relief under the Lanham Act. See Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 191 (2d Cir. 1980). Rather, plaintiff needs to establish "a reasonable basis for the belief that plaintiff is likely to be damaged as a result of the false advertising," id. Such a showing can be made by establishing that plaintiff and defendant are "competitors in a relevant market" and that there is a "logical causal connection between the alleged false advertising and [plaintiff's] own sales position. Id. at 190; see also PPC, Inc. v. Pfizer Inc.,

351 F.Supp.2d 226, 247 (S.D.N.Y. 2005).

Here, Santana has presented sufficient evidence [*40] establishing a reasonable basis for a belief that it is likely to suffer losses from the advertisements in question to satisfy the court that the claim was not brought in bad faith. The advertising materials directly compare defendants' products with plaintiff's products in an arguably misleading manner, and, therefore, appear to satisfy plaintiff's burden to establish more than a "mere subjective belief that he . . . is likely to be damaged." Johnson & Johnson, 631 F.2d at 189. Moreover, Santana presented evidence that it incurred loss control costs to address customer confusion regarding the flammability of its products. In particular, Lori Kojza, a Santana architectural representative, estimated that she spoke to customers or potential customers from different parts of the country approximately two to five times a week to respond to questions about fire code compliance of Santana's toilet partitions. See Kojsza Aff. P 4, Jackson Decl. Ex. 9; see also Jones Aff. P 17, Jackson Decl. Ex. 8 (Santana architectural representative in Arizona testifying that she has "personally spent a considerable amount of time alone or in conjunction with employees from Santana in meetings with specifiers [*41] and architects even as recent as 1997 to explain away the confusion and to clarify the fact that Santana's HDP compartments are not covered by the Arizona and/or Nevada Codes"). The Pennsylvania court ruled that plaintiff had presented sufficient evidence of loss control costs and lost sales as a result of the two videos to survive summary judgment. Santana Products, 249 F.Supp.2d at 508. The fact that these alleged losses took place outside of Sylvester's sales territory in New York and New Jersey is irrelevant. If Santana established that the Sylvesters were liable as joint tortfeasors with Bobrick and the other "non-party co-conspirators," then the Sylvesters would be liable for resulting injuries caused by the conspiracy as a whole, not merely their individual role. See 4 McCarthy on Trademarks § 25:23; see also Piccoli, 19 F.Supp.2d at 173.

Defendants refute Santana's allegation of damages sustained. In particular, defendants contend that Santana's bad faith is evidenced by their identification of twenty customers allegedly lost to the plaintiff due to Sylvester's use of the disputed advertisements. According to defendants, who claim to have deposed as many of these customers as [*42] they could locate, none of these individuals were actually deterred by Sylvester's

Page 11

distribution of advertising materials related to the flammability of Bobrick's products. Def. Obj. 53-54. In support of this allegation, they provide affidavits from five of the customers identified by plaintiff as well as one of plaintiff's architectural representatives. See Def. Obj., Ex. 15-20. The court notes that plaintiff does not respond to this allegation directly or provide an explanation for the customers they identified as allegedly lost. See Pl. Resp. 31-33. Defendants also contend that any lost sales sustained by the plaintiff in New York City were not in fact due to any action by the Sylvesters but rather to a dispute Santana had with the New York City School Construction Authority (SCA) over Santana's representation of its fire ratings. See Def. Obj. 55-57. According to defendants, SCA debarred Santana from all of its future projects in New York City in 1999. See id. at 56.

While plaintiff's lost sales evidence is admittedly weak, the court finds that plaintiff provided sufficient evidence to establish that its claim for injunctive relief was not frivolous. Furthermore, plaintiff has presented [*43] sufficient evidence to support a nonfrivolous claim for compensatory damages pursuant to 15 U.S.C. § 1117 based on loss control costs incurred. The evidence submitted by Santana showing that it incurred loss control costs in order to respond to customer confusion regarding the flammability of its product provides sufficient evidence of injury to justify a finding that its claim was not brought in bad faith. See Balance Dynamics Corp. v. Schmitt Industries, Inc., 204 F.3d 683, 692 (6th Cir. 2000) (determining that damage control costs merit an award for damages under the Lanham Act even without evidence of marketplace injury when there was a likelihood of confusion or damages and the damage control costs were attributable to the violation and reasonable). Consequently, while plaintiff's lost sales evidence appears to have lacked merit, plaintiff presented enough nonfrivolous arguments in support of its Lanham Act claim that an award of attorneys' fees is not warranted. See Gordon and Breach Science Publishers S.A. v. Am. Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999).

## 2. Allegation that Plaintiff Brought the Suit in Bad Faith Without Investigation

Defendants claim that plaintiff initiated [*44] the instant action against defendants without any investigation. Defendants compare the instant action to

the facts of Viola Sportswear, Inc. v. Mimun, 574 F.Supp. 619 (E.D.N.Y. 1983). In Viola, the plaintiff initiated an action alleging a nationwide controversy to violate their exclusive right to manufacture and sell children's Sasson jeans after learning about the sale of one pair of jeans, worth approximately $ 10, by the defendants. Id. at 620. The court emphasized that "[n]o effort was made by the plaintiff to make any investigation of the facts prior to filing the complaint nor was any effort made to inquire of the moving defendants as to the validity of the charges made in the complaint." Id. The court further noted that the president of the plaintiff corporation admitted in a deposition that he had not reviewed the complaint before it was filed and had no evidence of a nationwide conspiracy beyond the one pair of jeans involved in the suit. Id.

