1 │ Gail J. Standish (SBN: 166334)
   │ gstandish@winston.com
2 │ Erin R. Ranahan (SBN: 235286)
   │ eranahan@winston.com
3 │ WINSTON & STRAWN LLP
   │ 333 S. Grand Avenue
4 │ Los Angeles, CA 90071-1543
   │ Telephone:   (213) 615-1700
5 │ Facsimile:    (213) 615-1750

6 │ Dan K. Webb (admitted *pro hac vice*)
   │ dwebb@winston.com
7 │ Stephen V. D'Amore (admitted *pro hac vice*)
   │ sdamore@winston.com
8 │ WINSTON & STRAWN LLP
   │ 35 W. Wacker Drive
9 │ Chicago, IL 60601-9703
   │ Telephone:   (312) 558-5600
10 │ Facsimile:    (312) 558-5700

11 │ Attorneys for Defendants
    │ ARCHER-DANIELS-MIDLAND COMPANY; CARGILL, INC.;
12 │ INGREDION INCORPORATED.; THE CORN REFINERS ASSOCIATION, INC.;
    │ AND TATE & LYLE INGREDIENTS AMERICAS, INC.

13 │

14 │ **UNITED STATES DISTRICT COURT**

15 │ **CENTRAL DISTRICT OF CALIFORNIA**

16 │

17 │ WESTERN SUGAR COOPERATIVE,          **Case No. CV11-3473 CBM (MANx)**
    │ a Colorado cooperative, *et al.*,
18 │                                      **CARGILL, INC.'S FIRST AMENDED**
    │          Plaintiffs,                 **ANSWER TO PLAINTIFFS' SECOND**
19 │                                      **AMENDED COMPLAINT &**
    │                                      **COUNTERCLAIM; DEMAND FOR**
20 │      v.                              **JURY TRIAL**

21 │ ARCHER-DANIELS-MIDLAND
    │ COMPANY, a Delaware corporation,
22 │ *et al.*,                            Second Amended Complaint Filed:
    │                                      November 18, 2011
23 │          Defendants.

24 │

25 │        Defendant Member Company Cargill, Inc. ("Cargill") hereby submits the

26 │ following Answer to the Second Amended Complaint of Plaintiffs Western Sugar

27 │ Cooperative, Michigan Sugar Company, Inc., United States Sugar Corporation,

28 │ American Sugar Refining, Inc., The Amalgamated Sugar Company LLC, Imperial

*(Left margin, vertical text)* Winston & Strawn LLP / 333 S. Grand Avenue / Los Angeles, CA 90071-1543

Sugar Corporation, Minn-Dak Farmers Cooperative, The American Sugar Cane League of the U.S.A., Inc., and The Sugar Association, Inc. (collectively, "Plaintiffs").[1]  For its Answer, Cargill states as follows:

## PROLOGUE

1.      Cargill is informed and believes that HFCS began to be used in American food (but not beverages) in the late 1960s, and that the extent of its use has varied since that time.  Further answering, Cargill is informed and believes that there has been a growth in American obesity, but denies that the trend in American obesity has tracked the extent of reported per capita consumption of HFCS in the United States. Cargill admits that some observers initially published a hypothesis of a theoretical correlation (based on partial and incomplete data) between the rise in HFCS consumption and obesity, but that at least one of these initial observers has recanted that hypothesis because it was incorrect.  Cargill denies that there exists a correlation or any causative relationship in the data tracking HFCS consumption and obesity rates over time.  Cargill lacks knowledge sufficient to form a belief as to the truth of the allegation contained in the last sentence of Paragraph 1.  Cargill denies any remaining allegations of Paragraph 1.

2.      Cargill admits that some manufacturers have replaced HFCS with sucrose (referred to herein as "refined sugar" or "table sugar") and have promoted their products' absence of HFCS.  Cargill denies that there is any credible science showing a unique link between consumption of HFCS and obesity or other health problems that does not exist with respect to other sugars, including refined sugar produced from cane or beet plants.  Cargill denies the remaining allegations of Paragraph 2.

3.      Cargill is informed and believes that CRA submitted a citizen's petition requesting, *inter alia*, the U.S. Food and Drug Administration ("FDA") to authorize "corn sugar" as an alternate common or usual name for HFCS (the "Citizen's

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

---

[1] Defendant The Corn Refiners Association, Inc. ("CRA") filed separately its Answer to Plaintiffs' Second Amended Complaint on December 16, 2011.

Petition"), which was denied.  Cargill is further informed and believes that CRA has undertaken an educational campaign to explain the merits of HFCS and its Citizen's Petition.  Cargill is further informed and believes that, as part of its educational campaign, CRA has stated that HFCS is "natural" pursuant to the policy used by the FDA; and that "sugar is sugar" and "your body can't tell the difference" between HFCS and refined sugar because HFCS is "nutritionally the same as table sugar" and metabolized by the body in the same way.  The allegation that "[s]everal have even recently referred to it in their own advertising and pricing sheets as 'corn sugar'" is vague and ambiguous to an extent that it cannot be admitted or denied, and on that basis Cargill denies the same.  To the extent the allegations of Paragraph 3 are directed to the conduct of CRA, no further response from Cargill is required.  If a response to such allegations is required, Cargill lacks knowledge sufficient to form a belief as to the truth of such allegations and, on that basis, denies the same.  Cargill denies any remaining allegations of Paragraph 3.

4. The allegations of Paragraph 4 assert conclusions of law to which no response is required.  To the extent a response is required, Cargill denies the allegations of Paragraph 4.

5. Cargill admits that "corn sugar" is currently one of multiple FDA-approved names for dextrose only for the purpose of food ingredient labeling.  The remaining allegations of Paragraph 5 assert conclusions of law to which no response is required.  To the extent a response is required, Cargill denies the remaining allegations of Paragraph 5.

6. The allegations of Paragraph 6 assert conclusions of law to which no response is required.  To the extent a response is required, Cargill denies the allegations of Paragraph 6.

7. The allegations of Paragraph 7 assert conclusions of law to which no response is required.  To the extent a response is required, Cargill denies the

CARGILL, INC.'S AMENDED ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

allegations of Paragraph 7, including, without limitation, the allegation that sugar made from cane or beet plants is the only "real" sugar.

8.　　The allegations of Paragraph 8 assert conclusions of law to which no response is required.  To the extent a response is required, Cargill denies the allegations of Paragraph 8, including, without limitation, any allegation that sugar made from cane or beet plants is the only "real" sugar.

9.　　The allegations of Paragraph 9 assert conclusions of law to which no response is required.  To the extent a response is required, Cargill denies the allegations of Paragraph 9, including, without limitation, any allegation that sugar made from cane or beet plants is the only "real" sugar.

10.　　Cargill does not dispute that the Court has jurisdiction.

11.　　Cargill does not dispute that venue is proper in this judicial district.

12.　　Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12 and, on that basis, denies the same.

13.　　Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 and, on that basis, denies the same.

14.　　Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14 and, on that basis, denies the same.

15.　　Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15 and, on that basis, denies the same.

16.　　Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16 and, on that basis, denies the same.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

4

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

17.     Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 17 and, on that basis, denies the same.

18.     Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18 and, on that basis, denies the same.

19.     Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 and, on that basis, denies the same.

20.     Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20 and, on that basis, denies the same.

21.     Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 and, on that basis, denies the same.

22.     Cargill is informed and believes that CRA is a national trade association that was created in 1913 and funded by its membership.  Cargill admits that CRA is a Delaware corporation with a principal place of business located at 1701 Pennsylvania Ave. NW, Suite 950, Washington, DC 20006.  Cargill further admits that CRA represents the corn refining (wet milling) industry of the United States and that certain CRA members' business includes the manufacture, promotion, and sale of HFCS. Cargill denies any remaining allegations of Paragraph 22, including, without limitation, any allegation that CRA acts as the agent for any of its members.

23.     Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of ADM's incorporation or principal place of business and, on that basis, denies the same.  Cargill is informed and believes that Mark A. Bemis is a member of the CRA Board of Directors and that Dennis C. Riddle was the Chairman

CARGILL, INC.'S AMENDED ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

of the Board in 2010.  Cargill is also informed and believes that ADM is a CRA member.  Cargill denies that Mr. Riddle is a member of the CRA Board of Directors.

24.    Cargill admits that it is a Delaware corporation with a principal place of business located at PO Box 9300, Minneapolis, MN 55440-9300.  Cargill admits that Alan D. Willits and Jeff A. Cotter are members of the CRA Board of Directors.  Cargill also admits that it is a CRA member.   Cargill denies that Mr. Willits is the current Chairman of the CRA Board of Directors.

25.    Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of CPI's incorporation or principal place of business and, on that basis, denies the same.  Cargill is informed and believes that Richard N. Kyle and Terry W. Thomas are members of the CRA Board of Directors.  Cargill is also informed and believes that Corn Products is a CRA member.  Cargill denies that Mr. Kyle is the current Vice Chairman of the CRA Board of Directors.

26.    Cargill is informed and believes that Dominique D. P. Taret and Richard A. O'Hara are members of the CRA Board of Directors.  Cargill is also informed and believes that Roquette is a CRA member.  Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 26, including Roquette's incorporation or principal place of business, and, on that basis, denies the same.

27.    Cargill lacks knowledge and information sufficient to form a belief as to the truth or falsity of Tate & Lyle's incorporation or principal place of business and, on that basis, denies the same.  Cargill is informed and believes that Matthew D. Wineinger is a member of the CRA Board of Directors.  Cargill also admits that Tate & Lyle is a CRA member.  Cargill denies that J. Patrick Mohan is a member of the CRA Board of Directors.

28.    Cargill is informed and believes that CRA's governing body is its Board of Directors, which includes, among other members, two individuals from Cargill.  Further answering, Cargill admits that it has estimated that members on CRA's Board

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

of Directors from Cargill devoted between two and five hours per week to CRA business in 2010.  Cargill denies the remaining allegations of Paragraph 28.

29.     Cargill is informed and believes that all of CRA's expenditures, including its educational campaign to explain the merits of HFCS, are funded predominantly (but not exclusively) by assessments paid by its members.  The remaining allegations of Paragraph 29 assert conclusions of law and therefore no response to those allegations from Cargill is required.  To the extent a response is required, Cargill denies the remaining allegations of Paragraph 29.

30.     Cargill admits that HFCS is a commercial sweetener used in a variety of products, including soft drinks.  Cargill further admits that corn starch, which is commonly used as a thickening agent, and corn syrup, which is a viscous liquid containing various amounts of dextrose, are derived from corn.  Cargill also admits that Paragraph 30 quotes from selected portions of 21 C.F.R. 184.1857 and refers to that regulation for a complete statement of its terms.  Cargill denies the remaining allegations of Paragraph 30, including, without limitation, the allegation that HFCS, which is also made from corn, is not "natural."

31.     Cargill admits that sucrose (refined sugar) is the only sweetener that may be listed simply as "sugar" on the food ingredient list of food labeling, but denies that only sucrose is considered a sugar for other parts of the food label, such as the nutrition facts label.  Cargill denies that 21 C.F.R. 184.1854 provides that sucrose is the only sweetener that may be labeled simply as "sugar."  Cargill also admits that sucrose (refined sugar) is a disaccharide consisting of equal parts glucose and fructose chemically joined by a type of covalent bond known as a glycosidic bond.  Further answering, Cargill is informed and believes that refined sugar, also known as processed sugar, has been used by humans to sweeten food and drink for many years. Cargill denies the remaining allegations of Paragraph 31.

