1  Gail J. Standish (SBN: 166334)
   gstandish@winston.com
2  Erin R. Ranahan (SBN: 235286)
   eranahan@winston.com
3  Winston & Strawn LLP
   333 S. Grand Avenue
4  Los Angeles, CA 90071-1543
   Telephone:  (213) 615-1700
5  Facsimile:  (213) 615-1750

6  Dan K. Webb (admitted *pro hac vice*)
   dwebb@winston.com
7  Stephen V. D'Amore (admitted *pro hac vice*)
   sdamore@winston.com
8  WINSTON & STRAWN LLP
   35 W. Wacker Drive
9  Chicago, IL 60601-9703
   Telephone:  (312) 558-5600
10 Facsimile:  (312) 558-5700

11 Attorneys for Defendants
   ARCHER-DANIELS-MIDLAND COMPANY; CARGILL, INCORPORATED;
12 INGREDION INCORPORATED; THE CORN REFINERS ASSOCIATION, INC.;
   AND TATE & LYLE INGREDIENTS AMERICAS LLC

13

## UNITED STATES DISTRICT COURT

14

## CENTRAL DISTRICT OF CALIFORNIA

15

16

| | |
|---|---|
| 17  WESTERN SUGAR COOPERATIVE, a Colorado cooperative, *et al.*, | **Case No. CV11-3473 CBM (MANx)** REDACTED VERSION |
| 18 | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION ON PLAINTIFFS' CLAIMS OF FALSITY** |
| 19      Plaintiffs, | |
| 20      v. | |
| 21  ARCHER-DANIELS-MIDLAND COMPANY, a Delaware corporation, *et al.*, | Date:       September 23, 2014 Time:       10:00 a.m. Place:      Courtroom 2 Judge:      Hon. Consuelo B. Marshall |
| 22 | |
| 23      Defendants. | |

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

TO THE COURT, PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 23, 2014 at 10:00 AM, or as soon thereafter as this matter can be heard before the Honorable Consuelo B. Marshall of the United States District Court for the Central District of California, in Courtroom 2 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, Defendants Archer-Daniels-Midland Company, Cargill, Incorporated, Ingredion Incorporated (formerly Corn Products International, Inc.), The Corn Refiners Association, Inc., and Tate & Lyle Ingredients Americas LLC ("Defendants") will and hereby do move for summary adjudication pursuant to Rule 56 of the Federal Rules of Civil Procedure.  In this motion, Defendants seek summary adjudication of Plaintiffs' Lanham Act claims of falsity.  There is no issue of material fact and Defendants are entitled to summary adjudication on these claims as a matter of law because, *inter alia*:

- Plaintiffs' claims that Defendants have made three categories of false and misleading statements fail because the undisputed evidence here establishes that all of Defendants' challenged statements are literally true and not misleading.  Accordingly, the Court should enter summary adjudication in favor of Defendants on Plaintiffs' claims of falsity.

- CRA's corn sugar campaign is inextricably intertwined with its petitioning activity, such that it is entitled to immunity under the *Noerr-Pennington* doctrine.  The Court should enter summary adjudication in favor of Defendants on Plaintiffs' claim of falsity related to "corn sugar" for this additional reason.

This motion is based on:  this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; Defendants' Local Rule 56-1 Statement of Uncontroverted Facts and Conclusions of Law filed concurrently herewith; all pleadings and papers on file in this action; and any oral argument that may be presented to the Court at the time of the hearing on this motion.  This motion is made following the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON FALSITY

conference of counsel pursuant to Local Rule 7-3 which took place on August 19, 2014.

Dated:  August 26, 2014

Respectfully submitted,
WINSTON & STRAWN LLP

By:  /s/ Gail J. Standish
Gail J. Standish
Erin R. Ranahan

Attorneys for Defendants
ARCHER-DANIELS-MIDLAND COMPANY; CARGILL, INCORPORATED; INGREDION INCORPORATED; THE CORN REFINERS ASSOCIATION, INC.; AND TATE & LYLE INGREDIENTS AMERICAS LLC

*Additional counsel for Defendants:*

Cornelius M. Murphy (admitted *pro hac vice*)
nmurphy@winston.com
Bryna J. Dahlin (admitted *pro hac vice*)
bdahlin@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:   (312) 558-5600
Facsimile: (312) 558-5700

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# TABLE OF CONTENTS

**Page**

LEGAL STANDARD.................................................................................................2

I.      Lanham Act Claims .........................................................................................2

II.     Summary Adjudication .....................................................................................3

ARGUMENT ..........................................................................................................3

I.      Defendants Are Entitled to Summary Adjudication on Plaintiffs' "Natural" Claim ........................................................................................................3

        A.      FDA's Policy Statement Provides the Most Relevant Definition of "Natural" for Food Ingredients ....................................................4

        B.      CRA's Compliance with FDA's Policy Renders Its Statements Literally True and Non-Misleading .....................................................5

        C.      Plaintiffs' Litigation-Constructed Definitions Are Rhetoric, Not Evidence ....................................................................................6

II.     Defendants Are Entitled to Summary Adjudication on the Issue of "Corn Sugar" ................................................................................................8

        A.      The Noerr-Pennington Doctrine Bars Plaintiffs' Claims..................8

        B.      It is Not False or Misleading to Refer to HFCS as "Corn Sugar" ...........13

        C.      There Is No Dispute of Material Fact That HFCS Is Made From Corn or That It Is a Form of Sugar........................................................14

III.    Defendants Are Entitled to Summary Adjudication on Plaintiffs' "Nutritional Equivalence" Claim.......................................................................16

        A.      Defendants' Statements Must Be Read in the Context in Which They Were Made................................................................................16

        B.      The Scientific Consensus is That HFCS and Sugar Are Nutritionally Equivalent. ....................................................................19

        C.      The Studies Plaintiffs Cite Are Flawed and Unreliable...........................20

        D.      Plaintiffs Have Admitted There Is No Science Differentiating HFCS and Sugar Nutritionally or Metabolically ....................................24

CONCLUSION.......................................................................................................25

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

i

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
    486 U.S. 492 (1988)...................................................................9, 10, 12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................3, 25

*Auvil v CBS 60 Minutes*,
    67 F.3d 816 (9th Cir. 2000) .................................................................25

*Broadwood Inv. Fund LLC v. United States*,
    2012 WL 4840703 (C.D. Cal. Sept. 21, 2012)............................16, 17

*Buetow v. A.L.S. Enters., Inc.*
    605 F.3d 1178-1186-87 (8th Cir. 2011) ..............................................6

*Cal. Motor Transp.Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972)...............................................................................9

*California ex rel. Harris v. Safeway, Inc.*,
    651 F.3d 1118 (9th Cir. 2011) .............................................................22

*CarePartners LLC v. Lashway*,
    428 F. App'x 734 (9th Cir. 2011) .......................................................22

*City of Vernon v. S. Cal. Edison Co.*,
    955 F.2d 1361 (9th Cir. 1992) .............................................................25

*Compaq Computer Corp. v. Packard Bell Elecs.*,
    163 F.R.D. 329 (N.D. Cal. 1995) .........................................................6

*Cooper-Harris v. United States*,
    965 F. Supp. 2d 1139 (C.D. Cal. 2013).........................................21, 22

*Coors Brewing Co. v. Anheuser-Busch Cos.*,
    802 F. Supp. 965 (S.D.N.Y. 1992) .......................................................6

*Core-Vent Corp. v. Nobel Industries Sweden A.B.*,
    1998 WL 650269 (9th Cir. 1998) ...............................................passim

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
    12 F. Supp. 2d 296 (S.D.N.Y. 1998) ...................................................6

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Dorsett v. Sandoz, Inc.*,
    699 F. Supp. 2d 1142 (C.D. Cal. 2010) .........................................................14

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961)...............................................................................10, 12

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
    711 F. Supp. 2d 1074 (C.D. Cal. 2010) ...........................................................9

*Feld Entm't. Inc. v. Am. Soc. for the Prevention of Cruelty to Animals*,
    873 F. Supp. 2d 288 (D.D.C. 2012) ...............................................................10

*George v. Morris*,
    736 F.3d 829 (9th Cir. 2013) .........................................................................3

*Hairston v. South Beach Beverage Co., Inc.*,
    2012 WL 1893818 (C.D. Cal. May 18, 2012) ...........................................13, 14

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) ...................................................................11, 17

