Gail J. Standish (SBN: 166334)
gstandish@winston.com
Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

Dan K. Webb (admitted *pro hac vice*)
dwebb@winston.com
Stephen V. D'Amore (admitted *pro hac vice*)
sdamore@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:   (312) 558-5600
Facsimile:    (312) 558-5700

Attorneys for Defendants
ARCHER-DANIELS-MIDLAND COMPANY; CARGILL, INCORPORATED;
INGREDION INCORPORATED; THE CORN REFINERS ASSOCIATION, INC.;
AND TATE & LYLE INGREDIENTS AMERICAS LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN SUGAR COOPERATIVE, a Colorado cooperative, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ARCHER-DANIELS-MIDLAND COMPANY, a Delaware corporation, *et al.*,<br><br>Defendants. | **Case No. CV11-3473 CBM (MANx)**<br>REDACTED VERSION<br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION ON PLAINTIFFS' CLAIMS FOR DAMAGES, CORRECTIVE ADVERTISING COSTS, AND DISGORGEMENT**<br><br>Date:         September 23, 2014<br>Time:        10:00 a.m.<br>Place:        Courtroom 2<br>Judge:       Hon. Consuelo B. Marshall |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

TO THE COURT, PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 23, 2014, at 10:00 AM, or as soon thereafter as this matter can be heard before the Honorable Consuelo B. Marshall of the United States District Court for the Central District of California, in Courtroom 2 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, Defendants Archer-Daniels-Midland Company, Cargill, Incorporated, Ingredion Incorporated (formerly Corn Products International, Inc.), The Corn Refiners Association, Inc., and Tate & Lyle Ingredients Americas LLC ("Defendants") will and hereby do move for adjudication pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("By its very terms, [the summary judgment] standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

In this motion, Defendants seek adjudication of Plaintiff's Lanham Act claims for damages, corrective advertising costs, and disgorgement. There is no issue of material fact and Defendants are entitled to summary judgment on these claims as a matter of law because, *inter alia*:

- Plaintiffs' claims for damages and corrective advertising costs fail because the undisputed evidence here establishes that Plaintiffs did not suffer any injury as a result of CRA's Educational Campaign. Accordingly, the Court should enter summary judgment in favor of Defendants on Plaintiffs' claims for actual damages and corrective advertising.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

- Plaintiffs' claim for disgorgement fails because the undisputed evidence here establishes that:  (a) Plaintiffs have not suffered any injury as a result of CRA's Educational Campaign; (b) CRA's Educational Campaign did not reference any Plaintiff or the specific product of any Plaintiff; (c) there are multiple competitors in the relevant market, including competitors with substantial market share that are not Plaintiffs; and (d) an award of disgorgement would result in a windfall. Moreover, the award of disgorgement under the Lanham Act is "subject to the principles of equity," 15 U.S.C. § 1117(a), and the undisputed evidence establishes that it would be inequitable to award Plaintiffs disgorgement.  Accordingly, the Court should enter summary  judgment in favor of Defendants on Plaintiffs' claim for disgorgement.

This motion is based on:  this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; Defendants' Local Rule 56-1 Statement of Uncontroverted Facts and Conclusions of Law filed concurrently herewith; all pleadings and papers on file in this action; and any oral argument that may be presented to the Court at the time of the hearing on this motion.  This motion is made following the conference of counsel pursuant to Local Rule 7-3 that took place on August 19, 2014.


Dated:  August 26, 2014                    Respectfully submitted,
                                           WINSTON & STRAWN LLP


                                           By:  /s/ Gail J. Standish
                                                Gail J. Standish
                                                Erin R. Ranahan

                                           Attorneys for Defendants
                                           ARCHER-DANIELS-MIDLAND COMPANY;
                                           CARGILL, INCORPORATED; INGREDION
                                           INCORPORATED; THE CORN REFINERS
                                           ASSOCIATION, INC.; AND TATE & LYLE
                                           INGREDIENTS AMERICA LLC

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1

2    *Additional counsel for Defendants:*

3    Cornelius M. Murphy (admitted *pro hac vice*)
     nmurphy@winston.com
4    Bryna J. Dahlin (admitted *pro hac vice*)
     bdahlin@winston.com
5    WINSTON & STRAWN LLP
     35 W. Wacker Drive
6    Chicago, IL 60601-9703
     Telephone:  (312) 558-5600
7    Facsimile: (312) 558-5700

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

ARGUMENT ...................................................................................................................4

I.    Plaintiffs' Claims For Actual Damages And Corrective Advertising Costs Fail Because The Undisputed Evidence Establishes That Plaintiffs Have Not Suffered Any Injury Resulting From CRA's Educational Campaign .........................................4

    A.    A Plaintiff Must Establish Actual Evidence Of Injury Resulting From The Alleged False Advertising To Recover Actual Damages Under The Lanham Act ..................5

    B.    The Undisputed Evidence Establishes That Plaintiffs Cannot Establish Any Injury Resulting From CRA's Educational Campaign ...................................................7

        1.    Plaintiffs Suffered No Injury At All During CRA's Educational Campaign ..............................................7

        2.    Plaintiffs Cannot Establish Any Injury Suffered As A Result Of CRA's Educational Campaign ..........................10

        3.    The Undisputed Facts Make Any Claim Of Injury Resulting From The CRA's Educational Campaign Speculative ..............................................................13

    C.    Plaintiffs' Claim For Corrective Advertising Costs Fails .............20

II.    Plaintiffs' Claim For Disgorgement Fails ...............................................21

    A.    Disgorgement Is Inappropriate In A Case Of Non-Comparative Advertising Where Multiple Competitors Could Seek To Recover The Defendant's Profits ........................22

    B.    Awarding Disgorgement To Plaintiffs Would Be Inequitable .................................................................................23

CONCLUSION .............................................................................................................25

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANTS' MEMO IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Argus Inc. v. Eastman Kodak Co.*,
  801 F.2d 38 (2d Cir. 1986) ................................................................. 16

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
  829 F. Supp. 2d 802 (D. Minn. 2011) ................................................ 7, 14, 19

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
  258 F.3d 578 (7th Cir. 2001) ............................................................. 10, 17

*Binder v. Disability Grp., Inc.*,
  772 F. Supp. 2d 1172 (C.D. Cal. 2011) ............................................. 21

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
  627 F. Supp. 2d 384 (D.N.J. 2009) .................................................... 14

*Burndy Corp. v. Teledyne Indus., Inc.*,
  584 F. Supp. 656 (D. Conn. 1984), *aff'd*, 748 F.2d 767 (2d Cir. 1984) ............ 22

*CKE Restaurant v. Jack In The Box, Inc.*,
  494 F. Supp. 2d 1139 (C.D. Cal. 2007) ............................................. 5, 17

*Cytosport, Inc. v. Vital Pharm., Inc.*,
  894 F. Supp. 2d 1285 (E.D. Cal. 2012) ............................................. 7

*FortuNet, Inc. v. Gametech Arizona Corp.*,
  2008 WL 5083812 (D. Nev. Nov. 26, 2008) ...................................... 5, 6, 7

*Gales v. Winco Foods*,
  2011 WL 3794887 (N.D. Cal. Aug. 26, 2011) ................................... 8

*Harper House, Inc. v. Thomas Nelson, Inc.*,
  889 F.2d 197 (9th Cir. 1989) ............................................................. *passim*

