UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE CONSUELO B. MARSHALL

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

WESTERN SUGAR COOPERATIVE, et al.,     )
                                       )
                Plaintiffs,            )
                                       )
       vs.                             )   NO. CV 11-3473 CBM
                                       )
ARCHER-DANIELS-MIDLAND COMPANY,        )
et al.,                                )
                                       )
                Defendants.            )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL - DAY THREE

LOS ANGELES, CALIFORNIA

THURSDAY, NOVEMBER 5, 2015

VOLUME I - 8:07 A.M.

_____

**SHAYNA MONTGOMERY, CSR, RPR, CRR**
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 410
LOS ANGELES, CALIFORNIA 90012
(213) 894-2665

UNITED STATES DISTRICT COURT

2

**APPEARANCES OF COUNSEL:**


**FOR THE PLAINTIFFS:**

    THE LANIER LAW FIRM
    BY:  W. MARK LANIER
         Attorney at Law
    6810 FM 1960 West
    Houston, Texas 77069
    (713) 659-5200


**FOR THE DEFENDANTS:**

    WINSTON & STRAWN LLP
    BY:  DAN K. WEBB
    BY:  STEPHEN V. D'AMORE
         Attorneys at Law
    35 West Wacker Drive
    Chicago, Illinois 60601-9703
    (312) 558-5600

**UNITED STATES DISTRICT COURT**

**I N D E X**

| WITNESS NAME | PAGE |
|---|---|
| Audrae Erickson (Video Deposition) | 7 |

| EXHIBIT | I.D. | IN EVID. |
|---|---|---|
| (None) | | |

**UNITED STATES DISTRICT COURT**

LOS ANGELES, CALIFORNIA; THURSDAY, NOVEMBER 5, 2015

8:07 A.M.

- - - - -

THE COURTROOM DEPUTY CLERK:  All rise.

(The jury entered the courtroom.)

THE COURTROOM DEPUTY CLERK:  You may be seated.

All rise and face the flag.  Please be seated.

Civil case 11-3473, Western Sugar Cooperative versus Archer Daniels Midland Company.

Counsel.

MR. LANIER:  Good morning, Your Honor.  May it please the Court.  Good morning, ladies and gentlemen.  Mark Lanier on behalf of the plaintiffs.  Absent a live witness available from the defendants, Your Honor, it is our intention to play the deposition of Audrae Erickson, which you worked until early in the morning to prepare, and thank you for that. What we have done, if I might say --

THE COURT:  Why don't we let defense counsel introduce himself, and I'll say good morning to the jury.

MR. WEBB:  Good morning, ladies and gentlemen.  My name is Dan Webb, and I and Steve D'Amore are at counsel table representing the defendants here today.

MR. D'AMORE:  Good morning.

THE COURT:  Good morning.  And good morning to the panel, and congratulations, I know that you were all right here

UNITED STATES DISTRICT COURT

right on time this morning so that we could start.  And now Counsel, I think, is just going to explain the way that he plans to proceed.  So we'll be always starting with plaintiff first and then going to defendant as far as addressing the Court or addressing the jury or calling witnesses and offering evidence.

So, Counsel.

MR. LANIER:  Thank you, Your Honor.  So our first witness this morning is Ms. Audrae Erickson who was president of the Corn Refiners Association during the key period.  Your Honor, because she is not in subpoena range, we will be playing her deposition.  We have listed the parts that we want to play to offer for our case.  The defendants have listed some parts that they want to play.

The lawyers believe it will make more sense for the jury if the defendants' questions are played just in the process of the plaintiffs' questions as well.  So we have one video to play that will be both the offer the plaintiffs are making from that deposition as well as the defendants.  They will not be segregated out, absent the Court telling us that we need to do that.  Thank you, Your Honor.

THE COURT:  And could counsel give us a time estimate?

MR. LANIER:  Yes, Your Honor.  This deposition, the sections that we had picked to play run about 4 hours and

11 minutes, and then the sections that the defendant's playing are running another 15 to 20 minutes, I understand. I don't know with precision. So altogether, we're looking at roughly 4 hours, 26 minutes and 51 seconds.

THE COURT: All right. Thank you.

Defense counsel, is there something you wish to place on the record?

MR. WEBB: No, we're ready to proceed, Your Honor.

THE COURT: All right. So just as the jurors have been told, so what you're going to hear -- probably that's all you're going to hear today -- will be this video. Because normally, our session is about five hours, so with the breaks that we'll have and so forth. If we finish the video early, then we will go into the second witness, but it sounds like this witness will consume today.

The Court will be giving you an instruction at the end, and I'll just tell you that it's not uncommon for us to have testimony by deposition. If witnesses are unavailable or they are outside the subpoena power of the Court, then those witnesses often do not appear here. Their depositions have been taken, and both counsel were present, or both sides were represented at the taking of the deposition. And so that is the testimony that you will be hearing.