Although the Sylvesters claim that courts may award attorneys' fees to defendants under the Lanham Act solely on the basis of inadequate investigation, they have not identified case law from any courts in the Second Circuit that have [*45] awarded fees after finding that plaintiff's claim had merit. In Viola, the court granted fees only after finding that plaintiff's claim utterly lacked merit. Id. at 620-21.

Regardless, defendants have not established that plaintiff inadequately investigated their suit against Sylvester prior to bringing its New York complaint. As described above, plaintiff's deposition of Mr. Sylvester, which was conducted during the course of the Pennsylvania litigation prior to bringing the instant action, established that defendants had circulated a number of advertising materials that were arguably false, particularly Advisory Bulletin TB-73, in the course of their partnership with Bobrick. Although the Sylvesters did not necessarily circulate large numbers of these materials, the information provided by Mr. Sylvester established sufficient justification for the instant action that it cannot be said to have been initiated without any investigation.

## 3. Allegation that Plaintiff's Action was Brought as a Competitive Ploy

Defendants further allege that plaintiff initiated the suit as a competitive ploy, thus demonstrating the requisite bad faith meriting an award of attorneys' fees. Specifically, defendants [*46] allege that plaintiff filed the suit in New York as part of an "old personal vendetta against Santana's competitor Fred Sylvester by Santana's

Page 12

2006 U.S. Dist. LEXIS 98045, *46

President, Michael Lynch." Defs.' Obj. 36. Defendants cite to a 1988 incident in which Mr. Lynch, after seeing Mr. Sylvester display a slightly burnt sample of HDPE and a picture of HDPE burning, allegedly yelled, "I'm coming after you. I'm coming after you. Fred Sylvester, I'm coming after you in New York." Sylvester 10/22/97 Dep. at 226-27, Def. Ex. 6. Plaintiff disputes this contention, pointing to the eight year gap between this incident and the initiation of the Pennsylvania litigation. Pl.'s Resp. 35. In addition, when Mr. Sylvester was asked his impression of the incident, he said "I don't think there was hard feelings. I think it was just a matter of different ways of doing business." Sylvester Dep. 239, Jackson Aff. Ex. 5. This deposition testimony seems to contradict defendants' allegation that this incident generated significant animosity that would trigger a retaliatory lawsuit many years later. Moreover, while Mr. Sylvester is the only individual sued in the three actions initiated by Santana, there is an innocuous explanation: [*47] corporate officers or directors can be held personally liable for Lanham Act violations if "he was the central figure in the corporation and authorized and approved the acts found to be an infringement." 4 McCarthy on Trademarks § 25:24 (internal quotations omitted). Based on the evidence presented, it is clear that Mr. Sylvester played a central role in the actions of Sylvester & Associates. Furthermore, the background information provided to the plaintiffs regarding Mr. Sylvester's role in the alleged conspiracy while at Metpar provides evidence that he was aware of the conspiracy and capable of perpetuating it through Sylvester & Associates. Thus, the evidence presented by defendants is patently insufficient to demonstrate that the suit was brought merely for harassment or as a competitive ploy.

**Conclusion**

For the foregoing reasons, the court denies defendants' motion for an award of attorneys' fees pursuant to the Lanham Act. The court accordingly grants plaintiff's motion to voluntarily dismiss their claim with prejudice against defendants Sylvester & Associates, Ltd. and Frederick E. Sylvester. Plaintiff's complaint is dismissed with prejudice, with each side to bear its own attorneys' [*48] fees and costs. The Clerk of the Court is directed to enter judgment accordingly..

SO ORDERED.

Allyne R. Ross

United States District Judge

Dated: November 8, 2006

Brooklyn, New York

Page 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### CERTIFICATE OF SERVICE

### (United States District Court)

I, Adam R. Fox, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 555 S. Flower Street, 31st Floor, Los Angeles, CA   90071.   On February 6, 2012, the following document(s):

### APPENDIX OF ELECTRONIC AUTHORITIES CITED TO IN PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

was served on:

    Gail J. Standish
    WINSTON & STRAWN LLP
    333 S. Grand Avenue
    Los Angeles, CA  90071-1543
    Dan K. Webb
    WINSTON & STRAWN LLP
    35 W. Wacker Drive
    Chicago, CA  60601-9703

Service was accomplished as follows.

☒     **By Electronic Means**.   On the above date, I filed the above-mentioned document(s) by electronic means with the U.S. District Court for the Central District of California, over the internet, through its Case Management/Electronic Case Filing (CM/ECF) system.   As such, the Court electronically mailed such document(s) to the parties noted above, whose electronic mail address is set forth above.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 6, 2012, at Los Angeles, California.

                                    _/s/  Adam R. Fox_
                                        Adam R. Fox