32.     Cargill is informed and believes that HFCS has been commercially available since the late 1960s and that HFCS has been used as an ingredient in food

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

production (but not beverages) since that time.  Cargill further admits that Paragraph 32 describes, in general terms, the composition and part of the production of HFCS.  Cargill admits that the glucose and fructose that primarily comprise HFCS are monosaccharides that are not bonded together.  Cargill also admits that Paragraph 32 describes certain portions of a referenced document and refers to that document for a complete statement of its terms.  Cargill denies that HFCS is a "man-made product," because HFCS is made from corn and, like refined sugar, nothing artificial or synthetic (including colors, regardless of source) is included in, or added to, HFCS that would not normally be expected to be there.  Cargill is unable to respond to the allegation that free fructose is "highly soluble in water and makes bread crusts browner, cookies softer and everything sweeter" in any meaningful manner because the allegation contains undefined comparative terms.  To the extent a response is required to such allegation, Cargill denies the same.  Cargill denies any remaining allegations of Paragraph 32.

33.     Cargill admits that Paragraph 33 describes certain portions of a referenced document and refers to that document for a complete statement of its terms.  Cargill specifically denies that the rise of HFCS mirrors the rise of the obesity epidemic, as set forth in the title preceding Paragraph 33.  Cargill denies any remaining allegations of Paragraph 33.

34.     Cargill admits that the obesity epidemic in the United States has received considerable public attention.  Cargill also admits that Paragraph 34 describes certain portions of a referenced document, website, and data, and Cargill refers to that document, website, and data for a complete statement of their terms.  Cargill denies any remaining allegations of Paragraph 34.

35.     Cargill admits that the allegations of Paragraph 35 describe certain portions of a referenced document and refers to that document for a complete statement of its terms.  Cargill denies that any scrutiny has revealed that an ascent in

the commercial use of HFCS is a unique cause or potential unique cause of the obesity epidemic. Cargill denies any remaining allegations of Paragraph 35.

36.     Cargill admits that people have examined the association between obesity and consumption of HFCS, but Cargill denies that any credible research has shown that there is any unique association between the two that does not exist with respect to other sugars, including refined sugar. Cargill also admits that Paragraph 36 contains allegations describing certain portions of a referenced document and refers to that document for a complete statement of its terms. Cargill denies that the referenced document is a "landmark scientific report," but rather asserts that it presented only a hypothesis that has since been recanted by at least one of its authors. Cargill denies any remaining allegations of Paragraph 36.

37.     Cargill admits Paragraph 37 contains allegations describing certain portions of a referenced document and refers to that document for a complete statement of its terms. Cargill denies that there exists any credible scientific evidence (and, hence, credible debate) linking the consumption of HFCS (as opposed to fructose alone or sugars generally, including refined sugar) to obesity or other health problems or demonstrating that the fructose contained in HFCS is metabolized by the body in any manner that is different from the manner in which the fructose contained in other sweeteners, including refined sugar, is metabolized. Cargill denies any remaining allegations of Paragraph 37.

38.     Cargill denies that the Princeton Study is evidence that refined sugar (sucrose) and HFCS have different effects on the body or that HFCS is uniquely responsible for any health problems. Cargill admits Paragraph 38 contains allegations describing certain portions of a referenced document and refers to that document for a complete statement of its terms. Cargill denies any remaining allegations of Paragraph 38.

39.     Cargill denies that the Princeton Study is evidence that refined sugar (sucrose) and HFCS have different effects on the body or that HFCS is uniquely

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

responsible for any health problems.  Cargill admits that Paragraph 39 and its footnotes contain allegations describing certain portions of referenced documents and refers to those documents for a complete statement of their terms.  Cargill denies any remaining allegations of Paragraph 39, including any remaining factual allegations of Footnote 11.

40.    Cargill is unable to respond to the allegations of Paragraph 40 in any meaningful manner because the phrases "other researchers," "those researchers," and "taste profiles" are undefined.  To the extent a response is required, Cargill denies the allegations of Paragraph 40.

41.    Cargill admits that HFCS and its role in public health have been a matter of public discussion, including discussion in public forums.  Cargill denies the remaining allegations of Paragraph 41.

42.    Cargill admits that Paragraph 42 describes certain portions of a referenced document and website and refers to that document and website for a complete statement of their terms.  Cargill denies any remaining factual allegations of Paragraph 42.

43.    Cargill admits that certain food and beverage producers have replaced HFCS in their products with refined sugar.  Cargill also admits that Paragraph 43 describes certain portions of a referenced document and website and refers to that document and website for a complete statement of their terms.  Cargill denies any remaining allegations of Paragraph 43.

44.    Cargill lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 44 and, on that basis, denies the same.

45.    Cargill lacks knowledge sufficient to form a belief as to the truth of the allegation that the "growing concern over HFCS has thus led to its decreased sales," and, on that basis, denies the same.  Cargill is informed and believes that consumption of HFCS has decreased from its level in 2003 to its level in April 2011.  Cargill admits that Paragraph 45 describes certain portions of a referenced document and data

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  contained therein and refers to that document and data for a complete statement of
2  their terms.  Cargill denies the remaining allegations of Paragraph 45.

3        46.    Cargill admits that HFCS has been the subject of vilification, including
4  vilification by one or more of the Plaintiffs.  Cargill is informed and believes that
5  CRA has implemented an educational campaign to explain the merits of HFCS and its
6  Citizen's Petition.  Cargill is further informed and believes that CRA has stated that
7  HFCS is "natural," pursuant to FDA policy; and that "sugar is sugar," and "your body
8  can't tell the difference" between HFCS and sugar because HFCS is "nutritionally the
9  same as table sugar" and metabolized by the body in the same way.  Cargill is also
10  informed and believes that all of CRA's expenditures, including its educational
11  campaign to explain the merits of HFCS, are funded predominantly (but not
12  exclusively) by assessments paid by its members.  Cargill denies any allegation that
13  CRA acts as the agent for any of its members.  The remaining allegations of Paragraph
14  46 assert conclusions of law and, therefore, no response to those allegations from
15  Cargill is required.  To the extent a response is required, Cargill denies the remaining
16  allegations of Paragraph 46.

17        47.    Cargill is informed and believes that CRA's governing body is its Board
18  of Directors, which includes, among other members, two individuals from each of its
19  members.  Cargill admits that CRA represents the corn refining (wet milling) industry
20  of the United States and that certain CRA members' business includes the
21  manufacture, promotion, and sale of HFCS.  Cargill is informed and believes that all
22  of CRA's expenditures, including its educational campaign to explain the merits of
23  HFCS, are funded predominantly (but not exclusively) by assessments paid by its
24  members.  Cargill denies any allegation that CRA acts as the agent for any of its
25  members.  The remaining allegations of Paragraph 47 assert conclusions of law and,
26  therefore, no answer from Cargill is required.  To the extent an answer to such
27  allegations is required, Cargill denies the remaining allegations of Paragraph 47.

28

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

CARGILL, INC.'S AMENDED ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

48.      Cargill is informed and believes that CRA's governing body is its Board of Directors, which includes, among other members, two individuals from each of its members.  Cargill denies any allegation that CRA acts as the agent for any of its members.  Further answering, Paragraph 48 asserts conclusions of law and, therefore, no response from Cargill is required.  Further answering, the allegation that CRA "has publicly acknowledged working with the Member Companies" is not detailed enough to enable Cargill to respond meaningfully, and, on that basis, Cargill denies the same. Cargill denies any remaining allegations of Paragraph 48.

49.      Cargill is informed and believes that CRA's governing body is its Board of Directors, which includes, among other members, two individuals from each of its members.  Cargill denies any allegation that CRA acts as the agent for any of its members.  Cargill is informed and believes that CRA's expenditures, including its educational campaign to explain the merits of HFCS, are funded predominantly (but not exclusively) by assessments paid by its members.  The remaining allegations of Paragraph 49 assert conclusions of law and, therefore, no response from Cargill is required.  To the extent a response is required, Cargill denies the allegations of Paragraph 49.

50.      Cargill is informed and believes that CRA's expenditures, including its educational campaign to explain the merits of HFCS, are funded predominantly (but not exclusively) by assessments paid by its members.  The remaining allegations of Paragraph 50 assert conclusions of law to which no response is required.  To the extent a response is required, Cargill denies the remaining allegations of Paragraph 50.

51.      Cargill admits that Paragraph 51 describes certain portions of a referenced document and website and refers to that document and website for a complete statement of their terms.  Cargill denies any remaining allegations of Paragraph 51.

52.      Cargill is informed and believes that CRA's educational campaign features a website, Internet banners, exhibitions at professional organizations, and

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

television and print materials dedicated to explaining the merits of HFCS and CRA's Citizen's Petition.  Cargill also admits that Paragraph 52 describes certain portions of a referenced document and website and refers to that document and website for a complete statement of their terms.  Cargill denies any remaining factual allegations of Paragraph 52.

53.     Cargill admits that Paragraph 53 describes certain portions of referenced documents and websites and refers to those documents and websites for a complete statement of their terms.  Further answering, the allegations that certain Member Companies have "used spokespersons to disseminate the advertising theme that HFCS is no different than sugar" or "repeated endorsed, and ratified the messaging of the advertising campaign in direct communications to customers, ranging from detailed presentations to simple correspondence" are not detailed enough to enable Cargill to respond meaningfully, and, on that basis, Cargill denies the same.  The remaining allegations of Paragraph 53 assert conclusions of law and, therefore, no response from Cargill is required.  To the extent a response is required, Cargill denies the remaining allegations of Paragraph 53.

54.     Cargill lacks knowledge sufficient to form a belief as to the truth of the allegation that "HFCS sales continued to slump into the second half of 2010," which contains undefined terms.  Further answering, Cargill admits that published reports show a decline in the total U.S. per capita consumption of HFCS and a decrease in the U.S. shipments of HFCS from 2009 to 2010.  Cargill is informed and believes that CRA submitted a Citizen's Petition requesting, *inter alia*, the FDA to authorize "corn sugar" as an alternate common or usual name for HFCS, which was denied.  Cargill denies the remaining allegations of Paragraph 54.

55.     Cargill admits that "corn sugar" is currently one of multiple FDA-approved names for dextrose only for the purpose of food ingredient labeling and that "high fructose corn syrup" is currently an FDA-approved name for HFCS for purposes of food ingredient labeling, and has been since 1983.  Cargill further admits that

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

dextrose and HFCS are not the same, but Cargill denies that it, or to its knowledge the CRA, has ever communicated that dextrose and HFCS are the same. Cargill also admits that Paragraph 55 describes, in general terms, the production of HFCS and that HFCS can be blended to have different percentages of fructose. Cargill lacks knowledge sufficient to form a belief as to the truth of the allegation that the corn refining industry proposed the name "high fructose corn syrup" to the FDA in a 1977 petition. Cargill denies any remaining allegations of Paragraph 55.

56.     Cargill lacks knowledge sufficient to form a belief as to the truth of the allegation that "Defendants" proposed the FDA-approved label for HFCS over 30 years ago and, therefore, denies the same. Cargill is informed and believes that CRA submitted its Citizen's Petition on September 14, 2010, requesting, *inter alia,* the FDA to authorize "corn sugar" as an alternate common or usual name for HFCS for purposes of food ingredient labeling, and refers to that petition for a complete and accurate statement of its assertions. Cargill denies the remaining allegations of Paragraph 56.

57.     Cargill is informed and believes that CRA's Citizen's Petition requesting the FDA to authorize "corn sugar" as an alternate common or usual name for HFCS for purposes of food ingredient labeling received considerable media and public attention and that a large number of public comments were submitted to the FDA both supporting and opposing the petition. Cargill also admits that Paragraph 57 describes certain portions of referenced documents and websites and refers to those documents and websites for a complete statement of their terms. Cargill lacks knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 57 and, on that basis, denies the same.