*Holk v. Snapple Beverage Corp.*,
    575 F.3d 329 (3d Cir. 2009) ...........................................................................4

*In re Homestore.com, Inc. Sec. Litig.*,
    347 F. Supp. 2d 769 (C.D. Cal. 2004) ...........................................................24

*In re Prempro Products Liab. Litig.*,
    738 F. Supp. 2d 887 (E.D. Ark. 2010) ...........................................................23

*Intertek Testing Servs. NA, Inc. v. Curtis-Strauss LLC et al.*,
    No. 98903F, 2000 WL 1473126 (Mass. Spp. Ct. Aug. 8, 2000).................17, 18

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
    299 F.3d 1242 (11th Cir. 2002) .....................................................................17

*Lockwood v. Conagra Foods, Inc.*,
    597 F. Supp. 2d 1028 (N.D. Cal. 2009)........................................................4, 5

*Manistee Town Ctr. v. City of Glendale*,
    227 F.3d 1090 (9th Cir. 2000) .....................................................................9, 12

*Martinez v. Welk Grp., Inc.*,
    907 F. Supp. 2d 1123 (S.D. Cal. 2012) ...........................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON FALSITY

*Mercatus Grp., LLC v. Lake Forest Hosp.*,
   641 F.3d 834 (7th Cir. 2011) ............................................................. 10, 12

*Miller v. Glenn Miller Prods., Inc.*,
   454 F.3d 975 (9th Cir. 2006) ........................................................................ 3

*N. Star Indus., Inc. v. Douglas Dynamics LLC*,
   848 F.Supp.2d 934 (E.D. Wis. 2012) ...................................... 11, 12, 17

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ................................................................ 17

*Newcal Indus., Inc. v. Ikon Office Sol'n*,
   513 F.3d 1038 (9th Cir. 2008) .................................................................. 4

*Pelayo v. Nestle USA, Inc.*,
   2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) ....................................... 7

*PhotoMedex, Inc. v. Irwin*,
   601 F.3d 919 (9th Cir. 2010) .................................................................... 2

*POM Wonderful LLC v. Coca-Cola Co.*,
   134 S. Ct. 2228 (2014) ............................................................................. 14

*Prohias v. Pfizer, Inc.*,
   490 F. Supp. 2d 1228 (S.D. Fla. 2007) .................................................. 6

*Pyramid Tech., Inc. v. Hartford Cas. Ins. Co.*,
   752 F.3d 807 (9th Cir. 2014) .................................................................. 22

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) .................................................................. 25

*Red v. The Kroger Co.*,
   2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ....................................... 6

*Retail Digital Network, LLC v. Appelsmith*,
   945 F. Supp. 2d 1119 (C.D. Cal. 2013) ........................................... 3, 13

*Ries v. Hornell Brewing et al.*,
   2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) .................................. 7, 24

*Rimbert v. Eli Lilly & Co.*,
   2009 WL 2208570 (D.N.M. July 21, 2009), *aff'd*, 647 F.3d 1247 (10th Cir.
   2011) ............................................................................................................. 23

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON FALSITY

*Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*,
  249 F. Supp. 2d 463 (M.D. Pa. 2003) *aff'd on other grounds*, 401 F.3d 123
  (3d Cir. 2005)................................................................................................9

*Select Portfolio Servicing v. Valentino*,
  875 F. Supp. 2d 975 (N.D. Cal. 2012)........................................................10

*Siharath v. Sandoz Pharm. Corp.*,
  131 F. Supp. 2d 1347 (N.D. Ga. 2001) *aff'd sub nom.*, 295 F.3d 1194 (11th
  Cir. 2002)....................................................................................................22

*Sliding Door Co. v. KLS Doors, LLC*,
  No. EDCV 13-00196 JGB, 2013 WL 2090298 (C.D. Cal. May 1, 2013) .....9, 12

*Sosa v. DIRECTV, Inc.*,
  437 F. 3d 923 (9th Cir. 2006) ..........................................................9, 10, 12

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) .....................................................2, 17, 18

*Stiefel Labs v. Brookstone Pharmaceuticals*,
  535 F. Appx. 774 (11th Cir. 2013) ..........................................................7, 14

*Subscription T.V., Inc. v. Southern Cal. Theatre Owners Ass'n*,
  576 F.2d 230 (9th Cir. 1978) ....................................................................9, 12

*The Sugar Association, Inc., et al. v. McNeil-PPC, Inc.*,
  2:04-cv-10077-DSF-RZ, R. 551, at *6 (C.D. Cal. 2008) ...............................23

*Theme Promotions, Inc. v. News Am. Mktg FSI*,
  546 F.3d 991 (9th Cir. 2012) ..........................................................9, 10, 12

*Tyco Healthcare Group LP v. Mutual Pharm. Co., Inc.*,
  2014 WL 3844166 (3d Cir. 2014) ...................................................................9

*Wagner v. Circle W. Mastiffs*,
  732 F. Supp. 2d 792 (S.D. Ohio 2010).............................................................9

*Yumul v. Smart Balance, Inc.*,
  2011 WL 1045555 (C.D. Cal. Mar. 14, 2011) .................................................6

OTHER AUTHORITIES

21 C.F.R. 168.111 ................................................................................13, 15

Fed. R. Civ. P. 56(a) .......................................................................................3

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

Fed. R. Civ. P. 56(c)(2) ................................................................21

Fed. R. Evid. 702 ..........................................................................22

U.S. Const., amend. I ........................................................8, 12, 13

DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON FALSITY

Plaintiffs twist and distort three statements made in CRA's science-based educational campaign in a futile attempt to recast them as false. Now that discovery has concluded, the record is clear that Plaintiffs' allegations are fatally undermined by their own statements and conduct—and by the truth of CRA's statements they challenge. Privately, Plaintiffs themselves have made or admitted as true the very statements they challenge through this lawsuit. As such, and for the reasons discussed herein, there is no dispute that the statements at issue are neither false nor misleading.

**First**, Plaintiffs allege that Defendants falsely asserted that HFCS is "natural" because it is not "found in nature." But discovery has revealed that Plaintiffs internally agree that FDA sets forth the relevant policy on "natural" and that HFCS satisfies FDA's policy. Discovery has also made clear that Plaintiffs' own processed sugar products fail their litigation-constructed "man-made" rhetoric. Thus, Plaintiffs have failed to articulate a plausible definition of "natural," much less offer any evidence that CRA's statements concerning "natural" were false or misleading.

**Second**, Plaintiffs allege that it is false to describe HFCS as "corn sugar" because "corn sugar" is the name of dextrose, another sweetener that Defendants make from corn. But the record is clear that every time the term "corn sugar" was used in the educational campaign, it was always clearly and explicitly used to describe HFCS, not dextrose. It is also indisputable that HFCS is both made from corn and is a type of sugar. As such, no reasonable jury could find that anyone was confused about Defendants' use of the term "corn sugar." The hypocrisy of Plaintiffs' claim is apparent from the fact that at least one Plaintiff used the common-sense term "Corn Sugar" on its website to describe HFCS (but took the website down after filing this lawsuit).

**Third**, Plaintiffs intentionally distort and remove from context the content of CRA's educational campaign by alleging that the campaign conveyed the message that HFCS and processed sugar are "identical" or the "same" in all respects. What CRA actually stated in its educational campaign is that there is wide scientific support, from experts and researchers, that HFCS and refined sugar are nutritionally and meta-

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

bolically equivalent.  After completing discovery, Plaintiffs are unable to offer even one reliable piece of evidence to counter this great weight of scientific authority.  To the contrary, Plaintiffs' internal documents admit that there is a  "precise biological equivalency" between processed sugar and HFCS; revealing yet again that Plaintiffs do not believe their own allegations.  In a disingenuous effort to manufacture some factual dispute, Plaintiffs cite to studies that their own Chief Scientist described as "so totally flawed" that "the [Sugar] Association should neither include it in the body of evidence nor should issue any public statement on it."

When stripped of rhetoric and litigation posturing, there are no material issues in dispute and Plaintiffs are unable to produce any evidence upon which a jury could find that Defendants' "natural," "corn sugar," or nutritional equivalence statements are false or misleading.