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
  191 F.3d 813 (7th Cir. 1999) ............................................................. 25

*Iams Co. v. Nutro Prods., Inc.*,
  2004 WL 5779999 (S.D. Ohio July 6, 2004) .................................... 7, 10

*In re Century 21-Re/Max Real Estate Advertising Claims Litig.*,
  882 F. Supp. 915 (C.D. Cal. 1994) .................................................... 21

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

ii

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) ...........................................................5, 10, 14, 23

*Magazine Co. v. Murdoch Magazines Distribution, Inc.*,
   393 F. Supp. 2d 199 (S.D.N.Y. 2005) ...............................................................16

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   454 F. Supp. 2d 966 (C.D. Cal. 2006 ) .................................................................8

*PBM Prods., LLC v. Mead Johnson & Co.*,
   2010 WL 957756 (E.D. Va. Mar. 12, 2010).......................................................21

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
   2011 WL 4852472 (C.D. Cal. Oct. 12, 2011) ......................................................6

*QS Wholesale, Inc. v. World Mktg., Inc.*,
   2013 WL 1953719 (C.D. Cal. May 9, 2013)................................................14, 19

*Quia Corp. v. Mattel, Inc.*,
   2011 WL 2749576 (N.D. Cal. July 14, 2011) ....................................................20

*RingCentral, Inc. v. Quimby*,
   711 F. Supp. 2d 1048 (N.D. Cal. 2010), *vacated in part on other grounds*,
   781 F. Supp. 2d 1007 (N.D. Cal. 2011)..............................................................10

*Steak Umm Co. v. Steak 'Em Up, Inc.*,
   2011 WL 3679155 (E.D. Pa. Aug. 23, 2011) .......................................................7

*TrafficSchool.com, Inc. v. Edriver Inc.*,
   653 F.3d 820 (9th Cir. 2011) ..............................................................10, 22, 23

**STATUTES**

15 U.S.C. § 1117(a) ...............................................................................21, 23

15 U.S.C. § 7241...........................................................................................15

18 U.S.C. § 1350 ..........................................................................................15

**OTHER AUTHORITIES**

S.E.C. OMB No. 3235-0569, File No. 4-460 ........................................................15

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## MEMORANDUM OF POINTS AND AUTHORITIES

In its very first ruling addressing Plaintiffs' claims, the Court held that: "Plaintiffs have not presented any evidence to support their burden on the claims that CRA's statements have influenced any purchasing decisions and that Plaintiffs have suffered an injury."  The Court thus dismissed Plaintiffs' California claim under the state's anti-SLAPP statute, but jurisdictionally could not make the same ruling as to Plaintiffs' remaining, identical federal Lanham Act claim.  Months of scorched-earth discovery now establish that the Court's early conclusion should apply across the board, ending Plaintiffs' remaining Lanham Act claim for damages.  Contrary to the grandiose posturing of their lawyers, and the pie-in-the-sky calculations to be posited by their damages experts, Plaintiffs cannot establish any injury they suffered as a result of CRA's Educational Campaign.

Let's start with the allegation that CRA's Educational Campaign injured Plaintiffs by causing an erosion in the price of refined sugar.  Exactly the ***opposite*** occurred.  During the time period of CRA's Educational Campaign, the price of refined sugar soared to ***record*** highs.  Buoyed by these high prices, Plaintiffs rejoiced over their financial performance, to the point of actually praising the Lord for their good fortune in business documents.  And in contemporaneous documents that memorialized all material information about Plaintiffs' business (10-K filings, shareholder presentations, etc.) there is not one whit of information about CRA's Educational Campaign, much less any hint that it was injuring Plaintiffs by eroding the price of refined sugar or otherwise.  The price of refined sugar later did decline, but Plaintiffs affirmatively claim (outside this case) that the reason for the decline was ***not*** CRA's Educational Campaign at all but, instead, "dumped" sugar from Mexico that flooded domestic supply and thereby "wrecked" and "ruined" years of high prices enjoyed by the refined sugar industry.  Plainly, Plaintiffs cannot show that they were injured by any "erosion" in the price of refined sugar as a result of CRA's Educational Campaign—particularly when they are explicitly blaming something else.

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Plaintiffs alternatively claim they were injured because food and beverage manufacturers, some of whom switched from using HFCS to refined sugar, would have continued to switch away from HFCS and purchased even more refined sugar, but for CRA's Educational Campaign.  But when pressed to identify *any* customer who based *any* purchasing decision on CRA's Educational Campaign, Plaintiffs simply cannot do so.  Plaintiffs have *no* evidence that, but for CRA's Educational Campaign, any food or beverage manufacturer would have switched from HFCS to refined sugar, or would not have switched back to HFCS from refined sugar, or otherwise would have purchased more refined sugar.  HFCS does not even compete with refined sugar at the *consumer* level—unlike sugar, HFCS is not sold to consumers at grocery stores or otherwise—and thus Plaintiffs also cannot recover damages for alleged lost sales of refined sugar in the consumer channel.  In short, Plaintiffs have *no* evidence that *any* customer in *any* channel would have bought more refined sugar, or less HFCS, but for CRA's Educational Campaign.

Plaintiffs' claim of injury is further negated by the myriad factors *other than* CRA's Educational Campaign (competitors, imports, government programs, and even weather) that Plaintiffs freely concede impact the price of, and demand for, refined sugar.  Plaintiffs do not account for these other factors, and Plaintiffs actually admit that it would be *"just speculation"* to claim any injury resulting from CRA's Educational Campaign.  One factor that totally undercuts Plaintiffs' claim of injury is *capacity*:  even if we indulge in the gracious and factually unsupported assumption that there would have been more demand for refined sugar but for CRA's Educational Campaign, actual capacity constraints would have prevented Plaintiffs from meeting it.  In February 2008, an explosion at a sugar refinery eliminated more than half of the capacity of one of the Plaintiffs.  That explosion, by itself, eliminated almost 10% of the overall capacity of the domestic refined sugar industry.  The other Plaintiffs were also severely capacity constrained—in their own words, "sold out"—throughout CRA's Educational Campaign.  Indeed, during the time period that CRA's

2

Educational Campaign supposedly was reducing demand for refined sugar, the sugar industry was so capacity constrained that Plaintiffs found themselves in the bizarre position of actually hoping that demand for sugar would *not* increase.  In 2009, the CEO of the largest producer of beet sugar in the U.S. said:  "Tough spot to be squeezed in, when you are almost hoping demand doesn't increase.  (Did I really write that?)."  These undisputed facts eviscerate any possible claim of injury here.  The Court thus should award summary judgment on Plaintiffs' claims for actual damages, along with their derivative claim for corrective advertising costs.

Nor are Plaintiffs entitled to disgorgement.  Again, Plaintiffs cannot show injury resulting from the CRA's Educational Campaign.  And HFCS sales actually *declined* during CRA's Educational Campaign.  Plaintiffs do not own a brand on "sugar" and CRA's Educational Campaign said nothing about any Plaintiff or any brand of sugar (Domino, Dixie Crystals, and so on) made by any Plaintiff.  Beyond that, the largest producer of refined beet sugar and other major refined sugar companies actually are *not* plaintiffs in this case.  Plaintiffs are not entitled to a windfall based on supposed gains to the Defendants that may have come at the expense of these non-plaintiffs.