The jury has the responsibility of judging credibility as you would any other witness. So even though it's a video depo,

you are still observing demeanor and ultimately making a decision as to whether you believe all, believe none, or certain parts of the testimony that you will hear.  So we'll break in about two hours.  So we'll stop the video, take a break and then come back and finish up.

     So counsel may proceed.

          MR. LANIER:  Thank you, Your Honor.  And, Your Honor, with this being the first video, we've tried to set sound levels this morning, got here early, but we don't know lighting and things like that, so we'll experiment with the Court's permission.

          THE COURT:  Yes.  And so the jurors may tell us -- obviously, it's important for you to hear everything that's being said in the courtroom.  So if someone is unable to hear, just raise your hand.  Likewise, you do have a screen that's right across from the jury box, but you also have the monitors that are on each side of the jury box.  So hopefully those monitors have been turned on and are working.  And so if you're unable to see, raise your hand, let us know that too.  We'll make that adjustment for you.  All right.  We ready?

     (The video deposition of Audrae Erickson was played.)

          THE COURT:  You may continue.

          MR. LANIER:  Your Honor, this TV is not working, and I don't know if the jury wants to be able to see that.  So is it something that I should look at?

THE COURT: Let me just ask. We may get it working, but are the jurors able to see either the monitor on the side of the jury box or the screen in front of you? If anybody can't see, then raise your hand.

MR. LANIER: Okay. Thank you, Judge.

THE COURT: Apparently, they can all see.

MR. LANIER: I'll shut up and sit down.

THE COURT: All right.

(The video deposition of Audrae Erickson continued playing.)

THE COURT: So we've been sitting for about two hours. I didn't forget. So we're going to take our break now, and we'll be in recess and return at 10:20.

THE COURTROOM DEPUTY CLERK: Please rise.

(The jury exited the courtroom.)

THE COURT: You may be seated. Just one question before counsel take their break. Exhibits that are used in the deposition, to the extent that those exhibits are also going to be used at trial and received in evidence at trial, do they bear the same numbers?

MR. LANIER: No, Your Honor, they do not. We've got independent numbers on the jury exhibit list, and we will provide the Court with a chart that matches them up. And if the Court would like, we can make sure that the copies -- I'll work with co-counsel to make sure that the copies bear two

UNITED STATES DISTRICT COURT

stickers, a sticker for the deposition and a sticker for trial, so that the jury is able to discern the difference between the two.

THE COURT:  Okay.  And so that's why I raised the question, is just for the jury.  So they see the exhibits here while the video is being played.  Exhibit numbers are being used.  If the same exhibits are going to be in evidence, it would be helpful to the jury to know that these are exhibits that have been received and will be made available to them.

I'm not sure that that's what counsel intend, and if they bear different numbers, I can tell the jury they may be numbered differently, but we'll provide them something so that they will -- can reference the exhibit number used in the deposition, and then they'll know which exhibit number that is for trial purposes.

MR. LANIER:  That would be fantastic, Your Honor, and it is our intention to offer those in mass at the end of the play today into evidence so you can give that -- I think you're -- obviously, the instruction you give whenever you choose, but it seems to me appropriate whenever you want to give it --

THE COURT:  Okay.

MR. LANIER:  -- because we will be doing that.

THE COURT:  All right.  And so I would probably give the jury something about that, but I'll look for guidance from

UNITED STATES DISTRICT COURT

counsel when, if you agree that all the exhibits that are used for the deposition are actually going to be received at trial, I can deem them admitted. I'll tell the jury they'll be available. They will have them in the jury room. The numbers that they will bear, at some point counsel will give the Court that information for the record.

MR. LANIER: The only exception to that, Your Honor, is I used the Lo & Ho study, and I used the Thornalley study. And I believe under the rules those are admissible, but almost in a demonstrative sense. They don't go back to the jury as learned treatises, but rather are used to be shown to the jury. And so just with that warning, Mr. Webb and I had had this conversation earlier, and I think we're in agreement on that.

THE COURT: All right. What would be helpful, just so I don't misstate to the jury, if you just gave me something that indicated these exhibits may be deemed admitted, these are the numbers, whatever they're going to be for trial purposes, and what the deposition numbers were.

Did defense counsel want to put something on the record on this subject?

MR. D'AMORE: Yes, Your Honor. There are actually three exhibits -- and they don't come up until much later in the transcript, but there are three exhibits -- 31, 32 and 36 as they were used in the deposition -- and at pages 383, 388 and 400 of the deposition. These are documents that actually

relate to the FDA name change petition.

THE COURT: So these are not documents that are deemed admitted?

MR. D'AMORE: Correct.

THE COURT: Okay.

MR. D'AMORE: We would object to that, Your Honor, and there --

THE COURT: And so if you give me a list at some point of those that I may indicate to the jury they are in evidence and they'll have them available during deliberations, that's all I want to do at this point.