58.     Cargill is informed and believes that CRA has used the term "corn sugar" in documentation that clearly identifies its use of that term to describe HFCS as being a sugar made from corn. The remaining allegations of Paragraph 58 are not detailed

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   enough to enable Cargill to respond meaningfully, and, on that basis, Cargill denies

2   the same.

3         59.    Cargill admits that Paragraph 59 describes certain portions of a

4   referenced document and refers to that document for a complete statement of its terms.

5   Cargill specifically denies that CRA's "reply to comments" letter submitted to the

6   FDA on April 4, 2011 was a response on behalf of the Member Companies.  Cargill

7   denies any remaining allegations of Paragraph 59.

8         60.    Cargill is informed and believes that CRA has used the term "corn sugar"

9   in certain contexts in materials that clearly identify its use of that term to describe

10   HFCS as a sugar made from corn.  Cargill admits that Paragraph 60 describes certain

11   portions of referenced documents and websites and refers to those documents and

12   websites for a complete statement of their terms.  Cargill also admits it has used the

13   term "corn sugar" in the past in certain contexts.  Cargill denies any remaining

14   allegations of Paragraph 60, including, without limitation, on the grounds that the

15   allegations are not detailed enough to enable Cargill to respond meaningfully.

16         61.    Cargill admits it has used the term "corn sugar" in the past in certain

17   contexts.  Cargill denies any remaining allegations of Paragraph 61, including,

18   without limitation, on the grounds that the allegations are not detailed enough to

19   enable Cargill to respond meaningfully.

20         62.    Paragraph 62 asserts conclusions of law to which no response is

21   required.  To the extent a response is required, Cargill specifically denies any

22   allegation that it has acted as part of a common plan to deceive the public or influence

23   consumers as alleged in Paragraph 62.  As a manufacturer of both HFCS and sugar

24   produced from cane or beet plants, Cargill specifically denies it has a "motivation" to

25   sell HFCS and not refined sugar.  Cargill denies any remaining allegations of

26   Paragraph 62, including, without limitation, on the grounds that the allegations are not

27   detailed enough to enable Cargill to respond meaningfully.

28

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

CARGILL, INC.'S AMENDED ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

63.     Paragraph 63 asserts conclusions of law to which no response is required. To the extent a response is required, Cargill denies the allegations of Paragraph 63.

64.     Paragraph 64 asserts conclusions of law to which no response is required. To the extent a response is required, Cargill denies the allegations of Paragraph 64.

65.     Cargill repeats and realleges its answers to the above paragraphs and incorporates them in its answer to Paragraph 65 as if fully set forth herein.

66.     Cargill denies the allegations of Paragraph 66.

67.     Cargill denies the allegations of Paragraph 67.

68.     Cargill denies the allegations of Paragraph 68.

69.     Cargill denies the allegations of Paragraph 69.

70.     Cargill denies the allegations of Paragraph 70.

71.     Cargill is informed and believes that a brief was filed on behalf of CRA and certain of its individual member companies in connection with an antidumping investigation conducted by the government of the United Mexican States in the late 1990s.  Cargill specifically denies that any statements in the brief are in conflict with CRA's statements made in connection with CRA's educational campaign regarding HFCS.  Cargill denies the remaining allegations of Paragraph 71.

72.     Cargill denies the allegations of Paragraph 72.

73.     Cargill denies the allegations of Paragraph 73.

74.     Cargill denies the allegations of Paragraph 74..

75.     Cargill denies the allegations of Paragraph 75.

Cargill denies that Plaintiffs are entitled to any of the relief requested in the WHEREFORE clause following Paragraph 75 and in all the paragraphs and subparagraphs that follow, or any relief whatsoever.

Each and every allegation in Plaintiffs' Complaint that is not specifically admitted is hereby denied.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

CARGILL, INC.'S AMENDED ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

**AFFIRMATIVE DEFENSES**

Without conceding that it bears the burden of proof or persuasion as to any of the issues raised in these defenses (whether or not denominated as affirmative defenses or otherwise), as separate and distinct affirmative defenses to Plaintiff's Second Amended Complaint, Cargill alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

### (Unclean Hands)

1.    Plaintiffs are barred under the doctrine of unclean hands.  Specifically, any false perceptions that consumers may have regarding HFCS have been caused, in whole or in part, or perpetuated, in whole or in part, by Plaintiffs themselves or their agents and representatives, acting individually or collectively.

2.    It is a commonly accepted, proven fact within the scientific and nutritional communities that sugar derived from corn is not nutritionally different than sugar processed from cane or beet plants and that there are no meaningful differences between such sugars that pertain to human health or the incidence of obesity and other human diseases.  However, Plaintiffs have a vested economic interest in stifling the dissemination of this fact.  Therefore, Plaintiffs have undertaken a comprehensive and systematic campaign to confuse consumers about HFCS and to vilify or perpetuate the vilification of HFCS, employing false statements, innuendo, and misdirection to obfuscate the fact that there is no credible science showing a unique link between consumption of HFCS and obesity or other health problems that do not exist with respect to other sugars, including refined sugar (also known as processed sugar).

3.    For example, in its January 2012 issue of *The Sugar Packet*, published on its website, The Sugar Association, at the direction and subject to the control of its members, posted an article written by Dr. John McElligott that makes false statements about HFCS and depicts HFCS as less healthy for consumers than refined sugar processed from cane or beet plants.[2]  Among other literally false statements, the article

---

[2] http://www.inboxgroup.net/sugar/e_article002332039.cfm?x=bkBHLDm,bqfpsfQv,w.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

re-posted by The Sugar Association states, "[Y]our body does not recognize HFCS as a sugar.  So your pancreas does not react with a burst of insulin as it would with sugar or sucrose and put some of it to work."  The statement, "HFCS goes to the liver and starts the process that can lead to non-alcoholic fatty disease" is also literally false.  Moreover, the entire website post conveys in a confusing and misleading manner a notion that HFCS is not safe and is less healthy than sugar by publishing statements such as, "[I]n my opinion use of HFCS as a food sweetener is more harmful than using regular sugar," and "Some have called [HFCS] the 'crack cocaine' of all sweeteners."

4.    The Sugar Association, again at the direction and subject to the control of its members, also published on its website a May 24, 2012 article perpetuating the misconception that HFCS has a uniquely deteriorative effect on memory loss.[3]  The post related to a recent UCLA study of fructose and omega-3 fats, but the initial press release from UCLA erroneously identified HFCS, rather than fructose (which also makes up 50% of the refined sugar produced from cane and beet plants), as the subject of the study.  When CRA brought the error to UCLA's attention and UCLA revised its release, The Sugar Association made false and misleading statements regarding the findings of the fructose study.  The Sugar Association published the following:

> [T]here was little the Corn Refiners Association could do to mitigate the message that had already gone out.  Last week's headlines, preserved for posterity on the Internet, ran the gamut from big-name news organizations to publishing sites to individual bloggers.  From an ABC News station's "UCLA study finds high fructose corn syrup hurts memory, learning ability" to popular finance site Minyanville.com, "High Fructose Corn Syrup Can Make you Both Fat and Stupid," the damage to a [sic] ingredient already under siege was irreversible . . . So, yes, the CRA's badgering did succeed in getting some perfunctory changes made in the offending press release. But for millions of consumers, there was no taking back what they have long suspected – that the presence of high fructose corn syrup in just about every product under the sun is, well, just plain "stupid."

---

[3] http://www.inboxgroup.net/sugar/e_article002443330.cfm.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

By capitalizing on UCLA's mistake and wrongly implying CRA sought to conceal the study, rather than accurately report it, The Sugar Association continues to mislead and confuse consumers regarding the results and conclusions of scientific studies for the improper purpose of vilifying or perpetuating the vilification of HFCS.

5.      In various other communications, including, without limitation, communications disseminated through its website and other social media tools, The Sugar Association, with the support, aid, concurrence, and at the direction and control of its members, has also falsely implied or stated that there are differences between refined sugar and HFCS that are meaningful to human health.  The Sugar Association and its members know or should know, however, that there is no credible scientific evidence that there are any differences between added sugars derived from corn, sugar cane, or sugar beet plants (including genetically modified sugar beet plants) that are meaningful to human health.

## SECOND AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

6.      The Complaint fails to state a claim upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE
### (Laches)

7.      The claims made in the Complaint and the relief sought therein are barred by laches, in that Plaintiffs have unreasonably delayed efforts to enforce their rights, if any, despite their full awareness of Cargill's statements and conduct since at least 2008.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver and Estoppel)

8.      The Complaint and the relief sought therein are barred by the doctrines of waiver and estoppel, in that Plaintiffs have unreasonably delayed efforts to enforce their rights, if any, despite their full awareness of Cargill's statements and conduct since at least 2008 and that any false perceptions that consumers may have regarding

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

HFCS have been caused, in whole or in part, or perpetuated, in whole or in part, by Plaintiffs themselves or their agents and representatives, acting individually or collectively.

## FIFTH AFFIRMATIVE DEFENSE

### (No Commercial Advertising)

9.    Plaintiffs' claims are barred because CRA's statements do not constitute commercial advertising or promotion under the Lanham Act.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

10.    Plaintiffs' claims are barred because they failed to mitigate damages, if any.

## SEVENTH AFFIRMATIVE DEFENSE

### (First Amendment)

11.    Plaintiffs' claims are barred because they violate CRA's and Cargill's rights under the First Amendment to the Constitution of the United States, which protects the rights to freedom of speech and to petition the government.

## EIGHTH AFFIRMATIVE DEFENSE

### (*Noerr-Pennington*)

12.    Plaintiffs' claims are barred in whole or in part by operation of the *Noerr-Pennington* doctrine.

## NINTH AFFIRMATIVE DEFENSE

### (Primary Jurisdiction)

13.    Plaintiffs' claims are barred in whole or in part because the FDA has primary jurisdiction over Plaintiffs' claims.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## TENTH AFFIRMATIVE DEFENSE

### (Plaintiffs Lack Standing Under the Lanham Act)

14.     Plaintiffs' claims are barred because they lack standing under the Lanham Act to the extent that Plaintiffs, or some of them, have not suffered a commercial injury that it is competitive or harmful to their ability to compete with Defendants.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Additional Defenses)

15.     Because Cargill does not have sufficient information as to whether it has additional, as yet unstated, affirmative defenses, Cargill reserves its right to assert such defenses in the event that discovery indicates the defense is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Cargill prays for judgment as follows:

1.     That the Complaint be dismissed with prejudice;

2.     That Cargill be awarded its costs and attorneys' fees of defense as permitted by law; and

3.     That Cargill be awarded such other and further relief as the Court deems just and proper.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## COUNTERCLAIM

Counterclaim Plaintiffs Archer-Daniels-Midland Company, Cargill, Inc., Ingredion Incorporated, and Tate & Lyle Ingredients Americas, Inc. (collectively, "Counterclaim Plaintiffs"), by their attorneys, for their Counterclaim against The Sugar Association, allege as follows:

## NATURE OF THE COUNTERCLAIM

1.     This is an action for false advertising and commercial disparagement under the Lanham Act.  This suit arises from The Sugar Association's literally false and misleading representations that processed sugar is different from high fructose corn syrup ("HFCS") in ways that are beneficial to consumers' health.  The Sugar Association preys on consumers' fears by falsely representing that HFCS will cause obesity, cancer, and cirrhosis of the liver, among other things, while at the same time creating a health halo for processed sugar.  The Sugar Association's statements deceive consumers into believing that they will be healthier if they consume foods and beverages with processed sugar instead of HFCS.

2.     These statements are false because processed sugar and HFCS are nutritionally equivalent, as evidenced by a basic knowledge of metabolism, peer-reviewed and published reports and experiments, and widespread agreement among medical, nutritional, and scientific experts.  In the words of one independent expert: "There's not a shred of evidence that these products are different biologically.  The decision to switch from HFCS to cane sugar is 100% marketing and 0% science."[4] (Dr. David Ludwig, Professor of Pediatrics at Harvard Medical School and Professor of Nutrition at Harvard School of Public Health.)