## LEGAL STANDARD

### I.    Lanham Act Claims

Plaintiffs claim that Defendants violated the Lanham Act by making three "categories" of statements in Defendants' educational campaign.  (D.E. 54, SAC ¶ 67.) First, Plaintiffs allege that Defendants' use of the term "corn sugar" in its campaign was false and misleading.  (*Id.* ¶ 68.)  Second, Plaintiffs claim that it was false and misleading for Defendants to refer to HFCS as "natural."  (*Id.* ¶ 69.) Third, Plaintiffs allege that it was false or misleading for Defendants to state that "sugar is sugar" and that "your body can't tell the difference" between sugar and HFCS (*id.*), statements that in context reflected what even Plaintiffs conceded in their own documents is the "precise biological equivalency" between refined sugar and HFCS.

To demonstrate falsity within the meaning of the Lanham Act, a plaintiff must show either that (1) the statement was literally false, either on its face or by necessary implication, or (2) the statement was literally true but likely to mislead or confuse consumers.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *accord PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 932 (9th Cir. 2010).  With

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

this motion, Defendants move for summary adjudication on the falsity element of the Lanham Act with respect to each of the three challenged categories of statements.

## II.     Summary Adjudication

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, [the summary judgment] standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord George v. Morris*, 736 F.3d 829, 848 (9th Cir. 2013). To overcome summary judgment, the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252; *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006). In other words, "the judge must view the evidence presented through the prism of the substantive evidentiary burden" and "determine[] whether there is a triable issue of fact in light of the 'actual quantum and quality of proof' the nonmovant must meet at trial." *Anderson*, 477 U.S. at 254-55; *Retail Digital Network, LLC v. Appelsmith*, 945 F. Supp. 2d 1119, 1122 (C.D. Cal. 2013) (Marshall, J.). As the Supreme Court explained, "in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it..." *Anderson*, 477 U.S. at 251.

## ARGUMENT

## I.     Defendants Are Entitled to Summary Adjudication on Plaintiffs' "Natural" Claim

Plaintiffs allege that it is false and misleading for CRA to describe HFCS as "natural" because HFCS is not "found in nature," undergoes human processing, and therefore is a "man-made" product. (SAC ¶¶ 6, 30, 32, 53-54, 63, and 69.) However,

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON FALSITY

CRA never stated in its educational campaign that HFCS is found in nature, unprocessed, or not man-made. (Defendants' Statement of Uncontroverted Facts ("Stmt.") ¶¶ 11-13.) Rather, the undisputed facts demonstrate that CRA referred to HFCS as "natural" because it comes from corn (and nothing else) and it complies with FDA's longstanding policy on the use of that term. (*Id*. ¶¶ 14-25.)

It is Plaintiffs' burden to demonstrate that CRA's description of HFCS as "natural" was literally false or misleading. *See Newcal Indus., Inc. v. Ikon Office Sol'n*, 513 F.3d 1038, 1052 (9th Cir. 2008). As demonstrated below, no jury could find for Plaintiffs on this issue because it is an undisputed fact – admitted as true even by The Sugar Association's CEO – that HFCS can be "natural" under FDA's longstanding policy. And while Plaintiffs offer litigation-constructed definitions of "natural," such rhetoric has no basis in law or fact.

### A.   FDA's Policy Statement Provides the Most Relevant Definition of "Natural" for Food Ingredients

The Food and Drug Administration ("FDA") is the federal agency that regulates the labeling of food products in the United States.[1] (Stmt. ¶¶ 14-15.) Over the past two decades, FDA has clearly articulated and consistently applied a specific policy concerning "natural" claims for food products. (*Id.* ¶¶ 16-20.) Under FDA's longstanding policy, "[T]he agency has not objected to the use of the term [natural] if the food does not contain added color, artificial flavors, or synthetic substances." (*Id.* ¶¶ 16-20); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1033 (N.D. Cal. 2009). FDA's policy, while not carrying the full force of federal law, "represents the formal position of FDA." (Stmt. ¶¶ 14-20); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 340 (3d Cir. 2009). Companies are not *required* to follow FDA's advisory policy, but it "may be used in…court proceedings to illustrate acceptable and unacceptable procedures or standards." *Conagra Foods*, 597 F. Supp. 2d at 1033. Put another way, FDA's description of "natural" is an "acceptable … standard" that "may be

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

---

[1] FDA's regulatory purview extends to HFCS and processed sugar.

used in … court proceedings" to establish the "truth" of a challenged statement. *See id.* Tellingly, while Plaintiffs try to distance themselves from FDA's policy in this litigation, when marketing their own sugar products as "natural" to consumers, Plaintiffs too rely on FDA's policy. (Stmt. ¶¶ 26-28.)

**B.     CRA's Compliance with FDA's Policy Renders Its Statements Literally True and Non-Misleading**

Defendants have put forth evidence that HFCS qualifies as a "natural" product under FDA's policy because it is made from corn (and not anything else) and contains nothing artificial or synthetic. (*Id.* ¶¶ 21-22.) In addition, FDA issued specific guidance to CRA stating that FDA "would not object to the use of term 'natural' on a product containing … HFCS produced by the manufacturing process [used by Defendants]." (*Id.* ¶¶ 23-24.) CRA and its members specifically relied on this advice, as it was permitted by the FDA to do. (*Id.* ¶ 25.)

While their pleadings contend otherwise, Plaintiffs have admitted under oath that HFCS can qualify as natural under FDA's policy:

> Q.     Under FDA's existing definition, HFCS can be natural. Is that right?
>
> A.     Yes.

(*Id.* ¶ 29.) Documents produced by Plaintiffs further confirm that there is no dispute that HFCS meets FDA's "natural" policy. (*Id.* ¶ 32 ("FDA has … provided the Corn Refiners enough wiggle room under FDA's current guidance to continue to say HFCS is natural."); ¶ 30 ("Current FDA regulations allow all the sweeteners listed below [including HFCS] to be used in products labeled as 'Natural.'") ¶ 31.[2]

Defendants' undisputed compliance with FDA's policy means that their state-

---

[2] The Sugar Association, recognizing that HFCS satisfies FDA's "natural" policy, actually petitioned FDA in 2006 to change that policy, specifically so that HFCS might no longer meet it. (Stmt. ¶¶ 33-35.) FDA has never acted on The Sugar Association's petition and the agency's longstanding policy on "natural," which HFCS satisfies, remains operative to this day. (*Id.* ¶ 36.)

ments are *as a matter of law* neither false nor misleading.  *See Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998) ("the challenged statements … are similar enough to the approved statements for the Court to conclude, as a matter of law, that they are neither false nor misleading."); *Coors Brewing Co. v. Anheuser-Busch Cos.*, 802 F. Supp. 965, 969-70 (S.D.N.Y. 1992) (claim cannot be literally false when it meets at least one definition of a word); *Buetow v. A.L.S. Enters., Inc.* 605 F.3d 1178, 1186-87 (8th Cir. 2011) (a claim cannot be literally false if it is used in accord with a reasonable interpretation of a word); *Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 336 (N.D. Cal. 1995) (look to objective industry standards to determine whether a claim is literally false); *see also Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1234 (S.D. Fla. 2007) (advertisements that generally comported with approved label were not misleading as a matter of law); *Yumul v. Smart Balance, Inc.*, 2011 WL 1045555, at *9 (C.D. Cal. Mar. 14, 2011) ("If Smart Balance complied with the regulatory requirements for labeling a product "Cholesterol Free," then its label is not "false and misleading"); *Red v. The Kroger Co.*, 2010 WL 4262037, at *4 (C.D. Cal. Sept. 2, 2010) ("The undisputed fact that the products at issue comply with the requirements under which 'cholesterol free' can be used directly undermines Plaintiffs' argument that Defendant's use of 'cholesterol free' in this case is 'false and misleading.'").