More importantly, disgorgement is an equitable remedy, and it would be grossly *inequitable* to award disgorgement to these Plaintiffs.  All the while enjoying record prices and performance, Plaintiffs were being coddled by government programs established to protect the U.S. refined sugar industry.  These government programs include tariffs restricting foreign imports of less expensive sugar and an "overall allotment quantity" program that fixes the amount of sugar each domestic sugar company can sell.  The obvious purpose, and effect, of these programs is to prop up the price and financial performance of refined sugar in the U.S. market.  During the time period while Plaintiffs supposedly were being injured by CRA's Educational Campaign, the government also extended to Plaintiffs *billions* of dollars in *non-recourse* loans secured by Plaintiffs' sugar products.  Plaintiffs strategically defaulted

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

on some of these non-recourse loans—not because they were suffering, but because it was to their financial advantage—meaning the government (i.e., we taxpayers) spent millions of dollars purchasing Plaintiffs' refined sugar at above-market prices.  On top of it all, Plaintiffs **waited three years** before filing any claim because (as they admitted in their internal documents at the time) they doubted a damages claim against CRA would succeed.  An award of disgorgement to Plaintiffs—windfall damages on top of both their record performance and these government benefits, and without evidence of any injury—would mock the principles of equity on which the remedy is based.

The undisputed material facts thus establish the conclusion the Court already reached as to the California claims at the beginning of this case:  "Plaintiffs have not presented any evidence to support their burden on the claims that CRA's statements have influenced any purchasing decisions and that Plaintiffs have suffered an injury." The Court should now enter summary judgment on Plaintiffs' Lanham Act claims for actual damages, corrective advertising costs, and disgorgement.

## ARGUMENT

**I.    Plaintiffs' Claims For Actual Damages And Corrective Advertising Costs Fail Because The Undisputed Evidence Establishes That Plaintiffs Have Not Suffered Any Injury Resulting From CRA's Educational Campaign**

To obtain actual damages in a Lanham Act false advertising case, the plaintiff must establish, *inter alia*, the element of **injury**:  as stated by the Ninth Circuit, the plaintiff must establish "actual evidence of some injury resulting from" the alleged false advertising.  *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989).  The undisputed evidence here establishes that Plaintiffs were not injured **at all**—in fact, Plaintiffs enjoyed record sales and prices during CRA's Educational Campaign.  Moreover, Plaintiffs have **no** evidence that they suffered any injury **as a result** of CRA's Educational Campaign.  As such, Plaintiffs' claims for actual damages and corrective advertising costs fail.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**A.    A Plaintiff Must Establish Actual Evidence Of Injury Resulting From The Alleged False Advertising To Recover Actual Damages Under The Lanham Act**

To recover actual damages under the Lanham Act, "actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case." *Harper House*, 889 F.2d at 210 (emphasis in original).  *See also Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) (a plaintiff "must prove both the fact and the amount of damage" to recover damages under the Lanham Act).  *FortuNet, Inc. v. Gametech Arizona Corp.*, 2008 WL 5083812 (D. Nev. Nov. 26, 2008), aptly illustrates the evidence of injury a plaintiff must adduce to avoid summary judgment under the *Harper House* standard.  The plaintiff alleged that the defendant manufacturer of electronic gaming equipment falsely advertised that its products qualified as "class II" games, which require less regulation and licensing, and thus are more marketable, than "class III" games.  *Id.* at *11.  At deposition, the plaintiff's president "could not identify any customers that were deceived by any … advertisement," and also "could not identify any lost sales or lost revenue as a result of any … advertisement."  *Id.* at *3.

The *FortuNet* court granted the defendant's motion for summary judgment on plaintiff's Lanham Act claim for damages, holding that the plaintiff could not establish injury.  First, the court held that the plaintiff was not entitled to a presumption of injury because the advertisements had not "directly compare[d] [defendant's products] to Plaintiff's products."  *Id.* at *14.  Likewise here, Plaintiffs cannot simply presume that CRA's Educational Campaign harmed them.  That is because where, as here, the alleged false advertising does not contain a direct comparison to a plaintiff's specific product, as opposed to a generic, commodity category of refined sugar, damages "'accrue[ ] equally to all competitors,'" as "'none is more likely to suffer from the offending broadcasts than any other[.]'"  *CKE Restaurant v. Jack In The Box, Inc.*, 494 F. Supp. 2d 1139, 1145-46 (C.D. Cal. 2007)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

(refusing to apply presumption of harm where the advertisements referred generally to "our competitor's product," but did not identify a particular competitor or product). *See also Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 2011 WL 4852472, at *2 (C.D. Cal. Oct. 12, 2011) (refusing to apply presumption of harm because advertisement's "reference to a generic product or class of products does not exhibit the specificity required of a comparative advertisement," "[r]egardless whether [the generic product referenced] is readily associated in the minds of consumers with [counterclaimant]"); *Harper House*, 889 F.2d at 209 n.8 (no presumption of harm where "advertising does not directly compare defendant's and plaintiff's products, when numerous competitors participate in a market, or when the products are aimed at different market segments").

Here, Plaintiffs admit that CRA's Educational Campaign did ***not*** compare HFCS to any particular sugar product, much less one of Plaintiffs' products. In fact, CRA's Educational Campaign made no reference to any Plaintiff at all. *See* Defendants' Statement of Uncontroverted Facts ("SOF") ¶¶ 11; 75; 116; 150.

Plaintiffs also allege that CRA's Educational Campaign made reference to a range of sweeteners other than refined sugar, including honey. *See, e.g.*, SOF ¶ 230. Plaintiffs thus cannot presume harm and must offer "actual evidence" that their alleged damages "result[ed] from" CRA's Educational Campaign. *Harper House*, 889 F.2d at 210.

Next, the *FortuNet* court found that the plaintiff had failed to present evidence of its alleged lost sales, and that there were several competitors in the gaming marketplace, such that the plaintiff could not show, in the absence of the advertising, customers would have purchased from the plaintiff rather than some other competitor. 2008 WL 5083812, at *14. This was fatal to the plaintiff's damages claims under the Lanham Act. *Id.* ("Where no presumption of harm to the particular plaintiff arises and the plaintiff presents no other evidence of injury, the plaintiff has failed to

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

6

establish an essential element of its claim for damages."). Thus, because the plaintiff "failed to present evidence it was harmed" by the false advertising, the *FortuNet* court granted summary judgment in favor of the defendant on the plaintiff's claims for damages. *Id.*

Numerous other courts have likewise awarded summary judgment on Lanham Act damages claims where, as here, the plaintiff fails to adduce actual evidence of injury resulting from the alleged false advertising. *See, e.g.*, *Cytosport, Inc. v. Vital Pharm., Inc.*, 894 F. Supp. 2d 1285, 1297 (E.D. Cal. 2012) (granting summary judgment because plaintiff failed to present evidence that alleged false statement "actually causes consumers to choose" defendant's product over plaintiff's product); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 816-17 (D. Minn. 2011) (same; plaintiff identified a lost customer, "but presented no evidence that this loss was due to [defendant's] false advertising"); *Steak Umm Co. v. Steak 'Em Up, Inc.*, 2011 WL 3679155, at *10 (E.D. Pa. Aug. 23, 2011) (same; plaintiff admitted in deposition it had suffered no harm from defendant's conduct); *Iams Co. v. Nutro Prods., Inc.*, 2004 WL 5779999, at *5 (S.D. Ohio July 6, 2004) (same; witnesses "were unable to identify … any consumer who did not buy … products because of [the alleged false advertising]").