MR. D'AMORE: Yes, Your Honor, but with respect to those three documents, there is -- there is some --

THE COURT: I don't think we have time during this break to talk about them. I just wanted to ask that question, and I want to give you an opportunity to take your break. And unless there's something further, then we would take the break now. When we resume, we'll just continue with the deposition. The next break will be about two hours after the jury returns to the box.

Anything else that you wish to raise at this point? All right. We're in recess.

MR. LANIER: All I want to do is make sure I know what time I have to get back from the restroom.

THE COURT: Okay. I said to the jury they should

UNITED STATES DISTRICT COURT

return no later than 10:20.

MR. LANIER:  Thank you, Your Honor.

THE COURTROOM DEPUTY CLERK:  Please rise.

(Off the record at 10:10 a.m.)

(On the record at 10:28 a.m.)

THE COURTROOM DEPUTY CLERK:  Please rise.

(The jury entered the courtroom.)

THE COURTROOM DEPUTY CLERK:  You may be seated.

(Pause in proceedings.)

THE COURTROOM DEPUTY CLERK:  Please rise and come to order.  Court is again in session.

THE COURT:  All right.  Thank you.  You may be seated, and we'll go back on the record and continue with the witness.

(The video deposition of Audrae Erickson continued playing.)

THE COURT:  We'll take our next recess, and so this is about 15 minutes.  Return time at 12:45, and then we will have one hour left and the jury will then be excused for the day.  Thank you.

THE COURTROOM DEPUTY CLERK:  Please rise.

(The jury exited the courtroom.)

THE COURT:  We're in recess for 15 minutes.

(Off the record at 12:31 p.m.)

(On the record at 12:54 p.m.)

THE COURTROOM DEPUTY CLERK:  Please rise.

(The jury entered the courtroom.)

THE COURTROOM DEPUTY CLERK:  You may be seated.

(Pause in proceedings.)

THE COURTROOM DEPUTY CLERK:  Please rise and come to order.  This court is again in session.

THE COURT:  Thank you.  You may be seated.  All right.  So we will continue, and as I said, we have just an hour and then the jury would be excused.

(The video deposition of Audrae Erickson continued playing.)

MR. LANIER:  Your Honor, I believe that concludes both our plays from that deposition and the plays of the Corn Refiners Association, Cargill, ADM, the defendants.

MR. WEBB:  That's correct.

THE COURT:  All right.  Thank you.  Then I'll be excusing the jury just momentarily, and I think the court reporters want to change at this point.

I just want to read one of the jury instructions that I read yesterday because there was a question by one of the jurors this morning.  So just read this again.

I remind you that you must not be exposed to any other information about the case or issues it involves, except for discussing the case with your fellow jurors during your deliberations.  Do not communicate with anyone in any way.  Do

not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging or any Internet chat room, blog, website or other feature.

This applies to communicating with your family members, your employer, the media or the press, and people involved in the trial.  If you're asked or approached in any way about your jury service or anything about the case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.  And I think the question the juror had, may you indicate the name of the case that you're serving on, the answer to that is no because that invites additional questions and especially if anyone knows anything about the case.  So your answer should be to those who know you're serving on jury duty anyway, yes, I am serving but I'm not permitted to say anything further about it.

Do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it.  Do not do any research such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation or in any way try to learn about the case on your own.  The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire process to start again.  If any juror is exposed to any outside information, please notify the court immediately.

So at this time, prepare to recess the jury for today.  So tomorrow morning, you'll report again for eight o'clock.  Hopefully the courtroom deputy has answered all of your questions about getting your parking validated and other questions of that type.  It is my understanding that tomorrow there will be more video deposition, and I understand that there probably will be two different witnesses whose depositions are being played.  Am I correct?

MR. LANIER:  That is correct, Your Honor, and then we have live witnesses starting Monday.

THE COURT:  And so that probably will take all of our time tomorrow.  So the jurors are excused, and we'll see you tomorrow morning at eight o'clock.

THE COURTROOM DEPUTY CLERK:  Please rise.

(The jury exited the courtroom.)

THE COURT:  And we will leave this on the record, and you may be seated if you wish.  I do have some questions.  You probably have some questions, but we'll take a recess until 2:15.  That will permit us to get a bite to eat or stretch or whatever, and so if you'll come back at 2:15, I have questions

that I'm sure you'll be able to answer, and you may have questions of me as well.  See you then at 2:15.

MR. LANIER:  Thank you, Your Honor.

MR. WEBB:  Thank you.

MR. D'AMORE:  Thank you.

(Off the record at 1:40 p.m.)

**UNITED STATES DISTRICT COURT**

**CERTIFICATE OF OFFICIAL REPORTER**


COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )


         I, SHAYNA MONTGOMERY, Federal Official Realtime Court Reporter, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the judicial conference of the United States.

Date:   *November 6, 2015*


                    /s/ SHAYNA MONTGOMERY
                    _____
                    SHAYNA MONTGOMERY, CSR, RPR, CRR
                    Federal Official Court Reporter


**UNITED STATES DISTRICT COURT**