3.     Americans should be consuming less of **all** added sugars, whether the source be processed sugar, HFCS, or any other kind of added sugar.  Vilifying one kind of added sugar will not reduce Americans' waistlines.  Reducing all added

---

[4] Paul Merrion, *Public Sours on Illinois' Sweet Spot*, CRAIN'S CHI. BUS., Sept. 7, 2009, *available at* http://www.chicagobusiness.com/article/20090905/ISSUE01/100032337/public-sours-on-illinois-sweet-spot.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

sugars, and reducing caloric intake in general, will.  As The Sugar Association admits when it is forced to turn its attention from disparaging HFCS to defending processed sugar:  "Americans need to understand that if they consume too many calories—no matter the source—weight gain is inevitable.  Obesity is the result of consistently eating too much and sedentary lifestyles, not sugars intake."  (Andrew Briscoe, President of The Sugar Association.)[5]

## THE PARTIES

4.     Counterclaim Plaintiff Archer-Daniels-Midland Company ("ADM") is a Delaware corporation with a principal place of business located at 4666 Faries Parkway, P.O. Box 1470, Decatur, IL 62525.  ADM produces and sells HFCS.

5.     Counterclaim Plaintiff Cargill, Inc. ("Cargill") is a Delaware corporation with a principal place of business located at P.O. Box 9300, Minneapolis, MN 55440-9300.  Cargill produces and sells HFCS.

6.     Counterclaim Plaintiff Ingredion Incorporated ("Ingredion"), formerly known as Corn Products International, Inc., is a Delaware corporation with a principal place of business located at 5 Westbrook Corporate Center, Westchester, IL 60154.  Ingredion produces and sells HFCS.

7.     Counterclaim Plaintiff Tate & Lyle Ingredients Americas, Inc. ("Tate & Lyle") is a Delaware corporation with a principal place of business located at P.O. Box 151, Decatur, IL 62525.  Tate & Lyle produces and sells HFCS.

8.     The Corn Refiners Association, Inc. ("CRA") is a Delaware corporation with a principal place of business located at 1701 Pennsylvania Ave. NW, Suite 950, Washington, DC 20006.  The CRA is a national trade association that was created in 1913.  The CRA represents the corn refining (wet milling) industry of the United States.  Each Counterclaim Plaintiff is a member of the CRA.

9.     Counterclaim Defendant The Sugar Association, Inc. ("The Sugar Association") is a corporation organized under the laws of the State of Delaware,

---

[5] *Sugar Is a Safe and Useful Part of a Balanced Diet* (Aug. 17, 2010).

having a principal place of business at 1300 L Street, NW, Suite 1001, Washington, DC 20005.  The Sugar Association is a trade group comprised of eleven (11) member companies, each of which is a producer of processed sugar in the United States.  The Sugar Association and its members' business interests include the manufacture, promotion, and/or sale of processed sugar in all its forms.

10.    The Amalgamated Sugar Company LLC ("Amalgamated"), a sugar processor, producer, and distributor, is a limited liability company organized under the laws of the State of Delaware, having a principal place of business at 1951 S. Saturn Way, Suite 100, Boise, ID 83709.   Amalgamated is a member of The Sugar Association.  Vic Jaro, Amalgamated President and Chief Executive Officer, is a member of The Sugar Association Board of Directors.

11.    American Sugar Refining, Inc. ("American Sugar"), also a sugar processor, producer and distributor, is a corporation organized under the laws of the State of Delaware, having a principal place of business at 1 Federal Street, Yonkers, NY 10705.  American Sugar is a member of The Sugar Association.  American Sugar is also known as Domino Foods, Inc. ("Domino").   Upon information and belief, based on press releases issued by American Sugar, American Sugar is a subsidiary of Florida Crystals Corporation ("Florida Crystals").[6]  Pepe Fanjul, Jr., Florida Crystals Executive Vice President, is a member of The Sugar Association Board of Directors.

12.    C&H Sugar Company, Inc. ("C&H"), also a sugar producer, refiner and distributor, is a corporation organized under the laws of the State of Delaware, having a principal place of business at 830 Loring Avenue, Crockett, CA 94525.  C&H is a member of The Sugar Association.  Brian O'Malley, C&H and Domino President and Chief Executive Officer, is a member of The Sugar Association Board of Directors. C&H is owned by American Sugar.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

---

[6] Press Release, Am. Sugar Ref., Inc., American Sugar Refining, Inc. Acquires Ingenio San Nicolas (Dec. 4, 2007), *available at* http://www.prnewswire.com/news-releases/american-sugar-refining-inc-acquires-ingenio-san-nicolas-58570247.html.

24

13.     Imperial Sugar Corporation ("Imperial"), also a sugar processor, producer, refiner and distributor, is a corporation organized under the laws of the State of Texas, having a principal place of business at 8016 Highway 90A, Sugar Land, TX 77478.  Imperial is a member of The Sugar Association.  John Sheptor, Imperial's President and Chief Executive Officer, is a member of The Sugar Association Board of Directors.

14.     Michigan Sugar Company ("Michigan Sugar"), also a sugar processor, producer and distributor, is a non-profit agricultural cooperative corporation organized under the laws of the State of Michigan, having a principal place of business located at 2600 South Euclid Avenue, Bay City, MI 48706.  Michigan Sugar is a member of The Sugar Association.  Mark Flegenheimer, Michigan Sugar President and Chief Executive Officer, is a member of The Sugar Association Board of Directors.  Mr. Flegenheimer is the Chairman of The Sugar Association Board of Directors.  Also upon information and belief, based on the "State Member Associations" listed on the American Sugarbeet Growers Association's website, Michigan Sugar is a member company of the American Sugarbeet Growers Association ("American Sugarbeet"), which has the following four representatives on The Sugar Association Board of Directors:   (i) Charles Bauer, American Sugarbeet Director; (ii) Mark Duffin, American Sugarbeet Executive Director; (iii) Ervin Schlemmer, American Sugarbeet Director; and (iv) Russell Mauch, American Sugarbeet Director and Past President.

15.     Minn-Dak Farmers Cooperative ("Minn-Dak"), also a sugar processor, producer, and distributor, is a cooperative association organized under the laws of the State of North Dakota, with a principal place of business at 7525 Red River Road, Wahpeton, ND 58075.  Minn-Dak is a member of The Sugar Association.  David Roche, Minn-Dak President and Chief Executive Officer, is a member of The Sugar Association Board of Directors.  Also upon information and belief, based on the "State Member Associations" listed on American Sugarbeet's website, Minn-Dak is a member company of American Sugarbeet, which has the following four

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

representatives on The Sugar Association Board of Directors:  (i) Charles Bauer, American Sugarbeet Director; (ii) Mark Duffin, American Sugarbeet Executive Director; (iii) Ervin Schlemmer, American Sugarbeet Director; and (iv) Russell Mauch, American Sugarbeet Director and Past President.

16.    Western Sugar Cooperative ("Western Sugar"), also a sugar processor, producer, and distributor, is a cooperative organized under the laws of the State of Colorado, having a principal place of business at 7555 East Hampden Avenue, Suite 600, Denver, CO 80231.  Western Sugar is a member of The Sugar Association.

17.    The American Sugar Cane League of the U.S.A., Inc. (the "American Sugar Cane League") is a non-profit corporation organized under the laws of the State of Louisiana, with a principal place of business located at 206 East Bayou Road, Thibodaux, LA, 70301.  The American Sugar Cane League is a trade association comprised of 450 sugar cane growers and eleven (11) raw sugar refiners, all located in Louisiana.   Its principal missions on behalf of its members include research, legislative activity, product promotion, consumer education and public relations.  The American Sugar Cane League is a member of The Sugar Association.  The following American Sugar Cane League representatives are members of The Sugar Association Board of Directors:  (i) Wallace Ellender, American Sugar Cane League President; and (ii) James ("Jim") Simon, American Sugar Cane League General Manager.  Mr. Simon is the Immediate Past Chairman of The Sugar Association Board of Directors.

18.    The governing body of The Sugar Association is its Board of Directors, which includes and is dominated by decision-making individuals from Amalgamated, American Sugar Cane League, American Sugar, C&H, Imperial, Michigan Sugar, and Minn-Dak (collectively, the "Member Companies").  Certain decisions of The Sugar Association Board of Directors are subject to the approval of the Member Companies themselves, including the decision to represent that processed sugar is different from HFCS in ways that are beneficial to human health.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

CARGILL, INC.'S AMENDED ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

19.    The Member Companies' representatives constitute the overwhelming majority of the voting members of The Sugar Association Board of Directors.  The Member Companies thus enjoy both the actual power and right to control and authorize all significant decisions made and actions taken by The Sugar Association, including those resulting in the advertising challenged in this counterclaim.  Both The Sugar Association and the Member Companies assent to the right of The Sugar Association members to control The Sugar Association in this way, in particular with respect to the advertising challenged in this action.

20.    Both The Sugar Association and its Member Companies have manifested an assent that the Member Companies have the right to control The Sugar Association, in particular with regard to their disinformation campaign regarding HFCS.  The Member Companies use The Sugar Association as their agent to affect consumer sentiment toward HFCS.  In other words, The Sugar Association, at the direction of and in concert with the Member Companies, has crafted a publicity campaign to disparage HFCS by representing, in a false and misleading manner, that there are differences between processed sugar and HFCS that are beneficial to human health.

21.    The Member Companies exercise their right of control over The Sugar Association's activities in multiple ways.  One way is through their placement of high-ranking Member Company executives on The Sugar Association Board of Directors.  The Member Companies provide the funding that has been required to orchestrate and maintain this disinformation campaign against HFCS.

22.    The Member Companies have knowingly participated in the creation, development, and propagation of the false advertising against HFCS.

23.    The Member Companies provide The Sugar Association with the overwhelming majority of regular membership dues and other money to fund the activities of The Sugar Association, including activities related to the dissemination of information about HFCS.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

24.     The Member Companies have conspired to exercise their collective right and actual power to control The Sugar Association as their agent during regular meetings of The Sugar Association Board of Directors or separate meetings that were conducted contemporaneously with the regular meetings in an attempt to influence consumer sentiment regarding HFCS.

25.     The Member Companies have also taken separate actions to promote, endorse and ratify the messages of the campaign they otherwise controlled and ran through The Sugar Association.  For example, Amalgamated, American Sugarbeet, American Sugarcane League, Imperial, Michigan Sugar, Minn-Dak, and Western Sugar provide direct links to The Sugar Association's webpage, which is the primary mouthpiece of the disinformation campaign.  Upon information and belief, American Sugar and C&H have similarly repeated, endorsed, and ratified the messaging that processed sugar is different from HFCS in ways that are beneficial to human health.[7]

## JURISDICTION & VENUE

26.     This Court has jurisdiction because this counterclaim is for false advertising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., including 15 U.S.C. § 1121, which expressly provides that claims arising thereunder are subject to federal subject matter jurisdiction.  The Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

27.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### What Is a Sugar?

28.     A sugar is any free monosaccharide or disaccharide present in a food.  A "monosaccharide" is essentially one molecule composed of one saccharide, or a

---

[7] Counterclaim Plaintiffs reserve the right to add the entities referenced in paragraphs 10-25 as additional Counterclaim Defendants.

simple sugar.  Glucose and fructose are two common examples of monosaccharide sugars.  A "disaccharide" is one molecule composed of two simple sugars.