## C.    Plaintiffs' Litigation-Constructed Definitions Are Rhetoric, Not Evidence

Plaintiffs cannot put forward any evidence or legal authority demonstrating that their litigation-constructed definitions of "natural" are somehow binding on Defendants or recognized by any applicable agency or industry standard relating to natural foods.[3] Rather, as one court recently observed in granting summary judgment against

---

[3] Even if Plaintiffs could come up with some other plausible definition of "natural," the fact remains that Defendants' use of the term comports with FDA's policy, and therefore cannot as a matter of law be false.  *See Coors*, 802 F. Supp. at 969 (where challenged term "equally open to either party's definition[,]" it is not literally false.).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

claims strikingly similar to those here: "Plaintiffs' [not "man-made"] definition of natural "is merely an extension of their rhetoric that HFCS is artificial because it 'cannot be grown in a garden or field, it cannot be plucked from a tree, and it cannot be found in the oceans or seas…'" *Ries v. Hornell Brewing et al.*, 2013 WL 1287416, at *5 (N.D. Cal. Mar. 28, 2013) (granting summary judgment for defendant and noting that "[i]n the face of a motion for summary judgment, rhetoric is no substitute for evidence"); *Stiefel Labs v. Brookstone Pharm.,* 535 F. App'x. 774, 777-78 (11th Cir. 2013) (granting summary judgment for defendant on issue of falsity because plaintiff failed to establish the meaning of the term "generic" in the relevant context); *see also Pelayo v. Nestle USA, Inc.*, 2013 WL 5764644, at *5-6 (C.D. Cal. Oct. 25, 2013) (granting motion to dismiss because "Plaintiff . . . failed to allege either a plausible objective definition of the term 'All Natural' or her subjective definition of the term 'All Natural" that is shared by the reasonable consumer."). Nor do Plaintiffs present any authority for the proposition that they can apply their litigation-constructed definition retroactively to Defendants' speech, which was made in explicit reliance on FDA's guidance. No such authority exists because FDA's policy provides "an acceptable standard" upon which Defendants were entitled to rely.

Not only are Plaintiffs' arguments unsupported by evidence, they are undermined by their own conduct. Plaintiffs' invented definitions (Stmt. ¶ 37) are so untenable that if applied to their own products, those products could not qualify as "natural" – even though they are advertised as such. Plaintiff Western Sugar, for example, admitted that GMO sugar beets, from which its refined sugar products are made, are "man-made," yet sugar derived from those beets is labeled "natural." (Stmt. ¶¶ 38-40.) Plaintiffs also admit that their sugar products (including invert sugar) are substantially processed – i.e., not "found in nature" –  including through the use of acids, enzymes, and molecular transformations, *see id*. ¶¶ 38-41, 43-45, 47-49, 51-53, yet Plaintiffs market these products as "natural" without equivocation. (*Id.* ¶¶ 38, 42, 46, and 48.) Plaintiffs' own use of the term "natural" under these circumstances demonstrates once

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  again that even Plaintiffs do not believe what they have alleged in this case.

2          This is an issue that screams out for summary adjudication.  Given the eviden-

3  tiary record, no reasonable jury could find that it was false for Defendants to refer to

4  HFCS as "natural." Similarly, Plaintiffs can point to no evidence that any reasonable

5  consumers, and certainly not any commercial buyers of HFCS (the only persons who

6  directly purchase HFCS), were somehow misled by the use of the term "natural."

## II.     Defendants Are Entitled to Summary Adjudication on the Issue of "Corn Sugar"

9          Plaintiffs next posit that it is false and misleading for Defendants to refer to

10  HFCS as "corn sugar." (Stmt.  ¶ 54.)  As a starting point, this claim is precluded by

11  the First Amendment because CRA's educational campaign is inextricably linked to

12  its FDA petition, and is therefore protected free speech.  In addition, Plaintiffs' claims

13  that it was false for Defendants to call HFCS corn sugar because "corn sugar" also

14  refers to another sweetener, dextrose, fails for another reason.  (*Id.* ¶ 55.)  The evi-

15  dence is indisputable that every time the term "corn sugar" was used it was referenced

16  explicitly to describe HFCS.  No one was, or could have been, misled into thinking

17  that "corn sugar" meant dextrose.  Moreover, it is literally true to refer to HFCS as

18  "corn sugar" because there is no dispute that: (1) HFCS is derived from corn; and (2)

19  HFCS is a type of sugar.

### A.     The *Noerr-Pennington* Doctrine Bars Plaintiffs' Claims

21          Plaintiffs challenge Defendants' use of the term "corn sugar," which CRA in-

22  cluded in television spots and print media that ran contemporaneously with the filing

23  and pendency of Defendants' FDA petition. (Stmt. ¶¶ 56.)  In that petition, Defend-

24  ants sought permission from FDA for food and beverage companies to label HFCS as

25  "corn sugar" on ingredient labels.  As explained below, the challenged "corn sugar"

26  statements are directly related to CRA's petition to FDA and are therefore protected

27  free speech and immune from liability, pursuant to the *Noerr-Pennington* doctrine.

28  *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006-07 (9th Cir.

2012).

"The essence of the *Noerr-Pennington* doctrine is that those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct." *Id.* at 1006.  The doctrine applies to petitions to administrative agencies, such as FDA.  *See, e.g.*, *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Core-Vent Corp. v. Nobel Industries Sweden A.B.*, 1998 WL 650269, n.3 (9th Cir. 1998); *Tyco Healthcare Group LP v. Mutual Pharm. Co., Inc.*, 2014 WL 3844166, at *8 (3d Cir. 2014).   And courts have applied the *Noerr-Pennington* doctrine to bar claims under the Lanham Act.  *See, e.g., Sliding Door Co. v. KLS Doors, LLC*, No. EDCV 13-00196 JGB, 2013 WL 2090298, at *6 (C.D. Cal. May 1, 2013); *Wagner v. Circle W. Mastiffs*, 732 F. Supp. 2d 792, 804 (S.D. Ohio 2010); *see also EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1084 (C.D. Cal. 2010) (noting that the Court "may ultimately determine" that the doctrine applies to Lanham Act claims, but reaching decision on other grounds); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 249 F. Supp. 2d 463, 470 (M.D. Pa. 2003) *aff'd on other grounds*, 401 F.3d 123 (3d Cir. 2005).

Importantly, to provide "breathing room" to engage in petitioning activity, courts have extended *Noerr-Pennington* immunity not only to direct communications with the government, "but also to … public relations campaign[s] … [whose] aim was to influence the passage of favorable legislation." *Sosa v. DIRECTV, Inc.*, 437 F. 3d 923, 934 (9th Cir. 2006) (citing *Noerr*); *see also Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988) ("A publicity campaign directed at the general public, seeking legislation or executive action, enjoys … immunity….") (citing *Noerr*); *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000) (doctrine protected a publicity campaign directed at stopping a town from zoning land for non-commercial use); *Subscription T.V., Inc. v. S. Cal. Theatre Owners Ass'n*, 576 F.2d 230, 232 (9th Cir. 1978) (applying doctrine to an advertising campaign designed to influence voter initiative process); *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

F.3d 834, 839 (7th Cir. 2011) (doctrine protected "public relations campaign which was inextricably intertwined" with petitioning activities ).

It is the law of this Circuit that a defendant's activity cannot form the basis for liability "if it is 'incidental' to a valid effort to influence governmental action." *Sosa*, 437 F.3d at 934; *Allied Tube*, 486 U.S. at 492; *see also Theme Promotions,* 546 F.3d at 1007.  For example, statements made "to news outlets … and [letters posted] on organizational websites" that are part of "publicity campaign[s] to influence governmental action" are "entitled to *Noerr–Pennington* immunity." *Feld Entm't. Inc. v. Am. Soc. for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 307-08 (D.D.C. 2012).  Similarly, as recognized by the Supreme Court, "[c]irculars, speeches, newspaper articles, editorials, magazine articles, memoranda and ... other documents" are entitled to protection when part of a "publicity campaign." *See Noerr*, 365 U.S. at 141-2.[4]

Here, the challenged "corn sugar" phrase was incidental to CRA's FDA petitioning activities, inextricably intertwined with protected speech, and was part of an effort to influence FDA to grant CRA's petition and to educate consumers about the name and its merits.  On September 14, 2010, Defendants filed a "Citizens Petition" with FDA seeking to allow food and beverage manufacturers the option of using "corn sugar" to identify HFCS on food and beverage ingredient labels.  (Stmt. ¶¶ 56-57.) The proposed change would have allowed food and beverage makers to list "corn sugar" on ingredient labels as an alternate name for HFCS, if they chose to do so.  (*Id.* ¶ 58.)  As part of its petitioning activity, CRA encouraged consumers to submit comments to FDA.  (*Id.* ¶¶ 60-67, 72-78.)  In anticipation of filing the petition, and to create support and an informational foundation for the petition, CRA launched the website CornSugar.com on September 4, 2010. (*Id.* ¶¶ 60-61.) This website expressly and

---

[4] Importantly, the *Noerr-Pennington* doctrine protects a broader set of speech than California's anti-SLAPP provision, which applies only to conduct "arising from" petitioning activity. *Select Portfolio Servicing v. Valentino*, 875 F. Supp. 2d 975, 988 (N.D. Cal. 2012) ("The phrase 'arising from' [in the anti-SLAPP statute] arguably covers less behavior than 'conduct incidental to' the petitioning activity [from the *Noerr-Pennington* doctrine].")

specifically directed individuals to support CRA's FDA petition, contained hyperlinks to FDA's docket, and directed users to download a copy of CRA's petition. (*Id.* ¶¶ 62-63, 73.)  CRA also updated its existing website, SweetSurprise.com, to include information about the FDA petition and to link it to the CornsSugar.com website. (*Id.* ¶¶ 64-65.)  The SweetSurprise.com website also provided links to the FDA petition, the FDA's docket, and a link to "Find and Comment on FDA Dockets." (*Id.* ¶ 66.)  CRA also informed FDA that its websites would be part of its petitioning activities, stating: "We are confident that…the [CornSugar.com and SweetSurpise.com] websites will continue to play a valuable role in educating consumers regarding … our pending Citizen Petition." (*Id.* ¶ 67.)