**B.    The Undisputed Evidence Establishes That Plaintiffs Cannot Establish Any Injury Resulting From CRA's Educational Campaign**

**1.    Plaintiffs Suffered No Injury At All During CRA's Educational Campaign**

Summary judgment is warranted here because the undisputed evidence establishes that Plaintiffs were not injured *at all* during the time period of CRA's Educational Campaign. In fact, Plaintiffs' own documents and testimony show that Plaintiffs' businesses were thriving throughout CRA's Educational Campaign. During CRA's Educational Campaign, refined sugar prices in the United States

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

reached historic highs, and Plaintiffs realized record-breaking financial performances. *See, e.g.*, SOF ¶¶ 16-17; 118-22; 211 (Berg: "fondly" recalling how, during the CRA's Educational Campaign, refined sugar prices reached "levels that had not been reached in 30 years").[1]   Indeed, prices were so high that Plaintiffs openly thanked the Lord for their success.  In a December 2011 presentation of Plaintiff Michigan Sugar to its bankers, a slide titled "The Sugar Market Since 2005" praised the sugar industry's good fortune by exclaiming:



*See* SOF ¶¶ 123-24. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ SOF ¶ 125.

Other Plaintiffs similarly enjoyed historic, record-breaking financial success

---

[1]      James Wimmer, Brian O'Malley, and Mike Gorrell testified as Rule 30(b)(6) witnesses, and so each witness' admissions are binding on Plaintiffs Western Sugar, ASR, and Imperial, respectively. *See, e.g.*, *Gales v. Winco Foods*, 2011 WL 3794887, at *5 n.3 (N.D. Cal. Aug. 26, 2011) ("As a 30(b)(6) witness, her testimony is a sworn corporate admission binding on the corporation."). Mark Flegenheimer, the CEO and President of Michigan Sugar, testified in his individual capacity, but his testimony is admissible against Michigan Sugar as a party admission. *See, e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006 ) ("Weiss was StreamCast's CEO, any statement he made is admissible under Rule 801(d)(2)(D)."). In their Rule 26(a)(1) Initial Disclosures, Plaintiffs also disclosed Messrs. Wimmer, O'Malley, and Flegenheimer as having knowledge of "the impact of and damage from the Defendants' false advertising about HFCS." SOF ¶¶ 3; 67; 114. David Berg is the President and CEO of American Crystal Sugar Company, the largest producer of beet sugar in the U.S. American Crystal is a former member of the Sugar Association that did ***not*** join this lawsuit and ***withdrew*** from the Sugar Association six days after the lawsuit was filed. *See* SOF ¶¶ 208-09. Mr. Berg testified that, a few weeks prior to his deposition, he told the executives of several of the Plaintiffs that he would "give … honest testimony" and "be as supportive as I can to the case that the sugar industry has brought." SOF ¶ 210.

during the time period of CRA's Educational Campaign—and similarly celebrated that success in their business documents, without an iota of suggestion that CRA's Educational campaign was hurting them in any way.  *See, e.g.*, SOF ████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████████████████ ¶ 190 (Minn-Dak 2011 10-K: "Higher sugar selling prices are reflective of the overall strong demand in the United States sugar market."); ¶ 204 (Nov. 2011 USSC Manager's Meeting presentation: "Another year of record high sugar prices!  2012 pricing will be 50% higher than only 4 years ago." (emphasis in original)).

Indeed, as lead Plaintiff Western Sugar and Plaintiff Amalgamated exclaimed internally ***even after*** Plaintiffs filed this lawsuit:

1  | *See* SOF ███████████████████████████

2  | ████████████████

3  | Such evidence, particularly in light of Plaintiffs' failure to adduce actual

4  | evidence of injury, completely negates the notion that Plaintiffs were injured by

5  | CRA's Educational Campaign.  *See, e.g.*, *Lindy Pen*, 982 F.2d 1400 at 1407-08

6  | (affirming district court's denial of actual damages under Lanham Act where plaintiff

7  | "failed to show any actual damage"); *RingCentral, Inc. v. Quimby*, 711 F. Supp. 2d

8  | 1048, 1062-64 (N.D. Cal. 2010) (denying plaintiff's claim for lost profits under the

9  | Lanham Act for failure to prove fact of injury), *vacated in part on other grounds*, 781

10 | F. Supp. 2d 1007 (N.D. Cal. 2011);  *see also B. Sanfield, Inc. v. Finlay Fine Jewelry*

11 | *Corp.*, 258 F.3d 578, 581 (7th Cir. 2001) (affirming district court's judgment for

12 | defendant where evidence showed plaintiff's sales rose during months covered by its

13 | false advertising claim); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827

14 | (9th Cir. 2011) (citing *B. Sanfield* for proposition that a plaintiff's rise in sales during

15 | period of false advertisement would tend to rebut a presumption of commercial

16 | injury); *Iams*, 2004 WL 5779999, at *5 (granting summary judgment where, "[b]y

17 | admissions from [counterclaimant's] own witnesses, [counter-defendant] has shown

18 | that [counterclaimant's] sales grew to new record highs every year" during counter-

19 | defendant's alleged false advertising).  Because Plaintiffs have failed to prove they

20 | suffered any injury at all, Defendants' motion for summary judgment on Plaintiffs'

21 | Lanham Act damages claim should be granted.

22 | **2.     Plaintiffs Cannot Establish Any Injury Suffered As A**

23 | **Result Of CRA's Educational Campaign**

24 | If we were to imagine—contrary to all reality—that Plaintiffs had theoretically

25 | suffered some injury, the undisputed facts further establish that Plaintiffs cannot show

26 | that any such supposed injury was the ***result of*** CRA's Educational Campaign.  *See*

27 | *Harper House*, 889 F.2d at 210 ("[A]ctual evidence of some injury *resulting from the*

28 | *deception* is an essential element of the plaintiff's case."  (emphasis in original)).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

10

DEFENDANTS' MEMO IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

Plaintiffs claim they were injured by the decisions of industrial customers—i.e., food and beverage manufacturers—to sweeten products with HFCS instead of refined sugar.  But Plaintiffs have no evidence at all to support this claim.  Plaintiffs *admit* this claim is premised on the "speculation" that merely "it's possible" that CRA's Educational Campaign "may have" caused industrial customers to switch to HFCS or purchase less refined sugar.  *See, e.g.*, SOF ¶ 133 ("it's possible" Michigan Sugar would have experienced greater sales but for CRA's Educational Campaign); ¶ 93 ("[I]t is certainly possible that the advertising campaign had an impact [on Kraft's switch to HFCS].  But that's just speculation."); ¶ 171 (no customers told Imperial they were not buying refined sugar because of CRA's Educational Campaign, but "it may have happened").