29.    There are many different kinds of sugars.  Sucrose, invert sugar, corn syrup, high-fructose corn syrup, fruit juice concentrate, maltose, dextrose, honey, and maple syrup are all sugars.  Each of these is required by the Food and Drug Administration to be counted as "sugars" on the nutritional content portion of food ingredient labels.  This makes perfect sense, as all added sugars, from whatever source, should be counted and considered by Americans as part of their consumption of foods and beverages.

30.    Added sugars are those which are added to foods, as opposed to sugars that occur intrinsically in foods, such as the fructose found in cherries or the lactose found in milk.  Both HFCS, produced by the CRA member company Counterclaim Plaintiffs, and processed sugar and invert sugar, produced by The Sugar Association member companies referenced in paragraphs 10 to 25, are added sugars.

### What Is Table Sugar?

31.    Table sugar, also known as processed sugar or sucrose, is a disaccharide sugar made up of the monosaccharide sugars glucose and fructose joined together by a covalent chemical bond.  Because one molecule of glucose and one molecule of fructose are joined together, sucrose is comprised of 50% glucose and 50% fructose.

32.    The body cannot metabolize sucrose.  It can only metabolize its constituent parts—glucose and fructose.  Thus, after sucrose is ingested, an enzyme called sucrase breaks the covalent chemical bond, allowing the body to absorb and metabolize free glucose and free fructose.

33.    Often, the covalent bond in sucrose is broken (also called hydrolyzed or inverted) prior to ingestion, which results in the ingestion of free fructose and free glucose.  This may occur when processed sugar is used as an ingredient in cans or bottles of sweetened soft drinks, such as cola, or in other acidic environments.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**What Is Invert Sugar?**

34.    Invert sugar is produced by sugar companies using acid hydrolysis or enzymatic inversion to break the covalent bond in sucrose, resulting in free fructose and free glucose.  In acid hydrolysis, sucrose is subjected to acid and heat to break it into glucose and fructose.   Enzymatic inversion of sucrose is achieved using an enzyme known as invertase.

35.    Invert sugar comes in a variety of formulations containing varying amounts of free fructose and free glucose.  For example, Domino promotes that its "Liquicane®" invert sugars "are available in several formats: the total-invert Liquicane®; Type 90, a high solids medium-invert Type-50, and Type-0."  Domino also promotes "FreshVert®" and "Nulomoline®" invert sugars.[8]

36.    Invert sugar is used as an added sugar in commercial baking, as well as in beverages and soft foods such as yogurt and ice cream, among other things.  By using sugar that has already been inverted, the food or beverage manufacturer does not have to worry about the sugar inverting (i.e., breaking down into free fructose and free glucose) in a finished product and changing the taste of that product.

37.    As Tom Wilson, the Technical Director at Imperial Sugar, one of the members of The Sugar Association and a producer of invert sugar, has been quoted as saying:  "Most beverage makers opt for the liquid forms because they're 'much easier to handle than a bulk truck of dried sugar or 50-lb. super-sacks that you need to open, put into a tank, add water, monitor the concentration—all those things that are already done when you buy the liquid,' he says.  And by getting inversion out of the way, you avoid potential taste changes in the can or bottle.  The degree of inversion is up to the user, Wilson notes, and the finished liquid invert is very similar in viscosity, pH, flow characteristics and concentration to HFCS."[9]

---

[8] *Available at* http://www.dominospecialtyingredients.com/?pageId=1090&rowId=11412.

[9] Kimberly J. Decker, *Strategies for Sweetening Beverages*, FOOD PRODUCT DESIGN (Aug. 25, 2011), *available at* http://www.foodproductdesign.com/articles/2011/08/strategies-for-sweetening-beverages.aspx?pg=2.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## **What Are Other Added Sugars?**

38.   Other examples of added sugars used to sweeten foods and beverages include agave nectar, honey, fruit juice concentrates, and HFCS.  Agave nectar, a fructose-glucose based sugar produced from the agave plant, comes in a variety of formulations but often is approximately 74% fructose and 26% glucose, including small amounts of higher sugars.  Honey also comes in a variety of formulations, but often is approximately 48% fructose and 52% glucose, including small amounts of higher sugars.  Fruit juice concentrates likewise come in a variety of formulations. For example, apple juice concentrate is approximately 64% fructose and 36% glucose. Pear juice concentrate is approximately 74% fructose and 26% glucose.  Grape juice concentrate is approximately 55% fructose and 45% glucose.

39.   HFCS is another example of an added sugar, and it is made from corn.[10] Like other added sugars, HFCS is composed primarily of the monosaccharide sugars fructose and glucose.  HFCS in its most common varieties consists of either 42% fructose and 58% glucose and small amounts of higher sugars (HFCS 42), or 55% fructose and 45% glucose and small amounts of higher sugars (HFCS 55).[11]  These higher sugars are readily hydrolyzed to glucose during digestion, so they are metabolized as glucose.

40.   HFCS, sucrose, and invert sugar have different properties and applications.  Sucrose is a granular solid, whereas invert sugar and HFCS are in liquid form.  The sources for processed sugar or invert sugar are sugar cane or the sugar beet plant.  The source for HFCS is corn.  They have different benefits, depending on the application.  For example, HFCS cannot be used to make chocolate because it does not crystallize.  Products that use HFCS or invert sugar have more stability and a

---

[10] According to the United States Food and Drug Administration ("FDA"), to calculate "sugars" for the Nutrition Facts label on food products, the weight in grams of all free monosaccharides and disaccharides in the sample of food are combined.  21 C.F.R. § 101.9(c)(6)(ii).

[11] The term "HFCS" as used herein refers collectively to HFCS 42 and HFCS 55, unless otherwise indicated.

longer shelf life than those containing sucrose.  Because HFCS and invert sugar have free fructose, which reacts with protein during cooking, they give superior browning and flavor to baked goods.

### HFCS and Processed Sugar Are Nutritionally Equivalent

41.   HFCS and processed sugar (including table sugar and invert sugar) all contain 4 calories per gram.  HFCS, table sugar, and invert sugar are different from "corn syrup" and pure fructose—corn syrup is glucose based and contains no fructose, whereas pure fructose contains no glucose.  The term "high-fructose corn syrup" developed because HFCS has a higher fructose concentration than simple corn syrup, not because it has a higher fructose concentration than table sugar.  In fact, HFCS 42, which is used commonly in baked goods, has less fructose than processed sugar.

42.   The body cannot metabolize table sugar (sucrose) as such.  It can only metabolize its constituent parts—glucose and fructose.  Thus, it is fructose and glucose that are processed by the body, whether the fructose or glucose came from HFCS, table sugar, invert sugar, or any other sugars.  In metabolism, the human body does not distinguish in any meaningful way between the original source of simple sugars; rather, it metabolizes them all the same way (*i.e.*, all fructose, regardless of source, is metabolized the same and all glucose, regardless of source, is metabolized the same).

43.   As the Academy of Nutrition and Dietetics (formerly the American Dietetic Association) has explained, "high fructose corn syrup . . . is nutritionally equivalent to sucrose.  Both sweeteners contain the same number of calories (4 per gram) and consist of about equal parts of fructose and glucose.  Once absorbed into the blood stream, the two sweeteners are indistinguishable. . . . The source of the added sugar – whether sucrose, high fructose corn syrup, honey or fruit juice concentrate – should not be of concern; rather, it is the amount of total calories that is important."[12]

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

---

[12] American Dietetic Association, Hot Topics paper on High Fructose Corn Syrup (Dec. 2008).

CARGILL, INC.'S AMENDED ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

44.    Likewise, the American Medical Association has observed:  "After studying current research, the American Medical Association concluded that high fructose syrup does not appear to contribute more to obesity than other caloric sweeteners."[13]    Further, the American Medical Association published a study concluding that "[b]ecause the composition of HFCS and sucrose are so similar, particularly on absorption by the body, it appears unlikely that HFCS contributes more to obesity or other conditions than sucrose."[14]  The study noted that "[e]ven if sucrose is not hydrolyzed before consumption, the covalent bond between the fructose and glucose molecules in sucrose is easily cleaved by the enzyme sucrase in the brush-border cells of the small intestine. Thus, the body is absorbing free fructose and glucose molecules, regardless of whether they originated as part of HFCS or sucrose."[15]

45.    The FDA further recognizes that "the saccharide composition (glucose to fructose ratio) of HFCS is approximately the same as that of honey, invert (liquefied) sugar and the disaccharide sucrose [table sugar]."[16]  The FDA has also recognized that HFCS is generally recognized as safe ("GRAS").

46.    Not surprisingly, leading members of the nutrition and medical communities have observed that HFCS and sucrose are nutritionally equivalent.

47.    For example, Dr. David Ludwig, Professor of Pediatrics at Harvard Medical School and Professor of Nutrition at Harvard School of Public Health, has stated as follows:  "There's not a shred of evidence that these products are different

---

[13] Press Release, Am. Med. Ass'n, AMA Finds High Fructose Syrup Unlikely to Be More Harmful to Health Than Other Caloric Sweeteners (June 17, 2008).

[14] Suzen M. Moeller et al., Am. Med. Ass'n, *The Effects of High Fructose Syrup*, 28 J. Am. C. Nutrition 619, 624 (2009).

[15] *Id.* at 621.

[16] Direct Food Substances Affirmed as Generally Recognized as Safe; High Fructose Corn Syrup, 61 Fed. Reg. 165 (Food & Drug Admin. Aug. 23, 1996) (final rule).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

biologically.  The decision to switch from HFCS to cane sugar is 100% marketing and 0% science."[17]

48.    Dr. Ludwig's colleague, Walter Willett, Ph.D., Chairman of the Nutrition Department, Harvard School of Public Health, has also stated that "[i]f there was no high fructose corn syrup, I don't think we would see a change in anything important.  I think there's this overreaction."[18]

49.    Joan Salge Blake, M.S., R.D., L.D.N., Clinical Associate Professor at Boston University's Sargent College of Health and Rehabilitation Sciences, has stated as follows:   "when high fructose corn syrup and sugar are absorbed into our bloodstream, the two are indistinguishable by the body.  Bottom Line:  It's not about whether you eat sugar or syrup."[19]

50.    Dr. Marion Nestle, Professor of Nutrition, Food Studies and Public Health at New York University, has stated:   "From what I hear these days, high-fructose corn syrup (HFCS) is widely perceived as the new trans fat - something to be avoided at all costs.  But, stop:  HFCS is not poison.  It is just sugar in liquid form, differing from common table sugar (sucrose) mainly in how it affects the texture of foods."[20]

51.    Dr. Madelyn Fernstrom, Director, University of Pittsburgh Medical Center Weight Management Center, has stated:   "The danger I see in all of this is a misleading message that foods and beverages sweetened with sugar are better choices

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

---

[17] Paul Merrion, *Public Sours on Illinois' Sweet Spot*, CRAIN'S CHI. BUS., Sept. 7, 2009, *available at* http://www.chicagobusiness.com/article/20090905/ISSUE01/100032337/public-sours-on-illinois-sweet-spot.

[18] Melanie Warner, *A Sweetener with a Bad Rap*, N.Y. TIMES, July 2, 2006.

[19] *High Fructose Corn Syrup:  Is It Good or Bad?*, REDBOOK, June 2010, *available at* http://www.redbookmag.com/health-wellness/advice/sugar-facts.