In September 2010 (the same month that the petition was filed), CRA began running – for the first time – television spots and print media that referred to HFCS as "Corn Sugar." (*Id.* ¶¶ 68, 69, 71.) This media sought to establish an educational foundation for understanding that HFCS is a form of "corn sugar" and to influence governmental action by directing consumers to "learn more" by visiting either CornSugar.com or SweetSurpise.com, which websites, as discussed above, encouraged consumers to review and support the FDA petition.  (*Id.* ¶¶ 68-73 (TV ads and websites were "were trying to make people aware of the petition"));[5] *see, e.g.*, *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 607-08 (6th Cir. 2009) (considering websites referenced in print ads under Lanham Act); *N. Star Indus., Inc. v. Douglas Dynamics LLC*, 848 F. Supp. 2d 934, 946-48 (E.D. Wis. 2012)(where print and TV ads directed consumers to website to get more information, court analyzed statements made on the website). CRA also distributed pamphlets which, like the websites, supported CRA's petition, for example, stating "Support Corn Sugar FDA Petition" and directing parties to sign the petition. (Stmt. ¶ 74-75.)

---

[5] The fact that CRA intended to continue undefined aspects of the "corn sugar" education campaign ***even if the petition failed*** does not undermine the undisputed evidence that the challenged corn sugar statements were launched and implemented to support the petition. Indeed, it confirms that the two were inextricably linked together from the beginning, and as noted below, CRA ultimately decided to curtail the challenged campaign when the petition was denied.

CRA specifically conveyed to FDA that its purpose in instituting the "corn sugar" campaign was to support CRA's petition. (*Id.* ¶ 76 ("When CRA filed its citizen petition, it conducted a nation-wide high profile campaign *in connection with the petition*.") (emphasis added); ¶ 77 ("CRA has widely publicized and explained the basis for its petition to FDA…").)   Internal emails contemporaneous with the petition also discuss expanding the corn sugar media plan in Washington, DC, to communicate directly to Congress and the FDA leadership involved with the FDA petition. (*Id.* ¶ 78.) Finally, when FDA denied the petition in May 2012, CRA discontinued the CornSugar.com website and did not renew its television and print media that featured the term "corn sugar." (*Id.* ¶¶ 79-80.)

As in *Noerr*, the conduct at issue here was an "attempt ... to influence [governmental action] by a campaign of publicity." 365 U.S. at 143. The challenged corn sugar statements began and ended contemporaneously with the filing and denial of CRA's FDA petition,[6] and during their entire run-time, the statements sought to educate consumers about the FDA petition and the issues raised in it.  As such, CRA's "corn sugar" campaign,[7] although not petitioning activity itself, is inextricably intertwined with its petitioning activity, such that it is entitled to immunity under the *Noerr-Pennington* doctrine.  *See Allied Tube*, 486 U.S. at 507; *Manistee Town Ctr.*, 227 F.3d at 1093; *Subscription T.V., Inc.*, 576 F.2d at 232 (9th Cir. 1978); *Mercatus Grp.*, 641 F.3d at 839; *Sosa*, 437 U.S. at 934-35; *Theme Promotions*, 546 F.3d at 1007. Put another way, it would be impossible to hold Defendants liable for falsely referring to HFCS as "corn sugar" without infringing upon Defendants' protected First Amendment activity.  Summary adjudication on Plaintiffs' corn sugar claims is, therefore, necessary to

---

[6] Plaintiffs' own allegations note the temporal connection between the challenged campaign and the FDA Petition. *See* SAC at 58.

[7] It is immaterial that CRA's communications may be "construed to contain advertising or promotion …," because the Ninth Circuit has noted that "in nearly every instance in which *Noerr–Pennington* has been applied, including *Noerr* itself, the petitioning conduct at issue was carried out to further the petitioning party's commercial interests." *Sliding Door Co.*, 2013 WL 2090298 at *6.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    protect Defendants' First Amendment rights.[8]

2

3    **B.    It is Not False or Misleading to Refer to HFCS as "Corn Sugar"**

4

5        Plaintiffs contend that CRA's use of the phrase "corn sugar" confuses consumers into thinking that HFCS is dextrose, a different sweetener also made from corn, which FDA permits to be described as "corn sugar" on food and beverage labels.[9] (Stmt. ¶ 81.)  This argument makes no sense, does not give rise to Lanham Act liability, and in any event is entirely devoid of factual support.  A review of the challenged television commercials, pamphlets, and websites demonstrate that ***every time*** CRA used the term "corn sugar" in its campaign, CRA openly, obviously, and unequivocally linked that term to HFCS, making entirely clear that "corn sugar" referred to HFCS, not another ingredient such as dextrose.  (*Id.* ¶¶ 83-85.)  Given the clear context of the challenged statements, the Court may, and should, grant summary adjudication because no reasonable jury could conclude that the challenged "corn sugar" statements falsely or misleadingly refer to dextrose.  *See, e.g.*, *Kwan Software Eng'g, Inc. v. Foray Technologies, LLC*, WL 572290, at *5-6  (N.D. Cal. 2014); *compare  Hairston v. South Beach Beverage Co., Inc.*,  2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (dismissing deception claim that was based on "a single out-of-context phrase"). Plaintiffs have also been unable to point to a single person who was misled into thinking that CRA's use of the term "corn sugar" referred to dextrose rather than HFCS. (*see* e.g., Stmt. ¶ 86.)  Indeed, one Plaintiff actually used the term "Corn Sugar" on its website to refer to HFCS, indicating Plaintiff's agreement that "Corn Sugar" accurately describes HFCS. (*Id.* ¶ 87.)  Because Plaintiffs can offer no evidence suggesting

---

[8] This lawsuit is a clear reflection of The Sugar Association's devoted efforts to suppress CRA's petitioning activities. Indeed, within a month of CRA's filing of the petition, The Sugar Association's members wanted to "oppose" the petition with "blunt force" and "fight" to "stop the consideration of the petition by the FDA." This lawsuit was an improper attempt to do just that—which made one major sugar producer bow out of the lawsuit and even immediately quit the association. (Stmt. ¶ 59.)

[9] FDA's approval of "corn sugar" as an alternate name for dextrose pertains only to use of that term on ***product ingredient labels***.  (Stmt. ¶ 82.)

DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON FALSITY

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

that the term "corn sugar" is false or misleading, summary adjudication is appropriate on that issue as well. *See Stiefel Labs,* 535 F. Appx. at 777-78.