When pressed repeatedly at deposition to identify customers who based purchasing decisions on CRA's Educational Campaign, Plaintiffs simply could not do so.  *None* of the Plaintiffs deposed in this case could identify a *single* customer or a *single* sale of product lost as a result of CRA's Educational Campaign.  More specifically, Plaintiffs own testimony establishes the following glaring defects in their claim of injury resulting from CRA's Educational Campaign:

*Plaintiffs admit they have no evidence that industrial customers made any decision to switch from refined sugar to HFCS as a result of CRA's Educational Campaign, or otherwise would have bought more refined sugar but for CRA's Educational Campaign.*  *See* SOF ¶ 48 (unable to identify "any customer of Western Sugar who since June 2008 switched from using Western Sugar sugar to using HFCS" as a result of CRA's Educational Campaign or otherwise); ¶ 97 (unable to identify any ASR customers "who switched from HFCS to sugar, but did not switch back, who would have purchased more sugar from ASR but for" CRA's Educational Campaign); ¶ 99 ("too vague and speculative" to say that, "but for the alleged false advertising campaign, Pepsi would have purchased more sugar from ASR than it did"); ¶ 166 (no one "from Coke told Imperial that they were basing a decision to purchase or not

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

purchase sugar from Imperial on the alleged false advertising campaign"); ¶ 167 (no evidence that "Pepsi's decision not to sweeten its products with Imperial Sugar is the result of the alleged false advertising campaign"); ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ ¶

170 (cannot "identify any customer of Imperial who has told Imperial that they were not buying sugar from Imperial as a result of the alleged false advertising campaign"); ¶ 216 (no one from United Sugars Corporation[2] identified any customer who switched from sugar to HFCS as a result of CRA's Educational Campaign).

*Plaintiffs admit they have no evidence that industrial customers even had the ability to switch from refined sugar to HFCS.* See SOF ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Obviously,

if Plaintiffs have no evidence that these industrial customers could have switched from refined sugar to HFCS *at all*, it must follow that Plaintiffs cannot establish that these customers did switch as a result of CRA's Educational Campaign.

*Plaintiffs admit they have no evidence that industrial customers who initially switched from HFCS to refined sugar, but then switched back to HFCS, did so as a*

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

DEFENDANTS' MEMO IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

***result of CRA's Educational Campaign.***  SOF ¶ 93 (calling it "just speculation" that Kraft switched back to HFCS as a result of CRA's Educational Campaign, while also acknowledging that price of ASR's sugar was a factor in Kraft's decision); ¶¶ 95-96 ("not aware of the reason" for ConAgra's switch back to HFCS for Hunt's ketchup).

*Plaintiffs admit they have no evidence that customers in the consumer or food service channels purchased less refined sugar from Plaintiffs or otherwise experienced reduced demand for sugar as a result of CRA's Educational Campaign.* *See* SOF ¶ 49 (unable to identify "any customer of Western Sugar that reduced its purchase of sugar as a result of" CRA's Educational Campaign); ¶ 88 (not aware of Wal-Mart, or any other ASR customer in the consumer channel, telling ASR that it was experiencing reduced consumer demand for ASR's sugar as a result of CRA's Educational Campaign), ¶ 89 (unable to identify any ASR customer in the consumer or food service channel who told ASR they were "making a purchasing decision based on" CRA's Educational Campaign).  Plaintiffs actually admit that HFCS does not compete with refined sugar in the consumer channel.  SOF ¶¶ 39; 82.

Finally, in sworn interrogatory responses, other Plaintiffs merely objected and similarly did not identify a single customer that:  (a) "reduced or stopped buying sugar"; (b) "switched from buying sugar … to buying HFCS"; (c) was "deceived or misled"; or (d) was "lost" as a result of CRA's Educational Campaign.  SOF ¶¶ 138; 175; 187; 198.  For these reasons, Plaintiffs cannot show the requisite causal connection between CRA's Educational Campaign and any alleged injury, and summary judgment should be granted.

### 3.  The Undisputed Facts Make Any Claim Of Injury Resulting From The CRA's Educational Campaign Speculative

Beyond their complete and utter inability to show any actual injury resulting from CRA's Educational Campaign, Plaintiffs' claim for damages fails because Plaintiffs cannot account for various factors—***other than*** CRA's Educational

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

13

Campaign—that Plaintiffs freely concede impacted their business.  As such, Plaintiffs' claim of injury resulting from CRA's Educational Campaign is based entirely on **speculation** and must fail.  *See, e.g.*, *Lindy Pen*, 982 F.2d at 1408 (monetary awards in Lanham Act cases should be denied "when damages are remote and speculative"); *Aviva*, 829 F. Supp. 2d at 817 (granting summary judgment and finding it "too great an analytical leap" to conclude plaintiff's losses were caused by false advertising where plaintiff failed to account for other independent factors, such as "consumer purchasing decisions that were made for reasons other than the challenged advertising" and "other factors that might have contributed to [defendant's] success"); *QS Wholesale, Inc. v. World Mktg., Inc.*, 2013 WL 1953719, at *6 (C.D. Cal. May 9, 2013) (granting summary judgment on Lanham claim where plaintiff "only offer[ed] conclusory and speculative assertions" of harm); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 437 (D.N.J. 2009) (granting summary judgment where plaintiff's "internal documents also attribute[d] the loss of [a contract] to a variety of other factors, unrelated to alleged false advertising").

To begin, Plaintiffs' claims of injury are negated by contemporaneous (pre-litigation) documents that spell out ***all material*** factors impacting their business but say ***nothing*** at all about CRA's Educational Campaign.  These documents establish, without any doubt whatsoever, that CRA's Educational Campaign had ***no impact*** on Plaintiffs.  For example, Imperial's verified Form 10-K submitted to federal securities regulators for the financial year ending September 30, 2009, sets forth the many different external forces that could adversely affect Imperial's business, but makes ***no*** reference, either specifically or generally, to CRA's Educational Campaign.  Not one jot.  SOF ¶ 162.[3]  Imperial's witness, who minutes earlier testified that Imperial's

---

[3]     Imperial's 10-Ks for its financial years ending 2008 and 2010 likewise make no reference to CRA's Educational Campaign.  *See* SOF ¶ 163.  In its Form 10-Ks, Imperial certified that its "report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made … not misleading with respect to the period covered by this report."  *See* SOF ¶ 164.  The same is true for the other Plaintiffs' 10-K filings.  *See* 15 U.S.C. § 7241; 18 U.S.C. § 1350; S.E.C. OMB No. 3235-0569, File No. 4-460 (requiring sworn statements to accompany the filing of Form 10-Ks).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

14

1   damages from CRA's Educational Campaign could exceed a *billion* dollars, was

2   forced to admit: "I can't tell you why they did or did not include that at the time."

3   SOF ¶¶ 153; 162.  Similarly, Western Sugar's witness testified that a January 2010

4   Annual Report to the company's shareholders "contain[ed] all relevant and material

5   information about Western Sugar's business," but admitted that the Report did *not*

6   contain any reference to CRA's Educational Campaign.  SOF ¶¶ 22, 27.  Western

7   Sugar's witness further testified: "I don't know why there was no mention of the high

8   fructose corn syrup false advertising in this report."  SOF ¶ 27.  How can Plaintiffs

9   possibly now seek billions of dollars in damages when, in contemporaneous sworn

10  documents submitted to their regulator that were required by law to identify all

11  material information, they said nothing at all about CRA's Educational Campaign?