[20] Marion Nestle, *The Facts About Corn Sweetener*, SFGATE, Sept. 24, 2008, *available at* http://www.sfgate.com/food/article/Marion-Nestle-The-facts-about-corn-sweetener-3193753.php.

than those with added high fructose corn syrup.  This is simply not true, from a nutritional point of view."[21]

52.   Dr. Barry Popkin, Professor, Department of Nutrition at University of North Carolina at Chapel Hill, has stated that table sugar and "HFCS have the same exact effect on obesity and diabetes and on heart disease.  It's not that one is better."[22]

53.   Dr. Keith-Thomas Ayoob, associate professor at the Albert Einstein College of Medicine, has stated:  "High fructose corn syrup is just another form of sugar, no better, no worse."[23]

54.   Jo-Ann Heslin, M.A., R.D., C.D.N., Food and Nutrition Columnist for Health News Digest, has stated:  "High Fructose Corn Syrup (HFCS) is a sugar. Nothing more; nothing less."[24]

55.   And, from the April 2012 American Society for Nutrition-Experimental Biology Expert Panel:  "the body cannot tell the difference between sucrose and high-fructose corn syrup (HFCS).  That was the consensus of a panel of scientists at the 2012 American Society of Nutrition (ASN) conference on experimental biology, held April 21-25 at San Diego, CA.  They examined fructose, sucrose and HFCS, describing relevant scientific findings and health implications."[25]

56.   Multiple studies have further demonstrated that HFCS is no less healthy than processed sugar.  For example, the study *Effects of Glucose-to-Fructose Ratios in Solutions on Subjective Satiety, Food Intake, and Satiety Hormones in Young Men*, Tina Akhavan & G. Harvey Anderson, 86 AM. J. CLINICAL NUTRITION 1354 (2007),

---

[21] *Health Journal*, IVILLAGE.COM (Mar. 25, 2009).

[22] Anjali Cordeiro, *Sugar Gains Favor on Labels*, WALL STREET JOURNAL, Mar. 8, 2010.

[23]  Keith-Thomas Ayoob, *Does HFCS Cause a "Sugar High" in Children?*, *available at* http://www.sweetenerstudies.com/sites/default/files/upload/Expert%20Articles.pdf.

[24] Jo-Ann Heslin, HEALTHNEWSDIGEST.COM, July 20, 2008.

[25] Laurie Gorton, *Science Panel Debates Sugar at Experimental Biology Meeting*, BAKINGBUSINESS.COM, *available at* http://www.bakingbusiness.com/Features/Formulating%20and%20R%20and%20D/2012/6/Science%20panel%20debates%20sugar%20at%20experimental%20biology%20meeting.aspx.

found that there is no significant short-term difference in the effects of HFCS and sucrose on satiety, subsequent food intake, appetite or uric acid in young men.

57.    Other studies have found that the metabolic responses of women to HFCS and sucrose consumption do not differ in any meaningful manner.   K. Melanson et al., *Effects of High-Fructose Corn Syrup and Sucrose Consumption on Circulating Glucose, Insulin, Leptin, and Ghrelin and on Appetite in Normal-Weight Women*, 23 NUTRITION 103 (2007); *see also* J. Lowndes et al., *The Effect of High-Fructose Corn Syrup on Uric Acid Levels in Obese Women*, 15 OBESITY 498-P (2007); L. Zukley et al., *The Effect of High-Fructose Corn Syrup on Triglycerides in Obese Females*, 15 OBESITY 500-P (2007).

58.    Studies examining the effect of sucrose-sweetened versus HFCS-sweetened beverages also demonstrate that there exist no meaningful differences in hunger, satiety, or energy intake.  *See* Pablo Monsivais et al., *Sugars and Satiety: Does the Type of Sweetener Make a Difference?*, 86 AM. J. CLINICAL NUTRITION 116 (2007); *see also* E. Almiron-Roig & A. Drewnowski, *Hunger, Thirst and Food Intakes Following Consumption of Caloric Beverages*, 79 PHYSIOL. BEHAV. 767Y773 (2003); Stijn Soenen and Margriet Westerterp-Plantenga, *No differences in satiety or energy intake after high-fructose corn syrup, sucrose, or milk preloads*, 86 AM. J. CLINICAL NUTRITION 1586 (2007).

59.    Studies have also shown that the ingestion of HFCS versus sucrose does not alter the response of diabetics to the fructose or glucose components of the sweeteners in any meaningful way.  *See* Marilyn D. Schorin, *High Fructose Corn Syrups, Part 2: Health Effects*, 41 FOOD SCI. 70, 73 (2006); S. Akgun & N.H. Ertel, *The Effects of Sucrose, Fructose and High Fructose Corn Syrup Meals on Plasma Glucose and Insulin in Non-Insulin-Dependent Diabetic Subjects*, 8 DIABETES CARE 279Y283 (1985); *cf.* Adrian I. Cozma et al., *Effect of Fructose on Glycemic Control in Diabetes*, 35 DIABETES CARE 1611 (2012).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

60.     Studies also indicate that populations who frequently consume HFCS-sweetened beverages do not have higher obesity rates or increased obesity risks than populations that drink HFCS-sweetened beverages less regularly.  Sam Z. Sun & Mark W. Empie, *Lack of Findings for the Association Between Obesity Risk and Usual Sugar-Sweetened Beverage Consumption in Adults:  A Primary Analysis of Databases of CSFII-1989-1991, CSFII-1994-1998, NHANES III, and Combined NHANES 1999-2002*, 45 FOOD & CHEMICAL TOXICOLOGY 1523 (2007).

61.     Most recently, a 2012 study found that overweight individuals who consumed table sugar as part of a low-calorie diet and who consumed HFCS as part of a low-calorie diet made the same amount of progress in their diet regardless of the type of sugar used.  Joshua Lowndes, et al., *The effects of four hypocaloric diets containing different levels of sucrose or high fructose corn syrup on weight loss and related parameters*, NUTRITION JOURNAL 2012, 11:55 (2012).

62.     That HFCS is not a unique cause of obesity is further demonstrated by comparisons between the growth of obesity in the United States, where HFCS is widely used, and countries where HFCS use is limited.  Generally, there has been a dramatic increase in obesity worldwide, independent of HFCS use.  Schorin, *High Fructose Corn Syrups, Part 2*, at 71; *see also* John S. White, et al., *High-Fructose Corn Syrup: Controversies and Common Sense*, 4 AM. J. LIFESTYLE MED. 515, 517 (2010).   In countries where HFCS is not a common sweetener, such as England, Egypt, and Australia, childhood obesity levels have increased two to almost five times during similar periods of rapid obesity rate growth in the United States.  *See* Schorin, *High Fructose Corn Syrups, Part 2*, at 71 (citing World Health Organization, *Diet, Nutrition, and the Prevention of Chronic Diseases:  Report of a Joint WHO/FAO Expert Consultation.* Geneva (2003); C.B. Ebbeling et al., *Childhood Obesity: Public-Health Crisis, Common Sense Cure*, 360 LANCET 473 (2002)).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## History of The Sugar Association's Vilification of HFCS

63.     A 2004 report published in the *American Journal of Clinical Nutrition*, which presented a hypothesis that there *may* be a causal link between the use of HFCS and the rise in obesity, is widely regarded as the starting point for the vilification of HFCS.[26]   This hypothesis has now been abandoned by its own authors.   For example, co-author Dr. Barry Popkin has stated:  "We were wrong in our speculations on HFCS about their link to weight."[27]   He further noted "[a]ll sugar you eat is the same, that's what we know now that we didn't know in 2004."[28]

64.     Nevertheless, believing that food and beverage manufacturers who remove HFCS as an ingredient would likely replace it with processed sugar, including invert sugar, The Sugar Association seized on the erroneous hypothesis—a pattern of behavior that would later be repeated by The Sugar Association.  As such, The Sugar Association has worked to perpetuate the myth that HFCS uniquely contributes to obesity and other health problems, preying upon consumers' food fears and diverting attention from the real issue—that Americans should reduce their consumption of all added sugars and calories in general.

65.     Historically, The Sugar Association has exploited scientific research regarding fructose and funded additional studies to support the notion that HFCS is less healthy than processed sugar.

66.     For instance, Andrew ("Andy") Briscoe, President & CEO of The Sugar Association, suggested using the scientific community's focus on a potential "fructose-obesity link" to "influence" further research on this point, which could be used to "provide updated science on concerns relation [sic] to fructose consumption"

---

[26] G.A. Bray et al., *Consumption of High-Fructose Corn Syrup in Beverages May Play a Role in the Epidemic of Obesity*, 79 AM. J. CLINICAL NUTRITION 537 (2004).

[27] *Fructose in the Firing Line*, FOODNAVIGATOR-USA.COM (Sept. 16, 2009), *available at* http://www.foodnavigator-usa.com/Business/Fructose-in-the-firing-line.

[28] Jenny Rogers, *High-Fructose Corn Syrup: Dangerous or Just Misunderstood?*, *available at* http://www.tbd.com/blogs/market-report/2011/05/high-fructose-corn-syrup-tk-10663.html  (May  5, 2011).

38

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

in order to denigrate HFCS to buyers of the product.[29]  Briscoe has also described HFCS as a "fructose-rich syrup" and argued that sugar was nutritionally superior because it contributed no "free" fructose.[30]  He has done this despite the fact that processed sugar contains roughly the same amount of fructose as HFCS; despite the fact that, in its invert form, processed sugar does contain free fructose; and despite the fact that sucrose turns into free fructose and glucose after ingestion and can only be metabolized by the body in free form.

67.    On information and belief, based on The Sugar Association's admitted past financial support for Citizens for Health, The Sugar Association has supported one or more third parties masked as grassroots consumer organizations.  Citizens for Health, one such organization, has disparaged HFCS by suggesting that it contributes to obesity and health problems in ways that processed sugar does not.  Citizens for Health publishes the website foodidentitytheft.com, which primarily targets the use of HFCS in foods and beverages, and Citizens for Health has previously received funds from The Sugar Association to attack the well-known sweetener Splenda.

### False and/or Misleading Representations by The Sugar Association

68.    Recently, The Sugar Association has stepped up its efforts to spread false and misleading statements regarding processed sugar and HFCS.  The Sugar Association accomplishes this mission by posting such statements on its website and elsewhere on the web (and inviting readers to spread the message through various social networking tools), as well as through press releases.

### The McElligott Article

69.    As an example of this recent activity to perpetuate false and misleading information about HFCS, in its January 2012 issue of *The Sugar Packet*, The Sugar

---

[29] The Sugar Association, *Fructose—Research Interest Growing*, Sugar E-News, Apr. 18, 2003, *available at*
http://www.google.com/url?sa=t&rct=j&q=&esrc=s&frm=1&source=web&cd=2&ved=0CCwQFjA
B&url=http%3A%2F%2Fwww.sweetbeet.com%2Fgrowernet%2Fnews_events%2FASA_News%2F
v6n15.doc&ei=HknUTqu3HYGpgweitfyPAQ&usg=AFQjCNG2VWBrS81Fqn5x8Wtrgt9Nec6B2Q
&sig2=NI1ksB07YiKbtVZYoh9XpQ.

[30] Letter from Andrew Briscoe to CBS's "The Early Show" (2004).

Association's monthly newsletter which appears on its website, sugar.org., The Sugar Association posted an article by Dr. John McElligott regarding the supposed "dangers" of consuming products "laced" with HFCS.[31]   The article was also distributed to a "listserv" of persons who signed up to receive The Sugar Association's newsletter, and a link to the article was posted on The Sugar Association's Twitter account on February 3, 2012.   That same day, The Sugar Association also posted the same link and heading on its Facebook page.

70.    The article depicted HFCS as extremely dangerous to human health and informed readers that they will be healthier if they consume sugar instead of HFCS. The article included the following false and misleading statements:

- "Your doctor will tell you how bad cigarettes are for you, not to use drugs, and how bad it is to drink too much alcohol or abuse your health with a terrible diet of processed food and snacks.  What many doctors don't take the time to tell you is that there is a substance you probably put in your mouth every single day that tastes really good but should be avoided at all costs."