Plaintiffs' allegation that some of CRA's member companies misleadingly used the term "corn sugar" on price sheets and other documents (Stmt. ¶ 85) is also unsupported by evidence. The record is undisputed that price sheets and related documents were distributed only to food and beverage manufacturers who are intimately familiar with the specifications of the ingredients they purchase – they knew they were buying HFCS. (*Id.* ¶¶ 88-112); *see Core–Vent Corp*, 1998 WL 650269, at *4 (where statements made to sophisticated consumers, court should consider that as part of the relevant context). The price sheets' references to "corn sugar," in context, clearly referred to HFCS. (Stmt. ¶¶ 91, 97, 103, 109 (price sheets were issued during seasonal HFCS contract campaigns); ¶¶ 92, 98, 104, 110 (price sheets refer to specific formulations of HFCS).) And Plaintiffs can point to no evidence that these sophisticated commercial buyers were misled into believing that a reference to "corn sugar" on a price sheet referred to dextrose rather than HFCS. Of course, these manufacturers, who have precise recipes and formulation needs, knew what they wanted and what they were getting. They were not misled. Summary adjudication is appropriate because Defendants' use of the term "corn sugar" is accurate and there is not a shred of evidence that it is misleading.[10]

## C.   There Is No Dispute of Material Fact That HFCS Is Made From Corn or That It Is a Form of Sugar

HFCS is made from corn, and only corn. (Stmt. ¶¶ 114-115.) Plaintiffs do not contend otherwise. (*Id.* ¶ 115.) And while Plaintiffs' pleadings suggest otherwise,

---

[10] The fact that FDA declined to permit HFCS to be referred to as "corn sugar" on nutrition labels is not evidence that doing so is false or misleading. FDA did not find that it was false or misleading to refer to HFCS as "corn sugar," and as the Supreme Court has recently stated, the Lanham Act and FDA's regulatory authority complement each other with respect to labeling. *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2231-32 (2014). FDA's denial of a Citizen's Petition for a labeling change is a far cry from a mandate that the requested label would be false or misleading. *Compare Dorsett v. Sandoz, Inc.*, 699 F. Supp. 2d 1142, 1157 (C.D. Cal. 2010) ("The FDA's rejections of citizen petitions . . . do not constitute clear evidence that warnings of [the association at issue in those petitions] would have been false and misleading, and hence not permitted. . . .").

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

there is also no factual dispute that HFCS is a form of sugar.  (*Id*. ¶ 116.)  According to the FDA,[11] USDA, the Center for Disease Control ("CDC"), the American Heart Association (AHA), and many other sources, HFCS is one among many sweeteners in the broad category of "sugar" or "sugars."  (*Id*. ¶¶ 117-120)(according to FDA, "Sugars shall be defined as the sum of all free mono- and disaccharides"); ¶ 123 (according to the AHA, added sugars include "any sugars or caloric sweeteners that are added to foods or beverages during processing or preparation…such as high fructose corn syrup."); ¶ 121 (according to the USDA, "[a]dded sugars include high fructose corn syrup…."); ¶ 122 (according to the research arm of the CDC, "[e]xamples of added sugars include… high fructose corn syrup.").)  Indeed, FDA ***requires*** companies to account for HFCS in the "sugars" category on food labels, and requires that sugar content claims (such as "sugar free," "free of sugar," "no sugar," and "zero sugar") account, among other things, for the presence or absence of HFCS. (*Id*. ¶¶ 118-119.)

Stripped of their litigation rhetoric, Plaintiffs admit that HFCS is a form of sugar.  (*Id*. ¶¶ 124-128.) For example, in an internal literature review, Plaintiffs admitted that it is a "common practice" to refer to starch-based sweeteners like HFCS as "sugar."  (*Id*. ¶ 125.)  Plaintiff Michigan Sugar, for example, created a document that lists HFCS as one of many "types and grades of sugar."  (*Id*. ¶ 124.)  Prior to filing this lawsuit, The Sugar Association's website stated that "nutritive sweeteners (***sugars***) in the diet ***include*** honey, maple syrup, corn syrup, ***high fructose corn syrup***, fructose, and fruit juice concentrate." (*Id*. ¶ 126) (emphasis added).)  Even after taking that website down, The Sugar Association's Vice President of Public Policy and Education explained that it was "irritating" but "correct" to refer to HFCS as a sugar. (*Id*. ¶ 127.) Indeed, The Sugar Association internally questioned whether denying that HFCS is a type of "sugar" could be viewed as disparaging.  (*Id*. ¶ 128.)  As irritating as the truth might be to Plaintiffs, it is an undisputed fact that HFCS, which consists of the mono-

---

[11] FDA's regulation stating that sugar shall refer to sucrose applies only to food ingredient labels and labeling, and not to any other form of speech. *See* 21 C.F.R. 168.111 ("***For purposes of ingredient labeling***, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets.")

DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON FALSITY

saccharide (i.e., the simple sugar) fructose and simple sugar glucose, is a type of sugar.  Accordingly, summary adjudication is appropriate on the issue of whether it is false or misleading to refer to HFCS as "corn sugar."

## III.   Defendants Are Entitled to Summary Adjudication on Plaintiffs' "Nutritional Equivalence" Claim

Plaintiffs have sued Defendants for stating that sugar and HFCS are nutritionally equivalent, that "sugar is sugar," and that "your body cannot tell the difference" between the two products when consumed in foods.  When viewed in the context in which those statements were made – and not intentionally divorced from their context, as they were presented in the SAC – Defendants' statements are unquestionably true and far from misleading.  Artful pleading, rhetoric, and inadmissible and admittedly unreliable documents cannot save Plaintiffs' defective claims at summary adjudication – where they must put forth admissible evidence to support their claims.  *See, e.g.*, *Broadwood Inv. Fund LLC v. United States*, 2012 WL 4840703, at *8 (C.D. Cal. Sept. 21, 2012) ("summary judgment is the 'put up or shut up' moment in a lawsuit…").

### A.   Defendants' Statements Must Be Read in the Context in Which They Were Made

Throughout their SAC, Plaintiffs cherry-pick and distort statements made in CRA's educational campaign, divorcing those statements from their full context and meaning.  *See, e.g.*, SAC ¶¶ 52, 54, 62-63, and 70 (alleging that CRA's educational campaign states that HFCS is "directly comparable to sugar," "the same as sugar," and "identical to real sugar").  Contrary to Plaintiffs' allegations, it is undisputed that CRA's educational campaign **never** stated that HFCS is "identical" to sugar or that the two sweeteners are the "same" in every respect.  (Stmt. ¶¶ 129-130.)  Of course they are not.  Rather, when looked at in its actual context, the message of the educational campaign is that medical and nutrition experts and leading studies state that HFCS is **nutritionally** and **metabolically** equivalent to sugar.  (*Id*. ¶ 131); *see Southland Sod Farms*, 108 F.3d at 1139 (under the Lanham Act, a statement must always be

DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON FALSITY

looked at in its full context); *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1154 (9th Cir. 2011) ("surrounding context" is important).

The messages that ran in CRA's educational campaign either directly referred to the opinions of medical and nutrition experts or directed the viewer to CRA's SweetSurprise.com or CornSugar.com websites, where such research was expressly discussed. (Stmt. ¶¶ 132-33.) For example, all of the challenged television spots directed viewers to CRA's SweetSurprise.com and CornSugar.com websites so that viewers could "get the facts." (*Id.* ¶ 132.) Similarly, the print media that ran in connection with CRA's campaign directed readers to CRA's websites for facts about the nutritional equivalence of HFCS and sugar. (*Id.* ¶ 134.) As such, the contents of the SweetSurprise.com and CornSugar.com websites must be considered as the appropriate context in which the challenged statements were made. *See Hensley*, 579 F.3d 603 at 607-08; *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1251 (11th Cir. 2002) (considering reference materials for proper context); *N. Star Indus.*, 848 F. Supp. 2d at 946-48 (analyzing statements on website referenced in commercial as part of the context); *Intertek Testing Servs. NA, Inc. v. Curtis-Strauss LLC et al.*, No. 98903F, 2000 WL 1473126, at *16-18 (Mass. Supp. Ct. Aug. 8, 2000) (considering external website for context of challenged advertisement).

Those websites, to which viewers of the challenged statements were directed, provided visitors with science-based information, including the opinions of leading experts, on the nutritional and metabolic equivalence of HFCS and sugar. (Stmt. ¶¶ 135-136.) For example, the CornSugar.com website added context to the challenged statements by quoting and citing to a number of studies and conclusions from, for example, Harvard Medical School, the American Medical Association ("AMA"), and numerous other experts who found, for example, that "There's not a shred of evidence that [sugar and HFCS] are different biologically"; that "one is not better or worse than the other"; that HFCS "is nutritionally equivalent to sucrose";  that "metabolically, HFCS and sucrose are similar and one is not better or worse than the other" and that

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

"these two sweeteners have the same effects on the body." (*Id.* ¶ 136). The SweetSurprise.com website similarly provided information about "HFCS science and research," and even provided information about the Bocarsly rat study, and the Ventura and Bray publications, which as discussed below, Plaintiffs claim were misleadingly omitted from CRA's statements. (*Id.* ¶¶ 135, 137.)