12        Indeed, *all* of the Plaintiffs generated documents during CRA's Educational

13  Campaign that reported on material factors and events impacting their business, and

14  *none* of these documents make any reference to CRA's Educational Campaign as a

15  factor injuring their business, let alone to the extent that Plaintiffs exorbitantly claim

16  in this case.  The documents make no reference to CRA's Educational Campaign *at*

17  *all.*[4]  This undisputed evidence does not simply create a fact issue as to whether

18  Plaintiffs were injured by CRA's Educational Campaign—it establishes, beyond cavil,

19  that Plaintiffs were not injured as a matter of law.  *See, e.g.*, *Argus Inc. v. Eastman*

20  *Kodak Co.*, 801 F.2d 38, 42-43 (2d Cir. 1986) (affirming grant of summary judgment

21

22  [4]      SOF ¶ 35 (Western Sugar's 2011 and 2012 Annual Reports contain no references to CRA's
     Educational Campaign); ¶ 120 (admitting that there was no reference to CRA's Educational
23  Campaign in a Michigan Sugar Company presentation slide concerning factors affecting United
     States refined sugar prices in the fall of 2011); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶ 189 (Minn-Dak 2011 10-K provides that "[i]n
     more recent years … sugar is being substituted for High Fructose Corn Syrup by some food and
25  beverage companies, thereby increasing the demand for sugar," and makes no reference to CRA's
     campaign); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮ ¶ 180 (Amalgamated).  Further demonstrating the after-the-fact nature of
     Plaintiffs' claims of injury resulting from CRA's Educational Campaign, Mr. Berg, who was the
28  Chair of an ad hoc committee formed by the Sugar Association to respond to CRA's Educational
     Campaign, testified that he did not recall the executives of *any of the Plaintiffs* telling him at any
     point since June 2008 that the CRA campaign had caused them injury.  SOF ¶¶ 218-19.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

15

on lack of antitrust injury where the plaintiffs' annual reports and Form 10-Ks "explained dismal sales and financial results without ever mentioning competition with" the defendant: "It is thus a telling blow to plaintiffs' [damages] theory that [plaintiffs'] contemporaneous accounts of the reasons for its economic ailments consistently contradict its present position."); *Magazine Co. v. Murdoch Magazines Distribution, Inc.*, 393 F. Supp. 2d 199, 212-13 (S.D.N.Y. 2005) (same; plaintiffs' claim that they "lowered their margins and profits in response to … competition" was contradicted by plaintiffs' Form 10-K's assertion that "plaintiffs did not … face serious competition in their markets during the relevant time period").

Other undisputed evidence demonstrates that Plaintiffs' claim of injury fails as speculative and invented entirely for litigation purposes.  ***First***, many other competitors in the refined sugar industry are ***not*** plaintiffs in this action.  As such, even if CRA's Educational Campaign somehow theoretically could have caused the refined sugar industry as a whole to lose sales, Plaintiffs cannot presume that they themselves suffered those lost sales. ██████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████    Indeed, one of these is ***defendant*** Cargill, which, in addition to HFCS, sells multiple types of sugar, including beet sugar, cane sugar, and invert sugar.  *See* SOF ¶ 231.  Another is American Crystal Sugar Company, the largest producer of beet sugar in the U.S., which expressly ***refused*** to join this litigation as a plaintiff.  *See* SOF ¶¶ 208-09.  Plaintiffs concede both that, if CRA's Educational Campaign injured sugar generally, those non-plaintiff sugar companies likewise should have been injured, and that to the extent Plaintiffs have lost business, such business could have been lost not only to Defendants, but also to other sugar companies, including those that are not plaintiffs in this action.  SOF ¶¶ 73; 173.  Plaintiffs cannot explain how, if at all, CRA's Educational Campaign impacted Plaintiffs differently than the non-plaintiff sugar companies.  SOF ¶¶ 5; 74; *see also* SOF ¶ 220 (there is "no difference" between American Crystal's refined

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

16

sugar and Plaintiffs' refined sugar; "I can't think of any reason why one beet sugar company would be damaged any more or less than any other by the potential effects of the CRA campaign"). These gaps in the evidence render Plaintiffs' damages claims entirely speculative, to the point of complete failure. *See, e.g.*, *CKE Restaurant*, 494 F. Supp. 2d at 1146 (holding plaintiffs lacked "any evidence that establishes actual injury and causation" where evidence presented did not establish whether "Plaintiffs, rather than any other competitors, would be damaged" by false advertising); *B. Sanfield*, 258 F.3d at 581 (affirming judgment in favor of defendant where plaintiff and defendant "did not compete exclusively with each other; rather, there were numerous other competitors for sales of the gold jewelry at issue").

***Second***, the undisputed evidence shows that numerous factors other than CRA's Educational Campaign were the cause of any alleged lost sales and price erosion suffered by Plaintiffs, such that it would be grossly speculative to attribute such injury to the Educational Campaign. As a foremost example, a refined sugar industry petition filed with the U.S. government in March 2014 affirmatively argues that a drop in refined sugar prices was caused specifically and directly by allegedly "dumped" Mexican refined sugar: "The very sharp rise in dumped and subsidized sugar from Mexico has been ***the primary cause of the collapse of U.S. market prices*** over the past year to unsustainable levels, and, therefore, ***the primary cause of material injury*** to all segments of the U.S. industry." SOF ¶ 104 (emphases added). The signatories to this petition include some of the Plaintiffs here, and those Plaintiffs who are not signatories have adopted this position anyway. SOF ¶ 146 (Michigan Sugar has adopted the same position as that stated in the petition); ¶ 52 ("primary cause" of the "collapse of the U.S. market sugar prices in 2013" was the "very sharp rise in dumped and subsidized sugar from Mexico"); *see also* SOF ¶ 102 (Mexican sugar has "[w]recked" and "[r]uined" refined sugar prices). So, not only does Plaintiffs' claim of injury contradict what they told their regulators, shareholders, and bankers about material factors affecting their businesses, it also contradicts what Plaintiffs told the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

17

U.S. government was the cause of their injury in their anti-dumping petition.  How could anyone possibly believe anything the Plaintiffs say about their supposed injury?

Plaintiffs' witnesses also testified to myriad other factors, entirely separate and divorced from CRA's Educational Campaign, that (of course) could have negatively impacted Plaintiffs' sales and prices.  SOF ███████████████████████ ███████████████████████████████████████████ ███████████████ ¶ 162 (Imperial's 2009 10-K referenced various factors that could negatively impact Imperial's business, including "effects of existing and future United States farm and trade policies," "[h]igher energy costs," "[s]elling commodity products in highly competitive channels of distribution," "highly competitive labor markets," and the "global financial crisis"); ¶ 109 (listing independent factors that impact supply, demand, and prices of ASR sugar, including promotions, competition with private label sugar, population growth, federal programs that govern how much refined sugar can be imported or grown, weather, and incidents, such as the February 2008 explosion of a sugar refinery, that cause refineries to go "off line" for periods of time); ¶ 53 ("Q: How do you know that the price wouldn't have been even higher for some reason other than the alleged false advertising?  A. There are lots of factors that enter into the price and there could be other factors that could influence the price.").