- "[M]any of us in the medical community think [HFCS] is right there at the top of the list" of factors that have caused the rise in American obesity levels since the 1970s;

- "In my opinion, high-fructose corn syrup is one of the worst things you can put in your body";

- "Some have called it the 'crack cocaine' of all sweeteners.  I agree";

- "[I]n my opinion extensive use of HFCS as a food sweetener is more harmful than using regular sugar";

- "I believe it to be one of the worst food additives you can ingest";

- "I believe it has a range of dangers, from affecting your appetite to leading to weight gain";

- "The chemical structure is very similar to sucrose or table sugar. The difference lies in how it is processed and how it affects your body";

---

[31] Sugar Association, *Dr. John McElligott weighs in on the high fructose corn syrup debate in Land Line Magazine*, THE SUGAR PACKET (Jan. 2012), *available at*
http://www.inboxgroup.net/sugar/e_article002332039.cfm?x=bkBHLDm,bqfpsfQv,w.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

- "The thought is that fructose metabolizes to produce fat while sugar metabolizes to produce energy";

- "[Y]our body does not recognize HFCS as a sugar. So your pancreas does not react with a burst of insulin as it would with sugar or sucrose and put some of it to work";

- "HFCS goes to the liver and starts the process that can lead to non-alcoholic fatty disease. That in turn can lead to cirrhosis of the liver and, in some cases, can lead to cancer of the liver;" and

- "I am advising you to read those labels and stay away from food laced with high-fructose corn syrup. Try to stick with food that is not processed. And this advice is not just for you truckers, but for your whole family and especially your kids."

71.     The Sugar Association included links allowing readers to "social share" the McElligott article on Facebook, Twitter, Linked In, Google and Digg. Readers were also invited to "bookmark and share" on Facebook, Twitter, Linked In, Google, Digg Delicious, MySpace, StumbleUpon, Yahoo, and Windows Live. Readers could also "email this article to a friend" and "tell a friend" about the article via RSS feed.

72.     The article makes false and misleading statements that HFCS and processed sugar are metabolized differently, and that those differences render HFCS far worse to consume than processed sugar.

73.     For example, the statement "your body does not recognize HFCS as a sugar. So your pancreas does not react with a burst of insulin as it would with sugar or sucrose and put some of it to work" is false because the body does react with a burst of insulin when HFCS is ingested. This is because the body reacts with a burst of insulin when glucose is ingested. Processed sugar, including invert sugar, and HFCS all contain glucose.

74.     The statement "HFCS goes to the liver and starts the process that can lead to non-alcoholic fatty disease. That in turn can lead to cirrhosis of the liver and, in some cases, can lead to cancer of the liver" is also false. This is because HFCS does not go to the liver—the glucose in HFCS is metabolized by almost every cell in the body. Fructose, whether originating from sucrose, HFCS, invert sugar or any

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

41

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

other source of sugar that contains fructose, "goes to the liver."[32]   And in particular, the false statement that consumption of HFCS, as opposed to processed sugar or invert sugar, causes "cirrhosis of the liver" and "cancer" is false and designed to prey upon consumers' fears.

75.    The statement that "fructose metabolizes to produce fat while sugar metabolizes to produce energy" is false for a number of reasons.  Fructose (whether from HFCS, processed sugar, or any other fructose-containing sugar) is metabolized to produce energy.  Excess amounts of fructose (whether from HFCS, processed sugar, or any other fructose-containing sugar) may produce fat.  Moreover, "sugar" is not metabolized to produce energy.  Glucose, present in HFCS, processed sugar, or any other glucose-containing sugar, is metabolized to produce energy.  Fructose is also metabolized to produce energy.  An excess of either one can be converted to fat.

76.    The article also explicitly and implicitly states that HFCS is harmful, and particularly "far worse" to consume than processed sugar, because it is like "crack cocaine" and should be "avoided at all costs"; products are "laced" with it; and it is akin to "cigarettes," "drugs," and "alcohol."   The McElligott article perpetuates the false notion that switching from products containing HFCS to those containing processed sugar is beneficial for health, and also perpetuates consumers' unfounded fears regarding the supposed "dangers" of HFCS.

### The UCLA Article

77.    As another example of its recent activity to spread false and misleading information about HFCS, The Sugar Association posted on its website an article entitled "The Corn Refiners 'Get Their Way' With UCLA, or Do They?"[33]   This article falsely implied that a recent UCLA study found that HFCS affects memory loss.

---

[32]   M.M. McGrane, *Carbohydrate Metabolism: Synthesis and Oxidation*, 258-77 (Missouri: Saunders, Elsevier 2006); February 2012 teleconference with J. White.

[33]   Linda Bonvie, *The Corn Refiners "Get Their Way" with UCLA, or Do They?*, THE SUGAR ASS'N (June 7, 2012), *available at*
http://www.inboxgroup.net/sugar/e_article002443330.cfm?x=blph8f2,bqfpsfQv,w.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

78.    The article was distributed to The Sugar Association's "listserv" and posted on its website.  The Sugar Association also included links allowing readers to "social share" the UCLA article on Facebook, Twitter, Linked In, Google and Digg.  Readers were also invited to "bookmark and share" on Facebook, Twitter, Linked In, Google, Digg Delicious, MySpace, StumbleUpon, Yahoo, and Windows Live.  Readers were also encouraged to "email this article to a friend" and "tell a friend" about the article via RSS feed.

79.    The article concerned a study conducted on rats at UCLA that focused on fructose and omega-3 fats, and purported to find that consumption of extremely high levels of fructose can negatively affect the memory of rats.[34]  The initial press release from UCLA erroneously identified HFCS, rather than fructose, as the subject of the study.  The story was picked up by the media, which in many instances erroneously reported that the study found HFCS (as opposed to fructose, present in many common added sugars, such as table sugar, invert sugar and honey) can make you "fat and stupid."   CRA contacted UCLA and requested that it correct the error in its press release to make clear that the study concerned fructose, not HFCS.

80.    The Sugar Association, however, despite knowing that various news outlets had inaccurately described the study's findings, sought to falsely attribute the study to HFCS:

> What do persistent public-relations people do when a product their organization has spent multi-millions to promote gets some really bad press?  Do damage control, of course.  But the PR response to a recent scientific study regarding fructose was a classic case of trying to "close the barn door after the horse runs away".  In other words, there was little the Corn Refiners Association could do to mitigate the message that had already gone out.

---

[34]    Counterclaim Plaintiffs do ***not*** agree with the UCLA study's finding that fructose—from whatever source—affects memory loss.  Among other things, the fructose intake in that study did not represent levels of fructose that are normally consumed, and the adverse effects were primarily restricted to rats that were fed an omega-3 fatty acid deficient diet.  Moreover, rat studies cannot be extrapolated to humans.

> Last week's headlines, preserved for posterity on the Internet, ran the gamut from big-name news organizations to publishing sites to individual bloggers. From an ABC News station's <u>"UCLA study finds high fructose corn syrup hurts memory, learning ability"</u> to popular finance site Minyanville.com, <u>"High Fructose Corn Syrup Can Make You Both Fat and Stupid,"</u> the damage to a ingredient already under siege was irreversible. . . . .
>
> The first press release issued by the UCLA media office said "The UCLA team zeroed in on high-fructose corn syrup, an inexpensive liquid six times sweeter than cane sugar, that is commonly added to processed foods, including soft drinks, condiments, applesauce and baby food."
>
> After being taken down for a time, the <u>release was revised</u> with "sugar" added before "high fructose corn syrup" and some of Dr. Gomez-Pinilla's quotes altered as well. For example, one that originally stated "We're concerned about high-fructose corn syrup…" was changed to "We're more concerned about the fructose in high-fructose corn syrup" . . . .
>
> So, yes, the CRA's badgering did succeed in getting some perfunctory changes made in the offending press release. But for millions of consumers, there was no taking back what they have long suspected – that the presence of high fructose corn syrup in just about every product under the sun is, well, just plain "stupid."

81.    The Sugar Association's UCLA article linked to two erroneously titled articles, allowing consumers to read the ABC article, which reported that "a new study found that" HFCS "can make you dumb and damage your memory" and, from minyanville.com, "the study results were limited to the effects of HFCS, not sugar derived from beets or cane or fructose from fruit."[35]

82.    The Sugar Association's UCLA article falsely implies to consumers that the UCLA study found that HFCS affected memory loss.  For example, it states that

---

[35] Kristal Roberts, *UCLA Study Finds High Fructose Corn Syrup Hurts Memory, Learning Ability*, ABCACTIONNEWS.COM (May 16, 2012), *available at* http://www.abcactionnews.com/dpp/news/health/UCLA-study-finds-high-fructose-corn-syrup-dumbs-brain-down-hurts-memory-learning-ability; Sara Churchville, *High-Fructose Corn Syrup Can Make You Both Fat and Stupid*, MINYANVILLE.COM (May 16, 2012), *available at* http://www.minyanville.com/mvpremium/2012/05/16/high-fructose-corn-syrup-can/.

CRA's PR response to the UCLA study "was a classic case of trying to 'close the barn door after the horse runs away.'  In other words, there was little the Corn Refiners Association could do to mitigate the message that had already gone out."  This false implication was further buttressed by the inclusion of the erroneous headlines **"UCLA study finds high fructose corn syrup hurts memory, learning ability"** and **"High Fructose Corn Syrup Can Make You Both Fat and Stupid,"** and the statement that "the damage to an ingredient already under siege was irreversible."

83.    The article also perpetuated the false belief that HFCS is much sweeter than sugar, when in truth they are of approximately the same sweetness.  The Sugar Association is well aware that HFCS is not "six times sweeter than cane sugar."

84.    Instead of accurately reporting that the initial UCLA press release was changed because it falsely identified the source of the study as HFCS, The Sugar Association's article perpetuated the falsity, by describing the changes as "perfunctory" and declaring that "for millions of consumers, there was no taking back what they have long suspected – that the presence of high fructose corn syrup in just about every product under the sun is, well, just plain 'stupid.'"

85.    The Sugar Association's UCLA article completely misrepresents the study and misinforms consumers as to the nature of the study.  It falsely represents to consumers that HFCS, as opposed to fructose, can "make you stupid."

**The "Enough is Enough" Press Release**

86.    As a third example of its HFCS vilification campaign, in a May 24, 2012 press release entitled "Enough is Enough:  There's Only One Sugar . . . and It's Not High Fructose Corn Syrup," The Sugar Association made false and misleading statements that processed sugar is nutritionally superior to HFCS.[36]

87.    The press release was published on sugar.org, as well as The Sugar Association's Twitter account and Facebook page.  The press release was also posted

---

[36] Press Release, The Sugar Ass'n, Enough Is Enough: There's Only One Sugar . . . And It's Not High-Fructose Corn Syrup (May 24, 2012), *available at* http://www.prnewswire.com/news-releases/enough-is-enough-theres-only-one-sugar-and-its-not-high-fructose-corn-syrup-153610575.html.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

on prnewswire.com, whereupon it became available to any media outlet that wished to incorporate or republish it. On information and belief, the press release was also sent directly by The Sugar Association or its representatives to nutritionists, scientists, and doctors.[37]

88.     The "Enough is Enough" press release made the following statements falsely representing that sugar is healthier than HFCS:

> In recent weeks, there has been a rash of inaccurate reports about all-natural sugar. These reports have continually misrepresented the facts surrounding several scientific studies, overlooked biological differences between all-natural sugar and man-made sweeteners and ignored government data. Rather than educating consumers, they have only contributed to greater confusion about sugar and its role as part of a balanced diet and healthy lifestyle. . . .
>
> Sucrose is molecularly different than HFCS due to a ***meaningful***, naturally occurring bond between its fructose and glucose molecules. This bond must be broken as part of the metabolism of sucrose. HFCS does not have this bond. (Emphasis added.)