Thus, when looking at the challenged statements in their proper context, the clear message conveyed is that scientists and experts have found that HFCS is nutritionally and metabolically equivalent to refined sugar (and, indeed, it is). In fact, television spots and print media that aired in connection with CRA's campaign stated that HFCS is nutritionally equivalent to sugar by ***specifically referencing*** the views of medical and nutrition experts. (*Id.* ¶ 133.)

Plaintiffs cannot point to ***any evidence*** which suggests that the cited experts did not in fact say what CRA claimed that they said, or that those experts are unreliable. When a challenged statement's context contains "experts agree" or "studies show" type language, a plaintiff "must do more than show that the tests supporting the claim are unpersuasive." *See Southland Sod Farms*, 108 F.3d at 1139. Rather, the plaintiff must demonstrate that [the studies or experts relied upon] "are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made." *Id.*; *see also Core-Vent Corp.,* 1998 WL 650269, at *5-6 ("Core-Vent failed to adduce evidence which, if believed, would show that the studies do not establish the claim made by Nobel…"). Here, because Plaintiffs have no evidence to undermine the studies and experts relied upon by CRA in its educational campaign, the Court should enter summary adjudication on the issue of nutritional equivalence.

The Court should not be distracted by Plaintiffs' tactics. It is only by stripping away all relevant context that Plaintiffs allege that CRA stated that sugar and HFCS are "identical" and that the two products are "the same." (SAC ¶¶ 62, 69.) Defendants never said – and could not have been understood to say – that sugar and HFCS are "identical." Such a statement would be nonsensical, given the physical and functional

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

differences between the two products, including that one comes from corn and the other from cane or beets.  As such, Plaintiffs' attempts to point out physical differences between the two products is entirely irrelevant. (*See, e.g.,* Stmt. ¶ 138 (asking witness to create a list of physical differences).  Ignoring what the challenged statements actually say, Plaintiffs, for example, rely on a 1997 brief in a trade dispute submitted to the *Secretaria de Comercio y Fomentio Industrial* in Mexico, which has nothing to do with nutritional equivalence.  That brief merely demonstrates the undisputed, unremarkable, and irrelevant fact that HFCS and refined sugar are not identical in physical characteristics, functionality, and chemical composition (before they are metabolized by the body).  (*Id.* ¶¶ 139-41.)   The Mexico brief says nothing about nutritional equivalence.  (*Id.* ¶ 140.)

**B.     The Scientific Consensus is That HFCS and Sugar Are Nutritionally Equivalent.**

Plaintiffs' nutritional equivalence claims are also defeated by an undisputed fact: there is, in fact, an overwhelming weight of authority and consensus of scientific opinion establishing that HFCS and sugar are nutritionally equivalent.  Reliable medical and scientific sources have concluded that HFCS and sugar are nutritionally equivalent.  From the AMA, to professors at respected institutions such as Yale and Harvard, to nutritional and medical journals, to Plaintiffs' "Chief Scientist," to the results of an internal study that was sponsored and designed by Plaintiffs, to Plaintiffs' own (pre-litigation) website, to many other sources – there is widespread scientific agreement that HFCS and sugar are nutritionally equivalent.  (*Id.* ¶¶ 142-158.)  For example, a Professor of Nutrition at Harvard School of Public Health has stated that there is "not a shred of evidence that these products are different biologically." (*Id.* ¶ 145.)  The Academy of Nutrition and Dietetics (formerly the American Dietetic Association) "consistently found little evidence that HFCS differs uniquely from sucrose and other nutritive sweeteners in metabolic effects…'" (*Id.* ¶ 143.)  And, the American Society for Nutrition-Experimental Biology Expert Panel stated that it was "the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

19

consensus of a panel of scientists" that "the body cannot tell the difference between sucrose and high-fructose corn syrup (HFCS)." (*Id*. ¶ 144.) Dozens of other experts, dieticians, and scientists agree. (*Id*. ¶¶ 146-51.)

Internally (and when not posturing for destructive litigation), Plaintiffs themselves have acknowledged – and explicitly agreed with – the overwhelming scientific evidence. Plaintiffs' Chief Scientist Dr. Charles Baker has proclaimed a "precise biological equivalency" between the two products, and concluded that it would be counterproductive to even argue that a difference existed. (*Id*. ¶ 152.) A Sugar Association document also explains that "sugar and other caloric sweeteners [like HFCS] react identically once they enter the body." (*Id*. ¶ 153.) One Plaintiff, American Sugar, admitted that "[p]rofessionals recognize little physiological difference between sugar and high fructose corn syrup." (*Id*. ¶ 154.) And, in 2010, Dr. Baker told The Sugar Association that "[a]rguing dogmatically that a sucrose soft drink is different nutritionally than one sweetened with HFCS-55 ***is not only unsound but inaccurate***." (*Id*. ¶ 155; *see also* ¶¶ 177-184.)

Plaintiffs even commissioned (and then buried) a human clinical study which found no significant nutritional or biologic differences between an HFCS proxy and sugar. (*Id*. ¶¶ 157-160.) Tellingly, before filing this lawsuit, The Sugar Association's own website stated – in terms shockingly similar to what Plaintiffs sued Defendants for saying – that "from a nutrition and calorie perspective, the various types of nutritive sweeteners (sugar, honey, maple syrup, corn syrup, high fructose corn syrup, fruit juice concentrates) ***are very similar***. When you eat a banana or a banana nut muffin, ***your body cannot tell*** which sugars were present in the fruit and which were added by the baker." (*Id*. ¶ 156.)

## C.   The Studies Plaintiffs Cite Are Flawed and Unreliable

In the face of an overwhelming body of scientific evidence, and their own admissions, Plaintiffs have put up limited "evidence" to support their claim that sugar is somehow nutritionally different than HFCS. Specifically, Plaintiffs point to four doc-

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

uments: (1) the 2004 commentary by George Bray *et. al.* ("the Bray Commentary"); (2) Miriam E. Bocarsly's rat study ("the Bocarsly Rat Study"); (3) Eric G. Neilson's editorial *The Fructose Nation*;[12] and (4) the study by Ventura*, et al.,* from the Obesity Journal ("the Ventura Study"). (Stmt. ¶ 161.)  Plaintiffs claim that these documents demonstrate "a likely causal link between HFCS consumption and obesity, hyper-lipidemia, hypertension and other health problems that is not equally presented by the consumption of sucrose."  *Id.*   As explained below, this so-called "evidence" does nothing to support Plaintiffs' litigation position.

   ***First***, the 2004 Bray Commentary (which was not a scientific study) is inadmissible as substantive evidence at trial, as it is a mere speculative hypothesis which has since been abandoned and which Plaintiffs concede was flawed, and thus is irrelevant for summary judgment. *See* Fed.R.Civ.P. 56(c)(2); *Cooper-Harris v. United States*, 965 F. Supp. 2d 1139, 1140 (C.D. Cal. 2013) (Marshall, J.) (only admissible evidence considered for summary judgment).  Bray's co-author, Dr. Barry Popkin, has stated that he and Bray "were wrong in [their] speculations on HFCS about their link to weight."  (Stmt. ¶¶ 161-63.)  Popkin has further noted that "[a]ll sugar you eat is the same, that's what we know now that we didn't know in 2004."  (*Id.* ¶ 164.) The Sugar Association's Chief Scientist lambasted the Bray Commentary as containing a "flawed observational hypothesis" and labeled it "much supposition with little documenta-tion." (*Id.* ¶ 165.)   Internally, The Sugar Association also admitted that the Bray commentary had such "major shortcomings" that it was recanted by its own au-thors. (*Id.* ¶ 166.)  In addition, Defendants have offered a sworn affidavit from an ex-pert explaining many of the shortcomings of the Bray Commentary. (*Id.* ¶ 167.) Given the Commentary's co-author's statements that his conclusions were simply "specula-tion" that turned out to be "wrong," and both parties' agreement that the Bray Com-

---

[12] It is unclear why Plaintiffs believe Neilson's editorial (which was not a scientific study) helps their cause. The editorial never stated that HFCS was metabolically different than sugar. Indeed, the arti-cle did not address at all the causal link between "HFCS consumption and obesity, hyperlipidemia, hypertension and other health problems that is not equally presented by the consumption of sucrose." (SAC at ¶ 70.)  As such, the Nielson editorial in no way raises a factual dispute with the mountain of evidence establishing the nutritional equivalency of sugar and HFCS.

mentary is flawed, it is not reliable, not admissible, and certainly not evidence upon which a jury could find for Plaintiffs. *See* Fed. R. Evid. 702 (expert evidence must be "the product of reliable principles and methods"); *see, e.g.*, *Pyramid Tech., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 817 (9th Cir. 2014) (excluding purported expert report, absent a *Daubert* challenge, where report was "not reliable"); *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1149, n.4 (9th Cir. 2011)("opinions that are without factual basis and are based on speculation … are "inappropriate material for consideration on a motion for summary judgment"); *CarePartners LLC v. Lashway*, 428 F. App'x 734, 736 (9th Cir. 2011) ("To be cognizable on summary judgment, evidence must be competent.").