In fact, the evidence shows that the record high price of refined sugar itself during CRA's Educational Campaign was a factor influencing the decisions of consumers, especially industrial consumers, to purchase HFCS instead of refined sugar.  *See, e.g.*, SOF ¶ 110 (internal ASR email: "I'm hearing more rumors of Users switching back to HFCS because of high sugar prices.  Any truth?  <u>Yes</u>" (emphasis in original).  Taken together, these independent factors identified in Plaintiffs' own testimony and documents, and which have nothing whatsoever to do with CRA's Educational Campaign, make it too speculative for Plaintiffs to claim that any injury

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

18

DEFENDANTS' MEMO IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

they allegedly suffered was the result of CRA's Educational Campaign.  *See, e.g.*, *Aviva*, 829 F. Supp. 2d at 817; *QS Wholesale*, 2013 WL 1953719, at *6.[5]

***Third***, even if in some theoretical construct there would have been more demand for refined sugar but for CRA's Educational Campaign—putting aside all of the reasons why that theoretical construct is implausible—actual capacity constraints would have prevented Plaintiffs from meeting it.  In February 2008, an explosion at a Savannah sugar refinery eliminated approximately 60% of the capacity of one of the Plaintiffs, Imperial Sugar.  *See* SOF ¶¶ 156-57.  By itself, the explosion eliminated nearly 10% of the overall capacity of the domestic sugar industry, SOF ¶ 154, and it wreaked havoc on Imperial's capacity and ability to meet customer demand for several years.  SOF ¶ 160 (Dec. 2009 email from Imperial employee, stating that Imperial did not have all of Dr. Pepper's business "due to capacity issues" and the "slow start-up" of the reconstructed refinery); ██████████████████ ████████████████████████████████████████████████ ████████████████ ¶ 129 (Aug. 2012 MSC presentation:  Imperial's "refinery continues to have both refining and packaging problems and [they] are not producing up to rated/needed standards.").

The other Plaintiffs were likewise capacity constrained throughout the time period of CRA's Educational Campaign.  SOF ¶ 125 (Dec. 2011 Michigan Sugar presentation: "We are essentially sold out."); ████████████████████████████████

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

---

[5]    Plaintiffs should not be surprised at their inability to establish injury resulting from CRA's Educational Campaign, as that precise concern was expressed by the President of the United States Beet Sugar Association and shared with Mr. Flegenheimer before this lawsuit was filed.  SOF ¶ 232 (Mar. 2011 email stating: "I think suing CRA over their 'corn sugar' activities is a bad idea.  First, it sounds like a ***specious proposition*** that the sugar industry can prove economic damages and win a settlement." (emphasis added)); *see also* SOF ¶ 222 (American Crystal did not make "any studies on the financial impact" of CRA's Education Campaign on American Crystal's revenues because its CEO was "not sure that you could ever draw a direct and clear proof that something that was said in a marketing campaign specifically impacted the price of our product or the volume that we're able to sell" and he "would have extremely low confidence in the statistical reliability" of a study purporting to prove such injury); SOF ¶ 128 (Feb. 2011 Flegenheimer email stating he was "very skeptical" of the proposed lawsuit against CRA and that "we need to nip [the proposed lawsuit] in the bud"); ¶ 233 (Sept. 2008 internal Sugar Association memo stating "Sugar is not disparaged legally by the CRA advertising campaign").

19

Indeed, during the time period that CRA's Educational Campaign supposedly was reducing demand for refined sugar, sugar companies were so capacity constrained that they actually hoped that demand for refined sugar would **not** increase.  In 2009, the CEO of the largest beet sugar company in the U.S. wrote: "We are among the lowest cost producers and except for better sugar content, we are capped on beet processing volume.  Even current prices don't justify the capital spend.  ***Tough spot to be squeezed in, when you are almost hoping demand doesn't increase.  (Did I really write that?)***" *See* SOF ¶ 227 (emphasis added).  Yes, he did "really write that," and that undisputed fact, among so many others, precludes Plaintiffs from establishing any injury.

### C.   Plaintiffs' Claim For Corrective Advertising Costs Fails

Plaintiffs' derivative claim for corrective advertising costs must also fail because Plaintiffs cannot establish any injury resulting from the CRA's Educational Campaign.  An award of corrective advertising costs, a form of compensatory damages, is "appropriate only where a plaintiff has shown that in fact it has been injured." *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576, at *5 (N.D. Cal. July 14, 2011).  To recover corrective advertising costs, the plaintiff "must present non-speculative evidence that goodwill and reputation … was damaged in some way." *See, e.g.*, *id.* at *5-6 (granting summary judgment on claim for corrective advertising costs where plaintiff's evidence, including its expert report, failed "to offer a non-speculative basis" from which to conclude defendant's alleged infringement confused consumers or caused plaintiff to lose such consumers); *In re Century 21-Re/Max Real*

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANTS' MEMO IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

*Estate Advertising Claims Litig.*, 882 F. Supp. 915, 925 (C.D. Cal. 1994) (same; plaintiff did not show defendant's false advertising caused an injury making plaintiff's corrective advertising necessary).  Here, because Plaintiffs cannot establish any injury they suffered as a result of CRA's Educational Campaign, Plaintiffs' derivative claim for corrective advertising costs also must fail.[7]

## II. Plaintiffs' Claim For Disgorgement Fails

To the extent Plaintiffs seek the remedy of disgorgement, any such claim fails for various reasons.[8]  Specifically, and even if Plaintiffs could show that Defendants profited from CRA's Educational Campaign—HFCS sales actually ***declined*** throughout the campaign—disgorgement of profits is an "uncommon remedy" that courts are loath to award, particularly where, as here:  (a) Plaintiffs cannot establish they were injured as a result of CRA's Educational Campaign; (b) CRA's Educational Campaign did not reference any Plaintiff or any brand of sugar sold by any Plaintiff; (c) there are multiple competitors in the refined sugar market, including the competitor with the largest beet sugar market share, who are not plaintiffs to the action; and (d) an award of disgorgement would result in a windfall.  Additionally, the award of disgorgement under the Lanham Act is "subject to the principles of equity," 15 U.S.C. § 1117(a), and the record evidence demonstrates that it would be grossly inequitable to award disgorgement to Plaintiffs.

---

[7]        Moreover, Plaintiffs admit they have not conducted, and have no plans to conduct, any advertising to respond to CRA's Educational Campaign. *See, e.g.*, SOF ¶¶ 63-64; 112.  For this additional reason, Plaintiffs' claim for corrective advertising must fail. *See, e.g.*, *Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1180-81 (C.D. Cal. 2011) (denying corrective advertising claim where plaintiffs "presented no evidence of any expenditures actually made to restore the value of their marks" and failed to present evidence showing how future corrective advertising would "correct[ ] the nature of the harm suffered" by plaintiffs); *see also PBM Prods., LLC v. Mead Johnson & Co.*, 2010 WL 957756, at *5 (E.D. Va. Mar. 12, 2010) (denying post-verdict request for court to order defendant to engage in corrective advertising where plaintiff had "not done any prospective corrective advertising of its own").

[8]        The witness for the lead Plaintiff, Western Sugar, actually testified that he did not know whether Plaintiffs are seeking disgorgement or whether it would be fair for Plaintiffs to do so. *See* SOF ¶ 77.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANTS' MEMO IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

**A.** **Disgorgement Is Inappropriate In A Case Of Non-Comparative Advertising Where Multiple Competitors Could Seek To Recover The Defendant's Profits**

In the Ninth Circuit, an award of a defendant's profits may be "appropriate in false *comparative* advertising cases," because in such cases, "it's reasonable to presume that every dollar defendant makes has come directly out of plaintiff's pocket," *TrafficSchool.com*, 653 F.3d at 831 (emphasis in original), and such awards are "intended as crude measures of damage to plaintiff's good will." *Harper House*, 889 F.2d at 209 n.8. However, "when advertising does not directly compare defendant's and plaintiff's products, when numerous competitors participate in the market, or when the products are aimed at different market segments, injury to a particular competitor may be a small fraction of the defendant's sales, profits, or advertising expenses." *Id. See also Burndy Corp. v. Teledyne Indus., Inc.*, 584 F. Supp. 656, 668 (D. Conn. 1984) (holding disgorgement improper because "[i]f one competitor, in a false advertising case, is permitted to receive the wrong-doer's profits, there is no preclusion to another competitor seeking the same redress").