89.     The "Enough is Enough" press release stated that recent reports "overlooked biological differences between all-natural sugar and man-made sweeteners." The release went on to say that "sucrose is molecularly different than HFCS due to a meaningful, naturally occurring bond between its fructose and glucose molecules. This bond must be broken as part of the metabolism of sucrose. HFCS does not have this bond."

90.     However, the bond in sucrose is not "meaningful" to human health. The bond is broken after ingestion so the body can metabolize the glucose and fructose contained in table sugar. And in many cases, the bond is broken prior to ingestion, such as in the case of invert sugar, where the bond is intentionally broken by sugar processors prior to being added in foods and beverages, or when the sugar hydrolyzes

---

[37] At least one well-known nutritionist has commented that The Sugar Association's PR firm, Levick Communications, sent her a press releases from The Sugar Association. *See* http://www.foodpolitics.com/2011/10/sugar-1-hfcs-0-at-least-for-the-moment/.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

on its own in acidic products.   Among other things, invert sugar is chemically manipulated through the use of heat, enzymes, and/or acids to break the bond connecting the glucose and fructose molecules.

91.   The Sugar Association's statements falsely imply that the bond between glucose and fructose in processed sugar is beneficial to human health, and that the bond makes processed sugar healthier than HFCS.   These statements also imply that the "biological differences" between processed sugar and HFCS mean that sugar is nutritionally superior to HFCS.   These statements are made even more misleading by The Sugar Association's failure to communicate that in beverages and other products, invert sugar is used.   The "bond" that The Sugar Association touts as being so "meaningful" is chemically broken, intentionally, in the case of invert sugar, prior to being added to foods or beverages.

**Additional False Statements**

92.   The Sugar Association's dissemination of articles making false and misleading statements implying that processed sugar is different from HFCS in ways that are "meaningful" and beneficial to consumers' health has continued unabated. An April 1, 2012 press release from The Sugar Association entitled "Sugar Association Responds to 60 Minutes: Unfounded Accusations Mislead Consumers," stated, "[t]he assertion that high fructose corn syrup (HFCS) and all-natural sugar are the same and treated by our bodies the same is inaccurate."[38]   And on August 23, 2012, Andrew Briscoe authored an op-ed for aarp.org, which again stated that the bond in sucrose is "meaningful" to human health:   "Sugar is molecularly different from HFCS due to a meaningful, naturally occurring bond between its fructose and glucose molecules.   Our bodies must break this bond to metabolize sugar."[39]   The Sugar Association posted a link to the op-ed on its Facebook and Twitter pages.   The

---

[38] *Sugar Association Responds to 60 Minutes: Unfounded Accusations Mislead Consumers*, THE SUGAR ASS'N (Apr. 1, 2012), *available at* http://www.sugar.org/press-releases/sugar-association-responds-to-60-minutes-unfounded-accusations-mislead-consumers.html.

[39] Andrew Briscoe, *Should Sweetened Drinks Be Taxed?*, AARP (Aug. 23, 2012), *available at* http://www.aarp.org/politics-society/advocacy/info-08-2012/sugar-tax-fat-tax opposition.2.html.

CARGILL, INC.'S AMENDED ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Sugar Association's additional statement that "[s]tepping back to look at sugar consumption trends – the data for which is provided by the USDA – during the very period when obesity prevalence has risen should be sufficient evidence to prove that blaming America's weight problem on sugar consumption is wrong" likewise implies that if consumers were to replace HFCS with processed sugar, including invert sugar, they would receive a health benefit.[40]

93.    Additional recent press releases and postings by The Sugar Association, which have been further disseminated on The Sugar Association's Facebook and Twitter pages, have attempted to distance processed sugar from the current concern regarding overconsumption of "sugary" beverages.   The Sugar Association's statement that its industry has been "wrongly maligned by the inaccurate characterizations of the targeted beverages" is false and misleading because characterizations of beverages that contain HFCS as "sugary" and "sugar-sweetened" are accurate.  Whether a beverage is sweetened with processed sugar, including invert sugar, or HFCS, it is still sugar-sweetened.  And if the HFCS in all soft drinks were replaced with processed sugar, consumers would not be healthier for that reason.[41]

94.    As John S. Webster, director of Public and Governmental Affairs for the USDA stated:

> The term "sugary drinks" was chosen by the USDA to convey the idea of any drink that is sweetened with added sugars.  Sugary drinks includes any beverage sweetened with ingredients listed in the 2010 Dietary Guidelines for Americans, which includes honey, molasses, corn sweetener, and high fructose corn syrup, for example. . . .We do not use the term "sugar packets" to represent an actual measurement of high fructose corn syrup . . . . We use the packet reference as a visual cue for making the point that there is a significant amount of calories from added sugars in sugary drinks, regardless of the type of sugar. . . .  If we were to focus our attention on just one sweetening ingredient, e.g., high fructose

---

[40] *America's Obesity Problem*, THE SUGAR ASS'N (Aug. 6, 2012), *available at* http://www.inboxgroup.net/sugar/e_article002487219.cfm.

[41] *Don't Take Our Word for It*, THE SUGAR ASS'N (June 28, 2012), *available at* http://www.inboxgroup.net/sugar/e_article002465256.cfm?x=blph8f2,bqfpsfQv,w.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

corn syrup, we would lose sight of the more important point and public health problem: Americans are consuming far too many empty calories from added sugars.[42]

95.     Obesity is the result of consuming too many calories and too little exercise.  Indeed, when it is not blaming HFCS but rather defending itself, The Sugar Association acknowledges that "[t]he continued emphasis on specific nutrients will only continue to prolong the real problem—caloric imbalance."[43]   Yet instead of working constructively to end this country's obesity epidemic, The Sugar Association instead falsely vilifies HFCS, with the goal of increasing consumer demand for processed sugar.

## CLAIM FOR RELIEF

## Violations of Section 43(a) of the Lanham Act

96.     Counterclaim Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 95 above as though set forth fully herein.

97.     As set forth in Paragraphs 68-95 above and in Group Exhibit A, attached hereto, The Sugar Association makes false and/or misleading statements of fact that processed sugar is different from HFCS in ways that are beneficial to consumers' health.  The Sugar Association's statements falsely state and/or imply that processed sugar is healthier than HFCS, and that by consuming products that contain processed sugar, rather than HFCS, consumers will receive a health benefit.   These representations are false and misleading in light of how the body processes glucose and fructose, findings from peer-reviewed scientific studies, and the widespread agreement among leading nutritionists and medical experts that HFCS and sugar are nutritionally equivalent.

---

[42] Linda Bonvie, *How HFCS-Laden Sodas Came to Be Called "Sugary Drinks,"* available at http://foodidentitytheft.com/how-hfcs-laden-sodas-came-to-be-called-sugary-drinks/.

[43] *Coalition's Efforts to Target Added Sugars Is off Course—Science Should Be the Foundation for Nutrition Policy*, THE SUGAR ASS'N,  *available at* http://www.inboxgroup.net/sugar/e_article002390508.cfm?x=bkSCJHS,bjFFNNFn,w.

98.     The Sugar Association's false and/or misleading representations of fact violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The Sugar Association makes these false and/or misleading representations of fact in interstate commercial advertising and/or promotion—in this district and elsewhere—and the effects of its acts throughout the United States are intended to and do fall upon Counterclaim Plaintiffs in this district and elsewhere.

99.     The Sugar Association's false and/or misleading representations of fact do deceive and have the tendency to deceive a substantial segment of their audience and the consuming public.  The deception created by The Sugar Association is likely to influence consumer's purchasing decisions, for reasons that include the implication that processed sugar is healthier to consume than HFCS.

100.    As a result of The Sugar Association's false and/or misleading representations, Counterclaim Plaintiffs have been damaged in an amount that will be ascertained according to proof.  The purpose of The Sugar Association's statements is to mislead consumers into refusing to buy products that contain HFCS, with the expectation that it will cause food and beverage manufacturers to replace HFCS with processed sugar, including invert sugar.

101.    Counterclaim Plaintiffs' damages include actual damages in the form of price erosion and lost profits stemming from artificially reduced demand caused by The Sugar Association's false and misleading advertising; the cost of corrective advertising; and goodwill damages.

102.    Because The Sugar Association made and continues to make its false and/or misleading representations of fact about HFCS and processed sugar in intentional disregard of their falsity and/or misleading nature, Counterclaim Plaintiffs are entitled to an award of enhanced damages under Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).  Moreover, this is an exceptional case for which the Court should award Counterclaim Plaintiffs their reasonable attorneys' fees.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

CARGILL, INC.'S AMENDED ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

103.   The Sugar Association's activities have caused and will cause irreparable harm to Counterclaim Plaintiffs for which they have no adequate remedy at law.  In particular, The Sugar Association's past and continuing false and/or misleading representations of fact, as alleged above, are causing irreparable harm, continuing to the foreseeable future, and are a serious and unmitigated hardship.  Counterclaim Plaintiffs will continue to suffer irreparable injury to their goodwill, rights, and businesses unless and until The Sugar Association and any others in active concert with it are enjoined from continuing their wrongful acts.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs pray for judgment against The Sugar Association as follows:

1. That the Court enjoin The Sugar Association from continuing to make false and/or misleading representations of fact about HFCS and processed sugar;

2. That The Sugar Association pay Counterclaim Plaintiffs damages for the harms they have suffered and continue to suffer as a result of its false and/or misleading advertising, promotion, and/or marketing, and provide a corrective advertising award as permitted by law;

3. That this Court award Counterclaim Plaintiffs three times any damages award pursuant to 15 U.S.C. § 1117;

4. That this case be found to be exceptional within the meaning of 15 U.S.C. § 1117;

5. That the Court award Counterclaim Plaintiffs their costs and expenses of suit, including all reasonable attorneys' fees that they have incurred and will incur in this matter;

6. That the Court award Counterclaim Plaintiffs prejudgment and postjudgment interest; and

7. That the Court grant Counterclaim Plaintiffs such other and further relief as the Court deems just and proper.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Dated:  September 4, 2012

Respectfully submitted,

WINSTON & STRAWN LLP


By:  /s/ Gail J. Standish
Gail J. Standish
Erin R. Ranahan

Attorneys for Defendants
ARCHER-DANIELS-MIDLAND COMPANY;
CARGILL, INC.; INGREDION
INCORPORATED.; THE CORN REFINERS
ASSOCIATION, INC.; AND TATE & LYLE
INGREDIENTS AMERICAS, INC.

*Additional counsel for Defendants:*

Cornelius M. Murphy (admitted *pro hac vice*)
nmurphy@winston.com
Bryna J. Dahlin (admitted *pro hac vice*)
bdahlin@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:  (312) 558-5600
Facsimile: (312) 558-5700

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## DEMAND FOR JURY TRIAL

Pursuant to Fed R. Civ. P. 38(b), Cargill demands a trial by jury of all triable issues and affirmative defenses herein.


Dated:  September 4, 2012                    Respectfully submitted,
                                             WINSTON & STRAWN LLP


                                        By:  /s/ Gail J. Standish
                                             Gail J. Standish
                                             Erin R. Ranahan

                                             Attorneys for Defendants
                                             ARCHER-DANIELS-MIDLAND COMPANY;
                                             CARGILL, INC.; INGREDION
                                             INCORPORATED.; THE CORN REFINERS
                                             ASSOCIATION, INC.; AND TATE & LYLE
                                             INGREDIENTS AMERICAS, INC.

*Additional counsel for Defendants:*

Cornelius M. Murphy (admitted *pro hac vice*)
nmurphy@winston.com
Bryna J. Dahlin (admitted *pro hac vice*)
bdahlin@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:  (312) 558-5600
Facsimile: (312) 558-5700

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543