*Second*, the Bocarsly Rat Study is similarly inadmissible and cannot be relied upon for purposes of summary judgment. Plaintiffs' Chief Scientist sharply criticized the Rat Study as "compromised" and lacking rigor:

> Q.    … [Y]our analysis of the [Rat] study [is] that it lacks rigor?
>
> A.    That was how I characterized it, yes.
>
> Q.    Yes. And you said that the study rigor was compromised by a lack of fully recording data; correct?
>
> A.    That's correct.

(Stmt. ¶ 169.) Defendants agree: the Bocarsly Rat Study's conclusions are "inconsistent and based on flawed methodology" and have been rejected by many scientists. (*Id.* ¶ 170.) Even apart from Plaintiffs' own admissions about the unreliability of the Bocarsly Rat Study, courts look with suspicion upon animal studies that attempt to extrapolate results to humans. *See, e.g.*, *Siharath v. Sandoz Pharm. Corp.*, 131 F. Supp. 2d 1347, 1366-67 (N.D. Ga. 2001) *aff'd sub nom.*, 295 F.3d 1194 (11th Cir. 2002) ("Extrapolations from animal studies to human beings generally are not considered reliable in the absence of a credible scientific explanation of why such extrapolation is warranted.")(citing cases); *The Sugar Association, Inc., et al. v. McNeil-PPC, Inc.*, 2:04-cv-10077-DSF-RZ, R. 551, at *6 (C.D. Cal. 2008) (striking purported "ex-

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

trapolation" evidence based on The Sugar Association's "failure to provide the requisite analytical support for the extrapolation of [opinions] from rats to humans"); *In re Prempro Products Liab. Litig.*, 738 F. Supp. 2d 887, 894 (E.D. Ark. 2010) ("Federal courts have consistently cautioned against extrapolation of human effects from animal studies."); *Rimbert v. Eli Lilly & Co.*, 2009 WL 2208570, at *12 (D.N.M. July 21, 2009), *aff'd*, 647 F.3d 1247 (10th Cir. 2011)("the effects discussed in the animal papers … remain unproven because the testing methodologies used by the authors of those papers have not [… been] conducted on humans..."). The "compromised" Bocarsly Rat Study is unreliable, not competent, cannot be relied upon for summary judgment, and cannot support a jury finding for Plaintiffs.

***Third***, to the extent Plaintiffs could offer any proof that the Ventura Study even relates to the issues at hand,[13] that study too is inadmissible and thus non-probative for summary judgment purposes. Like their other purported "evidence," prior to relying on it to try to support an implausible litigation position, Plaintiffs determined that the Ventura Study was not credible. Indeed, Plaintiffs' Chief Scientist concluded that the Ventura Study was "so totally flawed that the [Sugar] Association should neither include it in the body of evidence nor should issue any public statement on it." (Stmt. ¶ 172.) Plaintiffs' analysis found the data supporting the Ventura Study was "illogical," "groundless," and "essentially meaningless." (*Id.* ¶ 173.) As such, this flawed study is unreliable, not competent evidence, cannot support a jury finding for Plaintiffs, and thus cannot be relied upon at the summary judgment stage.[14]

To be clear, Defendants are not asking the Court to weigh the credibility of Plaintiffs' evidence. Rather, Defendants ask the Court to accept as true the undisputed facts upon which both sides agree: The Bray Commentary and the Princeton and Ventura studies are unreliable. Plaintiffs' admissions in their authentic and admissible

---

[13] Plaintiffs have failed to causally link the Ventura study to any of the issues in this case.

[14] During his deposition, Dr. Baker attempted to walk back his prior analysis of the Ventura study, but admitted that he never drafted a subsequent statement (publically or privately) recanting his pre-litigation analysis. (Stmt. ¶ 173.)

documents are binding. *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769, 781-83 (C.D. Cal. 2004) (documents produced by party-opponent are admissible at summary judgment).  As such, there is no factual dispute.

### D.    Plaintiffs Have Admitted There Is No Science Differentiating HFCS and Sugar Nutritionally or Metabolically

In addition to Plaintiffs' specific admissions about the unreliability of the studies they cite, Plaintiffs have repeatedly admitted that there is an absence of evidence differentiating sugar from HFCS nutritionally. (*See, e.g.*, Stmt. ¶¶ 152-56, 177-84.)  In 2008, Plaintiffs' Chief Scientist conceded that without more research, they had ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶ 177.) ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (*Id.*)  And in late 2009, The Sugar Association internally found that studies comparing HFCS and sucrose do not allow them "to definitively declare a difference in biological impacts at this time." (*Id.* ¶ 179). While acknowledging the lack of science, Plaintiffs even strategized about how to get around this inconvenient truth, asking: ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶ 180) (emphasis added).)

At the summary adjudication stage, rhetoric and (self-described) "unsound" pleading arguments cannot overcome what Plaintiffs admit is a "lack of science" establishing a nutritional difference between HFCS and sugar. *Ries v. Arizona Beverages USA LLC*,  2013 WL 1287416, at *5 (N.D. Cal. Mar. 28, 2013) (granting summary judgment for defendants on claims that HFCS was not "all natural" and holding that "in the face of a motion for summary judgment, rhetoric is no substitute for evidence."); *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1135-36 (S.D. Cal. 2012) (granting summary judgment to defendants and noting courts should "not give credence to empty rhetoric . . . but credit[] only those assertions that are supported by materials of evidentiary quality.").

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

24

On one side of the Rule 56 column is uncontroverted scientific consensus coupled with Plaintiffs' admissions that HFCS and sugar have a "precise biological equivalence," "react identically once they enter the body," are "very similar," and that "*your body cannot tell*" the difference.  On the other side of the column are three analyses that Plaintiffs admit are unreliable (and an editorial that has nothing to do with this case).  As such, there is no evidence regarding nutritional equivalency on which "a jury could properly proceed to find a verdict for [Plaintiffs], upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 251; *Auvil v CBS 60 Minutes*, 67 F.3d 816, 819-21 (9th Cir. 2000); *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435-37 (9th Cir. 1995); *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1368-70 (9th Cir. 1992)).

In *Auvil*, Plaintiffs offered limited academic and scientific support for their position, but the Ninth Circuit rejected that "scintilla" of evidence as insufficient to create a genuine dispute for summary judgment purposes.  *Auvil*, 67 F.3d at 819-20.  The same result is warranted here.  Because Plaintiffs have not, and cannot, produce evidence sufficient for a jury to find that HFCS and sugar are nutritionally different, summary adjudication is appropriate.

## CONCLUSION

For all of the foregoing reasons, the Court should enter summary adjudication in favor of Defendants on the falsity element of Plaintiffs' natural, corn sugar, and nutritional equivalence claims.

Dated:  August 26, 2014

Respectfully submitted,

WINSTON & STRAWN LLP


By:  /s/ Gail J. Standish
Gail J. Standish
Erin R. Ranahan

Attorneys for Defendants
ARCHER-DANIELS-MIDLAND COMPANY; CARGILL, INCORPORATED; INGREDION INCORPORATED; THE CORN REFINERS ASSOCIATION, INC.; AND TATE & LYLE INGREDIENTS AMERICAS LLC

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

25

*Additional counsel for Defendants:*

Cornelius M. Murphy (admitted *pro hac vice*)
nmurphy@winston.com
Bryna J. Dahlin (admitted *pro hac vice*)
bdahlin@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive`
Chicago, IL 60601-9703
Telephone:   (312) 558-5600
Facsimile: (312) 558-5700

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION ON FALSITY