The undisputed facts here establish *every one* of the *Harper House* factors, defeating any conceivable claim for disgorgement. Plaintiffs admit that CRA's Educational Campaign did not mention any Plaintiff or compare HFCS to any particular refined sugar product, much less one of Plaintiffs' products. *See* SOF ¶¶ 11; 75; 116; 150. ██████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ and Plaintiffs concede that, if CRA's Educational Campaign injured refined sugar generally, those non-plaintiff sugar companies likewise presumably should have been injured. *See* SOF ¶ 73. Plaintiffs also admit that HFCS does *not* compete with refined sugar in certain markets, including in the consumer segment. *See* SOF ¶¶ 39-40; 82. This multitude

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

22

of factors eviscerates Plaintiffs' assumption—upon which disgorgement necessarily must rest—that "every dollar defendant makes has come directly out of plaintiff's pocket." *TrafficSchool.com*, 653 F.3d at 831.

Further undermining that assumption are Plaintiffs' admissions that impediments exist making it "complicated" (indeed, highly impractical) for industrial customers to switch from refined sugar to HFCS or vice-versa. *See, e.g.*, SOF ¶ 85 (changing from HFCS to refined sugar is "a fairly complicated process" that "require[s] a lot of back and forth between various entities within the customer," and "[i]t wasn't something that just happened between sales and purchasing"); ¶ 41 (stating that "different types of sweeteners have a different impact on different products in the process of making those products"). And again, Plaintiffs have failed to identify even a ***single*** customer that switched to HFCS because of CRA's Educational Campaign. Thus, an award of Defendants' profits (if any existed) would constitute a penalty to Defendants and a windfall (not compensation) to Plaintiffs. *See Lindy Pen*, 982 F.2d at 1405. Plaintiffs thus fall woefully short of establishing a basis for disgorgement here, and summary judgment on any such claim should be granted. *See, e.g.*, *TrafficSchool.com*, 653 F.3d at 831 (affirming denial of plaintiffs' request for disgorgement of profits in non-comparative false advertising case).

### B.   Awarding Disgorgement To Plaintiffs Would Be Inequitable

Plaintiffs' disgorgement claim also must be rejected on principles of equity. The award of disgorgement under the Lanham Act is "subject to the principles of equity," 15 U.S.C. § 1117(a), and the undisputed facts demonstrate that it would be grossly inequitable to permit Plaintiffs to seek disgorgement. First, as set forth above, Plaintiffs' own documents and testimony show that Plaintiffs' businesses were thriving throughout CRA's Educational Campaign. During CRA's Educational Campaign, refined sugar prices in the United States reached historic highs, and Plaintiffs realized record-breaking financial performances.

23

Indeed, Plaintiffs' success, and the high price of refined sugar, was driven by the harm being suffered by the HFCS industry, and Plaintiffs were well aware of that fact.  For example, in August 2010, Brian O'Malley, the CEO and President of Domino Foods, Inc. (the sales and marketing agent of ASR), received an email from ASR's vice-president of purchasing, containing an article titled "Study has implications for HFCS consumption" that purported to link HFCS with pancreatic cancer.  SOF ¶ 111.  Mr. O'Malley provided a one-line response to the email: "Seems to justify $38 raw sugar and $55 refined."  *Id.*; SOF ¶ 127 (Aug. 2012 Michigan Sugar presentation listed "Concerns about High Fructose Corn Syrup (HFCS) being an 'obesity sweetener'" as a reason that "[d]emand for sugar continues to surge"); ¶ 126 (Dec. 2011 Michigan Sugar presentation listed "HFCS-to-sugar conversions" as factor that "caused the wave" of the sugar industry's good fortune).

Moreover, all the while enjoying record high prices and financial performance, Plaintiffs were being aided and supported by (unprecedented) programs established by the federal government to coddle the U.S. refined sugar industry by propping up the price of refined sugar.  These government programs include tariffs ("TRQs") restricting foreign imports of less expensive sugar and an "overall allotment quantity" program ("OAQ") that fixes the amount of sugar each domestic sugar company can sell.  SOF ¶ 62.  Further, the government extended to Plaintiffs ***nearly $5 billion*** dollars in ***non-recourse*** loans secured by Plaintiffs' sugar products.  *See* SOF ¶¶ 54; 140.  Plaintiffs strategically defaulted on some of these non-recourse loans, meaning that the government (i.e., taxpayers) purchased from Plaintiffs millions upon millions of dollars of refined sugar at above-market prices as detailed in the following chart:

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

24

█████████████████████████████   ███████████████

██████████████████████████████████████████

██████████████████████████████   In fact,

in May 2005 testimony before the U.S. Senate, the head of Plaintiff Imperial admitted that the "result of the [US sugar loan policy] is to bestow on growers even greater benefits and that ***windfall*** has come at the expense of cane refiners."  SOF ¶ 174.

Finally, presumably because they knew that they were suffering no harm from CRA's Educational Campaign, which started in 2008, Plaintiffs delayed the filing of their lawsuit for several years until 2011.  As noted above, Plaintiffs slumbered on their supposed right to disgorgement because, internally, they realized any claim against CRA was "specious" and unlikely to succeed.  *See* SOF ¶ 232.  After failing to challenge CRA's Educational Campaign for so long, Plaintiffs' attempt to now disgorge the profits Defendants allegedly made from the campaign must fail.  *See, e.g.*, *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 823 (7th Cir. 1999).

Against this backdrop, Plaintiffs' disgorgement claim—seeking windfall damages on top of both their record financial performance and admittedly "windfall" government benefits, and having delayed bringing a claim for nearly three years—completely mocks the principles of equity on which the remedy is based.  This is especially true in this case, where there is no evidence that Plaintiffs suffered any actual injury.  The Court should award summary judgment in favor of Defendants on Plaintiffs' claim for disgorgement.

## CONCLUSION

For all of the foregoing reasons, the Court should enter summary judgment in favor of Defendants and against Plaintiffs on Plaintiffs' claims for (a) actual damages; (b) corrective advertising; and (c) disgorgement.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Dated:  August 26, 2014

Respectfully submitted,

WINSTON & STRAWN LLP

By:  /s/ Gail J. Standish

Gail J. Standish
Erin R. Ranahan

Attorneys for Defendants
ARCHER-DANIELS-MIDLAND COMPANY;
CARGILL, INCORPORATED; INGREDION
INCORPORATED; THE CORN REFINERS
ASSOCIATION, INC.; AND TATE & LYLE
INGREDIENTS AMERICAS, LLC

*Additional counsel for Defendants:*

Cornelius M. Murphy (admitted *pro hac vice*)
nmurphy@winston.com
Bryna J. Dahlin (admitted *pro hac vice*)
bdahlin@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive`
Chicago, IL 60601-9703
Telephone:  (312) 558-5600
Facsimile: (312) 558-5700

DEFENDANTS' MEMO IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION